IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE and VIRGINIA CARTER, | ) | |
| on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Cause No. 4:18-cv-01962-RLW |
| v. | ) | |
| | ) | |
| COMPASS GROUP USA, INC., D/B/A | ) | |
| CANTEEN | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

THE PARTIES ............................................................................................................... 1

    Plaintiffs ................................................................................................................ 1

    Defendant .............................................................................................................. 2

JURISDICTION AND VENUE ..................................................................................... 2

FACTUAL ALLEGATIONS REGARDING DEFENDANT'S LIABILITY .............................. 3

    Plaintiff Moore's Purchases .................................................................................. 3

    Plaintiff Carter's Purchases ................................................................................... 4

    After This Lawsuit Was Filed, Defendant Began Telling the Truth on Its Vending
    Machines ................................................................................................................ 6

CLASS ACTION ALLEGATIONS ............................................................................... 7

COUNT I: BREACH OF CONTRACT .......................................................................... 9

COUNT II: VIOLATION OF THE MMPA BY MEANS OF DECEPTION ............................. 10

COUNT III: VIOLATION OF THE MMPA BY MEANS OF UNFAIR PRACTICES ............. 12

COUNT IV: UNJUST ENRICHMENT IN MISSOURI ................................................. 15

COUNT V: MONEY HAD AND RECEIVED IN MISSOURI ....................................... 16

COUNT VI: VIOLATION OF THE ICFA ................................................................... 16

COUNT VII: CONVERSION IN ILLINOIS ............................................................... 18

COUNT VIII: UNJUST ENRICHMENT IN ILLINOIS ............................................... 19

COUNT IX: MONEY HAD AND RECEIVED IN ILLINOIS ...................................... 20

PRAYER FOR RELIEF ............................................................................................... 20

PLAINTIFFS GEORGE MOORE and VIRGINIA CARTER ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Amended Complaint against DEFENDANT COMPASS GROUP USA, INC., D/B/A CANTEEN ("Canteen") as follows based on personal knowledge as to their own actions and on information and belief as to Defendant's conduct and practices.

## INTRODUCTION

1.      Plaintiffs bring this class action individually and on behalf of a Class and Subclasses of similarly situated consumers who have purchased items from Defendant's vending machines and been charged more than the amount displayed for those items.

2.      Defendant's actions as alleged herein constitute breach of contract; violation of the Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et seq*, by means of deception, misrepresentation and unfair practices; violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, ("ICFA") by means of unfair practices; conversion; unjust enrichment and money had and received.

## THE PARTIES

### Plaintiffs

3.      Plaintiff George Moore is a resident of the City of St. Louis and a citizen of the State of Missouri who used a prepaid card to purchase items from a vending machine located at 1010 Market Street in the City of St. Louis, after which Defendant charged his prepaid card more than the posted prices.

4.      Plaintiff Virginia Carter is a resident of St. Clair County, Illinois, and a citizen of the State of Illinois who used a debit card from FCB Banks in O'Fallon, Illinois, to purchase items from a vending machine located at 1010 Market Street in the City of St. Louis, after which Defendant withdrew more than the posted prices from her bank account.

1

**Defendant**

5.     Defendant Compass Group USA, Inc., is a corporation incorporated in Delaware with its principal place of business located at 2400 Yorkmount Road in Charlotte, N.C. It does business under the name "Canteen" and has offices in Missouri at 2331 Millpark Drive, Maryland Heights, MO 63043. Its registered agent in Missouri is CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101.

6.     Defendant owns and operates vending machines in Missouri, Illinois and elsewhere in the United States, including vending machines located in the office building at 1010 Market Street, St. Louis, Missouri 63101. On its website, Defendant states: "Canteen's St. Louis branch, located just outside the city in Maryland Heights, provides refreshment and vending services to the St. Louis metropolitan area and surrounding counties in Eastern Missouri."[1]

7.     Defendant also owns and operates vending machines in other areas of Missouri and the United States. On its website, Defendant states that it is "the nation's largest vending services company ...."[2]

**JURISDICTION AND VENUE**

8.     This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

9.     As Defendant alleged in removing this case, this Court has jurisdiction pursuant to the Class Action Fairness Act, 18 U.S.C. § 1332(d). Because Plaintiffs and Defendant are citizens of different states, there is minimal diversity. The total claims of Class Members are in excess of $5,000,000 exclusive of interest and costs. There are at least 100 Class Members.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

---

[1] https://www.canteen.com/find-your-canteen/maryland-heights-st-louis/ (accessed August 13, 2018).

