# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GEORGE MOORE and VIRGINIA CARTER, )
et al., *on behalf of themselves and all* )
*others similarly situated*, )
 )
    Plaintiffs, )
v. )     Case No. 4:18-cv-01962-SEP
 )
COMPASS GROUP USA, INC., d/b/a )
CANTEEN, )
 )
    Defendant. )

### MEMORANDUM AND ORDER

    Before the Court is Defendant Compass Group USA, Inc.'s Motion to Dismiss. Doc. 134. The Motion is fully briefed and ready for disposition. For the reasons set forth below, the Motion is granted in part and denied in part.

### FACTS AND BACKGROUND[1]

    Defendant Compass Group USA, Inc. owns, operates, and maintains vending machines in Missouri, Illinois, California, Texas, and 29 other states. Doc. 126 ¶ 9. Defendant uses so-called "two-tier pricing" on its machines; that is, it charges 10 cents more for purchases paid for with a card than it does for purchases paid for with cash. Defendant uses three different types of machines, depending on the state: *Unlabeled machines* display only the cash price and do not have any label or other signage informing consumers that card users will be charged an additional 10 cents. *Single-price labeled machines* display only the cash price but have a label informing consumers that card purchasers will be charged an additional 10 cents. *Dual-price machines* display both the cash price and the higher card price for each item.

    This putative class action is based on the primary allegation that named Plaintiffs and putative class members were charged more money for card purchases than the cash prices displayed on Defendant's vending machines. Plaintiffs bring claims based on Defendant's

---

[1] For purposes of this Motion, the following facts from Plaintiffs' Amended Consolidated Class Action Complaint, Doc. 126, are accepted as true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Case 3:23-cv-00818-RJC-DCK   Document 177   Filed 09/30/22   Page 1 of 22

use of unlabeled and single-price labeled machines; they do not dispute the lawfulness of Defendant's dual-price machines.

Plaintiff George Moore is a Missouri citizen who used a prepaid card to purchase items from Defendant's unlabeled vending machines located in St. Louis and was allegedly charged more than the displayed price. Doc. 126 ¶¶ 3, 34, 36, 38. Plaintiff Virginia Carter was an Illinois citizen who used a debit card to purchase items from Defendant's unlabeled vending machines located in St. Louis and was also allegedly charged more than the displayed price.[2] *Id.* ¶¶ 4, 10, 34, 36, 38, 45. Plaintiff James Jilek is a California citizen who used a credit card to purchase items from Defendant's unlabeled vending machines in El Segundo, California, and was allegedly charged more than the displayed price. *Id.* ¶¶ 5, 41, 44. Plaintiff Francis Jaye is a Texas citizen who used a debit card to purchase items from Defendant's unlabeled vending machines in Dallas, Texas, and was allegedly charged more than the displayed price. *Id.* ¶¶ 6, 51, 55. Plaintiff Sean Madelmayer is a Texas citizen who used a debit card to purchase items from Defendant's unlabeled vending machines in Dallas, Texas, and was allegedly charged more than the displayed price. *Id.* ¶¶ 7, 51, 55.

Moore originally filed his petition in Missouri state court, *see* Doc. 4, and Defendant removed the case to this Court in November 2018, *see* Doc. 1. In December 2018, Moore filed an amended complaint, in which Carter joined as a named plaintiff. Doc. 15. Jilek filed an identical lawsuit in California state court, and Defendant removed it to the United States District Court for the Central District of California, *see* Doc. 48 ¶¶ 4, 7. Jilek's case was subsequently transferred to this District in December 2019, *see id.* ¶ 8, and his case was consolidated into Moore and Carter's case in April 2020, *see* Doc. 56. Jaye and Madelmayer filed an identical action in Texas state court, and in June 2019, Defendant removed it to the United States District Court for the Northern District of Texas. *See* Doc. 59 ¶ 4. The Northern District of Texas transferred the case to this District in February 2020. *See id.* ¶ 5. In June 2020, Defendant requested that this Court consolidate Jaye and Madelmayer's case into Moore, Carter, and Jilek's case. *See* Doc. 59. The Court granted Defendant's request in August

---

[2] Carter was an Illinois citizen at the time of the alleged purchase, but is now a citizen of Missouri. Doc. 126 ¶ 4.

2020, *see* Doc. 63, and all four cases were consolidated into the present case: *Moore v. Compass Group, Inc.*, No. 4:18-cv-01962-SEP.

In April 2021, Plaintiffs filed their 12-count[3] Consolidated Class Action Complaint ("Consolidated Complaint"), Doc. 91, alleging that Defendant's vending machines provided consumers with no information regarding the price difference between cash and card purchases. Specifically, Plaintiffs alleged that they purchased items from machines that displayed only the cash price for each of the machine's goods and contained "no sign or other indication on the vending machine signifying that the purchaser's card would be charged [ten cents] more than the displayed price," if the purchaser used a card instead of cash. Doc. 91 ¶¶ 24-25, 31, 35-36, 43, 46-47. Apparently as evidence that "it would have been feasible" for Defendant to have warned consumers of the difference between cash and card pricing, the Consolidated Complaint alleged that, "after this lawsuit was filed, Defendant began telling the truth on its vending machines" by adding a label that stated: "**The prices displayed on the machine are 10 cents lower than the retail price and are available on cash purchases only**." Doc. 91 at 11. The Consolidated Complaint expressly excluded anyone who purchased items from Defendant's labeled machines from the putative class. *See* Doc. 91 ¶¶ 55-59. The Consolidated Complaint was thus predicated solely on the deceptiveness and unfairness of unlabeled machines, and Plaintiffs expressly disclaimed any challenge to Defendant's "truth[ful]" use of single-price labeled machines. *See* Doc. 91 at 11.

