# Exhibit G

1          UNITED STATES DISTRICT COURT
2       FOR THE EASTERN DISTRICT OF MISSOURI
3                 EASTERN DIVISION
4
5  GEORGE MOORE and VIRGINIA       )
   CARTER, et al., on behalf of   )
6  themselves and all others      )
   similarly situated,            )
7                                 )
                  Plaintiff,      )
8                                 )
         v.                       ) Case No.
9                                 ) 4:18-cv-01962-SEP
   COMPASS GROUP USA, INC.,       )
10 D/B/A CANTEEN                  )
                                  )
11                Defendant.      )
   _____)
12
13
14    VIDEOTAPED DEPOSITION OF BRIAN KRIEGLER, PH.D.
15              Los Angeles, California
16             Wednesday, August 23, 2023
17
18
19
20
21 Reported by:
   Damon M. LeBlanc
22 CSR No. 11958
   Job No. 6055134
23
24
25

Veritext Legal Solutions
www.veritext.com  888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 2 of 14

```
 1           UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF MISSOURI
 3                  EASTERN DIVISION
 4
 5   GEORGE MOORE and VIRGINIA      )
     CARTER, et al., on behalf of   )
 6   themselves and all others      )
     similarly situated,            )
 7                                  )
                   Plaintiff,       )
 8                                  )
           v.                       ) Case No.
 9                                  ) 4:18-cv-01962-SEP
     COMPASS GROUP USA, INC.,       )
10   D/B/A CANTEEN                  )
                                    )
11                 Defendant.       )
     _____)
12
13
14         Videotaped deposition of
15   BRIAN KRIEGLER, PH.D., taken on behalf of the
16   defendant, at 10100 Santa Monica Boulevard,
17   Eighth Floor, Los Angeles, California, beginning at
18   8:56 a.m. and ending at 11:12 a.m., Wednesday,
19   August 23, 2023 before Damon M. LeBlanc, Certified
20   Shorthand Reporter, Number 11958.
21
22
23
24
25
```

1 methodology for calculating classwide damages and
2 pre-judgment interest, given my understanding of
3 Plaintiffs' allegations and proposed class
4 definitions."
5       That's correct, that's what your report is
6 intended to show?
7       A    Yes.
8       Q    And if we look at paragraph 3, which
9 is on page 1, this reads that...
10       "Plaintiffs allege that Canteen had an
11 extensive practice of failing to disclose to
12 customers a price differential of $0.10 per
13 transaction when making a purchase using a credit
14 card, debit card, or pre-paid card. As a result,
15 my understanding is that Plaintiffs and the
16 putative class are seeking reimbursement for each
17 of these alleged improper charges and pre-judgment
18 interest."
19       How did you develop that understanding?
20       A    Well, initially there was a
21 discussion with plaintiff's counsel where they
22 described the allegations and then my review of the
23 complaint.
24       Q    Are you aware that some purchasers
25 made purchases at machines without a label having

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 4 of 14

```
 1   knowledge of the price differential?
 2          A      I have no knowledge or opinion about
 3   that.
 4          Q      Have you read the transcript of the
 5   deposition of James Jilek?
 6          A      No.
 7          Q      Have you read the transcript of the
 8   deposition of Virginia Carter?
 9          A      No.
10          Q      And are you aware that both
11   Mr. Jilek and Ms. Carter testified that they
12   continue to make purchases at unlabeled Compass
13   vending machines after discovering the price
14   differential?
15          A      I have no knowledge or opinion of
16   that.
17          Q      Okay.  Is it your assumption that
18   classwide damages include each price differential
19   on a transaction at an unlabeled machine regardless
20   of whether the purchaser knew about the
21   differential?
22          A      My understanding of plaintiffs'
23   allegations is that they are seeking damages and
24   interest for purchases in which there is a price
25   differential.  And there was, you know, no label or
```

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00818-JAG-DCK   Document 260-7   Filed 11/10/23   Page 5 of 14

1  no information on the machine.
2      Q    So your opinion does not take into
3  account any class member's knowledge of the price
4  differential?
5      A    That was not part of my assignment,
6  no.
7      Q    Does your report provide a way to
8  determine what damages have been suffered by any
9  particular individual?
10     A    No.  My assignment is to
11 calculate -- provide a methodology for calculating
12 classwide damages, not individual damages.
13     Q    And have you attempted to calculate
14 the damages suffered by any specific purchaser?
15     A    Well, no, with the qualification
16 that I was not provided with any individual
17 purchases with data from individuals.
18     Q    And you did not conduct any
19 independent research to try to determine damages
20 suffered by any particular individual?
21     A    No.  That was not part of my
22 assignment.
23     Q    Do you know how many members are in
24 the putative class?
25     A    I don't.

