**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| JAMES JILEK, *et al*., on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 3:23-cv-00818-RJC-DCK |
| COMPASS GROUP USA, INC., D/B/A Canteen | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPASS GROUP USA, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF JAMES JILEK'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 3

    A.    Canteen's Operations ............................................................................. 3

    B.    The Former and Current Plaintiffs' Purchases ...................................... 5

        1.    Former Plaintiff George Moore ................................................. 6

        2.    Former Plaintiff Virginia Carter ............................................... 6

        3.    Plaintiff James Jilek ................................................................... 7

        4.    Former Plaintiffs Frances J. Ivery and Sean Madelmayer ........ 8

        5.    Plaintiff Brian Baldwin .............................................................. 9

        6.    Plaintiff Andres Borrero ........................................................... 10

        7.    The Stayed State Court Cases .................................................. 11

    C.    Expert Reports ..................................................................................... 12

        1.    Plaintiff's Expert, Dr. Brian Kriegler ..................................... 12

        2.    Compass's Expert, David Kalat ............................................... 13

III.    LEGAL STANDARD ........................................................................................ 14

IV.    ARGUMENT ...................................................................................................... 15

    A.    Class Members Cannot be Identified Without Individualized Fact-
Finding ................................................................................................ 16

        1.    Ascertainability Cannot be Satisfied Through Affidavits Standing
Alone .................................................................................. 17

        2.    The Out-of-Circuit Cases Plaintiff Cite in Support of an
Affidavit-Only Process are Not Binding or Relevant ............... 21

        3.    Discovery Demonstrates the Credibility Challenges Inherent to
Plaintiff's Proposed Process ................................................... 22

    B.    Common Questions Do Not Predominate Over Individual Ones ...................... 25

1.    Individual Questions Arising From Plaintiff's *Prima Facie* Proof of Liability Overwhelm Common Ones ..................................................... 26

2.    The Voluntary Payment Doctrine Defense Requires Individualized Inquiry.................................................................................. 27

3.    Members of the Proposed Class Lack Standing Under *TransUnion* ...................................................................................................... 30

4.    Common Questions of Damages Do Not Predominate over Individual Ones .............................................................................................. 31

5.    Variations in the Law Governing Breach of Contract Preclude Certification of Nationwide Class ......................................................... 35

        a.    The Statutes of Limitations Is Not Consistent Across the 33 States ...................................................................................... 36

        b.    Compass's Affirmative Defenses are Not Commonly Applied Among The 33 States at Issue ...................................... 36

        c.    The Allowance or Allocation of Pre-Judgment Interest Varies From State to State ........................................................ 37

C.    Plaintiff Proposes no Administratively Feasible Plan to Manage the Class ........................................................................................................ 38

D.    In the Alternative, Plaintiff's Claims Are Not Typical of The Class.................. 39

V.    CONCLUSION......................................................................................... 40

Case 3:23-cv-00818-JAG-DCK    Document 295    Filed 04/05/24    Page 3 of 50

**Cases**

*Anderson v. Lab. Corp. of Am. Holdings*,
No. 1:17cv193, 2023 WL 1970953 (M.D.N.C. Feb. 13, 2023)...................................20, 26, 40

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)..................................................................................................21, 22

*Ault v. JM Smucker Co.*,
310 F.R.D. 59 (S.D.N.Y. 2015) ............................................................................................. 38-39

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
No. 13-CV-150 JPO, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015)....................................25

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ..............................................................................................21

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ...............................................................................................29

*Butt v. Allegheny Pepsi-Cola Bottling Co.*,
116 F.R.D. 486 (E.D. Va. 1987) ..........................................................................................38

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
91 F.4th 202 (4th Cir. 2024) ...............................................................................................20

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013)............................................................................................17, 18

*Chatman v. GC Servs., LP*,
57 F. Supp. 3d 560 (D.S.C. 2014) ..................................................................................18, 23

*Coleman v. Union Carbide Corp.*,
No. CIV.A. 2:11-0366, 2013 WL 5461855 (S.D.W. Va. Sept. 30, 2013)..............................15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................14-15, 25-26, 31-33

*Cross v. Formativ Health Mgmt., Inc.*,
439 F. Supp. 3d 616 (E.D.N.C. 2020)................................................................................ 27-28

*Cuming v. S.C. Lottery Comm'n*,
No. 3:05-CV-03608-MBS, 2008 WL 906705 (D.S.C. Mar. 31, 2008) ............................. 30-31

*Dapeer v. Neutrogena Corp.*,
  No. 14-22113-CIV, 2015 WL 10521637 (S.D. Fla. Dec. 1, 2015).........................25

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
  317 F.R.D. 675 (N.D. Ga. 2016)..................................................................................19

*In re Dial Complete Mktg. & Sales Practices Litig.*,
  312 F.R.D. 36 (D.N.H. 2016)......................................................................................22

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
  No. 16-02709-MD-W-GAF, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) .........21

*Donovan v. Philip Morris USA, Inc.*,
  No. 06-12234-DJC, 2012 WL 957633 (D. Mass. Mar. 21, 2012).........................22

*Ellsworth v. U.S. Bank, N.A.*,
  908 F. Supp. 2d 1063 (N.D. Cal. 2012) .....................................................................28

*Endres v. Wells Fargo Banks*,
  No. C 06-7019, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008) .....................................28

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ...................................................................15, 16, 18

*Ginwright v. Exeter Fin. Corp.*,
  280 F. Supp. 3d 674 (D. Md. 2017)............................................................................26

*Gunnells v. Healthplan Servs.*,
  348 F.3d 417 (4th Cir. 2003) ..............................................................................29, 33

*Hall v. Marriott Int'l, Inc.*,
  344 F.R.D. 247 (S.D. Cal. 2023) ........................................................................ 33-34

*Hayes v. Walmart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013)........................................................................................18

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. 2014).......................................................................25-26, 29

*Hooker v. Citadel Salisbury LLC*,
  No. 1:21-CV-00384, 2023 WL 3020967 (M.D.N.C. Apr. 20, 2023) .........14, 15, 33

*In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*,
  No. 7:16-04021, 2017 WL 2255780 (D.S.C. May 23, 2017) ....................................28

*J.O.P v. United States Dep't of Homeland Sec.*,
  338 F.R.D. 33 (D. Md. 2020)...............................................................................16, 22

*Johnson v. Sprint Solutions, Inc.*,
    No. 3:08-CV-00054, 2008 WL 2949253 (W.D.N.C. July 29, 2008).....................................28

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................................25

*KBC Asset Management NV v. 3D Systems Corporation*,
    0:15-2393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017) ...............................................32

*Krakauer v. Dish Network L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ...............................................................................................19

*Lee v. ITT Corp.*,
    275 F.R.D. 318 (W.D. Wash. 2011) ..................................................................................37-38

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)..................................................................................................18

*In re Marriott Int'l, Inc.*,
    341 F.R.D. 128 (D. Md. 2022).........................................................................................17, 18

*Meek v. Kansas City Life Ins. Co.*,
    19-00472-CV-W-BP, 2022 WL 499049 (W.D. Mo. Feb. 7, 2022).......................................36

*Mojica v. Securus Techs., Inc.*,
    No. 5:14-CV-5258, 2018 WL 3212037 (W.D. Ark. June 29, 2018) .................................28-29

*Morales v. Kraft Foods Grp., Inc.*,
    No. LA CV14-04387, 2015 WL 10786035 (C.D. Cal. June 23, 2015) ..................................21

*Mullins v. Direct Dig., LLC*,
    795 F.3d 654 (7th Cir. 2015) ...............................................................................................21

*Nelson v. Conduent Business Services, LLC*,
    2020 WL 5587450 (N.D. Ga. Sept. 18, 2020) ......................................................................29

*Pemberton v. Compass*,
    No. 2022LA001328 (Madison Co. Cir. Ct., Ill. *filed* Oct. 20, 2022)......................................11

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014).......................................................................................24-25

*Rapp v. Green Tree Servicing, LLC*,
    302 F.R.D. 505 (D. Minn 2014).............................................................................................37

*Reliance Ins. Co. in Liquidation v. Chitwood*,
    433 F.3d 660 (8th Cir. 2006) .................................................................................................37

*Richards v. NewRez LLC*,
No. ELH-20-1282, 2021 WL 1060286 (D. Md. Mar. 18, 2021) ......................................17, 18

*Sacred Heart v. Humana Military*,
601 F.3d 1159 (8th Cir. 2010) ........................................................................................ 36-37

*Schertzer v. Bank of America, N.A.*,
19cv264 JM(MSB), 2022 WL 1004559 (S.D. Cal. Apr. 4, 2022)...................................26-27

*Schnall v. AT&T Wireless Services, Inc.*,
259 P.3d 129 (Sup. Ct. Wash. 2011)......................................................................................35

*In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*,
No. 4:12-md-02361-FJG, 2017 WL 3142095 (W.D. Mo. July 24, 2017)..............................21

*Soutter v. Equifax Info. Servs., LLC*,
307 F.R.D. 183 (E.D. Va. 2015) ............................................................................................19

*Spagnola v. Chubb Corp.*,
264 F.R.D. 76 (S.D.N.Y. 2010) .......................................................................................28, 29

*Stuart v. Global Tel*Link Corp.*,
956 F.3d 555 (8th Cir. 2020) .................................................................................................28

*Student A v. Liberty Univ., Inc.*,
No. 6:20-CV-23, 2023 WL 6612525 (W.D. Va. Oct. 10, 2023) ...........................................31

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*,
325 F.R.D. 136 (D.S.C. 2018) ...............................................................................................27

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ..........................................................................................15, 30

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)...........................................................................................................30

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)................................................................................................................14

*U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*,
No. 12-CV-3175, 2015 WL 12778848 (D. Minn. Mar. 19, 2015) .........................................38

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..........................................................................................................14, 29

*Ward v. Dixie Nat. Life Ins. Co.*,
257 Fed. App'x 620 (4th Cir. 2007) ................................................................................15, 35

vi

*Whitaker v. Compass*,
    No. 22-CVS-2576 (N.C. Sup. Ct. *filed* Dec. 16, 2022) ........................................................11

*Windham v. American Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ..................................................................................................38

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp.2d 1075 (N.D. Cal. 2011) ..................................................................................39

*In re Zetia (Ezetimibe) Antitrust Litigation*,
    202WL5778756 (E.D.Va. Aug. 14, 2020)..............................................................................33

**Statutes**

28 U.S.C. § 2072(b) ......................................................................................................................29

**Other Authorities**

Rule 23 ........................................................................................................... *passim*

Defendant Compass Group USA, Inc. d/b/a Canteen ("Compass") submits this Response in Opposition to Plaintiff James Jilek's Motion for Class Certification and the Memorandum in Support thereof (the "Motion" and "Mem.").[1]

## I. INTRODUCTION

The class that Plaintiff James Jilek proposes be certified would result in either a staggering number of mini-trials regarding each and every purchase of every putative member, or the wholesale violation of Compass's due process rights. The former approach is impossible, and the latter is unconstitutional.

