**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| JAMES JILEK, et al., on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:23-cv-00818-RJC DCK |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, | ) ) ) | |
| Defendant. | ) ) ) | |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     REPLY TO COMPASS' FACTUAL BACKGROUND .................................................. 2

III.    ARGUMENT .................................................................................................... 5

   A.   Compass' Arguments on Ascertainability Are Either Based on a Straw Man or Are Even Weaker. ............................................................................................... 5

      1.   Compass' principal argument against ascertainability attacks a straw man because Plaintiff does not advocate using affidavits standing alone. ........................................... 5

         a.   Not surprisingly, Compass' ascertainability cases do not support it. ........................ 6

         b.   Under the law in the Third Circuit, on which Compass purports to rely, this class is ascertainable. ........................................................................................ 7

      2.   The logic of out-of-Circuit cases regarding affidavits applies here. ............................... 9

      3.   Compass' "credibility" challenges to ascertainability fall flat. ................................... 11

   B.   Compass' Multiple Predominance Arguments Have No Merit. ..................................... 12

      1.   Compass has not refuted Plaintiff's argument that common evidence will establish Plaintiff's prima facie case. ........................................................................ 12

      2.   Compass' voluntary payment argument fails because there is no evidence to support it and, in any event, its cases represent the minority position. ......................................... 14

      3.   Compass' standing argument is based on speculation. ................................................. 17

      4.   Compass' damages argument is based on speculation and is contrary to case law, including from cases Compass claims to rely on. ......................................................... 18

      5.   Compass' state law arguments either ignore how Plaintiff proposes to handle the laws of different states or rely on speculation. ................................................................. 20

   C.   Compass' Manageability Argument Fails for the Same Reason as with Damages. .......... 23

   D.   Compass' Typicality Argument Fails Because Commonality Is Present. ......................... 24

IV.    CONCLUSION .................................................................................................. 25

i

**TABLE OF AUTHORITIES**

**Cases**                                                                          **page(s)**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ..................................... 15

*Anderson v. Lab. Corp. of Am. Holdings*,
   2019 U.S. Dist. LEXIS 138620 (W.D.N.C. Aug. 16, 2019) ................................... 13

*Anderson v. Lab. Corp. of Am. Holdings*,
   2023 U.S. Dist. LEXIS 23532 (M.D.N.C. Feb. 13, 2023) ................................ 7, 13

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................................ 10

*Camafel Bldg. Inspections, Inc. v. BellSouth Advert. & Pub'lg Corp.*,
   2008 U.S. Dist. LEXIS 18192 (N.D. Ga. Mar. 7, 2008) ...................................... 16

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
   91 F.4th 202 (4th Cir. 2024) ..................................................................... 7

*Chatman v. GC Servs., LP*,
   57 F. Supp. 3d 560 (D.S.C. 2014) ............................................................... 6

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*,
   867 F.3d 434 (3d Cir. 2017) ............................................................... 7, 8, 10

*Cox v. Porsche Fin. Servs.*,
   330 F.R.D. 322 (S.D. Fla. 2019) ............................................................... 15

*Cuming v. S.C. Lottery Comm'n*,
   2008 U.S. Dist. LEXIS 26917 (D.S.C. Mar. 28, 2008) ...................................... 17

*DeLoach v. Philip Morris Companies, Inc.*,
   206 F.R.D. 551 (M.D. N.C. 2002) ............................................................. 23

*Dijkstra v. Carenbauer*,
   No. 5:11-cv-152 (N.D. W.Va.) ................................................................. 24

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................... 15

*Endres v. Wells Fargo Bank*,
   2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008) ..................................... 16

*FTC v. Tel. Prot. Agency, Inc.*,
    2005 U.S. Dist. LEXIS 53234 (W.D.N.C. Aug. 29, 2005)............................................... 19

*Gawry v. Countrywide Home Loans, Inc.*,
    640 F. Supp. 2d 942 (N.D. Ohio 2009)...................................................................... 16

*Gunnells v. Healthplan Servs.*,
    348 F.3d 417 (4th Cir. 2003) ......................................................................... 13, 24

*H.B. Rowe Co., Inc. v. Tippett*,
    615 F.3d 233 (4th Cir. 2010) ............................................................................... 19

*Hall v. Marriott Int'l, Inc.*,
    344 F.R.D. 247 (S.D. Cal. 2023) ........................................................................... 20

*Hargrove v. Sleepy's LLC*,
    974 F.3d 467 (3d Cir. 2020)......................................................................... passim

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014).......................................................................... 14

*Hooker v. Citadel Salisbury LLC*,
    2023 U.S. Dist. LEXIS 68861 (M.D.N.C. Apr. 20, 2023) ...................................... 20

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018)........................................................................... 10, 11

*In re Dollar Gen. Corp.*,
    2019 U.S. Dist. LEXIS 58082 (W.D. Mo. Mar. 21, 2019) ..................................... 10

*In re Marriott Int'l, Inc.*,
    341 F.R.D. 128 (D. Md. 2022)....................................................................... 6, 7, 23

*In re Modafinil Antitrust Litig.*,
    837 F.3d 238 (3d Cir. 2016) ............................................................................... 20

*In re Nexium*,
    777 F.3d 9 (1st Cir. 2015)................................................................................... 11

*In re Niaspan Antitrust Litig.*,
    67 F.4th 118 (3d Cir. 2023) ................................................................................... 9

*In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*,
    2017 U.S. Dist. LEXIS 114806 (W.D. Mo. July 24, 2017)................................... 11

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
    325 F.R.D. 136 (D.S.C. 2018) ............................................................................. 13

iii

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ........................................................................ 23, 24

*In re Zetia Ezetimibe Antitrust Litig.*,
    2020 U.S. Dist. LEXIS 183601 (E.D. Va. Aug. 13, 2020)...................................... 20

*Kay Co., LLC v. EQT Prod. Co.*,
    2017 U.S. Dist. LEXIS 228275 (N.D.W. Va. Sep. 6, 2017) ................................. 24

*KBC Asset Mgmt. NV v. 3d Sys. Corp.*,
    2017 U.S. Dist. LEXIS 159781 (D.S.C. Sep. 28, 2017)......................................... 19

*Kelly v. Realpage Inc.*,
    47 F.4th 202 (3d Cir. 2022) ............................................................................. 9

*Kimber Baldwin Designs, LLC v. Silv Communs., Inc.*,
    2016 U.S. Dist. LEXIS 173481 (S.D. Ohio Dec. 15, 2016) ................................. 15

*Krakauer v. Dish Network L.L.C.*,
    311 F.R.D. 384 (M.D.N.C. 2015) ................................................................. 8, 10

*Krakauer v. Dish Network L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ........................................................................... 6

*Lopez v. Wash. Mut. Bank, F.A.*,
    302 F.3d 900 (9th Cir. 2002) ......................................................................... 16

