UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMES JILEK, et al., on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 3:23-cv-00818-RJC DCK |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, ) ) ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO STRIKE[1]**

**I.      INTRODUCTION**

This attempt to strike Dr. Kriegler's Supplemental Expert Report (Doc. # 262-3) and Second Supplemental Expert Report (Doc. # 262-4) is utterly without merit.[2] The timing of the disclosure of the Supplemental and Second Supplemental Reports is "harmless" under the application of the first four factors set forth in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). That is because any surprise to Defendant was minimal, Defendant had an opportunity to cure any surprise that may have affected the preparation of its defense, there is no trial date and therefore there will be no disruption of the trial, and the reports are vital to Plaintiff's case. In addition, the timing of the disclosures was

---

[1] Plaintiff notes that, in violation of LCvR 7.1(b), this motion does not show that counsel conferred and attempted in good faith to resolve areas of disagreement or describe the timely attempts of the movant to confer with opposing counsel. However, as will be clear from this response, Plaintiff believes such a conference would have been futile.

[2] Compass also seeks to strike Dr. Kriegler's Declaration submitted with Plaintiff's motion for class certification (Doc. # 293-4). However, that is moot because the declaration only pertains to the South Carolina and Florida subclasses that Plaintiff has withdrawn from its motion for class certification. *See* Plaintiffs' Supplement to Motion for Class Certification, Doc. # 294.

1

caused by Compass' late disclosure of vital information and therefore the fifth *Southern States* factor also points toward denial of this motion.

## II. BACKGROUND AND STATEMENT OF FACTS

Compass doesn't describe the circumstances that led to the timing of the reports it challenges. That is not surprising because those circumstances show that this motion is entirely baseless. But here is what happened:

Throughout this litigation, beginning in early 2000, Defendant has produced multiple successive reports of a survey of its vending machines that began in March 2019 and that purported to indicate which of its two-tier machines were not labeled with a sticker informing customers that they would be charged ten cents more if they used a credit, debit or prepaid card. See Declaration of M. Anthony Jenkins ("Jenkins Decl."), ¶ 2.

On May 4, 2023, Defendant produced for the first time a so-called "Survey Instance Report." This was an extensive Excel spreadsheet, with corrected, updated and presumably complete data from this survey. On May 22, 2023, Defendant provided a revised version of the Survey Instance Report. See *id*. at ¶ 3. (As described below, this is not the latest version of this Report that Compass produced.)

On the afternoon of June 27, 2023, the day before Plaintiff was scheduled to take the deposition of Martha Morgan, Defendant's vice president of business information, and only six weeks before the due date for Plaintiff's expert report, Defendant emailed Plaintiff a Declaration signed by her that informed Plaintiff *for the first time* that these survey reports were subject to human error. This was *more than three years* after Compass first disclosed the existence of this survey. See *id*. at ¶ 4. At that point, Plaintiff had taken six depositions of Compass employees about the survey, and none of the deponents had disclosed these human errors. See *id*. at ¶ 5. Nor

2

did Ms. Morgan describe the extent of the errors, but she said she had found some by reviewing photographs of the machines that had been taken as part of the survey. This was also the first time Defendant had told Plaintiff that there *were* such photographs. See Jenkins Decl., ¶ 6. The next day, during her deposition, Ms. Morgan testified that one could look at those photographs to confirm whether a particular machine did or did not have a label at the time it was surveyed and therefore determine if the survey was accurate as to that machine. *See* Ex. 1, Martha Morgan Deposition, Vol. III (June 28, 2023), 169:4-170:15.

Plaintiff early on had requested all photographs of the machines in question, both generally and specifically.[3] Here's the general request:

> 14. Any and all documents that refer or relate to Compass's offer of discounts for cash transactions at Compass vending machines or that refer or relate to the implementation of that practice.

RFP. No. 14. In response, Compass produced many reports of its survey, but not the photographs. But Plaintiff had also *specifically* requested photos:

> 3. All photographs, drawings, or other depictions of a sign or other notification on a Canteen vending machine that the price for an item purchased with a card would be higher than the price shown.

Compass never produced these photographs in response.