[2] https://www.canteen.com/vending/ (accessed August 13, 2018).

2

## FACTUAL ALLEGATIONS REGARDING DEFENDANT'S LIABILITY

11. Defendant maintains vending machines in the office building at 1010 Market Street, St. Louis, MO 63101 ("1010 Market").

12. Those vending machines sell soft drinks, water and snacks and display a price for each item.

13. However, when a customer purchases an item and pays for it with a credit, debit or prepaid card ("card"), Defendant charges his or her card an amount that exceeds its displayed price.

14. The photographs below show the way these vending machines display their prices:



**Plaintiff Moore's Purchases**

15. On or about March 18, 2018, Plaintiff Moore purchased a soft drink with a displayed price of $1.50 from a vending machine owned and operated by Defendant at 1010 Market. He paid with his prepaid card. Subsequently, he received his Prepaid Statement showing that Defendant had charged his prepaid card $1.60 for this item.

3

16.     When Plaintiff Moore made his purchase from Defendant's vending machine on March 18, 2018, there was no sign or other indication on the vending machine signifying that the purchaser's card would be charged more than the displayed price.

17.     On or about March 23, 2018, Plaintiff Moore purchased a soft drink with a displayed price of $0.85 from a vending machine owned and operated by Defendant at 1010 Market. He paid with his prepaid card. Subsequently, he received his Prepaid Statement showing that Defendant had charged his card $0.95 for this item.

18.     When Plaintiff Moore made his purchase from Defendant's vending machine on March 23, 2018, there was no sign or other indication on or near the vending machine signifying that the purchaser's card would be charged more than the displayed price.

19.     On or about April 18, 2018, Plaintiff Moore purchased a soft drink with a displayed price of $1.50 from a vending machine owned and operated by Defendant at 1010 Market. He paid with his prepaid card. Subsequently, he received his Prepaid Statement showing that Defendant had charged his card $1.60 for this item.

20.     When Plaintiff Moore made his purchase from Defendant's vending machine on April 18, 2018, there was no sign or other indication on the vending machine signifying that the purchaser's card would be charged more than the displayed price.

21.     Plaintiff Moore made his purchases from Defendant's vending machines, as alleged above, for personal, family or household purposes.

**Plaintiff Carter's Purchases**

22.     Plaintiff Carter has frequently used her debit card from FCB Banks of O'Fallon, Illinois ("FCB Banks") to purchase items from the vending machines at 1010 Market. After many, if not all, such purchases, Defendant, from its offices in Maryland Heights, Missouri,

4

Case 3:23-cv-00818-JAG-DCK     Document 15     Filed 12/18/18     Page 6 of 23

withdrew from Plaintiff Carter's account at FCB Banks ten cents more than the price shown on the machines.

23.     Among those instances are those shown in the following list, with the date of purchase and the amount Defendant withdrew from Plaintiff Carter's account at FCB:

October 6, 2017: $0.95
October 6, 2017: $1.10
October 6, 2017: $1.10
October 6, 2017: $1.35
October 6, 2017: $1.60
October 8, 2017: $1.10
October 8, 2017: $1.10
October 8, 2017: $1.60
December 7, 2017: $2.85
December 7, 2017: $2.85
December 8, 2017: $1.60
December 11, 2017: $1.10
December 11, 2017: $1.10
December 18, 2017: $2.85
January 1, 2018: $1.60
January 3, 2018: $1.10
January 3, 2018: $1.10
January 3, 2018: $1.10
January 3, 2018: $2.85
January 5, 2018: $1.60
January 5, 2018: $1.60
January 5, 2018: $2.85
January 5, 2018: $3.10
April 9, 2018: $2.85
April 28, 2018: $3.10
May 3, 2018: $0.95
May 3, 2018: $1.60
May 14, 2018: $1.10
May 16, 2018: $1.10
May 16, 2018: $2.10

24.     Plaintiff Carter had the right to immediate possession of the money in her bank account with FCB Banks. That right was absolute and unconditional and not dependent on some act to be performed.

5

25.     Plaintiff Carter was deprived of her interest in the money in her bank account with FCB Banks by the Defendant's unauthorized acts of taking more from her account than the prices shown on Defendant's vending machines for the items she purchased.