On October 14, 2021, Plaintiffs filed their Amended Consolidated Class Action Complaint (Amended Complaint). Doc. 126. The Amended Complaint added allegations about single-price labeled machines and revised the class definitions to include consumers who purchased items from such machines. *See* Doc. 126 ¶¶ 28, 56, 58-61. Plaintiffs now seek to represent "[a]ll persons or entities who . . . purchased an item from [Defendant's] vending machines . . . and were charged an amount in excess of the price displayed for that item," *Id.* ¶ 56, regardless of whether the machine had a label or not, *id.* ¶¶ 31, 42, 52, 56, 58-61.

---

[3] The Consolidated Complaint contains counts labeled I through XIII but does not include Count VII.

The Amended Complaint, Doc. 126, includes fourteen counts:[4]

| | |
|---|---|
| **Count I:** | **breach of contract (Plaintiffs and nationwide class);** |
| **Count II:** | **violation of the MMPA, deception (Moore and Missouri subclass);** |
| **Count III:** | **violation of the MMPA, unfair practices (Moore and Missouri subclass);** |
| **Count IV:** | **unjust enrichment (Moore and Missouri subclass);** |
| **Count V:** | **money had and received (Moore and Missouri subclass);** |
| **Count VI:** | **violation of the ICFA (Carter and Illinois subclass);** |
| **Count VIII:** | **unjust enrichment (Carter and Illinois subclass);** |
| **Count IX:** | **money had and received (Carter and Illinois subclass);** |
| **Count X:** | **violation of the California UCL (Jilek and California subclass);** |
| **Count XI:** | **violation of the California CLRA (Jilek and California subclass);** |
| **Count XII:** | **violation of the Texas DTPA (Jaye, Madelmayer, and Texas subclass);** |
| **Count XIII:** | **unjust enrichment (Jaye, Madelmayer, and Texas subclass);** |
| **Count XIV:** | **violation of multiple states' commercial unfairness statutes (Plaintiffs and multi-state unfairness class);** |
| **Count XV:** | **violation of multiple states' commercial deception statutes (Plaintiffs and multi-state deception class)**. |

Defendant filed the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Defendant argues that: Plaintiffs lack standing to assert any claims based on the new allegations regarding single-price labeled machines, *see* Doc. 135 at 6; that Plaintiffs lack standing to represent the multi-state class members in Counts XIV and XV, *see id.* at 8; that the nationwide class and the non-Missouri sub-classes should be dismissed for lack of personal jurisdiction, *see id.* at 9; that the nationwide class and multi-state subclasses are procedurally improper and Rule 23 is unsuitable to address the multi-state class allegations in Counts XIV and XV, *see id.* at 8, 9-13; that Counts XIV and XV fail to plead the elements for the included states' consumer protection statutes, *see id.* at 13-15; that the claims based on the theory that Defendant was required to post both the cash and credit prices should be dismissed because its use of single-price labeling is neither false, deceptive,

---

[4] The Amended Complaint contains counts labeled I through XV but does not include Count VII.

nor unfair, *see id.* at 15-18; and that Count VI fails because Missouri law, not Illinois law, applies to Carter's claim, *see id.* at 19.

DISCUSSION

I.    **<u>Subject Matter Jurisdiction</u>**

    **A.  Legal Standard**

Federal courts are courts of limited jurisdiction and must dismiss all claims over which they do not have subject matter jurisdiction. *See Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). Whether a plaintiff has standing to sue is a threshold question in every federal case that determines the court's power to entertain the suit. *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)). "Individual Article III standing is a prerequisite for all actions, including class actions." *Chorosevic v. MetLife Choices*, 2007 WL 2159475, at *3 (E.D. Mo. July 26, 2007) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "It must be established that the proposed class representatives have Article III standing to pursue the claims as to which classwide relief is sought." *Id.* (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (cleaned up); *see also McClain*, 424 F.3d at 731.

Federal Rule of Civil Procedure 12(b)(1) enables a defendant to challenge the Court's subject matter jurisdiction. To justify dismissal under Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a factual challenge, the defendant challenges the factual truthfulness of the plaintiff's allegations, and the Court may consider matters outside the pleadings. *Osborn*, 918 F.2d at 729-30. In a facial challenge, the defendant claims that the complaint "fails to allege an element necessary for subject matter jurisdiction." *Titus*, 4 F.3d at 593 (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)). In that event, the Court accepts as true "all of the factual allegations concerning jurisdiction," and evaluates the arguments only on their legal merits. *Id.*

    **B.  Plaintiffs lack standing to assert claims regarding purchases that were made at single-price labeled machines.**

In their Consolidated Complaint, Plaintiffs alleged that Defendant's labeling practices were unfair and deceptive in violation of numerous state consumer protection laws, because

5

the machines did not contain any label or other signage alerting consumers to the fact that the displayed price was a cash-only price and card transactions would cost ten cents more per item. *See* Doc. 91 ¶¶ 25, 27, 29, 31, 36, 47, 48, 51, 53. Moore, Jilek, Jaye, and Madelmayer all alleged that they purchased items from unlabeled machines. *See id.* ¶¶ 25, 27, 29, 36, 47, 48. Carter did not explicitly allege whether she purchased her items from unlabeled or single-price labeled machines, but she alleged that Defendant "[took] more from her account than the prices shown on [its] vending machines," implying that her purchases were made from unlabeled machines. Doc. 91 ¶ 34. That implication is further supported by the fact that Plaintiffs expressly excluded those who purchased from single-price-labeled machines from all of their proposed class definitions, *including Carter's proposed Illinois subclass*. *See* Doc. 91 ¶¶ 55-59. Moreover, Plaintiffs alleged that Defendant's single-price labeled machines "t[old] the truth," Doc. 91 at 11, and purchases from truthfully labeled machines would have undercut their claims. Finally, Plaintiffs alleged that Carter purchased items specifically from Defendant's vending machines at 1010 Market Street in St. Louis, *see* Doc. 91 ¶ 31—the same vending machines from which Moore purchased items, *see id.* ¶¶ 24, 26, 28—on dates between October 2017 and May 2018, *id.* ¶ 32. And Plaintiffs alleged that the machines at that location were unlabeled, *id.* ¶¶ 25, 27, 29, until after this lawsuit was filed on October 23, 2018—months after the last of Carter's alleged purchases. *Id.* ¶ 51.