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 6 of 14

1  Stratum 1?
2          MR. CORNFELD:   Not counting interest?
3          MR. WYLIE:  Correct.  Not counting
4  interest.
5          MR. CORNFELD:  All right.
6          THE WITNESS:  Absent other revenue
7  information or updated revenue, I believe that's
8  right.
9  BY MR. WYLIE:
10         Q     So based on the information that
11 you've reviewed to date, the amount that you
12 indicate on page 14 for Stratum 1 is the maximum
13 amount of damages attributable to Stratum 1?
14         A     I believe that's right.
15         Q     Is it possible that the actual
16 damages attributable to machines in Stratum 1 are
17 less than the figure that you indicate on page 14?
18         A     It's possible.
19         Q     Okay.  And why is that possible?
20         A     Because of what Martha Morgan has
21 indicated in her declaration, that some of the data
22 that was entered manually in particular or
23 particularly because information was entered
24 manually may not be a hundred percent accurate.
25         Q     And that's because some of the

Veritext Legal Solutions
www.veritext.com                                                       888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 7 of 14

1  machines that include in Stratum 1 may, in fact,
2  have had labels at the time of their survey?
3          A       That's because for each of the
4  reasons in paragraph 38, in order to verify which
5  machines, if any, are not cashless devices, which
6  machines already had a cash discount sticker, which
7  machines include a digital shopping cart -- that's
8  the point of reviewing the sample.
9          Q       So Stratum 1 may include machines
10 that had disclosure labels at the time of the
11 survey?
12         A       They may have.  I don't know if they
13 have or have not.  That is the point of reviewing
14 the sample.  According to defendant's records, they
15 don't.  But according to Martha Morgan's
16 declaration, there is possibility for human error.
17         Q       So again, there is a possibility
18 that Stratum 1 includes machines that had
19 disclosure labels at the time of the survey?
20         A       Yes.  With the qualification that
21 they would have had that as well as, along with
22 that, the data that I had reviewed suggesting the
23 opposite.  Hence the reason for sampling.
24         Q       And have you made any attempts to
25 estimate how many machines in Stratum 1 had

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 8 of 14

1  disclosure labels at the time of the survey?
2      A    Just what was in Martha Morgan's
3  declaration.  So paragraph 28 B and C.
4      Q    But this is Martha Morgan's work,
5  not your work.  You have not independently tried to
6  estimate how many machines in Stratum 1 had
7  disclosure labels at the time of the survey?
8      A    Independently, no.  It would be
9  premature to do that.  That is the point.  You
10 can't do that until you look at the sample.  Sample
11 hasn't been looked at yet.
12     Q    So without looking at the sample,
13 you do not know how many machines, if any, in
14 Stratum 1 had disclosure labels at the time of the
15 survey?
16     A    No.  That's the point of looking at
17 a sample in the first place.  Without that, I'm
18 looking -- you know, what I'm look at is the
19 electronic data.
20     Q    So without doing the survey that you
21 propose, you don't know by how much, if at all, the
22 upcharges that you list on page 14 of your report
23 overstate damages?
24     A    Without looking at the sample, the
25 information that is available is -- that I

Veritext Legal Solutions
www.veritext.com    888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 9 of 14

Page 20

1  understand is available is the information that I
2  have reviewed. And so much like in a lot of -- a
3  lot of the work that I do, the analysis involves
4  looking at the data.
5       Q    So without looking at the
6  photographs of the random sample as you propose,
7  you don't know whether actual damages in -- actual
8  damage attributable to Stratum 1 are less than
9  $12,051,294.75?
10      A    Can I have that question read back
11 to me, please?
12           (The record was read by the
13      certified shorthand reporter.)
14           THE WITNESS: Well, I don't know -- I don't
15 know if alleged damages are less than that number.
16 And by the same logic, I don't know if there -- if
17 there's any -- excuse me, any additional human
18 error in addition to what Martha Morgan has
19 identified.
20 BY MR. WYLIE:
21      Q    What additional human error would
22 affect whether 12,051,294.75 is an accurate
23 calculation of damages attributable to machines in
24 Stratum 1?
25      A    Not necessarily different types of