Plaintiff downplays how complicated this case is. It involves hundreds of millions of separate vending machine purchases, each of which represents a separate contract. In order to establish a valid claim for a single purchase, each putative class member would have to show that he or she: (1) made a purchase from (2) a Compass-owned or operated vending machine, (3) at which two-tier pricing was enabled, (4) using a credit or debit card, (5) that the vending machine did not bear a label informing the customer of the price differential, and (6) that the purchaser did not otherwise know about the price differential at the time of purchase (for instance, by word of mouth or discovery from prior purchases).

As a threshold matter, there is no objective evidence from which the members of the class can be identified. Plaintiff suggests that class members be identified through self-certification requiring the submission of "credit card or banking records or . . . self-identifying affidavits[.]" (Mem. at 2.) This is insufficient under the standards adopted by the Fourth Circuit. Of the nine current or former plaintiffs (and individuals represented by Plaintiffs' counsel in identical, stayed

---

[1] Though Andres Borrero and Brian Baldwin joined in the opening Motion, Plaintiffs subsequently withdrew their request that Baldwin and Borrero be appointed class representatives and that the Court certify the South Carolina and Florida sub-classes they sought to represent. (Doc. No. 294.)

state cases), two did not make purchases at Compass machines, and discovery indicated that three more plaintiffs made some (if not all) purchases from properly labeled machines. These individuals were represented by counsel—who presumably performed some gatekeeping function rather than simply acting as scrivener. The fact is that at least 22%, and possibly up to 55%, of the individuals who sued Compass on Plaintiff's theory are not members of the putative class.

Even if the class could be ascertained, establishing liability and damages would result in an exhaustive verification process, requiring individual mini-trials for each purchase made by each putative class member. The current and former plaintiffs demonstrate the difficulties involved. First, none of the claimants has been able to provide credit card statements from which all potential damages could be verified. Even if they had, or even if unsupported self-certifications were considered, there are two additional problems. Many of the claims will be reduced, if not eliminated, because claimants knew in many cases of the price differential, which is relevant both to the terms of the contracts at issue, and Compass's voluntary payment doctrine defense. In addition, each class member must establish that they made each claimed purchase at an unlabeled machine. Many locations (including at least four locations frequented by current and former plaintiffs) had some mix of labeled and unlabeled machines.

Plaintiff ignores these difficulties. Plaintiff claims that "there is no evidence" that application of the voluntary payment doctrine is "anything but rare." (Mem. at 2.) This is absurd. Of the seven claimants known to have made purchases from Compass machines,[2] at least three— almost half—continued to make purchases after learning about the price differential. In order to determine any damages they might be entitled to, the Court would have to determine when they learned of the price differential, and how many purchases they made before and after that

---

[2] This number represents the nine known claimants, less the two who have been proven not to have purchased anything from Compass.

discovery. And three—again, almost <u>half</u>—made purchases at locations at which most, if not all, machines were properly labeled. For these claimants, the Court would have to determine how many of their purchases were made at labeled machines, and how many at unlabeled machines. The Court would also have to consider whether the presence of labeled machines caused these claimants to know that they also would be charged a differential price at unlabeled machines, and if so, when. It took formal discovery, including depositions, to discover that two plaintiffs did not make purchases at Compass machines, and nearly all of the rest made purchases at labeled and unlabeled machines and/or continued making purchases after discovering the price differential.

Plaintiff's response is to deny Compass its right to challenge claims. According to Plaintiff, Compass cannot complain because Plaintiff's expert claims to have calculated total purchases at unlabeled machines. This is wrong as a matter of law. Compass is not liable for the amount of purchases at unlabeled machines. Compass is liable, at most, for purchases made at unlabeled machines by <u>consumers without knowledge</u>.

This case cannot be resolved on a class-wide basis without a wholesale abrogation of Compass's Constitutional due-process rights. Accordingly, no class or sub-class should be certified.

## II.    FACTUAL BACKGROUND

### A.    Canteen's Operations

Canteen is a division of Compass, providing clients across the country with offerings for its markets, dining, coffee, and vending lines of business. It operates vending machines in 33 states. (Goldring Dep. Tr. at 10:14-11:7, 14:8-13;[3] Doc. No. 193 (Answer to Cons. Am. Compl.) ¶¶ 8-

---

[3] The deposition transcripts cited herein were submitted as Exhibits A-G to Compass's Response in Opposition (the "Prior Response"), (*see* Doc. No. 260), to Plaintiffs' prior Motion for Class Certification (the "Prior Motion"), (*see* Doc. No. 257). Rather than cluttering the record with duplicate filings, Compass incorporates those exhibits by reference, *see* LCvR 7.1(c)(3), and will cite the deposition transcripts as

10.) In 2014, Compass began installing cashless readers on some of its vending machines, which allow consumers to make purchases with a credit or debit card. (Pl.'s Ex. C, Declaration of Martha Morgan, Doc. No. 257-5 ["Morgan Decl."] ¶ 2.) In order to "offset the expense of credit and debit card fees and the costs of maintaining the cashless readers, Compass enabled "two tier pricing" on a subset of these machines, charging different prices for credit and cash transactions. (*Id.* ¶ 3.) Compass's policy was and is to label its cashless machines in order to inform the consumer of the price differential. (Goldring Dep. Tr. at 30:8-17.) On occasion, Compass received consumer complaints regarding the signage or labeling of Compass's vending machines after individuals learned that a purchase made with a credit or debit card cost more than a purchase made with cash. (*Id.* at 47:3-15.) However, these complaints did not suggest to Compass that there was more than incidental noncompliance with Compass's two-tier price labeling policy. (*Id.* at 40:1-5, 49:17-23, 50:15-51:5.)

After former plaintiff George Moore filed his complaint against Compass in St. Louis Circuit Court on October 23, 2018, between March 2019 and February 2020, Compass performed a nationwide audit, surveying its two-tier enabled vending machines to ensure that each was

---

follows: (1) Deposition transcript of David Goldring dated June 9, 2021, Prior Motion Ex. A, Doc. No. 260-1 ["Goldring Dep. Tr."]; (2) Deposition transcript of George Moore dated Sept. 8, 2023, Prior Motion Ex. B, Doc. No. 260-2 ["Moore Dep. Tr."]; (3) Deposition transcript of Virginia Carter dated Aug. 3, 2023, Prior Motion Ex. C, Doc. No. 260-3 ["Carter Dep. Tr."]; (4) Deposition transcript of James Jilek dated Mar. 21, 2023, Prior Motion Ex. D, Doc. No. 260-4 ["Jilek Dep. Tr."]; (5) Deposition transcript of Justin Regus dated Sept. 13, 2023, Prior Motion Ex. E, Doc. No. 260-5 ["Regus Dep. Tr."]; (6) Deposition transcript of Frances J. Ivery dated Mar. 28, 2023, Prior Motion Ex. F, Doc. No. 260-6 ["Jaye Dep. Tr."]; and (7) Deposition transcript of Dr. Brian Kriegler dated Aug. 23, 2023, Prior Motion Ex. G, Doc. No. 260-7 ["Kriegler Dep. Tr."].

In support of its Prior Response, Compass also submitted the Declaration of Nicole C. Mueller (the "First Mueller Declaration"), (Doc. No. 261 [hereinafter "1st Mueller Decl."]), which in turn attached all non-deposition exhibits relied upon in the Prior Response, (*see* 1st Mueller Decl. Exs. 1-13, Doc. Nos. 261-1 to 261-13). Compass now offers the Second Declaration of Nicole C. Mueller (the "2nd Mueller Declaration"), (hereinafter "2nd Mueller Decl."]), which in turn attaches the supplemental exhibits referenced herein, specifically Exhibits 14-15.

affixed with a label that notified consumers of the price differential (a "Label"). (Pl.'s Ex. C, Morgan Decl. ¶¶ 4, 5.) Surveyors in the field collected certain information regarding the surveyed machines, including whether the machine had a Label at the time of the Survey. (*Id.* ¶¶ 7, 8.) Surveyors were instructed to photograph each machine, apply new Labels to both machines that previously had a Label affixed to the machines and those that did not, and finally photograph the machine with the newly affixed Label. (*Id.* ¶ 11.) Compass also instituted a policy in which it surveys all two-tier revenue enabled machines before the machines leaves a Compass warehouse to be placed in the field or upon installation at a customer's location. (*Id.* ¶ 14.) This process is ongoing. (*Id.* ¶ 15.)

During discovery, Compass created and produced multiple iterations of a report that attempts to summarize the survey results, including identifying the dates that machines were surveyed, the results of the survey, and the two-tier revenue collected by each machine, broken down by month for all times relevant to this lawsuit. (*Id.* ¶¶ 17, 18.)

### B.     The Former and Current Plaintiffs' Purchases

Of the six plaintiffs who have brought claims in this action, only Jilek remains. None of the current or former plaintiffs have been able to state with certainty their damages or produce documents that would quantify those claims. At least three brought claims for purchases that may have been made at properly labeled machines. More concerning is the fact that two of these former plaintiffs, represented by counsel, mistakenly brought claims against Compass for purchases made at vending machines <u>Compass did not own or operate</u>. A review of the purchases made by these former and current plaintiffs illustrates the unique difficulties that certifying this class presents.