*Mojica v. Securus Techs., Inc.*,
    U.S. Dist. LEXIS 109017 (W.D. Ark. June 29, 2018) ......................................... 16

*Morales v. Kraft Foods Grp., Inc.*,
    2015 WL 10786035 (C.D. Cal. June 23, 2015) .................................................. 10

*Mullins v. Direct Dig., LLC*,
    795 F.3d 654 (7th Cir. 2015) ......................................................................... 10

*Richards v. NewRez LLC*,
    2021 U.S. Dist. LEXIS 51233 (D. Md. Mar. 18, 2021)......................................... 6

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*,
    601 F.3d 1159 (11th Cir. 2010) ..................................................................... 22

*Schertzer v. Bank of Am., N.A.*,
    2022 U.S. Dist. LEXIS 62741 (S.D. Cal. Apr. 4, 2022)......................................... 14

iv

*Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharmacy, Inc.*,
    540 F. Supp. 3d 182 (D.R.I. 2021) ........................................................................... 11

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015) ........................................................................ 6, 25

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................................... 15, 16

*Stuart v. Glob. Tel \*Link*,
    956 F.3d 555 (8th Cir. 2020) .................................................................................. 16

*Student A v. Liberty Univ., Inc.*,
    2023 U.S. Dist. LEXIS 182018 (W.D. Va. Oct. 10, 2023) ................................... 18

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) .................................................................................. 17

*Underwood v. Kohl's Dep't Stores, Inc.*,
    2017 U.S. Dist. LEXIS 186927 (E.D. Pa. Nov. 13, 2017) ................................... 15

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) .......................................................................... 15, 17

*Vance v. DIRECTV, LLC*,
    2022 U.S. Dist. LEXIS 140518 (N.D.W. Va. Aug. 1, 2022) ................................ 23

*Ward v. Dixie Nat'l Life Ins. Co.*,
    257 F. App'x 620 (4th Cir. 2007) .......................................................................... 21

*Wheeler v. United Servs. Auto. Ass'n*,
    2013 U.S. Dist. LEXIS 122447 (D. Alaska Aug. 27, 2013) ................................. 20

*Whitton v. Deffenbaugh Disposal, Inc.*,
    2014 U.S. Dist. LEXIS 153405 (D. Kan. Oct. 28, 2014) ..................................... 15

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................. 23

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 1, 3

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 24

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 12, 20

**<u>Other Authorities</u>**

1 McLaughlin on Class Actions § 4:2 (15th ed. 2018) ................................................................ 10

2 Newberg and Rubenstein on Class Actions § 4:54 (6th ed.) ..................................................... 21

2 Newberg and Rubenstein on Class Actions § 4:61 (6th ed.) ..................................................... 20

# I. INTRODUCTION

The number of grounds on which Compass contends this motion must fail is truly remarkable. Is this the worst class certification motion in the history of Rule 23, or is Compass simply grasping at multiple straws? Plaintiff shows herein that it is indisputably the latter.

And the word "straws" in the previous paragraph is fitting because Compass leads off with a classic straw-man argument. In contending that this class action fails because the class is not ascertainable, it asserts that Plaintiff proposes that ascertainability of class members be shown by submissions of affidavits "standing alone."[1] But Plaintiff never proposed that. To the contrary, class members will be identified by submissions of affidavits (or bank records) *in combination with Compass' objective records*,[2] an approach approved in this Circuit as well as the Third Circuit, on whose approach to ascertainability Compass heavily relies. As a result, Compass' argument falls apart.

Compass' myriad predominance arguments are no more availing:

- It argues that there are individual questions regarding its liability because each purchase must supposedly be proved separately, but it ignores the common evidence that makes out the class's prima facie case for breach of contract. Its argument, if valid, would bar any breach-of-contract class action.

- Its voluntary-payment argument boils down to contending that it can defeat predominance with mere *allegations* of the affirmative defense without an iota of supportive evidence, something no case has ever held and several have refuted. And even ignoring that reason to discount Compass' cases, they are in the distinct minority.

---

[1] *See* Compass Group's Resp. in Opp. to Plff James Jilek's Motion for Class Cert. ("Def. Mem."), Doc. 295, at 3-13.

[2] Memorandum in Support of Plaintiffs' Motion for Class Certification ("Plff. Mem."). Doc. 293-1, at 25.

1

- Compass' standing argument fails for the same reason. There is no basis to find, on this record, that any class member's claim will fail on standing grounds.

- Compass argues that the damages issue precludes predominance because of the *possibility* that absent class members may have continued to make card purchases after learning of the upcharge – without any examples of where that happened. But not only does Compass ignore Plaintiff's case law to the contrary, most of the cases Compass cites support *Plaintiff* by holding that a damages expert need not exclude damages due to other causes at the class certification stage or that the mere possibility of uninjured class members cannot defeat predominance. And its other cases simply don't apply here.

- Compass argues that state law differences defeat predominance in three ways, but, as for two, the statute of limitations and prejudgment interest, it ignores how Plaintiff proposes to handle them, much less argues that the methods are improper, and as to the third, the affirmative defense of waiver, there is no evidence indicating that this is a viable defense.

Compass argues that the motion fails on manageability grounds, but it mainly relies on its straw-man argument against the use of affidavits. Its argument is therefore meritless.

Finally, Compass challenges typicality, an argument at which the court "need not tarry for long" because, as Compass implicitly concedes, commonality is present. *1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 523 (4th Cir. 2022).

## II.     REPLY TO COMPASS' FACTUAL BACKGROUND

Compass' "Factual Background" (Def. Mem. 3-13) takes no issue with Plaintiff's Statement of Proceedings or Statement of Facts (Plff. Mem. at 3-23), but it does put its own gloss on the facts. For example, it claims that several former plaintiffs dismissed their cases "in response to" their depositions having been noticed, as though they dismissed to avoid testifying. But each of

2

them presented different reasons for dismissing, reasons that Compass ignores.[3] And other than the brain-damaged Mr. Borrero, Compass was not prevented from deposing any of them.[4]

Moreover, certain "facts" that Compass presents are either false or misleading. For example, Compass states that Mr. Moore doesn't know if he was overcharged before March 2018, when counsel's assistant Carolyn told him of the surcharge, suggesting that he never made an unknowing purchase. Def. Mem. 6 (citing deposition *excerpts* it submitted as Ex. B, Doc. 260-2, 23:8-20; 24:3-9; 54:16-21). But his *full* transcript shows that he corrected that testimony because his records showed he made later card purchases, something he consistently said he never did after learning of the surcharge. Doc. #257-9 (Moore Tr.), 58:19-61:9. Thus, he had to have learned of the surcharge later, *after* making the card purchases shown in his records:

> Q. . . . And -- and so it -- does it make sense, then, that she told you about the extra 10 cents after those dates?
>
> A. Yes, it makes sense.
>
> Q. Okay. And is that what you now think happened?
>
> A. Yes.