Nor had Defendant referred to or included the photographs in a Rule 26(a)(1) disclosure even though it served a supplemental disclosure on November 1, 2022, more than two-and-a-half years after the time frame that Ms. Morgan referred to as the "Remediation Period" from March 2019 to February 2020 when the survey was conducted and the photographs taken and even though it had obviously been planning to use the photos in its defense. See Ex. 3 (Defendant

---

[3] Plaintiffs' First Request for Documents Directed to Defendant Compass Group USA, Inc., D/B/A Canteen ("RFP"), served 3/8/2019, Ex. 2 to Jenkins Decl.

3

Compass Group USA, Inc.'s Supplement to Rule 26(a) Disclosures); Jenkins Decl., ¶ 10.[4]

And to this day, Compass has not explained why it took until late June 2023 – more than three years after it first began producing reports of its survey – to reveal the existence of the photographs or the human errors that the photographs could confirm or refute.

This revelation necessitated a dramatic change in how Plaintiff planned to prove classwide damages. Before learning that the survey had an unknown number of errors, Plaintiff had planned simply to multiply the number of card purchases from unlabeled, two-tier machines according to the survey times 10 cents. But now Plaintiff had to account for the errors. This required detailed consultations with his expert, Dr. Brian Kriegler, regarding how to do this.

Dr. Kriegler developed a method using photographs of *a random sample* of machines that had been recorded as unlabeled. This would enable him, using statistical methods, to make an extrapolated estimate of classwide damages taking into account survey errors. On July 30, 2023, Plaintiff specifically requested that Defendant provide the photographs for each surveyed machine. Two days later, Defenant stated that "there is no way to provide direct access to the photos linked in the spreadsheet." Accordingly, on August 1, 2023, the parties met and conferred with Plaintiff proposing a resolution whereby Compass would produce photos of a random sample of surveyed and un-surveyed machines. On August 4, Plaintiff sent Defendant a random list of surveyed and un-surveyed machines created by Plaintiff's expert. On August 7, 2023, Defendant asked Plaintiff to serve a formal discovery request. August 7 was also the due date for Plaintiff's expert report. *See* Jenkins Decl., ¶ 11.

In his report, Dr. Kriegler presented his methodology for analyzing a random sample of Defendant's survey data in order to extrapolate nationwide, classwide damages and prejudgment

---
[4] The supplemental disclosure only identified insurance agreements.

interest at certain confidence intervals. He stated:

> It is my opinion that the combination of Canteen's historical data, statistical sampling, and an eventual analysis of a stratified random sample of vending machines can be used to derive reliable estimates of classwide damages. Canteen's data is used to define a sampled population. Random sampling is applied in order to ensure that the selection of vending machines is neutral and unbiased. Total principal damages and pre-judgment interest will be extrapolated based on the results of the random sample of vending machines. Confidence intervals and margins of error of classwide totals will be calculated using established statistical methods.

Doc. No. 262-1, p. 4 at ¶ 10.

Dr. Kriegler's report sets forth his precise methodology including how the extrapolation would be performed after obtaining the random sampling of machine photographs that Plaintiff had requested. See Doc. # 262-1. As Dr. Kriegler explains:

> First, while Canteen conducted a survey of its vending machines in 2019-2020, Defendant's vice president of business information, Martha Morgan, indicated that the data that were recorded are subject to human error. By collecting, reviewing, and analyzing photographs of a random sample of previously-surveyed machines, this portion of classwide damages can be calculated and verified.

Doc. No. 262-1, pp. 4–5 at ¶ 11. In performing his analysis, he would use the data in two Compass reports, the Two-Tier Revenue Report and the Survey Instance Report. *Id.* ¶¶ 16, 17.

On August 11, 2023, four days after serving the expert report, Plaintiff served Defendant with Dr. Kriegler's Supplemental Report ("Supplemental Report"), which applied the same methodology to the California subclass but was otherwise no different from the original Report:

> 3. Except where specified otherwise, the terminology and methodology utilized in this supplemental expert report are the same as in the Expert Report of Brian Kriegler, Ph.D., dated August 7, 2023 ("Kriegler Report").
>
> 4. The purpose of this supplemental expert report is to provide a stratified random sample of machines located in California ("California Stratified Random Sample").