**After This Lawsuit Was Filed, Defendant Began Telling the Truth on Its Vending Machines**

26.     This lawsuit was first filed in the Circuit Court of St. Louis County, Missouri, on October 23, 2018. At that time, the above allegations were all true. However, since being sued for not informing consumers that the displayed prices on its vending machines would be increased by 10 cents if the consumer did not pay cash, Defendant has changed its practices. Defendant now displays on its machines at 1010 Market, the following statement beneath symbols for various credit cards:

> The prices displayed on the machine are 10 cents lower than the
> retail price and are available on cash purchases only.

27.     The photographs below, taken on December 18, 2018, show how the signs with that statement appeared on Defendant's vending machines from which Plaintiffs made th purchases described above:

 

6

28.     These new signs on Defendant's vending machines shows that it would have been feasible before this lawsuit was filed to tell consumers that the posted prices on Defendant's vending machines would be increased by 10 cents if the consumer paid with a card.

29.     The above new signs on Defendant's vending machines show that Defendant recognized that it had a duty to tell consumers that, if they paid with a card, the card would be charged 10 cents more than the posted price.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs seek to represent the following Class:

**Class: All persons or entities who, within the applicable statute of limitations preceding the filing of this lawsuit to the date of class certification, purchased an item from a vending machine owned or operated by Defendant in the United States with a credit, debit or prepaid card and were charged an amount in excess of the price displayed for that item on the vending machine, except for items purchased from a vending machine that stated that charges would be increased for purchases with a card.**

31.     Plaintiff Moore seeks to represent the following Missouri Subclass:

**Missouri: Subclass: All persons who, within the applicable statute of limitations preceding the filing of this lawsuit to the date of class certification, purchased an item from an vending machine owned or operated by Defendant in Missouri for personal, family or household purposes and were charged an amount in excess of the price displayed for that item, except for items purchased from a vending machine stating that charges would be increased for purchases with a card.**

32.     Plaintiff Carter seeks to represent the following Illinois Subclass:

**Illinois Subclass: All persons or entities who, within the applicable statute of limitations preceding the filing of this lawsuit to the date of class certification, had an account in Illinois from which Defendant withdrew an amount in excess of the price displayed for an item they purchased on a vending machine owned or operated by Defendant, except for items purchased from a vending machine stating that charges would be increased for purchases with a card.**

7

33. Excluded from the Class and Subclasses are officers, directors and employees of Defendant, counsel and members of the immediate family of counsel for Plaintiffs herein, and the judge presiding over this action and any member of the judge's immediate family.

34. The Class and Subclasses are believed to comprise many consumers, the joinder of whom is impracticable both because of their number and because they are spread out across the State of Missouri. Moreover, the amount of damages suffered individually by each member of the Class is so small as to make suit for its recovery by each one economically unfeasible.

35. Class treatment will provide substantial benefit to both the parties and the court system. A well-defined commonality of interest in questions of law and fact affects Plaintiffs and all proposed members of the Class and Subclass. Common questions of law and fact include:

    A.    Whether Defendant sells items in vending machines with a particular displayed price;

    B.    Whether Defendant charges customers' cards or accounts for more than the displayed price;

    C.    Whether Defendant as a result has breached a contract for the sale of items from its vending machines;

    D.    Whether Defendant's actions are deceptive and unfair under the MMPA;

    E.    Whether Defendant's actions are unfair under the ICFA;

    F.    Whether Defendant has improperly converted money from accounts of customers in Illinois.

    G.    Whether Defendant's actions constitute unjust enrichment.

    H.    Whether Defendant's actions constitute money had and received.

8

36. Plaintiffs' claims are typical of the claims of the proposed Class and Subclasses.

37. Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interest antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel.

38. The questions of law and fact common to the members of the Class, some of which are set out above, predominate over any questions affecting only individual members of the Class. The resolution of common questions in this case will resolve the claims of both Plaintiffs and the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because members of the Class are numerous and individual joinder is impracticable. The expenses and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually. Trial of Plaintiff's claims is manageable.

40. Unless a class is certified, Defendant will retain Monies it has improperly taken from Plaintiffs and proposed members of the Class. Unless a class-wide injunction is issued, Defendant will continue to commit violations against Customers.