In the Amended Complaint, Plaintiffs allege that the single-price labeled machines (described in the Consolidated Complaint as "telling the truth," Doc. 91 at 11) are confusing, misleading, deceptive, and illegal. *See* Doc. 126 ¶¶ 28, 31, 42, 52, 56, 58-61. But Plaintiffs do not allege that they purchased items from single-price labeled machines; they still allege transactions from only unlabeled machines.[5] *Id.* ¶¶ 34, 36, 38, 41, 44, 45, 48, 51, 55.

Defendant argues that Plaintiffs lack standing to bring claims based on single-price-labeled machines because none of them suffered any cognizable injury from those machines. *See* Doc. 135 at 7. Plaintiffs apparently concede that they suffered no injury from single-price labeled machines, *see* Doc. 139 at 3-4, but argue that they should be allowed to bring claims

---

[5] Like the Consolidated Complaint, the Amended Complaint does not explicitly allege that Carter purchased items from unlabeled machines, but it alleges that she purchased items from Defendant's vending machines at 1010 Market Street in St. Louis, *see* Doc. 126 ¶ 45, which Plaintiffs allege were unlabeled when Moore purchased items from them during the same time period, *see id.* ¶¶ 33-38.

on behalf of a class of plaintiffs who suffered injury from single-price labeled machines because their claims are "substantially similar," *id.* (citing *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020); and *Barclay v. ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020)). Defendant responds that the cases Plaintiffs rely on are neither binding on this Court nor unanimously applied throughout the Eastern District of Missouri or the Eighth Circuit. Doc. 142 at 4. Further, Defendant argues, even if Plaintiffs' cases are controlling, they have failed to allege sufficient facts to show that their unlabeled-machine claims are substantially similar to single-price labeled machine claims. The Court agrees with Defendant.

"Article III of the United States Constitution confines the jurisdiction of federal courts to justiciable cases and controversies." *Meuir v. Green Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). To have Article III standing, a plaintiff must demonstrate that she suffered an actual or imminent injury that is concrete, particularized, and traceable to the challenged action. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). If a named plaintiff cannot bring an action on her own behalf, she cannot seek relief on behalf of the class. *Kelly*, 81 F. Supp. 3d at 763 (citing *O'Shea*, 414 U.S. at 494).

In this case, none of the named Plaintiffs claims to have purchased an item from one of Defendant's single-price labeled machines. They therefore cannot claim to have been injured by such machines. *See Early v. Henry Thayer Co., Inc.*, 2021 WL 3089025, at *12 (E.D. Mo. July 22, 2021) (holding that a plaintiff cannot be injured by allegedly misleading statements that the plaintiff never saw). Thus, on the facts as alleged, none of the named Plaintiffs could bring a lawsuit complaining that he or she was misled by a single-price labeled machine. Consequently, it would seem, none of them may bring such a claim on behalf of others. But Plaintiffs reject that straightforward conclusion, arguing that the claims of those who purchased products from the single-price labeled machines are similar enough to their own claims that they should be permitted to represent them. Doc. 139 at 3-5. The Court does not think the caselaw supports stretching standing doctrine that far.

In the context of class actions, there is a split among district courts over how closely related the claims of the named plaintiff and the putative class members must be. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1218 (C.D. Cal. 2017). "Some courts find that

7

the named plaintiff can represent only those who purchased the exact same product." *Id.* (citing *Kisting v. Gregg Appliances, Inc.*, 2016 WL 5875007, at *5, (E.D. Wis. Oct. 7, 2016)); *see also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (plaintiff lacked standing to bring claims for the 12 varieties of chips that she did not purchase). "Other courts hold that the relatedness of the putative class representative's and proposed class members' claims implicates only Rule 23's adequacy and typicality requirements—not Article III standing—and accordingly reserve judgment until a class certification motion." *In re Vizio*, 238 F. Supp. 3d at 1218 (citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 291 (S.D.N.Y. 2015)). And yet a third set of courts, including at least one in this district, have concluded that a named plaintiff may assert claims on behalf of the putative class members "as long as 'the products and alleged misrepresentations are substantially similar.'" *Goldman*, 501 F. Supp. 3d at 667 (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013)) (agreeing with the "substantially similar" approach; *see also In re Vizio*, 238 F. Supp. 3d at 1219 (finding the substantially similar approach to be most consistent with Supreme Court precedent); *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 977 (W.D. Mo. 2021) ("[f]inding the 'substantially similar' approach most persuasive"); *Barclay*, 2020 WL 6083704, at *6 (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)) (dubbing the "substantially similar" approach the "majority" approach).

Plaintiffs urge the Court to adopt the third approach and find that they should get to bring claims on behalf of the individuals who purchased products from single-price label machines because "all claims at issue are based on Defendant's alleged failure to properly communicate to consumers the higher price for purchases made with a card as opposed to cash," and that regardless of the type of machine, all putative class members were all injured by the same "failure to communicate in a non-misleading way the higher prices for card purchases." Doc. 139 at 3-5. The Court is inclined to agree with Plaintiff that the third approach is more appropriate than either narrow approach represented in *Kelly*, 81 F. Supp. 3d at 763, or the broad approach represented in *Vizio*, 238 F. Supp. 3d at 1218. But the Court disagrees with Plaintiffs' proposed application of that approach in this case.