1  human error but the number of times that
2  Martha Morgan identified errors as stated in her
3  declaration.  If there is more than that, I don't
4  know.  I do know that it would be improper to
5  project or extrapolate the errors that she
6  identifies on to a larger population.
7       Q    And why is that?
8       A    Because, by all accounts a random
9  sample was not used in her investigation.  And so
10 without a random sample or something that emulates
11 a random sample, from a statistical perspective,
12 the numbers in her declaration cannot be
13 extrapolated onto a larger population; because at
14 the outset, there is no larger population.
15      Q    What do you mean by "there is no
16 larger population"?
17      A    When observations are
18 selected -- are not selected at random, i.e.,
19 cherry picked, from a statistical perspective,
20 there is no extrapolation.  The results begin and
21 end with those observations.
22      Q    And what do you mean by
23 "cherry picked"?
24      A    Hand picked.  Not picked at random.
25 Not picked using -- not using a sampling design

Veritext Legal Solutions
www.veritext.com     888-391-3376
Case 3:23-cv-00818-JAG-DCK   Document 260-7   Filed 11/10/23   Page 11 of 14

1  that is, you know, commonly accepted in statistical
2  textbooks or sampling textbooks.
3          Q      So by cherry picked, you don't mean
4  that Ms. Morgan intentionally manipulated data?
5          A      It's not about intention.  I have no
6  opinion about intention.  It's a question of how
7  those observations were selected.  What method was
8  used to select those observations.
9          And if they were not selected using a
10 random sample, also known as a probability sample,
11 from a defined population, then statistical
12 inferences begin and end with those observations
13 that she made.
14         Q      And so you have not used the
15 observations that are listed in Martha Morgan's
16 declaration to try to estimate damages in this
17 case?
18         A      No.  For the reasons that I just
19 described.
20         Q      If we can look at page 15 of your
21 declaration -- excuse me, of your report.  And this
22 is again paragraph 30.
23         A      Okay.
24         Q      For Stratum 3, you list -- you state
25 that...

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 260-7    Filed 11/10/23    Page 12 of 14

```
 1   my assignment.
 2           Q       You haven't tried to extrapolate
 3   from existing data that you've been presented with
 4   to try to estimate actual damages for Stratum 3?
 5           A       Well, no, with the qualification
 6   that if I believed that that was appropriate to do,
 7   then I would have done it but not from a
 8   statistical perspective.  In my opinion, from a
 9   statistical perspective, it would not be
10   appropriate to do that.
11           Q       And why not?
12           A       Because this is a -- from a
13   statistical perspective, it would be presumptuous
14   to take a group of a set of observations a set of
15   machines that have not been surveyed and assume
16   that -- that the survey results to date would be
17   applicable to those unsurveyed machines.
18           Q       So for instance, the percentage of
19   machines in the unsurveyed population could be
20   different from the percentage of machines in the
21   surveyed population that were labeled?
22           A       It could be.  I mean, that's the
23   idea of doing the sample, is to find out.
24           Q       But to date, you have not done that
25   sample?
```

Veritext Legal Solutions
www.veritext.com                                                     888-391-3376
Case 3:23-cv-00818-JAG-DCK   Document 260-7   Filed 11/10/23   Page 13 of 14

1  Certification of Court Reporter
2  Federal Jurat
3
4  I, the undersigned, a Certified Shorthand
5  Reporter of the State of California do hereby
6  certify:
7  That the foregoing proceedings were taken
8  before me at the time and place herein set forth;
9  that any witnesses in the foregoing proceedings,
10 prior to testifying, were placed under oath; that a
11 verbatim record of the proceedings was made by me
12 using machine shorthand which was thereafter
13 transcribed under my direction; further, that the
14 foregoing is an accurate transcription thereof.
15 That before completion of the deposition, a
16 review of the transcript [X] was [ ] was not
17 requested.
18 I further certify that I am neither
19 financially interested in the action nor a relative
20 or employee of any attorney of any of the parties.
21 IN WITNESS WHEREOF, I have this date
22 subscribed my name.
23 Dated:
24
          Damon M. LeBlanc
25        CSR No. 11958

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00818-JAG-DCK   Document 260-7   Filed 11/10/23   Page 14 of 14