1.      Former Plaintiff George Moore

George Moore purchased items from Compass's vending machines located at his place of work, which, at the time, was the same office building as Plaintiff's counsel. (Moore Dep. Tr. at 10:23-11:8, 13:22-14:18, 16:17-23.) Moore alleged that he was "overcharged" for three transactions which took place in March and April 2018. (Doc. No. 126 ¶¶ 33-38.) However, Moore knew about the "overcharge" for each of these three transactions at the time of his purchase because the first transaction, which occurred on March 18, 2018, was made after counsel's assistant told him to use his card in order to see that he was being "overcharge[d]." (Moore Dep. Tr. at 23:8-20.) Moore does not know how many purchases he made from the machines before he learned of the price differential and he never checked his bank statements so he does not know whether he was in fact "overcharge[d]" prior to March 2018. (*Id.* at 24:3-9; 54:16-21.) After learning about the "overcharge," Moore did not report the issue to Compass. (*Id.* at 40:9-14.)

Moore announced his intention to withdraw his claims in May 2023, after Compass issued a notice for his deposition. (*Id.* at 56:18-25; 1st Mueller Decl. Ex. 1, Doc. No. 261-1, 5/18/23 e-mail from R. Cornfeld.) The Court granted his motion on November 15, 2023. (Doc. No. 263.)

2.      Former Plaintiff Virginia Carter

Virginia Carter joined as a named Plaintiff in an amended complaint filed on December 18, 2018. (Doc. No. 15.) Carter made purchases from Compass's vending machines at the same office building where Moore and Plaintiff's counsel worked. (Carter Dep. Tr. at 30:20-31:2.) Carter discovered the price differential when a woman in her office building told her about the charge, though she could not recall when this happened. (*Id.* at 35:20-37:22.) Carter could not recall when a Label was affixed to the vending machines, or if the Label was affixed before or after she made purchases from the machine, though she testified that she continued to make purchases after

learning about the differential. (*Id.* at 49:6-9, 50:21-51:6, 57:3-58:3.) Carter could not recall approximately how many purchases she made from a Compass vending machine or how often she used a credit or debit card, and was unable to retrieve all of her bank statements or any other records that would identify her purchases. (*Id.* at 33:22-34:19, 35-20-36:5, 36-22-37:22, 50:24-51:6, 62:8-12.) Compass noticed Carter's deposition on February 14, 2023 and, in response, counsel for Carter moved to withdraw her claims. (Doc. No. 202.)

### 3. Plaintiff James Jilek

After Baldwin and Borrero withdraw, James Jilek will be the only remaining named plaintiff in this action. Jilek made purchases from Compass's vending machines at his office,[4] which is a shared office space. (Jilek Dep. Tr. at 25:9-27:4.) An officemate, Justin Regus, informed Jilek that Jilek was being charged ten cents more than the display price for using a credit card.[5] (*Id.*) After Regus told Jilek about the price differential and referred Jilek to Plaintiff's counsel, Jilek conducted "test" purchases on July 26, 2019 and August 14, 2019 to determine if he was in fact charged more than the display price. (*Id.* at 35:3-36:7, 54:5-55:7.) He testified that, at the time he conducted this "test," he knew that he would be charged ten cents more than the display price. (*Id.* at 84:18-86:6.) Despite the fact that Jilek made purchases at the vending machine both before and after the "test" purchases, these "test" purchases are the only purchases alleged in his original complaint, the consolidated class action complaint, and the amended class action consolidated complaint. (1st Mueller Decl. Ex. 2, Doc. No. 261-2, Jilek Complaint, ¶ 16; *see* Doc. No. 91 ¶ 35; Doc. No. 126 ¶ 43; Jilek Dep. Tr. at 50:17-51:18, 56:18-57:13, 67:3-16, 93:23-94:3.) Jilek can

---

[4] Jilek provided the incorrect address for this office in connection with multiple filings, including discovery and multiple iterations of his complaint, over the course of several years. (Jilek Dep. Tr. at 55:17-56:16.)
[5] Justin Regus has worked with Plaintiff's counsel as an expert witness and was assisting Plaintiff's counsel with soliciting plaintiffs for this lawsuit. (Regus Dep. Tr. at 7:23-8:17, 21:6-22:13.) Regus testified that he discovered the price differential on his own, not from Plaintiff's counsel. (*Id.* at 23:3-23.) Regus informed numerous individuals at the location about the pricing practice. (*Id.* at 29:18-24.)

only guess as to how many purchases he made before learning about the charge, and he can only estimate the year in which he made his first purchase. (Jilek Dep. Tr. at 47:9-48:4.) He does not recall what he purchased, or how many purchases he made in total. (*Id.* at 46:12-47:2.) After learning about the price differential, he told officemates about it, but he doesn't recall whom he told, or how many people he spoke to. (*Id.* at 90:6-20.) Jilek believes that "ten cents was not a large number" and Jilek continued to use the vending machines after learning about the differential. (*Id.* at 71:19-72:1.) Prior to filing his lawsuit, Jilek did not report the ten-cent differential to Compass. (*Id.* at 92:20-93:12.)

### 4. Former Plaintiffs Frances J. Ivery and Sean Madelmayer

Frances J. Ivery ("Jaye")[6] and Sean Madelmayer filed their complaint against Compass on May 13, 2019 in the Texas District Court, Dallas County (Cause No. DC-19-06786). The case was subsequently removed to federal court, transferred by agreement to the Eastern District of Missouri, and consolidated into the Moore action. (Doc. No. 63.)

Jaye alleged that she made a purchase on March 14, 2019, and other purchases (without alleging a time period) throughout the City of Dallas, including Dallas Love Field Airport, from Compass-owned vending machines. (1st Mueller Decl. Ex. 4, Doc. No. 261-4, Jaye Complaint, ¶¶ 18-19.) However, Jaye did not make *any* purchases from a Compass-owned vending machine, a fact that neither she nor her counsel were aware of until her March 28, 2023 deposition. (Jaye Dep. Tr. at 69:25-70:2; 1st Mueller Decl. Ex. 5, Doc. No. 261-5, 4/14/23 e-mail from R. Cornfeld.) Jaye admitted that she has no way of knowing whether a particular vending machine is owned by Compass. (Jaye Dep. Tr. at 55:1-10, 61:13-16.) She further testified that she never investigated whether the March 14, 2019 transaction was at a Compass vending machine. (*Id.* at 69:13-70:2.)

---

[6] Ivery was misnamed in her various complaints and the filings and was referred to throughout her involvement in this case as "Frances Jaye." For consistency, she is referred to herein as "Jaye."

Jaye could not recall what the correct price for the single vending machine charge on her bank statement should have been, or whether there were any labels on the vending machine. (*Id.* at 69:10-12, 73:16-18.) Jaye testified that she had difficulty obtaining her bank statements because she no longer had access to closed accounts and had to go into a bank branch, which took an extended amount of time. (*Id.* at 20:19-21:1, 119:1-10.) Jaye moved to dismiss her claims against Compass on April 26, 2023. (Doc. No. 223.)

Madelmayer alleged that he made a purchase on April 24, 2019, and other purchases (without alleging a time period) throughout the City of Dallas, including Dallas/Fort Worth Airport, from Compass-owned vending machines. (1st Mueller Decl. Ex. 4, Doc. No. 261-4, Jaye Complaint, ¶¶ 20-21.) In response to Compass's requests that Madelmayer provide a date to sit for a deposition, on January 5, 2023, Madelmayer's counsel informed Compass that Madelmayer intended to dismiss his claims. (2nd Mueller Decl. Ex. 14, 1/5/2023 E-Mail from D. Levy.)

### 5. Plaintiff Brian Baldwin

Brian Baldwin filed a complaint against Compass on October 20, 2022 in the United States District Court for the District of South Carolina (Case No. 5:22-cv-03644-MGL), which was subsequently consolidated into this action. (Doc. No. 263.) Baldwin's complaint alleges that he made purchases three times per day, every workday, since 2010 from unlabeled vending machines at two locations in Orangeburg, South Carolina. (*See* 1st Mueller Decl. Ex. 7, Doc. No. 261-7, Baldwin Complaint ¶¶ 16-20.) Reports produced by Compass in discovery show that there were both labeled and unlabeled vending machines at these locations during the time that Baldwin allegedly made his purchases.[7] Baldwin purportedly learned about the price differential on his own, approximately three to four months after his first purchases at each of the two locations, and

---

[7] (*See* 1st Mueller Decl. ¶ 18 (citing CG-0022195).) This report was produced to Plaintiffs on July 19, 2022, three months before Baldwin filed his complaint. (*Id.* ¶¶ 10, 18.)

he continued to make purchases at Compass's vending machines after he learned about the differential. (1st Mueller Decl. Ex. 8, Doc. No. 261-8, Baldwin Resp. Compass's 1st Set Interrogs. ["Baldwin ROG Resp."] at No. 3.) Baldwin was not able to obtain bank records documenting his purchases. (*Id.*) Baldwin did not attempt to estimate the number of purchases he made, or how many he made before he learned of the price differential. (*Id.*)

Baldwin's deposition was noticed for October 3, 2023, a date proposed by Plaintiff's counsel. Less than a week before the deposition, on September 29, 2023, Baldwin's counsel informed Compass that Baldwin was refusing to appear for his deposition and intended to dismiss his claims "next week." (1st Mueller Decl. ¶ 9; 1st Mueller Decl. Ex. 6, Doc. No. 261-6, 9/29/23 e-mail from A. Jenkins.) Despite the passing of five months, Baldwin did not dismiss his claims; instead, and only in response to Compass's motion to compel Baldwin to dismiss his claims or sit for a deposition, did Baldwin agree to appear. (Doc. No. 291 at 2.) Baldwin's deposition was re-noticed for March 29, 2024. On March 28, 2024, counsel for Baldwin informed Compass that Baldwin did not intend to appear for his deposition and would be withdrawing from the case.[8] (2nd Mueller Decl. Ex. 15, E-mails from Counsel ["Withdrawal E-Mails"].) As of the date of this filing, Baldwin has not moved to dismiss his claims.

### 6. Plaintiff Andres Borrero

Andres Borrero filed a complaint against Compass on October 20, 2022 in the United States District Court for the Middle District of Florida (No. 8:22-cv-2407-WFJ-MRM), which was subsequently consolidated into this action on November 15, 2023. (Doc. No. 263.) In his complaint, Borrero alleges he made purchases once or twice a day from unlabeled Compass

---

[8] Just a couple weeks prior, counsel represented to this Court that Baldwin "agrees to sit for his deposition at a mutually agreeable date and time and location." (Doc. No. 291.)

vending machines located at New South Window in Tampa, Florida, which was allegedly his place of work. (1st Mueller Decl. Ex. 9, Doc. No. 261-9, Borrero Compl. ¶¶ 16-18.) However, reports produced by Compass in discovery show that of the six machines located there, four were surveyed and found to have Labels; the other two were not surveyed. (1st Mueller Decl. ¶ 19.)