*Id.*, 61:2-9.

Compass criticizes Mr. Borrero for changing his purchase locations during discovery and identifying a place with no Compass machines. Def. Mem. 10-11. But it doesn't acknowledge that he suffers from traumatically induced brain damage with both short-term and long-term

---

[3] George Moore withdrew because his need to care for his ailing mother and mother-in-law prevented him from bearing the responsibilities of class representative. Doc. # 257-9 (Moore Tr.) 56:18-57:7. Virginia Carter wanted to drop out long before her deposition was noticed in 2023. Doc. 257-3 (Carter Tr.) 24:7:21 (she made the decision shortly after leaving her job at 1010 Market); (Carter Tr.) 87:10-88:6 (left 1010 Market in 2018 or 2019). Sean Madelmayer no longer wished to serve as a class representative. *See* Docs. 202 and 203. Brian Baldwin concluded, after beginning the process of preparing for his deposition, that the case would entail much more work than he expected. *See* Plff. Suppl. to Motion for Class Cert., Doc. 294, at 1. Andres Borrero could not satisfy Rule 23's adequacy requirement because of short-term and long-term memory loss due to traumatically induced brain damage. *Id.*

[4] Compass could have subpoenaed Messrs. Madelmayer and Baldwin, as it did Ms. Carter, but did not.

memory loss. *See* Plaintiffs' Supplement to Motion for Class Certification, Doc. 294. Surely, his confusion is understandable and should not be held against the other putative class members.

Compass also points out that the locations of some individuals' purchases had both labeled and unsurveyed machines and, misleadingly in the case of others, labeled and unlabeled machines. Def. Mem. 9 (Baldwin), 11 (Borrero, Pemberton), and 12 (Whitaker). It sums up that evidence thusly: "Many locations (like those from which Baldwin, Pemberton, and Whitaker made purchases, and from which Borrero originally claimed to have made purchases) had a combination of properly labeled and unlabeled (or unsurveyed) machines." Def. Mem. 24. Note the parentheses around "unsurveyed," as though it were an exception. It's not. For Messrs. Borrero and Whitaker, Compass acknowledges that the machines were either labeled or unsurveyed, not unlabeled.

Regarding Messrs. Baldwin and Pemberton, Compass relies on a Declaration by Attorney Nicole Mueller who reports on results of surveys at the workplaces where they made their purchases. Doc. # 261 (Mueller Decl.), ¶¶ 18, 20. Those reports show that, of the surveyed machines at a given workplace, except for one entry that's an obvious error, they were unlabeled in the earlier visits and labeled later as they should have been, given that the surveyors were to place labels on unlabeled machines. *See* Ex. A (Declaration of Richard S. Cornfeld ["Cornfeld Decl."], ¶¶ 4-18) and Ex. 1 and Ex. 2 thereto. At none of these workplaces were there labeled and unlabeled machines at the same time. *Id*. ¶18. Moreover, among the thousands of locations nationwide where Compass had machines, it has not shown a single location that had both labeled and unlabeled machines simultaneously.

Compass also takes aim at Plaintiff's expert, Dr. Brian Kriegler. It states, based on his deposition, that he "did not perform the sampling and analysis necessary to calculate an actual

4

estimate of damages" (Def. Mem. 12, citing Kriegler Tr. 19:4-22:4), suggesting that he *never* did it. But that's not true, as Compass knows. At the time of his deposition, he had only proposed a methodology. Doc. #157-7 (Kriegler Report), ¶38. He couldn't do the full analysis without Compass' photographs, which it inexplicably had never produced or even *mentioned* until June 27, 2023, just six weeks before his expert report was due. *See* Cornfeld Decl. ¶ 19.  Dr. Krieger obtained photos of a random sample of machines later. He described the full analysis with them, along with Compass' newly revised and produced Survey Instance Report, in his Second Supplemental Report, Doc. # 257-18. *See* discussion in Plff. Mem., 18-20, 21-23.

## III.   ARGUMENT

### A.   Compass' Arguments on Ascertainability Are Either Based on a Straw Man or Are Even Weaker.

#### 1.   Compass' principal argument against ascertainability attacks a straw man because Plaintiff does not advocate using affidavits standing alone.

Compass' principal argument regarding ascertainability is based on a straw man, namely, as it titles its first and longest subsection on this issue, "Ascertainability Cannot be Satisfied Through Affidavits Standing Alone." Def. Mem. 16. *See also id.* at 16-17 ("[I]n Plaintiff's view, an affidavit standing alone would be sufficient to verify a claim.").

A simple reading of Plaintiff's brief shows that that was not Plaintiff's argument. Yes, Plaintiff stated that class members who lack credit or debit card records showing their purchases can provide affidavits, *but not standing alone.* Here is what Plaintiff said about it in full:

> Class members can submit their credit or debit card records to show purchases at Defendant's machines, or if needed, provide affidavits to verify card purchases. Claimants will, of course, need to identify the location of the machines from which their purchases were made; that will enable the administrator to perform a simple match with Compass' data to verify that they were, in fact, Compass' no-label machines.

Plff. Mem. 25. Compass' data, as Plaintiff stated, will be objective records that "come from

5

Defendant's own survey of its machines." *Id.* at 26. They are the same records that *Compass itself* used to show that Ms. Jaye's and Mr. Borrero's purchases were not from its machines and that the locations of other purchases contained labeled machines. Thus, Plaintiff will satisfy the test for ascertainability from *In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 135 (D. Md. 2022).

### a. Not surprisingly, Compass' ascertainability cases do not support it.

As might be expected, considering that Compass is arguing against a position that Plaintiff never took, the cases Compass cites in this section of its brief, both from within and outside this Circuit, do not support it. For instance, Compass' reliance on *Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 657-58 (4th Cir. 2019), and *Marriott*, *see* Def. Mem. 18, 19, is based on the ground that they applied objective records in finding the classes ascertainable, again aiming at a straw man because Plaintiff proposes doing the same thing. *See* Plff. Mem. 24-26.

The basis of the decision in *Richards v. NewRez LLC*, 2021 U.S. Dist. LEXIS 51233 (D. Md. Mar. 18, 2021), *see* Def. Mem. 17, was not ascertainability at all, but the court's determination that Plaintiff had alleged a "fail safe" class, one that "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Id*. at *70 (citation omitted). Although the court *mentioned* the ascertainability requirement (*id*. at *71), it did not find the class unascertainable.

*Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 570 and n. 17 (D.S.C. 2014), *see* Def. Mem. 23, also did not rule on class certification; it deferred ruling to allow supplemental briefing. And Plaintiff had cited *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196-98 (E.D. Va. 2015), *see* Def. Mem. 19, not for use of affidavits, which the court did not address, but because, according to *Marriott*, it exemplified the more lenient approach to ascertainability in this Circuit. *See* Plff. Mem. 25.

6

That leaves Compass' two remaining cases from this Circuit, *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 211 (4th Cir. 2024), and *Anderson v. Lab. Corp. of Am. Holdings*, 2023 U.S. Dist. LEXIS 23532, at *45 (M.D.N.C. Feb. 13, 2023), *see* Def. Mem. 20, but in neither case were there objective records that could be used to verify the claims, as there are here in conjunction with affidavits.

> **b. Under the law in the Third Circuit, on which Compass purports to rely, this class is ascertainable.**

Perhaps recognizing that Fourth Circuit cases don't support it, Compass emphasizes decisions of the Third Circuit, which originated the "heightened ascertainability" approach. *See* Def. Mem. 17-18. However, assuming this case is governed by Third Circuit case law, it is clear that Plaintiff's proposed class *is ascertainable*.

One wouldn't know it from Compass' argument, but the Third Circuit has repeatedly approved the use of self-identifying affidavits, in conjunction with objective records, to find classes ascertainable. *See City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) ("Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard."); *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) (same).

In *City Select*, a case brought under the Telephone Consumer Protection Act, the court stated: "Even if it is true that the BMW fax was not sent to every customer who had a fax number in the database during the relevant time period, the class could still be certified, so long as there is a method for determining which customers did receive such faxes, *which could be by affidavit*." 867 F.3d 434, 442 n. 4 (emphasis added).

In *Hargrove*, a class of full-time delivery drivers sought to use the defendant's records, along

with affidavits, in part to fill in *gaps* in those records. In reversing the denial of class certification on ascertainability grounds, the Third Circuit stated:

> Appellants have met that requirement. They submitted thousands of pages of contracts, driver rosters, security gate logs, and pay statements, as well as testimony from a dozen class members stating they were required to work exclusively for Sleepy's full-time. 'Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard.'

974 F.3d at 470 (quoting *City Select*, 867 F.3d at 441). The court declined to hold the gaps in the defendant's records against the plaintiffs because the gaps were created by the defendant's faulty record keeping. The court stated: "[W]here an employer's lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the employees who make up that class will not be made to bear the cost of the employer's faulty record keeping." 974 F.3d at 482. Similarly, the fact that Compass failed to survey, or erroneously found to be unlabeled, a small percentage of its machines shouldn't prevent the class from moving forward.[5] As in *Hargrove*, affidavits can suffice to verify purchases from those machines.

Nor does it matter if Compass' faulty records make the class overinclusive. The Third Circuit rejected that argument in *City Select*, 867 F.3d 434, 442 n.4 ("While a high degree of over-inclusiveness could prevent certification, any degree of over-inclusiveness will not do so.").[6]

The Third Circuit has reiterated *Hargrove's* holding repeatedly. In *Kelly v. Realpage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022), the court pointed out that "affidavits [from the *Hargrove* class

---

[5] Regarding unsurveyed machines, *see* Ex. 257-7 (Kriegler Rept.) ¶ 30 (among machines with two-tier revenue, 12,093 were unsurveyed, 50,293 were unlabeled, and 133,186 were labeled, for a total of 195,572; unsurveyed machines thus made up 6.2% of the total.) Compass' expert David Kalat found that only 8% of the random selection of machines reported to be unlabeled actually had labels, i.e., had been erroneously surveyed. *See* Plff. Mem. 20.

[6] *See also* the district court's decision in *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015), which dismissed the argument that inaccuracies in the defendant's records would make the class impermissibly overinclusive. The court stated: "If the Court were to deny certification because Dish does not keep an accurate list as the regulations require and Dish itself cannot identify which individuals on the list actually requested not to be called, it would create the perverse incentive for entities to keep poor records." *Id*.

8

members] in combination with 'thousands of pages of contracts, driver rosters, security gate logs, and pay statements' sufficed to ascertain a class of full-time drivers for Sleepy's, despite gaps in the records and the work required to synthesize 'several distinct data sets.'" *See also In re Niaspan Antitrust Litig.*, 67 F.4th 118, 131-32 (3d Cir. 2023) ("We thus determined [in *Hargrove*] that the plaintiffs had identified records that, in combination with affidavits, established a reliable and administratively feasible method for determining class membership.").

Compared to the multiple types of records that needed to be reviewed in *Hargrove* – contracts, driver rosters, security gate logs, and pay statements – this case will involve only two data sets, the Survey Instance Report (showing the locations of the no-label machines) and the Two-Tier Revenue Report (showing that those machines imposed the upcharge). *See* Plff. Mem. 30-31. The class will therefore be *more* readily ascertainable than the *Hargrove* class.

In *Kelly*, the court also gave short shrift to the defendant's complaint about the number of records to be reviewed. It stated: "[T]hat is essentially an objection to the size of the class, which . . . is not a reason to deny class certification. . . . To hold otherwise would be to categorically preclude class actions where defendants purportedly harmed too many people, which would 'seriously undermine the purpose of a class action to 'vindicate meritorious individual claims in an efficient manner.'" 47 F.4th at 224-25 (citation omitted). It added: "Such a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding[.]'" 47 F.4th at 225 (citation omitted). Nor, despite Compass' complaint, does it here.

**2. The logic of out-of-Circuit cases regarding affidavits applies here.**

Compass' second ascertainability subsection argues that Plaintiff's out-of-Circuit cases should be disregarded because those courts don't apply the two-step analysis of the Fourth Circuit. Def. Mem. 20-22. But Plaintiff cited those cases, not because they are controlling, but

9

for their reasoning regarding affidavits. For example, the Seventh Circuit stated, "In most cases, the expected recovery is so small that we question whether many people would be willing to sign affidavits under penalty of perjury saying that they purchased the good or service." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 667 (7th Cir. 2015). *In re Dollar Gen. Corp.* similarly stated: "Self-identification affidavits are appropriate in 'consumer class actions concerning low-cost products . . . where . . . financial incentives to falsify are low." 2019 U.S. Dist. LEXIS 58082, at *65-66 (W.D. Mo. Mar. 21, 2019) (*citing* 1 McLaughlin on Class Actions § 4:2 (15th ed. 2018)). Compass has not rebutted those statements, whether with logic or case law, but they are obviously relevant to instances where Compass' records will be unable to confirm a claimant's statement because the machines at issues were unsurveyed. That situation is like *Hargrove*, where affidavits could not be verified because of gaps in the records. 974 F.3d at 482.