Doc. No. 262-2, p. 1 at ¶¶ 3 -4; Jenkins Decl. ¶ 12.

5

Compass took Dr. Kriegler's deposition on August 23, 2023. Dr. Kriegler followed up two days later with an errata, correcting a minor mistake that had come to light during his deposition. Jenkins Decl. ¶ 13. Compass is not seeking to have that errata excluded.

On September 8, 2023, Defendant produced the photographs. In addition, it produced an *updated* Survey Instance Report that added more than 16,000 rows to the prior version produced the previous May, the one mentioned in Dr. Kriegler's original report. Jenkins Decl. ¶ 14. This was a month-and-a-day after Dr. Kriegler had produced his report and more than two weeks after his deposition. Ten days later, on September 18, 2023, Defendant's expert, David Kalat, issued his report in which he utilized the photographs and the new version of the Survey Instance Report in an analysis that adopted Dr. Kriegler's methodology. He did not criticize that methodology. See, e.g., Doc. No. 257-8, p. 3 at ¶ 5 ("It is my opinion to a reasonable degree of certainty in the field of data analytics that, after applying Dr. Kriegler's methodology to the newly produced supplemental survey records and photographs, collective extrapolated damages overall total $9,997,193).

On October 13, 2023, Plaintiff served Defendant with the Second Supplemental Expert Report of Brian Kriegler, Ph.D., October 12, 2023. Jenkins Decl. ¶ 15. As stated therein:

> 5. In this class action lawsuit, there have been three key events since the Kriegler Deposition that pertain to my analysis/opinions:
>
> - First, Canteen produced additional data/documents consisting of (i) an updated Survey Instance Report that includes 263,016 rows of data, and (ii) photographs for sampled machines in Nationwide Stratum 1 and/or in California Stratum 1.
>
> - Second, Canteen provided "Interrogatory Responses" in which they provided pertinent information about sampled machines in Nationwide Stratum 3 and in California Stratum 3.

6

- Third, Canteen's expert, David Kalat, submitted a report dated September 18, 2023 ("Kalat Report"). Therein, Mr. Kalat provided an analysis of the sampled observations in Nationwide Stratum 1 and in California Stratum 1. See Kalat Report, Exhibit 4.

6. The purpose of this report is to provide alleged classwide damages and interest using a combination of (i) the methodologies set forth in the Kriegler Report, (ii) the random sample selections presented in the Kriegler Reports, (iii) Canteen's recent data production and interrogatory responses, and (iv) the analyses and opinions presented in the Kalat Report.

Doc. 262-4, pp. 1–2 at ¶¶ 5–6 (footnotes omitted).

The Second Supplemental Report calculated damages using the methodology Dr. Kriegler had described in his original report with the data from the Two-Tier Revenue Report, the recently updated Survey Instance Report, and the photographs. Dr. Kriegler did not himself review the photos to determine if they indicated a machine had a label. Instead, he relied on Mr. Kalat's review, as set forth in the Kalat report. Doc. 262-4, p. 19 at ¶ 21(a), and pp, 1–2 at ¶ 5 (footnote omitted).

In the motion to strike, Compass argues that it will be severely prejudiced if the Second Supplemental Report is not stricken because, Compass asserts, it "attacks Compass's rebuttal expert's opinions and analysis."[5] Tellingly, Compass doesn't describe any such "attack." The fact is that the two reports are largely in agreement. Mr. Kalat used Dr. Kriegler's methodology, and, except for not including pre-judgment interest, found a total amount of classwide damages very close to Dr. Kriegler's. Dr. Kriegler used Mr. Kalat's analysis of the photos. Furthermore, Dr. Kriegler described the areas where they were in agreement or not in dispute as "areas of convergence." *See* the discussion of the two reports in Memorandum in Support of Plaintiffs'

---

[5] Memorandum of Law in Support of Compass Group USA, Inc.'s Motion to Strike ("Def, Mem,"), Doc.# 298, at 11.

Motion for Class Certification, Doc. # 293-1, at 20-23. Plaintiffs' counsel cannot recall a case in their entire careers in which the parties' experts agreed so much.