41. This action is maintainable as a class action pursuant Fed. R. Civ. P. 23.

## COUNT I: BREACH OF CONTRACT
### (Plaintiffs and the Class)

42. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

43. Plaintiffs and Class Members entered into contracts with Defendant; pursuant to those contracts Defendant offered to sell to Plaintiffs and Class Members the items that were for

sale in its vending machines for the displayed prices and Plaintiffs and Class Members agreed to pay those prices.

44.    Plaintiffs and Class Members performed pursuant to those contracts by using their cards to buy the items at the displayed prices.

45.    Defendant breached those contracts by charging Plaintiffs' cards more than the displayed prices.

46.    Plaintiffs thereby suffered damages.

47.    WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT II: VIOLATION OF THE MMPA BY MEANS OF DECEPTION
### (Plaintiff Moore and the Missouri Subclass)

48.    Plaintiff Moore incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

49.    The MMPA, Mo. Rev. Stat. § 407.020, states in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice.

50.    The actions of Defendant alleged herein violated, and continue to violate, the MMPA because they constitute deception, fraud, false pretense, false promise and misrepresentation.

51.    Pursuant to the MMPA, Defendant had a duty not to engage in any deceptive practice in connection with the sale or advertisement of any merchandise in trade or commerce, such as not informing customers that, if they used a card to buy an item from its vending

machine, their card would be charged more than the displayed price. For the reasons stated herein, it breached that duty.

52. Plaintiff Moore, on behalf of himself and Class Members, is entitled to bring this action pursuant to Mo. Rev. Stat. § 407.025, which provides in relevant part that:

1. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

2. Persons entitled to bring an action pursuant to subsection 1 of this section may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class . . . . In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.

53. The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate or services. Mo. Rev. Stat. § 407.010. Thus, the items that Defendant sells through its vending machines are merchandise.

54. In selling merchandise from its vending machines, Defendant is engaged in trade and commerce.

55. Plaintiff Moore and members of the Missouri Subclass purchased items from Defendant's vending machines that were falsely represented as being sold for prices that were less than the amounts Defendant charged customers' cards.

56. Plaintiff Moore and members of the Missouri Subclass suffered ascertainable losses in that their credit, debit or prepaid cards were charged amounts greater than the prices Defendant displayed.

11

57. Defendant's false promises, misrepresentations, and omissions of material fact in connection with the advertisement of prices that it sold in its vending machines in Missouri violated the above provision of the MMPA.

58. Defendant also concealed from customers that it would charge their cards amounts that exceeded the prices it displayed in its vending machines. For this additional reason Defendant violated Mo. Rev. Stat. § 407.020.

59. As a direct and proximate result of Defendant's violation of the MMPA, Plaintiff Moore and members of the Missouri Subclass have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

60. Defendant's deceptive actions in violation of the MMPA were performed willfully and wantonly, were outrageous and were done in reckless indifference to the rights of Plaintiff Moore and Class Members.

61. WHEREFORE, Plaintiff Moore and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT III: VIOLATION OF THE MMPA BY MEANS OF UNFAIR PRACTICES
(Plaintiff Moore and the Missouri Subclass)

62. Plaintiff Moore incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

63. The actions of Defendant alleged herein violated, and continue to violate, the MMPA because they constitute unfair practices.

64. Mo. Rev. Stat. §407.020.1 prohibits "[t]he act, use or employment by any person of any ... unfair practice ... in connection with the sale or advertisement of any merchandise in trade or commerce."

12

65. The Missouri Attorney General has promulgated regulations defining the meaning of unfair practice as used in the MMPA. That definition states that unethical practices are unfair in violation of the above statute. Mo. Code Regs. tit. 15, § 60-8.020.

66. Pursuant to the MMPA, Defendant has a duty not to engage in any unethical or unfair practice in connection with the sale or advertisement of any merchandise in trade or commerce, such as charging a customer's card more than the displayed price for a purchase from its vending machine without informing the customer of that fact. For the reasons stated herein, it breached that duty.

67. In selling merchandise from its vending machines, Defendant is engaged in trade and commerce.

68. Displaying one price for a snack, water or soft drink and then charging a purchaser's card for a greater amount is unfair and unethical.

69. The basis for the allegation that it was unethical to engage in the above practices comes, in part, from established ethical principles recognized by the Direct Marketing Association ("DMA"), the leading industry association for companies that, like Defendant, market directly to consumers.