Plaintiffs rely on three cases where plaintiffs sought to bring claims related to products that they did not purchase. *See* Doc. 139 at 4-5 (citing *Goldman*, 501 F. Supp. 3d at 667; *Browning*, 539 F. Supp. 3d at 977; *Barclay*, 2020 WL 6083704, at *6). In all of those

8

cases, the court found standing where both the products *and the alleged misrepresentations* were relevantly similar to those alleged by the plaintiffs. *See Browning*, 539 F. Supp. 3d at 978 (quoting *In re Vizio*, 238 F. Supp. 3d at 1219 n.3) (finding standing where all the putative class claims were "predicated on substantially similar facts, mainly how these malt beverages were packaged, including AB's use of cocktail names and associated imagery"); *Goldman*, 501 F. Supp. 3d at 667 (finding standing where harm was based on the "alleged pricing scheme itself"); *Barclay*, 2020 WL 6083704, at *6 (rejecting a standing challenge where plaintiff alleged that defendant had made "similar horsepower misrepresentations" as to 24 different treadmill models). None of those cases held that individuals who were allegedly misled in one way (e.g., by a total lack of information) could bring claims on behalf of individuals who were misled in a different way (e.g., by the provision of misleading information), provided the products were similar enough and the same defendant was responsible for both harms.

As applied here, Plaintiffs' cases might justify their asserting claims on behalf of class members who purchased different products than named Plaintiffs did from Defendant's unlabeled machines. For example, Plaintiff Moore might represent a class of persons who purchased bottled water from Defendant's unlabeled machines, even though he purchased only soft drinks, *see* Doc. 126 ¶¶ 33, 35, 37; and Plaintiff Jilek might represent a class of persons who purchased Kit-Kats from Defendant's unlabeled machines, even though he purchased Skittles, *see id.* ¶ 44. In each of those scenarios, the products purchased were similar, and the purchasers were injured by a similar alleged misrepresentation—i.e., the absence of any information indicating that they would be charged something different than the listed price. But the cases do not support Plaintiffs bringing claims on behalf of individuals who bought similar products but were misled by the provision of pricing information that was arguably confusing.

Claims based on unlabeled machines and those based on single-price-labeled machines will involve different questions of both law and fact, and success on one will not be dispositive of the other. The evidentiary difference between showing that no label was present and showing that a label was misleading is obvious. In addition, while there appears to be no dispute that unlabeled machines are unlawful in all 50 states, *see* Doc. 126 ¶ 15— and, on the other end of the regulatory spectrum, dual-price labeling is required in every so-

9

called "regulatory state," *id.* ¶¶ 28—there is a dispute over whether Defendant's single-price labeling practices were legally sufficient in so-called "non-regulatory states," *see id.* ¶¶ 15, 19, 20, 22-25, 28.  Accordingly, plaintiffs who purchased from machines with no label will have a significantly different legal and factual burden than those who purchased from machines whose labels were allegedly misleading.  Were Plaintiffs to prevail on behalf of their fellow purchasers from unlabeled machines, their success will by no means entail success for purchasers from single-price labeled machines.

Because Plaintiffs do not allege that they were injured by single-price labeled machines, and because those claims do not involve "products and alleged misrepresentations [that] are substantially similar" to Plaintiff's claims, *Goldman*, 501 F. Supp. 3d at 667, Plaintiffs lack standing to bring claims based on Defendant's single-price labeled machines.[6]

### C.  Plaintiffs may bring claims under the laws of other states at this stage.

Defendant also argues that Plaintiffs lack standing to assert claims under, or represent class members whose claims are governed by, the laws of other states.  Doc. 135 at 8.  Defendant raised this same argument in its first motion to dismiss.  *See* Doc. 26 at 4.  Relying on the Honorable Stephen R. Clark's analysis in *Buchta v. Air Evac EMS, Inc.*, 2019 WL 4468943, at *3-*4 (E.D. Mo. Sept. 18, 2019), this Court rejected Defendant's argument and "defer[red] ruling on this issue until the class certification stage."  Doc. 43 at 12 (citing *Thomas v. U.S. Bank N.A., N.D.*, 2012 WL 12897284, at *9 (W.D. Mo. Sept. 27, 2012)).  The Court finds no reason to reconsider that ruling at this stage.

## II.  <u>Personal Jurisdiction</u>

Defendant also argues, again for the second time, that the Amended Complaint should be dismissed to the extent that it purports to state claims on behalf of putative class members with no connection to Missouri, because the Court lacks personal jurisdiction in light of *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017).  This Court previously rejected that argument as well, *see* Doc. 43 at 13-14 (citing *Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*, 2019 WL 266299, at *2 (E.D. Mo. Jan. 18, 2019)

---

[6] Because Plaintiffs lack standing to assert claims based on Defendant's single-price labeled machines, the Court does not address Defendant's other arguments for dismissing those claims.  *See* Doc. 135 at 15-18.

(declining to extend *Bristol-Myers Squibb*, a mass tort case, to class actions)), and Defendant again provides no reason for the Court to reconsider that ruling at this stage.