Requests for production and interrogatories were served on counsel for Borrero on June 16, 2023. Borrero did not respond to any of the discovery propounded upon him until February 29, 2024, after Compass filed a motion to compel. In his discovery responses, Borrero inexplicably changed the location of his alleged purchases to Southeast Windows & Glass in Ruskin, Florida. (Pl.'s Ex. S, Doc. No. 293-3, Borrero Resp. Compass's 1st Set Interrogs. at No. 1 ["Borrero ROG Resp."].) Compass does not own or operate any vending machines at this location. (2nd Mueller Decl. ¶ 6.) Borrero claimed to have no bank statements or other documents evidencing any purchases he made. (Borrero ROG Resp. No. 2.) Though counsel promised in September 2023 to issue subpoenas on Borrero's financial institutions, there is no indication that any subpoena was ever served. On March 15, 2024, after Compass requested a date for Borrero's deposition, counsel informed Compass that Borrero intended to dismiss his claims and could not appear for a deposition. (2nd Mueller Decl. Ex. 15, Withdrawal E-Mails.) As of the date of this filing, Borrero has not moved to dismiss his claims.

### 7. The Stayed State Court Cases

Two additional plaintiffs, represented by Plaintiff's counsel, have filed class action lawsuits in state court in Illinois (*Pemberton v. Compass*, No. 2022LA001328 (Madison Co. Cir. Ct., Ill. *filed* Oct. 20, 2022)) and North Carolina (*Whitaker v. Compass*, No. 22-CVS-2576 (N.C. Sup. Ct. *filed* Dec. 16, 2022)). (1st Mueller Decl. Exs. 11-12, Doc. Nos. 261-11 ["Pemberton

Compl."], 261-12 ["Whitaker Compl."].) Both actions have been stayed by agreement of the parties, pending the resolution of this lawsuit.

Pemberton alleges that he made purchases from unlabeled machines in East Peoria, Illinois. (Pemberton Compl. ¶¶ 13-16.) However, reports produced by Compass in discovery show that 24 of the 32 vending machines located there were found to have Labels. (1st Mueller Decl. ¶ 20.) Whitaker alleges he made purchases from unlabeled Compass machines four days a week, every week, during the years 2019 and 2020. (Whitaker Compl. ¶¶ 17-18.) Reports produced by Compass in discovery show that of the three machines located at his alleged location, two machines had a Label at the time of survey, and the third was not surveyed. (1st Mueller Decl. ¶ 21.)

### C.    Expert Reports

#### 1.    Plaintiff's Expert, Dr. Brian Kriegler

In Dr. Kriegler's opening report, he presented a methodology by which he proposed to analyze a random sample of Compass's two-tier survey data in order to extrapolate purported class-wide damages and prejudgment interest. (Pl.'s Ex. E, Doc. No. 257-7, 8/7/23 Rpt. of Dr. Brian Kriegler ["Opening Rpt."] ¶ 7.) Kriegler estimated the revenue generated from cashless devices with no Label amounted to potential damages and totaled $14.7 million (inclusive of interest). (*Id.* ¶¶ 38, 43.) Dr. Kriegler admitted that, in calculating this amount, he: (1) did not consider whether consumers knew about the price differential even if there was no Label; (2) did not estimate damages for any individuals or provide a methodology for doing so; and (3) did not perform the sampling and analysis he deemed necessary to calculate an actual estimate of damages. (*Id.*; Kriegler Dep. Tr. at 9:24-11:22, 17:15-22:19.) Dr. Kriegler's prejudgment interest calculations are based on his principal damage calculations. (Opening Rpt. ¶ 40.)

Plaintiffs served Dr. Kriegler's first Supplemental Report on August 11, 2023 (the "First Supplemental Report"). The First Supplemental Report merely applies the same methodologies presented in the Opening Report to a California sample of machines in order to calculate potential principal damages and pre-judgment interest pertaining to the California machines. (Pl.'s Ex. N, Doc. No. 257-16, 1st Supp. Rpt. of Dr. Brian Kriegler ¶ 13.) Plaintiffs served Dr. Kriegler's second Supplemental Report on October 13, 2023. This report purports to apply the methodologies described in the Opening Report to data that Plaintiffs requested from Compass after issuing the Opening Report, on August 9, 2023 and August 15, 2023 (the "Second Supplemental Report"). (*See* Pl.'s Ex. P, 2nd Supp. Rpt. of Dr. Brian Kriegler.) The Second Supplement Report resulted in a *lower* principal damages estimate of $9,890,345. (*Id.* at 22.)[9]

2. Compass's Expert, David Kalat

Compass's expert, David Kalat, noted several significant problems with Kriegler's methodology. Namely, Kreigler's methodology assumes that all two-tier revenue collected by a machine with no Label is recoverable, without considering whether consumers in fact knew about the price differential. (Pl.'s Ex. F, Kalat Expert Rpt., Doc. No. 257-8, ¶ 25.) Kalat examined the same records and data available to Kriegler and replicated Kriegler's methodology to calculate revenue. (*Id.* ¶ 78.) Kalat concluded that, using Kriegler's methodology and correcting for errors found within, the maximum amount of two-tier revenue at machines without Labels is $9,997,193 (excluding prejudgment interest). (*Id.* ¶ 5.)

---

[9] The First and Second Supplemental Reports and the Declaration, (Pl.'s Ex. T), which were all served long after the parties' agreed-to deadline for Plaintiffs' expert reports, are the subject of a motion to strike that is being filed concurrently with this Response.

## III.    LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rule 23 requires a plaintiff to "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). "Such an analysis will frequently entail "'overlap with the merits of the plaintiff's underlying claim' . . . because 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 33-34 (quoting *Wal-Mart*, 564 U.S. at 351).

Plaintiff must "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* at 33. Where, as here, a plaintiff seeks certification under Rule 23(b)(3), he or she must show that questions of law or fact common to the class members predominate over any questions affecting only individual members, meaning that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Hooker v. Citadel Salisbury LLC*, No. 1:21-CV-00384, 2023 WL 3020967, at *11 (M.D.N.C. Apr. 20, 2023) (citation omitted). "If anything, Rule 23(b)(3)'s predominance

14

criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34 (citation omitted); s*ee Ward v. Dixie Nat. Life Ins. Co*., 257 Fed. App'x 620, 628 (4th Cir. 2007) (noting predominance requirement under Rule 23(b)(3) "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)"). "At bottom, the inquiry determines whether a trial meant to resolve class-wide issues is manageable or whether it is likely to devolve into a series of individual mini-trials examining questions specific to individual class members." *Hooker,* 2023 WL 3020967, at *11 (citing *Thorn v. Jefferson–Pilot Life Ins. Co*., 445 F.3d 311, 327-29 (4th Cir. 2006) (upholding district court's denial of class certification).

Moreover, the calculation of damages must be based on a model applicable to all members of the class. *Id.* at *13-14 ("[T]he necessary damage calculations (even on Plaintiffs' generalized theories of liability) would thus involve separate evaluations for each of the proposed 100-plus class members . . . . As a result, even on Plaintiffs' preferred theory of breach, a class action does not provide a superior method for resolving these claims because individual damage evaluations predominate over common liability issues."); *see Coleman v. Union Carbide Corp*., No. CIV.A. 2:11-0366, 2013 WL 5461855, at *22 (S.D.W. Va. Sept. 30, 2013).

In addition to Rule 23's explicit requirements, the Court must be satisfied that the proposed class is ascertainable. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

## IV.  ARGUMENT

The Motion seeks certification of a breach of contract cause of action. Having abandoned many of the legal theories presented in the operative complaint, Plaintiff now limits his case to Compass's alleged breaches of "unilateral contracts," contending a class can be ascertained and that liability and damages can be established across the class through the use of common evidence. (Mem. at 12.)

This creates a number of inter-related problems for certification. The class is unascertainable. There is no objective evidence from which to identify purchasers (or purchases) from unlabeled machines, and Plaintiff's self-certification proposal is an insufficient replacement. The Motion fails to propose an administratively feasible method to identify or manage the class. It also proposes a class that contains an unknown number of members who lack standing, a separate fatal defect. The testimony of the current and former plaintiffs demonstrates these problems clearly, showing that liability can be assessed and damages awarded (if any), only after individualized investigation.

### A. Class Members Cannot be Identified Without Individualized Fact-Finding

Plaintiff concedes, as he must, that under binding Fourth Circuit precedent, a "class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT*, 764 F.3d at 358. "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (citation omitted). This "heightened ascertainability requirement," commonly referred to as "administrative feasibility," requires both that (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the definition, and is shared by the First, Third, Fourth, and Sixth Circuits (though it has been rejected by the Second, Seventh, and Ninth Circuits). *See J.O.P v. United States Dep't of Homeland Sec.*, 338 F.R.D. 33, 50 (D. Md. 2020) (collecting cases). Plaintiff does not argue that there is any objective evidence that can be used to identify any class member because no such evidence exists. Plaintiff proposes instead to allow putative class members to "submit their credit or debit card records to show purchases at Defendant's machines, or if needed, provide affidavits to verify card purchases." (Mem. at 25.) The disjunctive "or" means that, in Plaintiff's

view, an affidavit standing alone would be sufficient to verify a claim. While Plaintiff does not actually describe what this claims process would entail, there is no version of it that can pass muster in this Circuit.

1.    <u>Ascertainability Cannot be Satisfied Through Affidavits Standing Alone</u>

The Fourth Circuit's formulation of ascertainability requires both objective criteria and administrative feasibility and cannot be satisfied by the submission of affidavits alone. A recent decision made this explicit, holding that a class could not be certified where it "would impermissibly require [the Court] to certify a class solely on potential class members' say so or it would require individualized fact-finding and litigation to identify class members." *Richards v. NewRez LLC*, No. ELH-20-1282, 2021 WL 1060286, at *29 (D. Md. Mar. 18, 2021) (citation omitted); *see In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 145 (D. Md. 2022) (noting significant distinction between ascertaining class members based upon "self-certification standing alone" and proper utilization of self-certification as one "part of the identification process" where accuracy of self-serving affidavits could be verified against a database listing "virtually all class members").