Similarly, the Seventh and Ninth Circuits have pointed out that the defendant's due process rights won't be violated if some class members inappropriately recover because its total liability will already have been determined. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1132 (9th Cir. 2017); *Mullins*, 795 F.3d at 670. Compass ignores this point. Of course, it is consistent with the cases cited above that held classes ascertainable even though they are overinclusive. *City Select*, 867 F.3d 434, 442 n. 4; *Krakauer*, 311 F.R.D. at 393.

Compass does respond to Plaintiff's argument – based on *Morales v. Kraft Foods Grp., Inc*., 2015 WL 10786035, *36 (C.D. Cal. June 23, 2015) – that if Plaintiff's approach were rejected, cases based on small dollar purchases would be impossible to bring. It relies on *In re Asacol Antitrust Litig*., 907 F.3d 42, 56 (1st Cir. 2018), which postulated other means of bringing redress to injured consumers, such as FTC lawsuits (but only prospective relief would be available) or state parens patriae cases. But if that were a reason to deny certification, there

10

would never be a certified consumer class because a court could *always* hold that FTC or parens patriae cases could vindicate consumer rights. In any event, Compass' practices have apparently not come to the attention of the FTC or state governments, so it remains the case that if certification were denied, class members could obtain no redress.

Compass also relies on *Asacol* for its limitation of *In re Nexium*, 777 F.3d 9, 20 (1st Cir. 2015), regarding unrebutted testimony. Plaintiff had cited *Nexium* as it was quoted by *In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.,* 2017 U.S. Dist. LEXIS 114806, *17 (W.D. Mo. July 24, 2017)*: "[I]f unrebutted consumer testimony 'would be sufficient to establish injury in an individual suit, it follows that similar testimony in the form of an affidavit or declaration would be sufficient in a class action." *Asacol*'s limitation of *Nexium* focused on the word "unrebutted." It ruled that, in the case before it, consumer affidavits would be inherently rebuttable. As explained in a later decision, "[i]n *Asacol*, class membership depended on brand loyalty, which was only knowable by questioning a putative class member." *Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 204 (D.R.I. 2021). There were no objective records that could confirm or refute a consumer's brand loyalty. But here, as described above, class membership will depend on comparison of a consumer's claimed purchase with Compass' records.

### 3. Compass' "credibility" challenges to ascertainability fall flat.

In its third ascertainability section, Compass finally, if grudgingly, addresses Plaintiff's actual proposal, that ascertainability will be determined by a comparison of class member's claims with Compass' objective records. It oddly professes not to know "what information claimants would have to provide, or how the administrator would 'perform a simple match.'" Def. Mem. 23. That should have been clear. Claimants will have to specify the addresses of their

11

purchases and approximate dates when they occurred. The administrator would then do a comparison of that information with Compass' Survey Instance and Two-Tier Revenue Reports to determine whether the purchase was from an unlabeled Compass machine.

Then, perhaps most bizarrely of all, Compass insists that this process would not have weeded out the claims of Ms. Jaye and Mr. Borrero, whose purchases were not from Compass' machines. *Id.* It wouldn't? How can that be? A comparison with Compass' reports was exactly how *Compass* weeded them out. The administrator could, of course, do the same thing, just as it could be done in *Hargrove* by comparing the class members' claims to "thousands of pages of contracts, driver rosters, security gate logs, and pay statements." 974 F.3d at 470. Compass goes on to argue that the process would not have verified Mr. Jilek's original claim, which identified an inaccurate location (due to counsel's typographical error). *Id.* But any class member who puts in an erroneous claim simply won't recover. That's true of any claims-made class action.

Compass then reverts to its argument against the "straw man" by citing four cases in which plaintiffs proposed to use affidavits and nothing but affidavits. *See* cases cited at i*d.* at 24-25. Those cases are no more applicable to this case than the similar decisions Compass cited earlier.

## B. Compass' Multiple Predominance Arguments Have No Merit.

Compass makes *five separate* arguments on why the predominance element of Fed. R. Civ. P. 23(b)(3) is absent. Is it continuing to grasp at straws? The discussion below says yes.

### 1. Compass has not refuted Plaintiff's argument that common evidence will establish Plaintiff's prima facie case.

In arguing against Plaintiff's position that common evidence will establish each of the four elements of Plaintiff's *prima facie* case for breach of unilateral contract, Compass initially argues that each *purchase* needs to be proved with separate evidence. Def. Mem. 26. But that is no more

12

the case here than in other breach-of-contract class actions. Compass does not dispute that each two-tier machine displayed a price but then charged card-purchasers ten cents more. In fact, Compass' labels specifically referred to "the prices displayed on this machine," an acknowledgement that the machines displayed prices. *See* Doc. 257-3 (Goldring Tr. as 30(b)(6) corporate designee), 60:17-61:2. The other elements of breach of contract are proven by the common evidence in Compass' Survey Instance and Two-Tier Revenue Reports. *See* Plffs' Mem. 30-31. Compass doesn't even attempt to refute that point.

Moreover, Compass' argument that Plaintiff needs to prove each class member's purchase separately would prevent any breach-of-contract class action from being certified. That is not the law. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 428 (4th Cir. 2003) (finding that whether the defendant breached its contract to administer and timely pay claims was an "issue[] common to all potential class members, and [does] not require any individualized inquiry.").

In the face of that simple point, Compass' cases do not support it. None of them involved claims of breach of unilateral contracts. The plaintiff in *Anderson v. Lab. Corp. of Am. Holdings*, 2023 U.S. Dist. LEXIS 23532, at *25 n.16 (M.D.N.C. Feb. 13, 2023), *see* Def. Mem. 26, alleged *an implied-in-fact* contract, which under state law would be established by the parties' *conduct*, an inherently individual issue. *See* the court's earlier decision at 2019 U.S. Dist. LEXIS 138620, at *8 (M.D.N.C. Aug. 16, 2019), incorporated therein at *Anderson*, 2023 U.S. Dist. LEXIS 23532, at *25 n.16, defining an implied-in-fact contract.

Although Compass doesn't say so, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018), *see* Def. Mem. 27, *certified* the breach of contract subclasses, stating, "Accordingly, the Court finds that individualized proof will be of minimal relevance, if at all, to the core questions of contract interpretation presented by the breach of contract claim."

13

Compass' quote comes from the court's denial of a separate, unrelated statutory class.

Compass' out-of-Circuit cases are no more supportive of its position. In *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 471 (N.D. Cal. 2014), *see* Def. Mem. 26, the alleged breach was selling two downloads instead of one; the basis of the court's holding was that some customers undoubtedly desired a second download. But not even Compass argues that any class members *wanted* to pay more for a card purchase. The alleged breach in *Schertzer v. Bank of Am., N.A.*, 2022 U.S. Dist. LEXIS 62741, at *51 (S.D. Cal. Apr. 4, 2022), *see* Def. Mem. 26-27, was charging for "invalid" balance inquiries on an ATM, but whether an inquiry was valid or invalid was an individual question. Nothing like that is involved here.