III.  ARGUMENT

"District courts are accorded 'broad discretion' in determining whether a party's . . . untimely disclosure of evidence is substantially justified or harmless. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014)]).) In this Circuit, courts consider five factors set forth in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) in making that decision:

> In making this determination, district courts are guided by the following the factors:
>
> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."

*Bresler*, 855 F.3d at 190 (quoting *Southern States*, 318 F.3d at 597.

"The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Id.* (citing *Southern States*, 318 F.3d at 597). "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Id.* (quoting *Wilkins*, 751 F.3d at 222 (citations omitted).

Compass gives lip service to these factors (Def. Mem. 8-9) but then never discusses how they apply to the facts of this case. For example, except in its block quote of the factors, it never mentions "surprise." It never describes how the trial would be disrupted. It bever talks about the importance of the evidence. And it ignores the explanation for the timing of the reports. The reason why Compass was silent about all of that is obvious. As is clear from the facts, all factors point squarely toward

8

denial of this motion.

Start with the first four, the ones related to harmlessness. The timing of the disclosure of these reports was harmless because any surprise to Defendant was minimal at best, Defendant had an opportunity to cure any surprise that may have affected the preparation of its defense, there is no trial date, and the reports are vital to Plaintiff's case.

Applying the first factor, any surprise from the Supplemental Report being served four days after the expert report due date was minimal or non-existent. The only thing this report added to the first report was application of the methodology to the California subclass. Compass had to know that was coming.

As for the Second Supplemental Report, there was no surprise because the timely first report stated that its methodology would be applied to the random sample that had already been requested from Defendant. Thus, Defendant was aware from the expert report that a supplemental report containing the damage calculations would be forthcoming after it produced the requested random sample. In fact, Compass knew it would be coming even earlier when Plaintiff served discovery regarding the photographs. The only thing that kept the Second Supplemental Report from having already been prepared was that Compass hadn't yet produced the photographs and the updated Survey Instance Report.

Compass complains that the Second Supplemental Report addresses Mr. Kalat's report and claims that "it allows Mr. Jilek the opportunity to submit an expert 'reply brief,' despite the fact that none of the long-standing, prior court-ordered schedules contemplated any such thing." Def. Mem. 10 (citing Doc. # 236 [Scheduling Order]). But that Order simply denied the parties' consent motion to extend the schedule. It said nothing about a rebuttal expert report. But the existing schedule did. It allowed Plaintiff a rebuttal expert report. *See* Doc. # 198 at 2. Compass

9

cannot have been surprised that Dr. Kriegler included that rebuttal in his Second Supplemental Report.

The second *Southern States* factor concerns Defendant's ability to cure any purported surprise. Here, Defendant cured any purported surprise from the Supplemental Report by questioning Dr. Kriegler about it during his deposition. And with respect to the Second Supplemental Report, nothing stopped Compass from asking to take Dr. Kriegler's supplemental deposition about it. Defendant had nearly *six months* between its receipt of the Second Supplemental Report on October 13, 2023, and its response to the motion for class certification on April 4, 2024. From December 1, 2023, when the case was transferred to this Court and the parties knew the class certification motion would have to be re-briefed, Defendant still had four months to depose him. Judge Pitlyk allowed the parties to conduct additional discovery by agreement (Ex. 4, Transcript of Status Conference, June 15, 2023, p. 22:10 – 22:15), which it wouldn't after the case was transferred. And nowhere in Defendant's response to the motion for class certification does it claim it was unable to respond regarding the Supplemental or Second Supplemental Report. Defendant made a full response to the motion (*see* Doc. # 196). There is no prejudice to Defendant in preparing its defense.

The third *Southern States* factor is "the extent to which allowing the evidence would disrupt the trial." 318 F.3d at 597. Here, there is no trial date. There's nothing to disrupt.