70. DMA has published principles of ethical business practices for such marketing activities. Direct Marketing Association's Guidelines for Ethical Business Practices ("DMA Ethical Guidelines"). See Ex. A - DMA Ethical Guidelines, revised May 2011. Ex. B - DMA Ethical Guideline, revised January 2014, both of which are incorporated herein by reference.

71. These Ethical Guidelines "are intended to provide individuals and organizations involved in direct marketing in all media with generally accepted principles of conduct." *Id.* at 2. They "reflect DMA's long-standing policy of high levels of ethics and the responsibility of the

Association, its members, and all marketers to maintain consumer and community relationships that are based on fair and ethical principles." *Id*. (emphasis added).

72.     In addition, DMA states that the Ethical Guidelines "are intended to be honored in light of their aims and principles. ***All marketers*** should support the guidelines in spirit and not treat their provisions as obstacles to be circumvented by legal ingenuity." *Id.* (emphasis added).

73.     DMA has also published a companion volume to its Ethical Guidelines called *Do the Right Thing: A Companion to DMA's Guidelines for Ethical Business Practice* (Revised January 2009) ("*Do the Right Thing*"). Ex. C, incorporated herein by reference. That volume is intended to "give[] direct marketers advice on how to assure their business practices comply with" the Ethical Guidelines. *Do the Right Thing* at 2.

74.     DMA's Ethical Guidelines are set forth in a series of "Articles," each of which states a separate ethical principle.

75.     In both the 2011 and 2014 editions of its Ethical Guidelines, Article #1, "HONESTY AND CLARITY OF OFFER," states: "All offers should be clear, honest and complete so that the consumer may know the exact nature of what is being offered the price, the terms of payment (including all extra charges) and the commitment involved in the placing of an order."

76.     By offering its merchandise with a display of false prices, Defendant has violated that ethical standard.

77.     Defendant's unfair and unethical acts and practices have directly, foreseeably, and proximately caused ascertainable loss, damages and injury to the Class.

78.     Defendant's unfair and unethical acts and practices in violation of the MMPA were performed willfully and wantonly, were outrageous and were done in reckless indifference to the rights of Plaintiff Moore and Class Members.

79.     WHEREFORE, Plaintiff Moore and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT IV: UNJUST ENRICHMENT IN MISSOURI
### (Plaintiff Moore and Missouri Subclass)

80.     Plaintiff Moore incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81.     Substantial benefits have been conferred upon Defendant by Plaintiff Moore and members of the Missouri Subclass in purchasing soft drinks and snacks from Defendant's vending machines, and Defendant has knowingly and willingly accepted and enjoyed such benefits.

82.     Defendant either knew or should have known that the amounts it charged customers' cards were greater than the prices it displayed. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

83.     Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to Plaintiff Moore and the Missouri Subclass.

84.     Plaintiff Moore and the Missouri Subclass are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

85.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff Moore and the Missouri Subclass are entitled to restitution from, and

15

institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

86.     WHEREFORE, Plaintiff Moore and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT V: MONEY HAD AND RECEIVED IN MISSOURI
(Plaintiff Moore and the Missouri Subclass)

87.     Plaintiff Moore incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

88.     Defendant has received money from Plaintiff Moore and the Missouri Subclass by charging their cards in excess of the displayed prices for items that they sold in their vending machines.

89.     In equity and good conscience that money should be returned to Plaintiff Moore and the Missouri Subclass.

90.     WHEREFORE, Plaintiff Moore and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT VI: VIOLATION OF THE ICFA
(Plaintiff Carter and the Illinois Subclass)

91.     Plaintiff Carter incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

92.     The ICFA outlaws "unfair or deceptive acts or practices ...." 815 ILCS 505/2.

93.     In outlawing unfair acts and practices, the Illinois legislature adopted the Federal Trade Commission's interpretation of § 5(a)(1) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a): "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2.

16

94.     In determining whether a practice is unfair in violation of Section 5(a) of the FTC Act, the FTC considers "whether the practice, without necessarily having been previously considered unlawful ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness" and "whether it is ... unethical." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972).

95.     Accordingly, unethical practices are unfair under ICFA.

96.     Pursuant to the ICFA, Defendant has a duty not to engage in any unethical or unfair practice, such as charging a customer's card more than the displayed price for a purchase from its vending machine without informing the customer of that fact. For the reasons stated herein, it breached that duty.