### III.    **Class Certification**

In addition to bringing state law claims on behalf of Missouri-, Illinois-, California-, and Texas-specific subclasses, Plaintiffs also seek to bring statutory consumer protection claims in Counts XIV and XV on behalf of multi-state subclasses under the laws of 30 different jurisdictions.[7]  Doc. 126 ¶¶ 62-63, 187-219, 220-261.  Defendant argues that the multi-state subclasses cannot be certified because the "state-by-state variations in law trump the common issues of law or fact, and preclude a finding that common issues predominate."  Doc. 135 at 11 (quoting *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 950 (6th Cir. 2011) (affirming the district court's decision to strike multi-state class claims based on various states' consumer protection statutes because those claims "would be measured by the legal requirements of different state laws"))); *see also Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 582 (6th Cir. 2013) (affirming dismissal of multi-state claims under the consumer protection laws of 49 states because of the "material differences between the States' consumer protection laws"; *Coe v. Philips Oral Healthcare, Inc.*, 2014 WL 5162912, at *4 (W.D. Wash. Oct. 14, 2012) (class certification denied where "[m]aterial differences between the various consumer protection laws prevent[ed] Plaintiffs from demonstrating Rule 23(b)(3) predominance and manageability for a nationwide class")).  Defendant contends that, because denial of certification for the multi-state class is inevitable, the Court should dismiss Counts XIV and XV now.  Doc. 135 at 9-10.

Plaintiffs argue that Defendant's argument for the dismissal of Counts XIV and XV is a premature attempt to strike the multi-state class allegations, which Plaintiffs contend should be resolved at the class-certification stage.  Doc. 139 at 8.  Plaintiffs argue that the Court should wait to rule on the issue because discovery might yield more information that might

---

[7] Alabama, Arizona, Arkansas, California, Colorado, Delaware, Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Washington, West Virginia, Wisconsin, and the District of Columbia.

alter the analysis. *Id.* at 8-9 (citing *Legacy Gymnastics, LLC v. Arch Ins. Co.*, 2021 WL 2371503, at *3 (W.D. Mo. June 9, 2021)).

"Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *Lindsay Transmission, LLC v. Off. Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)); *see also McCrary v. Stifel, Nicolaus & Co., Inc.*, 687 F.3d 1052, 1059 (8th Cir. 2012) ("[C]lass claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion."). But Defendant has not shown that it is facially apparent that class certification will be denied.

"Particularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy because it is seldom, if ever, possible to resolve class representation questions from the pleadings alone." *Legacy Gymnastics*, 2021 WL 2371503, at *2 (internal quotation marks and citation omitted). "Striking class action allegations is appropriate 'where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" *Id.* (quoting *Doyel v. McDonald's Corp.*, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009)). "To obtain class certification, Plaintiffs must meet all four requirements of Rule 23(a) and the requirements of at least one of the subdivisions of Rule 23(b)." *In re Prempro*, 230 F.R.D. at 565.

One requirement of Rule 23(a) is to show that questions of law are common to the class. Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(b)(3)—under which Plaintiffs have elected to proceed, *see* Doc. 126 ¶¶ 69-70—Plaintiffs must show that common questions of law "predominate over any questions affecting only individual members" of the class. Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance requirement instructs courts to consider 'the likely difficulties in managing a class action.'" *Legacy Gymnastics*, 2021 WL 2371503, at *3. Where a multi-state class claim is brought under the laws of various states, the "[p]laintiffs must show prior to class certification, that the differences in state laws within each of their groupings are nonmaterial," *In re Prempro*, 230 F.R.D. at 562 (citing *In re Paxil Litig.*, 212 F.R. D. 539, 545 (C.D. Cal. 2003)) (cleaned up), and that the laws can "reasonably be grouped in a comprehensive manner that does not seriously impinge on the integrity of the law of each state," *id.* at 563. It is the plaintiff's burden to show that Rule 23 is satisfied on a motion for class certification, *see id.* at 562, 565, but when considering whether to strike class

12

allegations on a motion to dismiss, "[a]ny doubt as to whether the class action requirements will be met must be construed in favor of the plaintiff." *Legacy Gymnastics*, 2021 WL 2371503, at *2.

Defendant claims in conclusory fashion that "a multi-state consumer protection class asserting dozens of different state protection statutes can never be certified," Doc. 135 at 11, and that material differences in the state laws under which Plaintiffs' multi-state class claims are asserted "cannot reasonably be grouped in a comprehensive manner," *id.* (quoting *In re Prempro*, 230 F.R.D. at 563). But Defendant provides no analysis of the state statutes at issue, how the statutes are materially different from each other, or why they cannot be grouped in a reasonable manner.

In *Prempro*, which Defendant heavily relies upon, the court denied class certification—at the certification stage—only after the parties fully briefed and the court held a hearing on the issue. 230 F.R.D. at 563. The plaintiffs provided the court with a comprehensive survey of the relevant state laws and, after the court itself engaged in a thorough analysis of that survey, it concluded that the statutes were too incongruous for it to manage the class. *Id.* at 563, 565. Here, Defendant similarly asserts that the relevant statutes are too dissimilar for the court to certify a class, but unlike in *Prempro*, Defendant does not even attempt to explain why.[8]

It may be true that the multi-state claims require the application of statutes that are materially different and cannot be grouped in a manner that would not seriously impinge the integrity of the laws of each state. *See In re Prempro*, 230 F.R.D. at 563. But Defendant has not provided sufficient information for the Court to make that determination at this

---

[8] Defendant argues in a separate section that proof of reliance is required in some states, but Defendant does not show that reliance is *not* required in the other states. Doc. 135 at 14. Defendant also argues that "many states' consumer protection statutes require a plaintiff to show both injury and a causal link between the practice and the injury," *id.* at 14-15, but Defendant again fails to show that the other states do *not* require a plaintiff to prove those elements. Even if some states require that plaintiffs prove reliance and/or causation and other states do not, that would demonstrate only that the states might fall into two different categories based on the elements they require. *See id.* at 13-14. "To meet their burden of . . . establishing that there are not 'insuperable obstacles to class certification, the plaintiffs must provide the court with . . . a grouping of state laws by their relevant differences." *In re Prempro*, 230 F.R.D at 562 (citation omitted). Unlike *Prempro*, where "*none* of the[ ] states could properly be grouped together," the fact that states fall into two large groups would not necessarily doom Plaintiffs' chances for class certification.

stage. On a motion to dismiss, the Court must resolve any doubt as to whether the Rule 23 requirements will be met in favor of Plaintiffs, *Legacy Gymnastics*, 2021 WL 2371503, at *2. Without a more thorough analysis of the state statutes at issue and briefing from both parties as to whether those statutes materially differ, the Court cannot justify denying certification. Defendant may, of course, more thoroughly brief the issue on a motion for class certification.