The Third Circuit, applying the same heightened ascertainability standard as the Fourth, has held as a matter of law that self-certification, standing alone, is insufficient. *See Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). There, the Third Circuit considered and rejected many of the arguments that Plaintiff offers in support of self-certification here. In response to the plaintiff "argu[ing] it is less likely that someone would fabricate a claim," the Court determined that "[t]his argument fails because it does not address a core concern of ascertainability: that a defendant must be able to challenge class membership." *Id.* at 309. There, like here, the plaintiff "also argue[d] ascertainability is less important in this case because '[the defendant's] total liability will be

determined at trial, and will not increase or decrease based on the affidavits submitted." *Id.*[10] The Third Circuit also rejected this argument, noting that both class members and the defendant have an interest in "ensuring [the defendant] pays only legitimate claims." *Id.* at 310; *see Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) (vacating trial court's certification of class which was based solely on affidavits: "[w]e caution . . . against approving a method that would amount to no more than ascertaining by potential class members' say so").[11] A "petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." *Hayes v. Walmart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013) ("plaintiff must show by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class" and that this showing cannot be made "if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding").

The cases relied upon by Plaintiff do not involve affidavits standing alone. While Plaintiff cites extensively to *In re Marriott Int'l, Inc.*, 341 F.R.D. 128 (D. Md. 2022), (Mem. at 25-26), he fails to acknowledge that the objective records in that data breach class action consisted of a database which "contain[ed] the names and contact information for virtually all class members, and the parties [could] use that database to identify class members." There, the court approved the use of affidavits in a situation where they were cross-checked against objective evidence identifying every class member. *Id.* at 144. In fact, the court cabined this approach to the facts of

---

[10] As noted *infra* at V.B.4., Plaintiff's claim that Compass's liability is capable of class-wide determination is incorrect.

[11] The Fourth Circuit has relied on *Marcus* when applying its own ascertainability standard. *See, e.g.*, *EQT*, 764 F.3d at 358. Other courts in this Circuit have cited to both *Carrera* and *Marcus* in denying class certification. *See, e.g.*, *Richards*, 2021 WL 1060286, at *28; *Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 561 (D.S.C. 2014).

the case and explicitly rejected the approach Plaintiff now proposes: "While self-certification may be part of the identification process, it will not be self-certification standing alone." *Id.*

*In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675 (N.D. Ga. 2016), a case involving antitrust claims relating to airline baggage fees, presented a similar fact pattern and is similarly distinguishable. There, the defendants maintained records sufficient to identify every baggage fee transaction at issue, including the name of the passenger associated with the fee and, in many cases, contact information. *Id.* at 691. The court allowed claims to be supported by "class members' own records—such as receipts and bank or credit-card statements—and self-identification affidavits . . . ." *Id.* at 692. That court stated that it was "cognizant of the concerns raised by self-certification, but in a case such as this, where . . . class members can obtain objective records with relative ease that would confirm their membership in the class, those concerns are minimized." *Id.* Once again, the process was not credit card records *or* self-certification. The process started with defendants' database of known transaction and the identity of potential class and included both credit card records *and* affidavits.[12]

The remaining cases cited by Plaintiff from courts in this Circuit all included objective evidence that allowed identification of class members through virtually automatic processes. In *Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 657-58 (4th Cir. 2019), the objective records included call logs through which "[t]he class members could . . . be identified on a large-scale basis, and notified of the class action accordingly." In *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196-98 (E.D. Va. 2015), nearly all class members could be identified by comparing two objective databases, including the defendant's own records. There was no element of self-certification involved in *Souter*. All of the cases cited by Plaintiff started with a list of known

---

[12] Notably, neither case alleged breach of contract claims. Passengers' knowledge of the fees at issue was irrelevant to determining liability.

persons that encompassed all or nearly all class members. In contrast, Plaintiff cannot point to <u>any</u> Compass records identifying class members.

In situations like the one at bar, where the objective evidence available cannot discern between valid and invalid claims, courts within this Circuit have determined that a class is not ascertainable. In *Anderson v. Lab. Corp. of Am. Holdings*, No. 1:17cv193, 2023 WL 1970953, at *14 (M.D.N.C. Feb. 13, 2023), the court held that "even assuming LabCorp possesses the internal records to identify each potential class member who was charged the list price . . ., Plaintiffs have failed to identify an objective and administratively feasible way to determine whether a potential class member (or their 'agent') nevertheless was aware of or agreed to pay the list price."

Similarly, the Fourth Circuit earlier this year affirmed a decision denying class certification in a Telephone Consumer Protection Act case even though the putative members of the class were all included on a listing of known fax recipients. *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 211-12 (4th Cir. 2024). In that case, the trial court held, and the Fourth Circuit agreed, that the plaintiff had failed to identify an ascertainable class because though all of the fax recipients could be located using defendant's own records, those records did not show which recipients used standalone fax machines instead of online fax services, a fact necessary to establish liability. *Id.* Accordingly, the trial "court recognized that it would be left to make an individualized inquiry as to whether each recipient was using a stand-alone fax machine at the relevant time . . . ." *Id.* In other words, as with *Anderson*, the class in *Career Counseling* was not ascertainable even where the defendant had (or may have had) a list containing all class members, because not everyone on the list was a class member.

2. The Out-of-Circuit Cases Plaintiff Cite in Support of an Affidavit-Only Process are Not Binding or Relevant

The remaining cases cited by Plaintiff come from other Circuits and apply a different standard for ascertainability. Plaintiff relies on two cases from the Western District of Missouri, *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) and *In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*, No. 4:12-md-02361-FJG, 2017 WL 3142095 (W.D. Mo. July 24, 2017). Both cases applied a standard of ascertainability that looks only to whether "the class 'is capable of definition.'" *Simply Orange*, 2017 WL 3142095, at *3. And as Plaintiff observes, (Mem. at 27), the court in *Simply Orange* relied on a First Circuit opinion in which it determined that "if *unrebutted* consumer testimony 'would be sufficient to establish injury in an individual suit, it follows that similar testimony in the form of an affidavit or declaration would be sufficient in a class action.'" *Id.* at *4 (emphasis added) (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 20 (1st Cir. 2015)). Although Plaintiff does not acknowledge it, the First Circuit has subsequently limited *In re Nexium* to its highly unusual facts, and has ruled that where a defendant has credible challenges to affidavits, a claims process that relies on affidavits is not administratively feasible and cannot support certification. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51-52 (1st Cir. 2018).[13]

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387, 2015 WL 10786035 (C.D. Cal. June 23, 2015), and *Mullins v. Direct Dig., LLC*, 795 F.3d 654 (7th Cir. 2015), are irrelevant, because, unlike the Fourth Circuit,

---

[13] While *In re Asacol* revisited *In re Nexium* in the context of predominance, its finding applies equally in the ascertainability context.

the Seventh and Ninth Circuits do not require administrative feasibility. *See J.O.P.*, 338 F.R.D. at 50.[14]

Finally, in a very similar factual context, the First Circuit's rationale rejecting Plaintiff's argument that denial of class certification "cannot be the intent behind Rule 23," (Mem. at 29), is instructive:

> We recognize that there remains the problem of how to deal with conduct that inflicts small amounts of damage on large numbers of people. Certainly Rule 23 serves as an important tool to address many such situations. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (noting that "negative value" suits provide the "most compelling rationale for finding superiority in a class action"). But that fact grants us no license to create a Rule 23(b)(3) class in every negative value case by either altering or reallocating substantive claims or departing from the rules of evidence. Moreover, there are other tools available to address the problem of low-value, high-volume claims that pose individual issues of causation. Regulators may sue, *see, e.g., FTC v. Actavis, Inc.*, 570 U.S. 136, 141 (2013); governments may bring parens patriae claims, *see, e.g., New Hampshire v. Purdue Pharma*, No. 17-cv-427, 2018 WL 333824, at *1 (D.N.H. Jan. 9, 2018); substantive laws may provide presumptions available to all class members, *see, e.g., Halliburton*, 134 S. Ct. at 2411-12; and private lawyers may marshal the threats of res judicata and fee shifting to induce aggregate settlements when liability is clear.

*In re Asacol*, 907 F.3d at 56.

        3.      <u>Discovery Demonstrates the Credibility Challenges Inherent to Plaintiff's Proposed Process</u>

Against this backdrop, the flaws in Plaintiff's "plan" are clear. Plaintiff argues that there are three reasons why his process will not involve extensive and individualized fact-finding. None withstand scrutiny.

---

[14] Of the twelve cases Plaintiff cites in footnote 12 in support of self-certification, only two are from a circuit (the First) that purports to apply the heightened standard shared by the Third and Fourth Circuits. *See In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36 (D.N.H. 2016); *Donovan v. Philip Morris USA, Inc.*, No. 06-12234, 2012 WL 957633, at *28 (D. Mass. Mar. 21, 2012). Notably, both of those cases were decided before *In re Asacol* and applied the now-limited standard espoused by *In re Nexium*.

First, Plaintiff asserts that "[c]laimants will, of course, need to identify the location of the machines from which their purchases were made; that will enable the administrator to perform a simple match with Compass' data to verify that they were, in fact, Compass' no-label machines." (Mem. at 25.) Plaintiff does not explain how the claim process would work, what information claimants would have to provide, or how the administrator would "perform a simple match." Without that information, the Court cannot determine whether that matching process, alone, would not involve extensive fact-finding or mini-trials. *See, e.g., Chatman*, 57 F. Supp. 3d at 561 ("[a]s [plaintiff] bears the burden of establishing that certification is warranted, it is incumbent on her to propose a workable definition and to demonstrate that there is a reliable and administratively feasible method of ascertaining the individuals encompassed by that definition"). But even assuming that Plaintiff could have proposed a viable process, it would not have weeded out Jaye's and Borrero's invalid claims, individuals who, with the assistance of counsel, incorrectly identified in their complaints Compass machines that neither actually made purchases from. It also would not have verified Jilek's claim, given his own repeated errors in identifying his own work location in both his complaint and his discovery responses.