Compass' remaining arguments on this point relate to whether purchasers were aware of the surcharge. Def. Mem. 27, That is duplicative of its voluntary-payment affirmative defense and its damages argument, which are addressed below (*see* Subsections 2 and 4).

### 2. Compass' voluntary payment argument fails because there is no evidence to support it and, in any event, its cases represent the minority position.

Compass relies heavily on its voluntary-payment affirmative defense to defeat predominance. But Plaintiff's Memorandum pointed out that there was no evidence to support that defense, *i.e.*, evidence to show that any class member knew of the surcharge at the time of his or her first purchase. Plff. Mem. 36. That is still the case, something Compass ignores. But, in the five-and-a-half years of this litigation, Compass could have elicited such evidence if it existed. (*See* further discussion in Subsection 4, related to damages, below.) It did not.

Nevertheless, Compass asks this Court to reject this class action merely because it *alleged* a voluntary-payment defense. That argument, if accepted, could allow any defendant to derail a class action simply by alleging an affirmative defense that would raise individual questions (e.g.,

14

waiver or estoppel). Compass has offered no case that so held.

Nevertheless, Compass states that "[t]he voluntary payment doctrine has routinely served as a bar to class certification." Def. Mem. 28. Routinely? It's the *minority position*. Compass ignores the *seven cases* Plaintiff cited to the contrary, some rejecting the voluntary-payment argument outright and some because, like Compass, the defendant had presented only "scant evidence" or less to support it.[7]

Compass mentions only three voluntary-payment decisions, but none held that the defendant had supported its position with only a bare affirmative defense. In *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010), which, as Compass points out (*id.* at 95), stated that "numerous courts have found that the predominance requirement is not satisfied where class claims are subject to a unique defense under the voluntary payment doctrine" (*see* Def. Mem. 28), the defendant argued that discovery showed the applicability of the defense, and the plaintiff *conceded* that the defense would be an issue but contended it was a common one, an argument the court rejected. 264 F.R.D. at 99 n. 25.

Some cases, both those cited by Compass and by *Spagnola*, found that the defense had been made out across the class, with the only issue whether an exception for fraud, duress or the like applied. Thus, every class member would lose on the merits because of their voluntary payments unless they could establish the exception, an inherently individual issue. *See Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 957 (N.D. Ohio 2009), cited by *Spagnola*

---

[7] *See Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (rejecting the argument because of the "scant evidence" to support the defense); *Cox v. Porsche Fin. Servs.*, 330 F.R.D. 322, 335, *affirmed and adopted*, 330 F.R.D. 322, 327 (S.D. Fla. 2019) ("Defendant … has not proffered any record evidence" supporting the defense.); *Underwood v. Kohl's Dep't Stores, Inc.*, 2017 U.S. Dist. LEXIS 186927 (E.D. Pa. Nov. 13, 2017) (same). *See also* cases ruling that the defense simply doesn't defeat predominance: *Kimber Baldwin Designs, LLC v. Silv Communs., Inc.*, 2016 U.S. Dist. LEXIS 173481, at *15 (S.D. Ohio Dec. 15, 2016); *Whitton v. Deffenbaugh Disposal, Inc.*, 2014 U.S. Dist. LEXIS 153405, at *21 (D. Kan. Oct. 28, 2014); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at *88 n.35 (E.D.N.Y. July 17, 2013); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008).

15

("Plaintiffs will have to demonstrate that the voluntary payment resulted from duress or fraud," an individualized issue). In *Stuart v. Glob. Tel \*Link*, 956 F.3d 555, 561 (8th Cir. 2020), *see* Def. Mem. 28, the court affirmed the district court decision, *Mojica v. Securus Techs., Inc.*, U.S. Dist. LEXIS 109017, at *24 (W.D. Ark. June 29, 2018), which similarly held that the defendant could assert the defense against every class member, who would therefore have to demonstrate an exception such as fraud, duress or mistake of fact to prevail.

In *Endres v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008), *see* Def. Mem. 28, the defendant contended "that each customer was provided with clear written disclosures" of the fee at issue, and the court found that "the record confirms that some class members read these disclosures" and paid anyway. *Id.* at *22.

*Camafel Bldg. Inspections, Inc. v. BellSouth Advert. & Pub'lg Corp.*, 2008 U.S. Dist. LEXIS 18192, at *16 (N.D. Ga. Mar. 7, 2008), a *Spagnola* case, granted summary judgment to the defendant after citing much voluntary-payment evidence. With that evidence in the record, the court then went on to consider class certification and ruled that the voluntary payment defense was a bar to predominance. Thus, this case does not support Compass' argument that it can rely only on its bare allegation.

Finally, purporting to quote *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006), Compass concludes its voluntary-payment argument by stating, "The Fourth Circuit has already rejected Plaintiff's theory that Compass 'has the burden of demonstrating that resolution of that [affirmative] defense cannot occur on a class-wide basis.'" Def. Mem. 30 (*sic;* the quote is slightly off). Compass once again aims at a straw man because Plaintiff's argument is different, namely that Defendant has not shown this is a viable defense with its less than "scant evidence." *See Van*, 61 F.4th at 1067. *Thorn* doesn't help Compass on the merits either. There,

16

every class member's claim was outside the period of limitations by more than 20 years. *Id.* at 317, 320. Their claims could only be saved if they had no knowledge of the illegal practices within the period. *Id.* at 320. But their knowledge was an inherently individual issue, just like fraud, duress and mistake of fact in the voluntary-payment cases. These cases provide no support for the notion that a defendant can defeat predominance merely by *alleging* voluntary payment.

### 3. Compass' standing argument is based on speculation.

Compass' standing argument fails for the same reason. It states that the class "include[s] individuals who have not suffered an injury in fact: purchasers who made all purchases with knowledge of the price differential" (Def. Mem. 30), but there is no evidence that that is the case for a single putative class member.

As with voluntary payment, Compass hasn't cited a single case declining certification on standing grounds based only on such speculation. In *Cuming v. S.C. Lottery Comm'n*, 2008 U.S. Dist. LEXIS 26917, at *14-16 (D.S.C. Mar. 28, 2008), *see* Def. Mem. 30-31, two named plaintiffs had testified themselves out of standing by stating "that they purchased lottery tickets with the knowledge that the SCEL sold lottery tickets after the top prizes were no longer available." Obviously, there was an evidentiary basis to find that some class members had no standing. And *Student A v. Liberty Univ., Inc*., 2023 U.S. Dist. LEXIS 182018 (W.D. Va. Oct. 10, 2023), *see* Def. Mem. 31, is even farther afield. There the court considered standing together with mootness and concluded that plaintiffs' claims failed because Liberty University "had voluntarily paid [the named plaintiffs] amounts that exceed their total asserted financial injury . . . ." *Id.* at *18-19. That case would help Compass if it had reimbursed its customers their overcharges, but of course it hasn't.