Regarding the fourth *Southern States* factor, the importance of the evidence, Dr. Kriegler's Supplemental and Second Supplemental Reports are not just important, they are vital. The Supplemental Report uses the methodology from Dr. Kriegler's Report for the California subclass. The Second Supplemental Report applies those methodologies to the classwide and subclasswide damage calculations, using the random samples that were requested before, and

10

Case 3:23-cv-00818-JAG-DCK    Document 303    Filed 05/03/24    Page 10 of 14

provided by Defendant after, the expert report due date and the updated Survey Instance Report produced after that date. If Plaintiff is barred from using those reports, it will be unable to present classwide (and California subclasswide) damages at trial. It might as well not go to trial because it couldn't possibly prevail.

Thus, without question the late disclosure of the Supplemental and Second Supplemental Reports met the harmlessness criteria under the application of the first four *Southern States* factors.

The fifth *Southern States* factor does not have to be satisfied because the test is whether "the nondisclosure was substantially justified *or* was harmless." *Bresler*, *supra*, 855 F.3d at 189(4th Cir. 2017) (emphasis added). In *Bresler,* while the court found that the fifth factor weighed in favor of the defendant, "[n]onetheless, given that any surprise … was minimal, and that Wilmington had an opportunity to cure any surprise … that may have affected the preparation of its defense, we cannot say that the district court abused its discretion in declining to exclude [the evidence] …." *Bresler*, *supra*, 855 F.3d at 194. Nevertheless, Plaintiff's late disclosure was substantially justified.

The reason for the four-day delay in the Supplemental Report is that the California subclass was inadvertently omitted from the initial scope of work requested by Plaintiff's counsel.

With respect to the Second Supplemental Report, Plaintiff need not plead unintentional error, as with the Supplemental Report. The reason for the timing of the later report related to the photographs and the updated Survey Instance Report. Regarding the photographs, after more than three years of Defendant's having produced successive reports of its survey to Plaintiff, Defendant suddenly told Plaintiff in late June 2023 that the survey was subject to human error but that the error could be checked by a comparison with Defendant's photographs. Defendant had never produced those photographs or identified them in a Rule 26(a)(1) disclosure. It served

11

its initial disclosure before the survey began on March 25, 2019 (*see* Doc. # 257-3 (D. Goldring Tr., Vol. I, 22:1-4)*,* so it obviously could not have mentioned them there. But once those photographs were in existence, it was obligated either to supplement its disclosure to mention them or produce them to Plaintiff. It did neither, even when it supplemented its Disclosure in November 2022. Jenkins Decl. ¶ 10.[6]

Moreover, even if Compass had produced the photographs in time for Dr. Kriegler to include his analysis in his first report, he still would have had to redo it after Compass produced the updated Survey Instance Report on September 8.

In any event, when Plaintiff finally learned that Compass was claiming that the reports contained human errors that could be checked with photographs, he consulted with Dr. Kriegler about how to account for them, Dr. Kriegler developed a method that depended on a random sample of photos, and Plaintiff requested the photos before Dr. Kriegler's report was due. Defendant produced the photos approximately one month later, and Dr. Kriegler promptly prepared his Second Supplemental Report. Nothing about what Plaintiff did was unjustified (but the same cannot be said for Compass' delay in disclosing errors in its surveys or the existence of its photographs).

---

[6] While the case was pending in the Eastern District of Missouri, Defendant was required to comply with Local Rule 3.01, which requires parties to provide copies of disclosed documents to all other parties except as otherwise ordered by the Court (no such Order was entered). Here is the text of the rule in full (emphasis added):

> (A) Disclosure Pursuant to Rule 26(a)(1) and (2). Disclosures shall be made in the manner set forth in Fed.R.Civ.P. 26(a)(1) and (2), except to the extent otherwise stipulated by the parties or directed by order of the Court. ***Disclosure of documents and electronically stored information pursuant to Rule 26(a)(1)(A)(ii) shall be made by providing a copy to all other parties, except as otherwise ordered by the Court.*** Electronically stored information shall be disclosed in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. A party need not disclose the same electronically stored information in more than one form.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Motion should be denied.

Dated: May 3, 2024

*Respectfully submitted,*

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:/s/*Richard S. Cornfeld*
Richard S. Cornfeld (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Joel R. Rhine, NC SBN 16028
Martin A. Ramey, NC SBN 33617
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960
Fax: 910−772−9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, the foregoing was served upon all counsel of record via electronic mail.

/s/ *M. Anthony Jenkins*