97.     Defendant's actions in withdrawing from the accounts of Plaintiff Carter and members of the Illinois Subclass more than the posted prices of items they purchased from Defendant's vending machines were unfair in violation of the ICFA in that, inter alia, they were unethical.

98.     Defendant's actions, as alleged herein, were performed intentionally, willfully, knowingly, maliciously and with reckless indifference.

99.     Plaintiff Carter and members of the Illinois Subclass suffered monetary damages in the amounts that Defendant wrongfully withdrew from their accounts.

100.    The ICFA allows for an action for damages, as follows:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper

815 ILCS 505/10a(a).

17

101.    WHEREFORE, Plaintiff Carter and the Illinois Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT VII: CONVERSION IN ILLINOIS
### (Plaintiff Carter and Illinois Subclass)

102.    Plaintiff Carter incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

103.    Plaintiff Carter had the right to immediate possession of the money in her bank account with FCB Banks. That right was absolute and unconditional and not dependent on some act to be performed.

104.    Plaintiff Carter was deprived of her interest in the money in her account with FCB Banks by the Defendant's unauthorized acts of taking more from her account than the price of the items she purchased as shown on Defendant's vending machines.

105.    Defendant made an unauthorized assumption of the right to ownership of money from Plaintiff Carter's account at FCB Banks.

106.    Defendant improperly converted money from Plaintiff Carter's account at FCB Banks.

107.    Plaintiff Carter suffered damages due to that conversion in the amount that Defendant improperly withdrew from her accounts.

108.    Members of the Illinois Subclass suffered similar injuries from similar conversions by Defendant.

109.    Defendant's actions in improperly taking money from the accounts of Plaintiff Carter and members of the Illinois Subclass were performed intentionally, willfully, knowingly, maliciously and with reckless indifference.

18

110.     WHEREFORE, Plaintiff Carter and the Illinois Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT VIII: UNJUST ENRICHMENT IN ILLINOIS
(Plaintiff Carter and Illinois Subclass)

111.     Plaintiff Carter incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

112.     Substantial benefits have been conferred upon Defendant by Plaintiff Carter and members of the Illinois Subclass in purchasing items from Defendant's vending machines, and Defendant has knowingly and willingly accepted and enjoyed such benefits.

113.     Defendant either knew or should have known that the amounts it charged customers' accounts were greater than the prices it displayed. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

114.     Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to Plaintiff Carter and the Illinois Subclass.

115.     Plaintiff Carter and the Illinois Subclass are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

116.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff Carter and the Illinois Subclass are entitled to restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

117.     WHEREFORE, Plaintiff Carter and the Illinois Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

19

## COUNT IX: MONEY HAD AND RECEIVED IN ILLINOIS
### (Plaintiff Carter and the Illinois Subclass)

118.    Plaintiff Carter incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

119.    Defendant has received money from Plaintiff Carter and the Illinois Subclass by charging their accounts in excess of the displayed prices for items that they sold in their vending machines.

120.    In equity and good conscience that money should be returned to Plaintiff Carter and the Illinois Subclass.

121.    WHEREFORE, Plaintiff Carter and the Illinois Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclasses, pray judgment against Defendants as follows:

1.    Certifying the Class and Subclasses as requested herein;

2.    Entering an Order appointing The Law Office of Richard S. Cornfeld, LLC as lead counsel for the Class;

3.    Awarding actual damages from Defendant in an amount to be determined;

4.    Awarding punitive damages against Defendant as the Court deems necessary or proper;

5.    Awarding declaratory and injunctive relief as permitted by law or equity including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices as set forth herein;

20

6.     Awarding pre-judgment and post-judgment interest;

7.     Awarding reasonable attorneys' fees and costs herein;

8.     Awarding such other and further relief as the Court deems fit and proper.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury.

Respectfully submitted,

LAW OFFICE OF RICHARD S. CORNFELD, LLC

By: */s/ Richard S. Cornfeld*
Richard S. Cornfeld, #31046MO
1010 Market Street, Suite 1645
St. Louis, Missouri 63101
Tel: (314) 241-5799
Fax: (314) 241-5788
rcornfeld@cornfeldlegal.com

*Attorney for Plaintiffs*

21