## IV. **Substantive Pleading Defects**

### A. **Legal Standard**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true, *Neitzke*, 490 U.S. at 326-27, and draws all reasonable inferences in the non-movant's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

While the sufficiency of a complaint is ordinarily analyzed under the general pleading standard of Federal Rule of Civil Procedure 8, all claims "grounded in fraud" must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015) (citations omitted). Here, Plaintiffs' claims are grounded in fraud, as they are all based on the primary allegation that Defendant's labeling practices are "misleading," Doc. 126 ¶¶ 28, 164, 173, 174, and "deceptive," *id.* ¶¶ 28, 92, 171, 176, 214, 223, 257, 260; and that they constitute "fraud," *id.* ¶¶ 82, "false pretense," *id.* ¶¶ 82, 149, 152, 154, a "false promise," *id.* ¶¶ 82, and "misrepresentation," *id.* ¶¶ 2, 82, 89. Although many of Plaintiffs' claims are brought under various state consumer protection statutes, rather than common law actions for fraud, federal courts routinely apply Rule 9(b) to such statutory claims. *See, e.g.*, *Goldman*, 501 F. Supp. 3d at 666 ("The Eastern and Western Districts of Missouri have consistently held that Rule 9(b) applies to MMPA cases."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (analyzing ICFA claim under Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to CLRA and UCL claims based on "unfair or deceptive acts"); *Pierce v. N. Dallas Honey Co.*, 2020 WL 1047903, at *4 (N.D. Tex. Mar. 3, 2020) (applying Rule 9(b) to a Texas DTPA claim based on alleged misrepresentations and fraudulent concealment). And "[i]t is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of subject matter jurisdiction, and

irrespective of whether the substantive law at issue is state or federal." *Kearns*, 567 F.3d at 1125 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965))). "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Kearns*, 567 F.3d at 1125 (quoting *Vess*, 317 F.3d at 1103 (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985))) (cleaned up).

To satisfy Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In essence, a plaintiff must plead the "who, what, where, when, and how" of the circumstances constituting fraud. *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021) (citations omitted).

Even when Rule 9(b) applies, "it does not render the general principles set forth in [Rule 8] entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other." Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure*, § 1298 (4th ed.). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The issue in considering a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

15

**B. The allegations in Counts XIV and XV are insufficiently vague.**

**1. *Counts XIV and XV contain "shotgun" pleading.***

Defendant argues that Counts XIV and XV should be dismissed because Plaintiffs have engaged in improper "shotgun" pleading. Doc. 135 at 11-13. Count XIV brings a claim for "unfair or unconscionable acts or practices in commerce" under the laws of 21 states and the District of Columbia. Doc. 126 ¶ 188. Count XV brings a claim for "deceptive acts or practices in commerce" under the laws of 29 states and the District of Columbia. *Id.* ¶ 221. In Count XIV, Plaintiffs allege generally that "[e]ach of the states . . . imposes a duty not to engage in unfair acts or practices." *Id.* ¶ 191. Plaintiffs then allege in consecutive paragraphs that "Defendant has breached its duty not to engage in unfair acts or practices in [each of the 22 jurisdictions]." *Id.* ¶¶ 192-213. Plaintiffs provide similarly vague allegations in Count XV. *See id.* ¶¶ 224, 227-256.

Defendant argues that Plaintiffs have failed to identify "any specific subsections of those statutes that purportedly were violated," Doc. 135 at 11; that the pleadings "provide no insight into . . . whether each element of each statute has been purportedly violated," *id.* at 12; that "[e]ach 'claim' presented in Counts XIV and XV provides the same one-line conclusory allegation," *id.* at 12; and that "[t]he conclusory assertion of a laundry list of 30 different state law claims into one single cause of action is improper pleading that should be dismissed," *id.* at 11-12. Defendant urges the Court to dismiss Counts XIV and XV or, alternatively, to order Plaintiffs to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

Plaintiffs argue that the allegations in Counts XIV and XV are not shotgun pleadings, Doc. 139 at 11, and that the allegations are more than sufficient to put Defendant on notice of the claims asserted against it, *id.* at 12.

So-called shotgun pleading describes more than one type of pleading practice. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Sagez v. Glob. Agric. Invs., LLC*, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015). In suits involving multiple defendants, a complaint engages in shotgun pleading if it "brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to

16

put the various defendants on notice of the allegations against them." *Chole v. Bos. Sci. Corp.*, 2020 WL 1853266, at *2 (E.D. Mo. Apr. 13, 2020); *accord Boggs v. Am. Optical Co.*, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015). A "third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015). "Shotgun pleading is especially problematic when pleading numerous causes of action[ ] with substantially different elements," *Sagez*, 2015 WL 1647921, at *4 (citing *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S. D. Iowa 2009)) (cleaned up), because such complaints "shift onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support," *id.* (citing *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)).