Second, Plaintiff asserts without support that "most machines at issue are in workplaces, making it easy for employees to recall using them." (Mem. at 25.) Even if the Court were to consider this *ipse dixit* contention, the actual evidence in this case rebuts it. Jaye claimed she made a purchase at an airport, and neither Jilek nor Borrero correctly recalled the name and/or address of his own place of employment. Moreover, it is not enough for people to remember their place of employment and the identity of the vending machine company. They must also recall that the vending machine(s) at issue charged a differential price and were unlabeled at the time of the purchase.

Many locations (like those from which Baldwin, Pemberton, and Whitaker made purchases, and from which Borrero originally claimed to have made purchases) had a combination of properly labeled and unlabeled (or unsurveyed) machines. Credit-card statements cannot solve this problem: at most, those statements show purchases at Compass machines, not whether two-tier pricing was enabled, whether the machine bore a Label, or whether the claimant knew about the price differential.

Finally, Plaintiff argues that the "charge at issue is so small that it is unlikely to induce fraudulent claims" and "class members can obtain objective records with relative ease that would confirm their membership in the class." (Mem. at 25 (citations and quotations omitted).) The "low" dollar amounts here are belied by, at a minimum, the claims of Pemberton, Borrero, and Baldwin, each of whom allegedly made thousands of purchases. But the risk here is not just fraud, but also honest error. For all but a relatively few locations, the most recent claims would be for purchases made at least four years ago (the end date of the original survey), and as far back as ten years ago. This is not a hypothetical problem. Jaye and Borrero incorrectly claimed to have made purchases at Compass vending machines, and there is a significant question as to whether Whitaker made purchases at unlabeled machines given that all surveyed machines at his location had Labels. (*See* 1st Mueller Decl. Ex. 9, Doc. No. 261-9 ¶¶ 16-20; 1st Mueller Decl. Ex. 12, Doc. No. 261-12, ¶¶ 15-18.)[15]

*Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679 (S.D. Fla. 2014) is instructive. In that case, plaintiffs alleged that cooking oils sold by the defendant bore labels misleadingly describing the product as "All Natural." The court found ascertainability lacking because claimants could not be expected to reliably recall whether the cooking oil bore the description in question. During the

---

[15] Moreover, even if banking statements could solve this problem, they are not as easy to obtain as Plaintiffs state in the Motion. (*See* Section II.B. *infra*.)

relevant time, the defendant had sold nine different oils under the same brand name, only four of which ever bore the labeling. Moreover, of those four, whether the labels contained the challenged term changed over time. The court held that "the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class." *Id.* at 687; *see also In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-CV-150 JPO, 2015 WL 5730022, at *5 (S.D.N.Y. Sept. 30, 2015) (finding self-certification inadequate where recollection issues would render the process "an invitation to speculate, or worse") (citations and quotations omitted); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014) (declining to certify class of canned tomato products based on the "subjective memory problem" of purchasers having to recalled what they purchased, and when). As one court aptly noted,

> [A]scertaining class members via a self-identification process raises two obstacles. First, trusting a mere affidavit deprives defendants of their ability to challenge class members' membership, which could lead to due process concerns . . . . Second, allowing defendants to challenge each affidavit of membership risks creating a series of mini-trials just to evaluate the threshold issue of which persons are class members.

*Dapeer v. Neutrogena Corp.*, No. 14-22113-CIV, 2015 WL 10521637, at *7-8 (S.D. Fla. Dec. 1, 2015) (declining to certify class where plaintiff's own testimony demonstrated issues relating to reliability of affidavits). Plaintiff has failed to identify an ascertainable class here, a failure which requires denial of the Motion.

## B. Common Questions Do Not Predominate Over Individual Ones

Plaintiff cannot establish that questions common to class members predominate over individualized questions. *Comcast*, 569 U.S. at 33. This "analysis entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the

class from degenerating into a series of individual trials." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 469 (N.D. Cal. 2014) (quotation omitted).[16] Certification is proper only if this proof withstands a "rigorous analysis" that "frequently entail[s] overlap with the merits of the plaintiff's underlying claim." *Comcast*, 569 U.S. at 33 (citations omitted). Here, the questions integral to establishing both liability and damages for a claim of breach of contract can only be answered through individualized inquiry.

### 1. Individual Questions Arising From Plaintiff's *Prima Facie* Proof of Liability Overwhelm Common Ones

The basic questions necessary to establish liability under Plaintiff's breach of contract theory cannot be answered through the presentation of common evidence. The terms of the contract (*i.e.*, what price did each consumer agree to pay for each purchase), whether each purchase was made from a Compass vending machine, whether the vending machine had a Label at the time of purchase, and whether the purchase was made with knowledge of the price differential, are all inherently individualized. Each transaction from a vending machine at the agreed upon price is its own distinct contract. *See, e.g.*, *Anderson*, 2023 WL 1970953, at *7-8 ("[w]hether an implied-in-fact contract may be inferred depends on 'the circumstances, conduct, acts or relations' between [defendant] and each individual class member" and "this question could turn on whether and, if so, how much information was known about [defendant's] pricing by a class member or his agent before receiving a test"). This critical, and fundamental, question of knowledge turns on an individualized inquiry for each customer. *Id.*; *Herskowitz*, 460 F.R.D. at 471. "Numerous courts have denied certification where individualized inquiries are necessary to determine a class

---

[16] "Although similar to Rule 23(a)'s commonality requirement, the test for predominance under Rule 23(b)(3) is 'far more demanding' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" and will be satisfied where "the most likely common issue…cannot be deemed to predominate over the individualized issues of consent." *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

member's intent and/or consent." *Schertzer v. Bank of America, N.A.*, 19cv264 JM(MSB), 2022 WL 1004559, at *18 (S.D. Cal. Apr. 4, 2022); *see In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 325 F.R.D. 136, 166 (D.S.C. 2018) ("Determination of which specific overdraft charges were the 'result of' any particular customer's lack of information or understanding, . . . or the Bank's failure, would necessarily involve the Court's descent into a veritable quagmire of intricate fact-finding. . . . Class certification is not an appropriate vehicle to adjudicate a theory of liability that would necessitate thousands of mini-trials.").

Half of the named plaintiffs in this litigation admitted that they made purchases using a credit or debit card *after* being aware that they would be charged the ten-cent surcharge. (*See* Carter Dep. Tr. at 49:6-9, 50:21-51:6, 57:3-58:3 (confirming she continued to make purchases after learning about the ten-cent differential); Jilek Dep. Tr. at 84:18-86:6 (at the time he made the purchases alleged in his complaint, he knew about the price differential and continued to use the vending machines thereafter); Baldwin ROG Resp. at No. 3 (Baldwin learned about the price differential on his own at two different locations, and continued to make purchases, up to 3x per day during every work day, after discovering this fact). Yet they all voluntarily elected to purchase items with a debit or credit card despite knowing that they would be charged more than the display price. (Jilek Dep. Tr. at 71:19-22 (stating his belief that "ten cents [i]s not a large number" and a reasonable amount to pay for the convenience of using a credit card at the vending machine).)

2.     The Voluntary Payment Doctrine Defense Requires Individualized Inquiry

For similar reasons, the voluntary payment doctrine defense demonstrates how an inherently individualized inquiry is central to each claimed purchase. "[I]t is a 'well established rule of law that the voluntary payment of money by a person who has full knowledge of all the facts cannot be recovered.'" *Cross v. Formativ Health Mgmt., Inc*., 439 F. Supp. 3d 616, 630

(E.D.N.C. 2020); *see Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) (applying California law and noting "[t]he voluntary payment doctrine is an affirmative defense that bars the recovery of money that was voluntarily paid with knowledge of the facts"). A payment cannot be recovered if it is "made in ignorance or mistake of fact where the means of knowledge or information is in reach of the paying party but the party neglects to obtain it . . ." *Johnson v. Sprint Solutions, Inc*., No. 3:08-CV-00054, 2008 WL 2949253, at *2 (W.D.N.C. July 29, 2008) (voluntary payment doctrine barred plaintiff's claim where she continued to pay the charge after she became fully informed of the charge she contracted to pay); *see In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*, No. 7:16-04021, 2017 WL 2255780, at *3 (D.S.C. May 23, 2017) (noting viability of a voluntary payment doctrine affirmative defense requires "fact-intensive inquiries" such as "determining the state of Plaintiff's knowledge, and thus the voluntariness of payment").

The voluntary payment doctrine has routinely served as a bar to class certification. *Spagnola v. Chubb Corp*., 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ("[N]umerous courts have found that the predominance requirement is not satisfied where class claims are subject to a unique defense under the voluntary payment doctrine."); *see Endres v. Wells Fargo Banks*, No. C 06-7019, 2008 WL 344204, at *11-12 (N.D. Cal. Feb. 6, 2008) (denying class certification because, among other things, the voluntary payment doctrine would require individualized inquiries). The Eighth Circuit recently affirmed a trial court's decision to decertify a class on the ground that "the 'voluntary payment doctrine' would require substantial individualized inquiry and that common questions thus would not predominate" in a case where the plaintiff challenged fees charged to place calls to or from prisoners. *Stuart v. Global Tel*Link Corp.,* 956 F.3d 555, 561 (8th Cir. 2020) (considering decertification order entered in *Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258,

2018 WL 3212037, at *7 (W.D. Ark. June 29, 2018)); *see also Mojica*, 2018 WL 3212037, at *7; *Spagnola*, 264 F.R.D. at 98-99.