17

### 4. Compass' damages argument is based on speculation and is contrary to case law, including from cases Compass claims to rely on.

Plaintiff has shown that most of the present or former plaintiffs who learned of the surcharge did so in the process of joining this lawsuit, a fact unique to them among class members. Absent class members could not have learned of the surcharge in this way. Only Brian Baldwin learned of it on his own and continued purchasing. In arguing that damages present individual issues, Compass relies only on those named individuals. But there is no evidence that any other putative class member made card purchases after learning of the surcharge. *See* Plff. Mem. 36-37.

Compass calls "Plaintiff's statement that 'if [Baldwin] were not a rarity, surely Compass would have found more such individuals' ... circular logic" (Def. Mem. 35), but it is hardly that (i.e., an argument with a premise and conclusion that are essentially identical, like "Alex is a cheerful person because he's always in a good mood"; *see* https://www.britannica.com/topic/circular-argument).

Compass also says the proposition is not true. Def. Mem. 35. But it is certainly true. If the number of class members who made purchases after learning of the surcharge were not de minimis, Compass could have found them. For example. it says it "received consumer complaints regarding the signage or labeling of Compass's vending machines after individuals learned that a purchase made with a credit or debit card cost more than a purchase made with cash." Def. Mem. 4. It could have inquired of those complainants whether they had made card purchases after gaining such knowledge. It could also have conducted consumer surveys, either generally or among employees at companies where its machines were located, and asked whether they made knowing purchases. *See FTC v. Tel. Prot. Agency, Inc.,* 2005 U.S. Dist. LEXIS 53234, at *3 (W.D.N.C. Aug. 29, 2005) (relying on survey that showed percentage of consumers

who did not authorize defendant to bill their credit cards). Or it could have conducted focus groups of such employees. *See H.B. Rowe Co., Inc. v. Tippett*, 615 F.3d 233, 248-49 (4th Cir. 2010) (relying on focus groups regarding decisions of prime contractors).

Considering the lengths to which Compass has gone to defend this case, one can only speculate about whether it used these tools and obtained unfavorable results. But no matter. Compass offers only speculation on the subject.

Compass also attacks Dr. Kriegler's model on the ground that he didn't exclude knowing purchases. But that's not required. *See* cases cited at Plff. Mem. 38, which stand for the proposition that damages calculations need not be exact at this stage and that inclusion of a de minimis number of uninjured class members doesn't defeat predominance. Compass doesn't even mention, much less attempt to distinguish, those cases.

In the face of that clear case law, the decisions Compass cites provide it no support. Most actually support Plaintiff. *KBC Asset Mgmt. NV v. 3d Sys. Corp.*, 2017 U.S. Dist. LEXIS 159781, at *19 (D.S.C. Sep. 28, 2017), *see* Def. Mem. 32, granted class certification and rejected the argument Compass makes. It ruled, "As to Defendants' contentions Coffman's methodology fails to make an allowance for any damages caused by things other than Defendants' alleged fraud, such is not required at the class certification stage of the proceedings." In recommending the class be certified in *In re Zetia Ezetimibe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 183601, at *77 (E.D. Va. Aug. 13, 2020), *see* Def. Mem. 33, Magistrate Judge Miller rejected the defendant's argument that plaintiff's damages model included uninjured class members because, like Compass, the defendant "ha[d] not identified any putative class member that suffered no net damage on all transactions." Compass quotes a statement in *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016), *see* Def. Mem. 33, to the effect that the predominance requirement

19

applies to damages but ignores the very next sentence: "This does not mean, however, that damages must be 'susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Id.* (citation omitted). That court rejected the defendants' challenge to the plaintiffs' damages model. *Id.* at 262. And in *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 278, 279 (S.D. Cal. 2023), *see* Def. Mem. 33-34, the court stated: "*While the mere possibility of uninjured class members would likely not defeat predominance*, the evidence here suggests that approximately 50% of the class may be uninjured. ... The Court is not satisfied that a damages model that awards damages to so many potentially uninjured consumers is viable under *Comcast*." But here "the mere possibility of uninjured class members" is all there is.

Compass' two other cases are simply inapposite. In *Hooker v. Citadel Salisbury LLC*, 2023 U.S. Dist. LEXIS 68861, at *34-36 (M.D.N.C. Apr. 20, 2023), *see* Def. Mem. 33, where nursing home patients alleged inadequate care, the reason damages presented individual questions was that their injuries were so different, including "failure to properly take patients' temperatures, failure to change clothing, failure to respond to family inquiries," among others. The claimed damages in *Wheeler v. United Servs. Auto. Ass'n*, 2013 U.S. Dist. LEXIS 122447, at *14 (D. Alaska Aug. 27, 2013), *see* Def. Mem. 33, were "a percentage of each class members' personal injury damages." As the court noted, "the predominance requirement . . . precludes certification in most mass tort personal injury cases," because damages "are not susceptible to formulaic calculation." *Id.* (quoting 2 Newberg on Class Actions § 4:54). But here they are.

**5. Compass' state law arguments either ignore how Plaintiff proposes to handle the laws of different states or rely on speculation.**

In his Memorandum, Plaintiff pointed out that each state where class members made purchases recognizes unilateral contracts and that the same elements necessary to prove a breach

20

of such a contract apply in each state. *See* Plff. Mem. 11. Plaintiff supported that point with a detailed, 17-page exhibit setting forth each state's definition of unilateral contract along with the elements of breach of contract in that state. Ex. H, Doc. # 257-10.

Nevertheless, without challenging that analysis of state law but arguing that "an overwhelming number of federal courts have denied certification of nationwide state-law class actions" (Def. Mem. 35, citation omitted and italics removed), Compass argues that certification of Plaintiff's multi-state class should be denied. To the extent that Compass may be suggesting that a multi-state state-law class can never, or even rarely, be certified, that is not the case. The Newberg treatise states: "There are at least five distinct situations in which the choice of law analysis in a multi-state class action may not block certification on predominance grounds." 2 Newberg and Rubenstein on Class Actions § 4:61 (6th ed.). Two of them apply here, No. 4, where the substantive law does not significantly vary across the states, and No. 5, where the "substantive laws of the various states might be capable of being organized into groups of states with similar legal regimes." *Id.* Moreover, *Ward v. Dixie Nat'l Life Ins. Co.*, 257 F. App'x 620, 628 (4th Cir. 2007), one of Compass' cases, *see* Def. Mem. 24, shows that multi-state classes with state law claims can be certified; that court rejected the multi-state class *only* because the plaintiff "never identified what state law would apply to the claims of absent class members who are not residents of South Carolina and whose claims have no connection to that state." But Plaintiff has identified the states' laws.