Plaintiffs' Amended Complaint does not present the typical shotgun pleading where numerous claims are alleged against multiple defendants and none of the allegations is sufficiently clear for any defendant to discern what it is alleged to have done wrong. But Counts XIV and XV do assert numerous causes of action under separate state statutes, none of which is set forth in any detail. Plaintiffs do not claim that each individual statute under which they purport to bring claims has identical elements to the others; nor do Plaintiffs provide the individual statutes' particularized elements or point out which of the facts alleged in the Amended Complaint satisfy those elements. Plaintiffs' failure to set forth those differences places an inordinate burden on Defendant and the Court to locate the statutes' elements and to sift through the Amended Complaint in search of facts that correspond to those elements.

### 2. *Plaintiffs have failed to allege the requisite elements for any of the various state causes of action*.

Related to its shotgun pleading argument, Defendant also argues that Counts XIV and XV should be dismissed because Plaintiffs have failed to allege the elements required to state a claim under many of the statutes at issue. Doc. 135 at 13-14. Defendant claims, for example, that a plaintiff is required to prove reliance as an element under the consumer protection statutes in Indiana, Maryland, West Virginia, Oregon, Pennsylvania, and Texas; and that a plaintiff is required to prove injury and a causal link between the unfair or deceptive practice and the injury under the consumer protection statutes of Florida, Illinois,

Kansas, Maryland, New Jersey, North Carolina, Oklahoma, Pennsylvania, and Washington. *Id.* at 14-15. Defendant contends that Plaintiffs have not alleged reliance at all, and that they have pled causation in only conclusory fashion. *Id.* at 15. Defendant thus argues that Counts XIV and XV should be dismissed for failure to meet the heightened pleading standard of Rule 9(b).

Plaintiffs claim that a Rule 12(b)(6) motion applies only to the dismissal of an entire claim, not legal theories supporting that claim. Doc. 139 at 17 (citing *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). They argue that, as long as one of several legal theories supports a claim, the entire claim must survive, and so too must all of the legal theories alleged in support of that claim. *Id.* (citing *BBL*, 809 F.3d at 325).

Plaintiffs are mistaken. They believe that Count XIV, for example, brings a single claim predicated on multiple "legal theories," any one of which could lead to success for the entire multi-state class.[9] They thus argue that as long as one "legal theory"—i.e., one statute—states a plausible claim upon which relief may be granted, the entire "claim"—i.e., Count XIV—may proceed, even if all of the other "legal theories" do not support a claim. Not so. Plaintiffs are elevating form over substance in an apparent attempt to subvert federal pleading requirements. Count XIV brings individual causes of action under the laws of 22 distinct jurisdictions. Regardless of whether, as a matter of form, Count XIV merges those 22 causes of action into a single count, *substantively*, Count XIV brings not one claim but 22.[10] If the law of one jurisdiction were sufficient to sustain Count XIV on behalf of all class members, Plaintiffs presumably would have alleged a single claim under the law of the most favorable jurisdiction, rather than dozens. But that would not do, because success under the law of one jurisdiction does not necessarily mean success for all class members.

As a general rule, "an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822-23 (1985)). For common law claims—i.e., breach of contract, unjust enrichment, and money had and received—Missouri's

---

[9] The same analysis applies to Count XV. For simplicity's sake, the Court refers only to Count XIV.

[10] Again, the same is true of Count XV, which brings separate causes of action under the laws of 30 different jurisdictions.

choice of law rules would be determinative of which state's law applied to each plaintiff's claim. But where a plaintiff alleges a statutory claim, as Plaintiffs here do in Counts XIV and XV, each governing statute has its own limitations. For example, there is a "longstanding presumption that Missouri statutes, absent express text to the contrary, apply only within the boundaries of [Missouri] and have no extraterritorial effect." *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 311 (Mo. banc 2019) (holding that the plaintiff was precluded from bringing a claim under the Missouri Human Rights Act, because he was aggrieved in Illinois).

> The MMPA states that:
>
> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, **in or from the state of Missouri**, is declared to be an unlawful practice.

Mo. Rev. Stat. § 407.020.1 (emphasis added). The longstanding presumption against extraterritorial effect thus applies to the MMPA. *See Neeley v. Wolters Kluwer Health, Inc.*, 2013 WL 3929059, at *16 (E.D. Mo. July 29, 2013) (dismissing MMPA claim because none of the alleged activity or fraud had any connection to Missouri). The same is true of the ICFA. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005) (concluding that the ICFA does not apply to fraudulent transactions that occur primarily and substantially outside Illinois). As a general rule, a class member who resides and is injured in Illinois cannot bring a claim under the MMPA; nor could a class member who resides and is injured in Missouri bring a claim under the ICFA. Plaintiffs have not briefed the Court on the territorial limitations of the statutes listed in Counts XIV and XV, and the Court declines to sift through the other 28, but it has no reason to assume that they are free of territorial restrictions similar to those in the ICFA and MMPA.

"State consumer-protection laws vary considerably, and courts must respect [those] differences rather than apply one state's law to sales in other states with different rules." *In re St. Jude*, 425 F.3d at 1120 (citation omitted). "Each state's statute is unique and plaintiffs are required to plead the essential elements of each one." *In re Gen. Motors Corp. Anti-Lock*

*Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) (dismissing claims brought under various state consumer fraud statutes for failure to satisfy Rule 9(b)). Plaintiffs must therefore plead the elements and allege facts that support a claim for each and every statute under which they purport to bring a claim. The Amended Complaint does neither. Plaintiffs neither allege the elements of an unfair practice in, for example, Alabama, nor state which facts in the Amended Complaint establish that Defendant engaged in an unfair practice under Alabama law. Plaintiffs do not even allege a specific provision of Alabama law they intend to proceed under. *See* Doc. 126 ¶ 192, 227 (citing generally to "Alabama Code § 8-19-1 *et seq.*," Alabama's Deceptive Trade Practices Act). And the same is true with respect to the other jurisdictions listed in Counts XIV and XV.