The Supreme Court has emphasized that a failure to consider affirmative defenses in a predominance analysis would violate a defendant's due process rights. "Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' . . . a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367. "The potential affirmative defenses here will involve the submission of significant individualized evidence by Defendants regarding the merits of the putative class members' claims in those states. And to ostensibly assume Defendant's' liability by preventing them from litigating these affirmative defenses would be to violate the Rules Enabling Act. 28 U.S.C. § 2072(b)." *Nelson v. Conduent Business Services, LLC*, 2020 WL 5587450, at *7 (N.D. Ga. Sept. 18, 2020) (citing *Wal-Mart*, 564 U.S. at 367). If Compass is not entitled to investigate and assert the applicability of the voluntary payment doctrine to individual claims, its due process rights would be violated.[17]

Plaintiff asks the Court to ignore the voluntary payment doctrine because "[t]he most Compass has found are several individuals who *later* learned of the surcharge. . . . Their claims are not barred by the defense." (Mem. at 34.) It is true that the voluntary payment doctrine would

---

[17] Individual issues raised by affirmative defenses can—and often do—preclude certification. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 438 (4th Cir. 2003) (finding defendants' "affirmative defenses are not without merit and would require individualized inquiry in at least some cases. Therefore, they may, indeed, 'depend on facts peculiar to each plaintiff's case.' Accordingly, 'class certification [wa]s erroneous.'"); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (where question of whether payment was known to plaintiffs was crucial to statute of limitations defense, court held that "when the defendant's 'affirmative defenses (such as ... the statute of limitations) may depend on facts peculiar to each plaintiff's case,' class certification is erroneous"); *Herskowitz*, 360 F.R.D. at 470 ("The Court's inquiry is not whether common questions predominate with respect to individual elements or affirmative defenses; rather, the inquiry is a holistic one, in which the Court considers whether overall, considering the issues to be litigated, common issues will predominate") (citations omitted)).

not operate to defeat <u>all</u> of those individuals' claims. But individuals do not have a single claim for all of their transactions; they have a distinct claim for each transaction, and each transaction is potentially subject to the voluntary payment doctrine. The Fourth Circuit has already rejected Plaintiff's theory that Compass "has the burden of demonstrating that resolution of that [affirmative] defense cannot occur on a class-wide basis." *Thorn*, 445 F.3d at 321-24 (affirming denial of class certification on predominance grounds ruling that "we therefore continue, as we must, to allocate to the plaintiff the burden of proving compliance with Rule 23"). The court found predominance lacking even where none of the named plaintiffs' claims were precluded by statute of limitations because "[t]he very fact that Appellants ask us to inspect their individual deposition testimony to determine whether any of them acquired actual or constructive knowledge reveals that resolution of the statute of limitations defense will similarly require the trier of fact to examine the particular circumstances of each individual class member." *Id.* at 323.

### 3.     Members of the Proposed Class Lack Standing Under *TransUnion*

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). In short, "[n]o concrete harm, no standing." *Id.* at 2200, 2214. The Motion's proposed definitions fail this basic test and cannot be certified because they include individuals who have not suffered an injury in fact: purchasers who made all purchases with knowledge of the price differential. *See Cuming v. S.C. Lottery Comm'n*, No. 3:05-CV-03608-MBS, 2008 WL 906705, at *4 (D.S.C. Mar. 31, 2008) ("In order to recover, class members must show that they were injured by Defendant's conduct."). In *Cuming*, plaintiffs sought certification of a breach of contract class for members who were misled into purchasing instant-win lottery tickets advertising "top prizes" after the "top prizes" had already been won. *Id.* at *1. In that case,

the Court found that in "order to determine which of these individuals has standing to sue, the court would have to conduct potentially thousands of individualized inquiries to determine whether the ticket had been purchased after the top prize had been awarded," and concluded that the "class definition is not sufficiently definite so as to allow the court to determine whether a particular individual is a member." *Id.* at *3-4. The Court also noted that it "would be required to conduct an inquiry into the individual circumstances and motivations of each class member" because some class members may have suffered no harm at all, some class members may have difficulty showing they were deceived or misled by defendant's advertising practices, and some class members may have purchased lottery tickets with full knowledge that the top prizes were no longer available. *Id.* Accordingly, the Court held class certification was not appropriate. *Id.* at *7.

Where individuals made purchases knowing about the existence of the price differential prior to purchasing from Compass's vending machines, that class member does not have "an injury in fact" and cannot "show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Student A v. Liberty Univ., Inc.*, No. 6:20-CV-23, 2023 WL 6612525, at *10 (W.D. Va. Oct. 10, 2023) (denying class certification where class members did not show injury-in-fact sufficient for standing).

4.    Common Questions of Damages Do Not Predominate over Individual Ones

In order to show that common issues predominate over individual ones, Plaintiff must present a methodology that measures injury on a class-wide basis through use of a "common methodology." *Comcast*, 569 U.S. at 30 (internal citation and quotation omitted). "[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."

*Id.* The Supreme Court instructed lower courts to conduct a "rigorous analysis" to determine whether the purported damages model fits the liability case. *Id.* at 35; *see KBC Asset Management NV v. 3D Systems Corporation*, 0:15-2393-MGL, 2017 WL 4297450, at *7 (D.S.C. Sept. 28, 2017) ("Calculations need not be exact . . . but at the class-certification stage (as at trial), any model supporting 'plaintiff's damages case must be consistent with its liability case.'") (citation omitted).

Here, Plaintiff seeks to certify a class that will recover "the extra money (the sum of all the dimes) that he or she paid for purchases with a card." (Mem. at 18.) To calculate this amount, Kriegler aggregated all two-tier revenue collected at each unlabeled vending machine. (Opening Rpt. ¶ 38.) But in doing so, Kriegler did not account for those consumers who knew about the charge at the time of purchase and agreed to pay that price, thereby receiving the benefit of the bargain they entered into. (*Id.*; Kriegler Dep. Tr. at 9:24-11:22 (taking class member's knowledge of the price differential into account "was not part of [his] assignment.").)

Kreigler's damages calculation is wholly inconsistent with a breach of contract damages theory. Whether considered as part of Plaintiff's *prima facie* case or through the lens of voluntary payment, the correct measure of damages for any particular class member's breach of contract claim is the total price differential paid without knowledge of the charge, not simply the total price differential. Because the terms of each contract (what each class member understood he or she would pay by using their credit or debit card) is an inherently individualized question of each person's knowledge, the top-down analysis Kriegler performed does not actually measure the damages experienced by the class as a whole.[18] "To fulfill the mandates of *Comcast*, Plaintiff must satisfy the Court its damages model will measure only the damages matching its theory for liability." *KBC Asset Management NV*, 2017 WL 4297450, at *7.

---

[18] For these same reasons, Plaintiff's argument that "[s]hould there be a false claim, therefore, it will not increase the amount Compass will have to pay," (Mem. at 28), is simply wrong.

Determining each putative class member's damages (the total of their purchases at unlabeled Compass machines without knowledge of the price differential) in connection with each individual contract (if any) would "overwhelm" any questions common to the case. Plaintiff's claim that the Court cannot consider whether common questions of damages predominate over individual ones at the class certification stage runs is inconsistent with the Supreme Court's mandate in *Comcast* and the law of this Circuit. *See In re Zetia (Ezetimibe) Antitrust Litigation*, 202WL5778756, at *18 (E.D.Va. Aug. 14, 2020) (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016) (the "predominance requirement applies to damages as well, because the efficiencies of the class action mechanism would be negated if '[q]uestions of individual damage calculations . . . overwhelm questions common to the class'") (quoting *Comcast*, 569 U.S. at 34).

Plaintiff misapplies *Gunnells*, 348 F.3d 417 and similar cases. (Mem. at 37-38.) Unlike those cases, where courts held that individualized proof of damages will not defeat class certification as long as common liability issues predominate, here liability and damages issues are individualized and intertwined. "Accordingly, demonstrating damages for one class member would have little practical bearing on any damages suffered by another class member." *Hooker*, 2023 WL 3020967, at *13-14 (holding that a class action does not provide a superior method for resolving claims because individual damage evaluations predominate over common liability issues) (citing *Wheeler v. United Services Auto. Ass'n*, No. 3:11-cv-00018, 2013 WL 4525312, *5 (D. Ak. Aug. 27, 2013) (individual issues predominated because "to calculate damages, the Court would be required . . . to conduct a separate evidentiary proceeding for [each] class member").

*Hall v. Marriott Int'l, Inc.,* 344 F.R.D. 247 (S.D. Cal. 2023) is also instructive. In *Hall*, the plaintiffs proposed a class of all consumers who paid Marriott Hotel's resort fees, but they failed to distinguish between those who did so knowing about the resort fees and those who were

deceived and harmed. *Id.* at 277. Like Kriegler, the expert in Hall measured damages by calculating the total amount of such fees paid by consumers during the class period, notwithstanding the possibility that a significant portion of consumers were aware of the fee when they made their reservations. *Id.* The Court found that predominance could not be established because the damages model made no attempt to distinguish the consumers who were deceived by the allegedly inadequate resort fee disclosures from consumers who were aware of and willingly paid the fee (and thus were not harmed). *Id.*

Plaintiff tries to sweep this issue under the rug by claiming without support that "Compass can show at most that, in the scope of a $13.8 million damages estimate, a de minimis number of purchases might have been made with knowledge." (Mem. at 38.) On the contrary, Moore, Jilek, Carter, and Baldwin acknowledge that they agreed to purchase items with a credit or debit card after they knew they would be charged a surcharge. Baldwin even admits he learned about the price differential within a short time after beginning to make purchases at each of his locations, and claims to have made three purchases a day thereafter.[19] Jilek and Regus both told multiple people about the price differential; there is no way to quantify how many purchases at that location were subsequently made with knowledge. It is unknown whether Pemberton or Whitaker made any purchases with knowledge, but the presence of machines with Labels at their locations strongly suggests that, like Baldwin, they may have discovered the practice (and who knows whether they will be able to accurately distinguish between their purchases at labeled and unlabeled machines).

---

[19] Common sense suggests that the more purchases an individual made, the more likely the individual was to have learned of the practice. This would result in purchases by those individuals with knowledge causing a disproportionately large reduction in overall damages. For instance, the purchases that Baldwin made with knowledge (three times per day for months or years at each location) exceed by orders of magnitude the total purchases made without knowledge by Jilek, Moore, and Carter combined. Even including Baldwin's purchases without knowledge, the vast majority of purchases by plaintiffs from whom discovery has been obtained were made with knowledge.

Plaintiff's statement that "if [Baldwin] were not a rarity, surely Compass would have found more such individuals," (Mem. at 37), is not only circular logic,[20] it simply isn't true. Evidence from this litigation—to say nothing of those named Plaintiffs who discovered the price differential on their own—simply says otherwise. (*See* Goldring Dep. Tr. at 47:3-15.) The calculation of class damages in this case, like liability, require individualized inquiry and preclude certification.

5.     <u>Variations in the Law Governing Breach of Contract Preclude Certification of Nationwide Class</u>

Plaintiff's nationwide common law breach of contract claim implicates the laws of 33 different states. In a class action potentially governed by the laws of multiple states, identifying the applicable body or bodies of state law is critical because "variations in state law may swamp any common issues and defeat predominance." *Ward*, 257 Fed. App'x. at 628-29. Plaintiff, as the party seeking class certification, has the burden to prove that variations in state law and the impact those variations have on the legal standards applicable to each class member, will not overwhelm common issues. *Id.* (citing *Cole v. General Motors Corp.*, 484 F.3d 717, 730 (4th Cir. 2007) (decertifying class where plaintiffs have failed to adequately address, much less "extensively analyze," the variations in state law and the obstacles they present to predominance)). "[Ba]sed primarily on the burden of applying multiple states' laws, an *overwhelming number* of federal courts have denied certification of nationwide state-law class actions." *Schnall v. AT&T Wireless Services, Inc.*, 259 P.3d 129, 271 (Sup. Ct. Wash. 2011) (collecting dozens of federal cases denying certification of nationwide state-law class actions) (emphasis in original).

---

[20] The statement is astounding in light of Plaintiff's repeated efforts to interfere with Compass's investigation of these facts, taking the position that Compass is not entitled to discovery from absent class members even if those members were at one time named plaintiffs. (*See, e.g.*, 2nd Mueller Decl. Ex. 15, Withdrawal E-Mails (declining to produce Baldwin for deposition); Doc. No. 212 (Motion to Quash Deposition of Virginia Carter).)

Here, Plaintiff does not address the substantial distinctions among the various states' laws, and includes cases that are inapplicable to the present circumstances. Further, and as discussed below, Plaintiff makes no reasonable effort to address the application of those elements to the claims, defenses, and facts of the case at bar.

a.     *The Statutes of Limitations Is Not Consistent Across the 33 States*

The proposed class is limited to those persons or entities who made purchases "within the applicable statute of limitations preceding the filing of this lawsuit . . . ." (Mem. at 23.)[21] However, "different states apply different statutes of limitations, and those differences may affect whether putative class members have viable claims." *Meek v. Kansas City Life Ins. Co.*, 19-00472-CV-W-BP, 2022 WL 499049, at *12 (W.D. Mo. Feb. 7, 2022) (finding that individual issues predominated because "[a]pplying 49 separate statutes of limitations—and the various doctrines associated therewith—would be unmanageable"). Statutes of limitations differ not only as to their length, but also as to when each begins to run. *Id.* (describing differences in laws between states that apply discovery rule and those that do not).

b.     *Compass's Affirmative Defenses are Not Commonly Applied Among The 33 States at Issue*

Compass has asserted a waiver defense: putative class members who continued to make credit or debit card purchases after learning of the ten-cent charge without asserting a cause of action or notifying Compass, may be deemed to have waived their claim. "Most jurisdictions define waiver as the voluntary or intentional relinquishment of a known right. This uniformity, however, unravels beyond the definition." *Sacred Heart v. Humana Military*, 601 F.3d 1159, 1180 (8th Cir. 2010). Jurisdictions differ on the extent to which conduct alone may be deemed a waiver

_____

[21] Kriegler did not take any statutes of limitations into account in preparing his damages calculations.

of known rights. *Id.* at 1180-81. For example, in Florida, "'[w]here a party fails to declare a breach of contract, and continues to perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement.'" *Id.* at 1181 (citation omitted). On the other hand, "the Louisiana courts could hardly be more explicit in pronouncing that '[w]aiver . . . is not favored in Louisiana law, . . . such [that] claims [of waiver] must be examined carefully and strictly.'" *Id.* (citation omitted). A finding as to whether any particular class member waived his or her right to assert a claim for breach of contract "would require both a legal determination of the scope of the waiver doctrine in the relevant state and a factual determination as to whether that class member's conduct constitutes waiver." *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513 (D. Minn 2014). Compass's waiver defense, therefore, will require individual inquiries and defeats predominance.[22]

> c.  *The Allowance or Allocation of Pre-Judgment Interest Varies From State to State*

Though Plaintiff seeks pre-judgment interest, he presents no methodology for how the pre-judgment interest will be distributed amongst class members. (Opening Rpt. ¶ 40.) State laws vary as to whether and how to assess prejudgment interest when applying common law. In Missouri, for example, "courts have allowed the recovery of prejudgment interest on oral contracts." *Reliance Ins. Co. in Liquidation v. Chitwood*, 433 F.3d 660, 665 (8th Cir. 2006). However, interest is computed from the earlier of the date of demand or the date of the filing of the complaint. *Id.* at 665-666. Washington, on the other hand, calculates prejudgment interest from the date the party was entitled to the money. *Lee v. ITT Corp.*, 275 F.R.D. 318, 323 (W.D. Wash. 2011) (application of varying state laws destroys predominance where Washington law conflicted with other laws

---

[22] As noted by Plaintiff and as discussed above, Compass also asserted a voluntary payment doctrine defense and the putative class members' varying understandings regarding the price differential are key to this issue.

which could potentially apply to the award of double damages, availability and amount of prejudgment interest, and award of attorney fees); *see also U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.,* No. 12-CV-3175 (PAM/JSM), 2015 WL 12778848, at *2 (D. Minn. Mar. 19, 2015) (noting that states have "disparate interest rates" and comparing the different procedures utilized by Minnesota with Delaware). Resolving issues regarding Plaintiff's demand for pre-judgment interest creates the necessity for further individualized inquiries into each claimant's state laws and destroys predominance.[23]

### C.     Plaintiff Proposes no Administratively Feasible Plan to Manage the Class

Plaintiff virtually ignores the manageability facet of class certification, claiming only that Compass's "objections all related to the supposed difficulty in proving damages, an issue that cannot bar certification, as shown above." (Mem. at 39.) Even if Plaintiff was correct that the need for individualized damage calculations did not defeat ascertainability and predominance, manageability is a separate element on which Plaintiff bears the burden of proof. Plaintiff has not provided any details on what his plan is to manage the class, and therefore has failed to meet his burden. *See Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977); *Butt v. Allegheny Pepsi-Cola Bottling Co.*, 116 F.R.D. 486, 493 (E.D. Va. 1987) (concluding plaintiff failed to carry burden of showing manageability and finding case "could well require an overwhelming and unmanageable number of mini-trials, with juries, in order to resolve the issues of injury and damages").

To the extent that Plaintiff's plan is to seek self-identifying affidavits from putative class members, testimony from former and current plaintiffs have established reason to doubt the efficacy and reliability of this method as set forth above. *See Ault v. JM Smucker Co.*, 310 F.R.D.

---

[23] Prejudgment interest must also be reduced to take account for the purchases that are not applicable as a result of the voluntary payment doctrine.

59, 66 (S.D.N.Y. 2015) (self-identification not feasible due to, *inter alia*, the number of defendant's brands at issue); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (rejecting self-identification affidavits without some verification process being set in place, holding that "if absent class members are permitted to testify to their smoking histories by way of affidavit, on the other hand, [defendant] would be forced to accept their estimates without the benefit of cross-examination. Such a procedure would not be proper or just."). Forcing Compass to simply accept claims at face value would be to abrogate its right to test claims and assert affirmative defenses.

### D.    In the Alternative, Plaintiff's Claims Are Not Typical of The Class

Plaintiff Jilek previously contended that the fact that he and other former plaintiffs continued to make purchases at unlabeled vending machines after they learned about the ten-cent charge is *atypical* of the rest of the rest of the class. (Mem. at 15 ("None of those examples of knowing purchases would be typical of class members who did not join this lawsuit.").) The implication (unsupported as it may be) is that had it not been for the involvement of counsel, Jilek would never have learned of the charge and therefore the remainder of the putative class—who were not contacted by counsel—must have remained unaware of the charge.

Compass disagrees that the manner in which plaintiffs learned of the price differential has any bearing on whether absent class members made purchases with knowledge. Both Baldwin and Regus admitted that they discovered the price differential on their own, and Baldwin continued to make purchases after that discovery. (Baldwin ROG Resp. No. 3; Regus Dep. Tr. at 23:3-23.) If there were any unlabeled machines at Pemberton's or Whitaker's work locations, there is a strong chance that they ultimately discovered the price differential and continued to make purchases.

However, if Plaintiff believes that his experience is atypical, then he cannot serve as a class representative. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Anderson*, 2023 WL 1970953, at *12 (quoting *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006). This requirement dictates that class representatives have the same or similar grievances as the other class members.

## V.     CONCLUSION

There is no ascertainable class. There is no calculation of class-wide damages tethered to the legal theories at issue in this case. There is no manageable claims process unless Compass's due process right to challenge claims and assert its affirmative defenses are ignored. What Plaintiff proposes is to take from Compass a sum of money that he acknowledges, as he must, exceeds the damages actually suffered by class members and do something with that sum (without explaining what that something is). Accordingly, Compass respectfully requests that the Court deny Plaintiff James Jilek's Motion for Class Certification.

Dated: April 5, 2024                              Respectfully submitted,

By: /s/ Joseph C. Wylie II
    Joseph C. Wylie II, 6270852IL *(Pro Hac Vice)*
    Nicole C. Mueller 6309735IL *(Pro Hac Vice)*
    Kenn Brotman 6236771IL *(Pro Hac Vice)*
    **K&L GATES LLP**
    70 West Madison Street, Suite 3300
    Chicago, IL 60602-4207
    Tel:   (312) 372-1121
    Fax:   (312) 827-8000
    joseph.wylie@klgates.com
    Nicole.Mueller@klgates.com
    Kenn.Brotman@klgates.com

    Paul W. Sweeney Jr., 112511CA
    *(Pro Hac Vice)*
    **K&L GATES LLP**
    10100 Santa Monica Blvd., 8th Floor
    Los Angeles, CA 90067
    paul.sweeney@klgates.com
    Secondary: litigation.docketing@klgates.com

    Daniel D. McClurg
    N.C. Bar Number 53768
    **K&L Gates LLP**
    300 South Tryon Street, Suite 1000
    Charlotte, North Carolina 28202
    Phone: (704) 331-7400
    Fax:   (704) 353-3114
    Email: daniel.mcclurg@klgates.com

    *Attorneys for Compass Group USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on April 5, 2024, which will serve all counsel of record.

/s/ Joseph C. Wylie II