Nevertheless, Compass argues that state-law differences in three aspects of the case defeat predominance. Its arguments have no merit.

**Statute of limitations.** In support of this motion, Plaintiff addressed differences in the statutes of limitations and showed how they can be handled. Plff. Mem. 35-36 and Ex. U, Doc. #

21

293-5 (setting forth the statutes of limitations in each state). Among other things, Plaintiff showed that the discovery rule would not affect any class member's claim. In a nine-line response on the subject, Compass does not even mention Plaintiff's analysis, much less attempt to refute it. It even mentions differences in the discovery rule without acknowledging that Plaintiff had pointed out they don't matter here. *Id.* Its argument should be rejected.

**Compass' affirmative defense of waiver.** Compass states that its waiver defense would bar the claims of "putative class members who continued to make credit or debit card purchases after learning of the ten-cent charge without asserting a cause of action or notifying Compass," and argues that state law differences in the law of waiver bar certification. Def. Mem. 36. This is closely akin to Compass' voluntary-payment defense, and, just as with that defense, there is no evidence showing that it would apply to any absent class member. In *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1167 (11th Cir. 2010), on which Compass relies, *see* Def. Mem. 36, there was "evidence that, among all the hospitals in the certified class, only about nine of them objected to the use of CMAC, suggesting that the rest of the hospitals waived their rights to challenge the CMAC payments." Nothing like that is present here. Thus, just as with its voluntary-payment defense, Compass should not be permitted to scuttle this class based on what is nothing more than conjecture.

**Prejudgment interest.** Dr. Kriegler's methodology included separately applying the interest rates of each state; he set forth those rates in an exhibit to his report. Doc. 257-7 (Expert Report of Brian Kriegler, Ph. D.). This was simply a mechanical process. But without even mentioning what Dr. Kriegler did, much less criticizing it, Compass argues that state-law difference in the application of prejudgment interest necessitate denying certification. This objection, divorced from the record, should be rejected.

22

### C. Compass' Manageability Argument Fails for the Same Reason as with Damages.

Compass' attack on manageability focuses on damages based once again on its straw-man argument regarding affidavits. *See* Def. Mem. 38-39 (citing *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075 (N.D. Cal. 2011), for its rejection of affidavits without verification). But it should be clear that Plaintiff's use of affidavits *in combination with Compass' records* does not make the case unmanageable. In fact, denying class certification on manageability grounds, as then Circuit Judge Sotomayor stated, "is disfavored and 'should be the exception rather than the rule.'" *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 140 (2d Cir. 2001) (citation omitted); *see also DeLoach v. Philip Morris Companies, Inc*., 206 F.R.D. 551, 567 (M.D. N.C. 2002) ("Though any case of such magnitude certainly poses problems of manageability, … dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule.") (internal citations and quotations omitted). Moreover, this requirement generally overlaps with predominance, and "courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well." *In re Marriott*, 341 F.R.D. at 166.

Faced with the same issue of whether the need to prove individualized damages defeats manageability, the court in *Vance v. DIRECTV, LLC*, 2022 U.S. Dist. LEXIS 140518, at *31 (N.D.W. Va. Aug. 1, 2022), rejected the argument that the class action should fail and listed the following options, taken from *In re Visa*, 230 F.3d at 141, for handling the case:

> (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

But here the damages claim simply will not present insurmountable manageability problems.

23

At trial, Dr. Kriegler and undoubtedly Mr. Kalat will present their aggregate damages calculations. If the jury holds Compass liable, it will presumably award either Dr. Kriegler's or Mr. Kalat's total or something in between. Class members will then be given the opportunity to submit their claims, which will be verified against Compass' records. This would be similar to the method described in *Kay Co., LLC v. EQT Prod. Co*., 2017 U.S. Dist. LEXIS 228275, at *19 (N.D.W. Va. Sep. 6, 2017): "Specifically, in **Dijkstra**, the Court made liability findings on the class claims and awarded statutory and disgorgement damages on a class-wide basis, and then allowed for individual class members to come forward with any claims of actual damages beyond those compensable on a class-wide basis." *Id.* (citing *Dijkstra v. Carenbauer*, No. 5:11-cv-152 (N.D. W.Va.)).

Moreover, since the need to prove individualized damages cannot defeat predominance, as the Fourth Circuit held in *Gunnells v. Healthplan Servs*., 348 F.3d 417, 429 (4th Cir. 2003), the need to prove individualized damages cannot defeat class certification on manageability grounds. Otherwise, the *Gunnells* holding would be a nullity.

### D.  Compass' Typicality Argument Fails Because Commonality Is Present.

Lastly, Compass grasps at its final straw by making what it calls an "alternative" argument on typicality grounds.[8] Def. Mem. 38-39. It argues that Mr. Jilek's claim is atypical because he learned of the surcharge while joining this case and made a few purchases afterward unlike the absent class members, at least according to Plaintiff.[9] But that doesn't matter for the typicality *of his claim* under Rule 23(a)(3). Typicality is a requirement at which the court "need not tarry for

---

[8] It is unclear what Compass means by "alternative."  It has made many separate arguments in 14 different sections and subsections of its Memorandum, not counting this one. So what is this an alternative to?

[9] Compass purports to quote Plaintiff's Memorandum at 15 ("None of those examples of knowing purchases would be typical of class members who did not join this lawsuit."). Def. Mem. 39. That sentence or anything like it is not on page 15 or anywhere else in Plaintiff's Memorandum.

24

long" if commonality is present, *1988 Tr.*, 28 F.4th at 523, and which does not "require[] that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 208 (E.D. Va. 2015) (citation omitted). Compass doesn't contest commonality; its only two uses of that word in its Memorandum are in an argument that predominance is more demanding than commonality. *See* Def. Mem. 15, 26, n. 16. Thus, typicality is present. *See* Plff. Mem. 31-32.

## IV.     CONCLUSION

It should be clear from the above that Compass' arguments are no more than straw-grasping. Thus, for the foregoing reasons and those in his original memorandum, Doc. 293-1, Plaintiff respectfully requests that the Court certify the Class, name Plaintiff as Class Representative, and appoint the undersigned attorneys as Class Counsel.

Dated: May 3, 2024                                    Respectfully submitted,

**GOLDENBERG HELLER &
ANTOGNOLI, P.C.**

By:/s/*Richard S. Cornfeld*
Richard S. Cornfeld (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG &
TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

25

Joel R. Rhine, NC SBN 16028
Martin A. Ramey, NC SBN 33617
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960
Fax: 910−772−9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Attorneys for Plaintiffs*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2024, the foregoing was filed with the Court Clerk via the Court's electronic filing system and served upon all counsel of record via the Court's electronic notification system.

/s/ *Richard S. Cornfeld*