Although Plaintiffs fail to specifically plead the elements of the alleged violations of any of the statutes listed in Counts XIV or XV, they do allege facts elsewhere in the Amended Complaint that could potentially establish a claim under those statutes. Without the elements or territorial limits for each individual claim, though, it is impossible for the Court to determine whether, and under which states' laws, Plaintiffs state a cognizable claim for relief. Therefore, the Court will grant Defendant's alternative relief. While Counts XIV and XV will not be dismissed, Plaintiffs will be required to amend the Amended Complaint to provide more definite statements as to both Counts XIV and XV. Specifically, for each separate statute under which Plaintiffs purport to assert a cause of action, Plaintiffs shall (1) cite the specific provision under which the claims are brought, (2) provide the territorial limits of that provision, (3) provide the elements for the private right of action created by that provision, and (4) restate or cite any facts that are currently alleged in the Amended Complaint that establish a claim under that provision. The Court is specifically **not** granting Plaintiffs leave to allege new facts.

### C. Count VI states a plausible claim for a violation of the ICFA.

Finally, Defendant contends that Plaintiff Carter cannot bring her claim in Count VI under the ICFA. Doc. 135 at 19-20. Defendant argues that Missouri law applies to Carter's claims based on a Missouri choice-of-law analysis for tort claims. *Id.* Defendant also argues that, even if Missouri's choice-of-law rules supported the application of Illinois law, Carter's claim could not be brought under the ICFA because her alleged transactions did not occur in Illinois. *Id.* at 20. Rather than contend that Missouri law should apply to Carter's claim, as

its choice-of-law analysis suggests, Defendant argues that Carter's claim must be dismissed. *Id.* at 20.

Plaintiffs argue that the only relevant question is whether Carter has stated a plausible claim under the ICFA, and they point out that the Court already decided that question in their favor more than two years ago. Doc. 139 at 18. Plaintiffs further argue that Defendant's choice-of-law analysis is irrelevant, but that even if it were not, Missouri's choice-of-law rules require the Court to apply Illinois law to Carter's claim. *Id.* at 18-19.

In Count VI, Carter alleges a statutory claim under Illinois's consumer protection laws. She does not allege a common law tort claim. Therefore, Defendant's choice-of-law analysis for tort claims does not apply. *See supra* Section IV.B.2. The only relevant question is whether Carter's ICFA claim is viable under the jurisdictional and territorial limitations of the ICFA.

Plaintiffs correctly note that this Court already answered that question in its September 2019 Order, which denied Defendant's motion to dismiss Carter's ICFA claim. *See* Doc. 43 at 18-19. There, this Court observed that "a plaintiff may pursue a private cause of action under the ICFA if the circumstances that relate to the disputed transaction occur *primarily and substantially in Illinois,*" *id.* (quoting *Avery*, 835 N.E.2d at 853-54) (emphasis added), and that "[c]ourts consider several factors to determine whether a transaction occurred 'primarily and substantially' in Illinois . . . , including: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois," *id.* (quoting *Specht v. Google, Inc.,* 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (citing *Avery,* 835 N.E.2d at 853-54)).

This Court found that the first and most predominant factor weighed in Carter's favor because she was an Illinois resident at the time of the alleged transactions,[11] *see* Doc. 43 at 18-19, and the third factor weighed in her favor because the bank account from which

---

[11] Although Carter is currently a Missouri resident, at the time of the transaction, she was an Illinois resident. Because the *Avery* factors are used to determine whether the "transaction" primarily and substantially occurred in Illinois, *see Avery*, 835 N.E.2d at 853, this Court looks to Carter's residence at the time of the transaction. Defendant does not argue that the Court should consider only Carter's current residence, nor does it provide any caselaw to that effect.

Defendant withdrew the allegedly excessive amount was also in Illinois, *see id.* at 18. The second factor favors Defendant, because the alleged misrepresentations occurred via Defendant's vending machines in St. Louis. The fourth factor also weighs in Defendant's favor, because the only alleged communications, or lack thereof, between Carter and Defendant also occurred via Defendant's vending machines in St. Louis. Although two factors favor each party, the fourth factor is redundant of the second in this case, and the first and most important factor weighs in Carter's favor. For that reason, the Court again concludes that the ICFA permits Carter's claim to proceed.

CONCLUSION

In sum, Plaintiffs lack standing to assert any claims based on alleged purchases from single-price labeled machines; Plaintiffs may continue to represent the multi-state class defined in Counts XIV and XV, with respect to claims predicated on unlabeled machines, at this stage; the nationwide class and the non-Missouri sub-classes will not be dismissed for lack of personal jurisdiction; the manageability of the nationwide class and multi-state subclasses will be addressed on a fully briefed motion for class certification; Counts XIV and XV fail to adequately plead the elements for the included states' consumer protection statutes; Plaintiffs shall amend their Amended Complaint as instructed above, *see supra* Section IV.B; and Carter's claim in Count VI may proceed under the ICFA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. 134, is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** with respect to I.B of this Order. All claims predicated on Defendant's single-price labeled machines are **DISMISSED**.

**IT IS FURTHER ORDERED** that the alternative relief requested in the Motion is **GRANTED** with respect to IV.B of this Order. Plaintiffs shall file a second amended complaint, in accordance with the instructions provided above, *see supra* Section IV.B, no later than **twenty-one (21) days** from the date of this Order. In all other respects, the Motion is **DENIED**.

Dated this 30th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE