# Exhibit 2

```
 1
    IN THE UNITED STATES DISTRICT COURT
 2  FOR THE EASTERN DISTRICT OF M SSOURI
    EASTERN DIVISION              14:18 CV 01962 (SEV)
 3
 4
    GEORGE MOORE and VIRGINIA
 5  CARTER, on behalf of
    themselves and all others
 6  similarly situated,
 7              Plaintiffs,
 8       vs.
 9  COMPASS GROUP USA, INC., d/b/a
    CANTEEN,
10
                Defendant.
11
12
                    VOLUME II
13
14
       VIRTUAL ZOOM VIDEOTAPED 30(b)(6)DEPOSITION
15       OF COMPASS GROUP USA, INC. BY DAVID GOLDRING
16                (Taken by Plaintiffs)
17              Charlotte, North Carolina
18              Wednesday, June 30, 2021
19
20
21
22
23  Reported by Andrea L. Kingsley, RPR
24
25

                                          Page 162
```

```
 1                    A P P E A R A N C E S
 2
 3    ON BEHALF OF THE PLAINTIFFS (via Virtual Zoom):
 4                Robert M. Partain, Esquire
                  Arias Sanguinetti Wang & Torrijos, LLP
 5                6701 Center Drive W, Suite 1400
                  Los Angeles, California 90045
 6                (310) 844-9696
                  Robert@aswtlawyers.com
 7
                         - and -
 8
                  Richard Cornfeld, Esquire
 9                David S. Levy, Esquire
                  Richard S. Cornfeld Law Office
10                1010 Market Street, Suite 1645
                  St. Louis, Missouri 63101
11                (314) 241-5799
                  RCornfeld@Cornfeldlegal.com
12                Dlevy@cornfeldlegal.com
13
      ON BEHALF OF THE DEFENDANT (via Virtual Zoom):
14
                  Joseph C. Wylie, Esquire
15                K&L Gates, LLP
                  10100 Santa Monica Boulevard, 8th Floor
16                Los Angeles, California 90067-4104
                  (312) 807-4439
17                Joseph.wylie@klgates.com
18
19    ALSO PRESENT: Jeff Henry, Esquire, Compass Group
                     USA, Inc.
20
      VIDEOGRAPHER:   Sean Lowther
21
22
23
24
25

                                                    Page 163
```

```
 1                INDEX OF EXAMINATIONS
 2                                                PAGE
 3   Mr. Partain                                    167
 4   Mr. Wylie                                      204
 5
 6
 7                  INDEX OF EXHIBITS
                                                  PAGE
 8
     Exhibit 12, State of California               200
 9   spreadsheet
     Exhibit 56, PowerPoint presentation           170
10   Exhibit 57, PowerPoint presentation,          194
     Cashless Two Tier Project, Regulatory
11   States
     Exhibit 58, letter from Kathy Keller          168
12
```

```
 1    State of Pennsylvania regarding this matter?
 2         A.    I would have reviewed the letter before
 3    Kathy mailed it out.
 4         Q.    I want to show you a couple other
 5    exhibits we have obtained that we didn't have last    11:05AM
 6    time, at least I don't think we had last time.  The
 7    first is a document I am marking as Exhibit Number
 8    56.
 9                   (Exhibit 56, PowerPoint
10              presentation, marked for identification, as of  11:06AM
11              this date.)
12         Q.    It is a PowerPoint presentation.
13                   MR. PARTAIN:  And I would ask that
14              the court reporter, when this is marked and
15              produced, maintain it in its PowerPoint form,  11:06AM
16              it's electronic form, as opposed to
17              reproducing it to PDF.  We can talk about that
18              after the deposition.
19
20         Q.    There was a gentleman you told me last    11:06AM
21    time, I believe his first name was Scott, was it
22    Scott Devine; is that right?
23         A.    That's correct.
24         Q.    And I think you told me last time that
25    Mr. Devine was the person responsible for rolling    11:06AM
```

```
 1    out the survey to the field, in terms of training
 2    and things of that nature; is that right?
 3         A.   That's correct.
 4         Q.   You told me that Mr. Devine had at least
 5    one, and that we were given two PowerPoint              11:06AM
 6    presentations in that vein.  If you want to take a
 7    moment, we can look through this, but this
 8    PowerPoint that we've marked as Exhibit Number 56,
 9    is this one -- is this what you were referring to
10    during our last session, sir?                           11:07AM
11         A.   Yes, it is.
12         Q.   So the first one we're going to look at
13    here, Exhibit 56, is, "The Cashless 2 Tier Project,
14    Non-Regulatory States."  That's the first slide of
15    this particular exhibit.  The second slide says        11:07AM
16    "Questions, using WebEx messenger, submit your
17    questions to Caitlin O'Shea."  Who is Caitlin
18    O'Shea?
19         A.   She was the director of communications.
20         Q.   I do want to apologize, some of these        11:07AM
21    questions I asked you last time.  I did my best to
22    review the transcript, but my memory isn't as good
23    as it could be sometimes.  So if I've asked you
24    these before, I apologize.
25              The third slide here is entitled "Why."     11:07AM
```

1    And on the slide, it says, "Millions in annual 2
 2    tier revenue," and underneath it says, "Offsets
 3    cashless costs."
 4              First of all, were you involved in any
 5    way in the preparation of the -- let's just be very    11:08AM
 6    specific, were you involved in any way in the
 7    preparation of this particular PowerPoint
 8    presentation, which was -- which I think you
 9    testified before was used to train the folks in the
10    field?                                                 11:08AM
11              MR. WYLIE:  Object to the extent it
12         calls for the disclosure of attorney/client
13         communications.
14         Q.   You can go ahead and answer, sir.
15    Without telling me anything you had talked with your   11:08AM
16    attorneys about, were you involved in any way in the
17    preparation of this PowerPoint presentation?
18         A.   No, I did not work on the preparation of
19    this.
20         Q.   Before today, have you seen this?            11:08AM
21         A.   Yes.
22         Q.   Were you involved in any of the
23    presentations to the folks in the filed, like, for
24    instance, did you ever witness or go to or were you
25    with Mr. Devine when he was doing any of the           11:09AM

Page 172

Veritext Legal Solutions
866 299-5127
Case 3:23-cv-00818-JAG-DCK    Document 305-2    Filed 05/24/24    Page 7 of 18

```
 1    training at any point in time?
 2         A.    Not that I recall.
 3         Q.    Did Mr. Devine ever make a presentation
 4    to you or any of the other members of the -- any of
 5    the other executives regarding this particular      11:09AM
 6    PowerPoint or the training associated with it?
 7         A.    I would have reviewed the general
 8    content of what he was going to be presenting.
 9         Q.    And I assume reviewed it, and then
10    obviously approved it for use in the field; is that 11:09AM
11    right?
12         A.    Correct.
13         Q.    When it says here, "Millions in annual 2
14    Tier Revenue," this is across the United States, the
15    two tier revenue, when we talk about millions,      11:10AM
16    we're -- first of all, we're talking about millions
17    of dollars; right?
18         A.    Yes.
19         Q.    And two tier revenue represented
20    millions of dollars in revenue for Canteen each     11:10AM
21    year, is that right, at this point in time?
22         A.    Yes.
23         Q.    Underneath, it says, "Countless
24    disclosure stickers, too many variations."
25               Do you see that?                         11:10AM
```

```
 1            A.    I do.
 2            Q.    Did you agree back in this time frame --
 3      we're going to get to some dates here in a second,
 4      but I assume that these PowerPoints were created at
 5      the time the survey was being rolled out, which, if    11:10AM
 6      I recall from our last session, was around March of
 7      2019; is that right?
 8            A.    That is right.
 9            Q.    Did you agree in March of 2019 that
10      there were too many variations of the disclosure      11:10AM
11      stickers for the Canteen vending machines that
12      utilized two tier revenue?
13            A.    Yes.  It was very inconsistent.
14            Q.    The next slide here says, "Who," and
15      there are non-regulatory states.  Last night I added   11:11AM
16      this up to be 40 states.  And I'm going to be
17      honest, there are a number of states on this list
18      for which I never saw any data suggesting that
19      Canteen had machines in those states, for instance,
20      Alaska is on here, and Hawaii is on here, and I        11:11AM
21      never saw -- or I haven't seen in discovery at this
22      point any evidence that Canteen operates vending
23      machines in those states.  Is that right or wrong?
24                  MR. WYLIE:   Objection to form.
25            A.    That's correct.                            11:11AM
```

Veritext Legal Solutions
866 299-5127
Case 3:23-cv-00818-JAG-DCK   Document 305-2   Filed 05/24/24   Page 9 of 18

|   |   |   |
|---|---|---|
| 1 | Q. So the identification of non-regulatory | |
| 2 | states on this particular slide does not necessarily | |
| 3 | mean that Canteen had machines in any one of these | |
| 4 | states; is that right? | |
| 5 | A. That's correct. | 11:11AM |
| 6 | Q. The next slide, which is slide 5 on | |
| 7 | Exhibit 56 says, "What, non-regulatory states." | |
| 8 | Down here it says, "Machine field survey, only | |
| 9 | machines that charge two-tier need to be surveyed, | |
| 10 | including devices that charge 2 tier within the last | 11:12AM |
| 11 | 30 days. Machines with cashless and no 2 tier do | |
| 12 | not need a survey." | |
| 13 | Did I read all that correctly? | |
| 14 | A. You did. | |
| 15 | Q. During this survey that we've talked | 11:12AM |
| 16 | about both before, and we're talking about now, was | |
| 17 | it the responsibility of the folks in the field to | |
| 18 | determine whether a machine was a two tier machine | |
| 19 | or not? | |
| 20 | A. Yes. | 11:12AM |
| 21 | Q. For instance, the folks at corporate in | |
| 22 | Charlotte didn't give a field office a list of | |
| 23 | machines that corporate determined were two tier | |
| 24 | machines, the folks in the field made that | |
| 25 | determination; is that right? | 11:13AM |

Page 175

```
 1      A.   I need to clarify that a bit.  The folks
 2   in the field would have determined if the machine
 3   could be set up as two tier, but from the --
 4   corporate, we could give each of the operations a
 5   listing of all of their machines that were set up    11:13AM
 6   as two tier in the system.
 7      Q.   Is that, in fact, what corporate did, is
 8   provide the folks in the field with that listing?
 9      A.   Yes.
10      Q.   I guess what I'm trying to drive at        11:13AM
11   here, sir, is how did you and your colleagues in
12   corporate ensure that all of the two two-tiered
13   machines that were in the field were getting
14   surveyed during this process?
15      A.   Because we can see in the system which     11:13AM
16   ones are set up with that designation.
17      Q.   Underneath this, it says, "Acuity
18   survey, guided step-by-step instructions, machines
19   photographed to capture compliance."
20           Did I read all that correctly?            11:14AM
21      A.   Yes.
22      Q.   This acuity survey, is this the app that
23   you talked with me about that was developed and to
24   be used on mobile phones?
25      A.   Yes, that's correct.                      11:14AM
```

```
 1        Q.   The next slide, slide six on Exhibit 56
 2   has a series of steps for non-regulatory states.
 3   There appear to be screen shots, or what, at least
 4   to me, appear to be screen shots, maybe as many as
 5   four.  Is this literally what the app looked like on    11:14AM
 6   a person in the field's phone when they were doing
 7   the audit of a particular machine?
 8        A.   Yes.
 9        Q.   So, for instance, on this first one that
10   says "Non-regulatory states audit, QR code," there     11:15AM
11   is a question that says, "Is there a Canteen Connect
12   sticker, yes or no," and the person in the field
13   would simply just select yes or no and move on to
14   the next question; is that right?
15        A.   Correct.                                     11:15AM
16        Q.   When it says, "Is there a Canteen
17   Connect sticker," what is that referring to
18   specifically, Canteen Connect sticker?
19        A.   On the exhibit, you can see there in the
20   blue kind of bottom center --                          11:15AM
21        Q.   What I am sort of highlighting here
22   (indicating)?
23        A.   Yes.
24        Q.   Go on.
25        A.   That is the sticker.  It contains a QR       11:15AM
```

Page 177

```
 1    code which links to the machine ID number.
 2         Q.   Is that something for consumers to use
 3    or for your employees to use when interfacing with
 4    the machine?
 5         A.   It's actually both.  It is for the         11:16AM
 6    consumer, they can use their phone.  If they're
 7    having a problem with the machine, they can use
 8    their phone camera and a QR code, and then they can
 9    text Canteen to say that the machine is not working
10    or perhaps they want a refund.  And we know, again,  11:16AM
11    based on that connection to the QR code to the
12    machine ID where that machine is at.
13         Q.   This Canteen Connect sticker, did this
14    at any point in time contain any disclosures
15    regarding two tier pricing?                          11:16AM
16         A.   No.
17         Q.   So whether a machine had a Canteen
18    Connect sticker or not wouldn't make a difference as
19    to whether it may or may not have disclosed any
20    information to a consumer regarding two tier         11:17AM
21    pricing; is that right?
22         A.   That's correct.
23         Q.   The fact that there is a question for
24    the folks in the field as to whether the machine had
25    a Canteen Connect sticker or not, my assumption is   11:17AM
```

Page 178

|     | |
| --- | --- |
| 1 | that some of those machines did not have that |
| 2 | sticker; is that right? |
| 3 | A. It is possible that some did not. |
| 4 | That's why we had the question there, just in case. |
| 5 | Q. Then it looked like the folks in the    11:17AM |
| 6 | field were to take a picture of that sticker as part |
| 7 | of the process; correct? |
| 8 | A. They were to take a picture of that QR |
| 9 | code, which then puts the machine ID number and |
| 10 | location information into the survey.    11:17AM |
| 11 | Q. When I'm looking at this one here, it |
| 12 | says, "Upload image of the Canteen Connect sticker." |
| 13 | Do you see that right next to where my |
| 14 | cursor is? |
| 15 | A. Yes. That's the purpose of it.    11:18AM |
| 16 | Q. The next page here says, "Cash discount |
| 17 | sticker, no." I assume that when it says steps, |
| 18 | these are the steps that the person in the field |
| 19 | would go through using this acuity audit app that we |
| 20 | talked about before; is that right?    11:18AM |
| 21 | A. Correct. |
| 22 | Q. I assume there is -- and you and I |
| 23 | talked about this before, but I haven't actually |
| 24 | seen this. There was a point in time when the |
| 25 | person in the field conducting the audit of the    11:18AM |

```
1    machine would input whether there was a cash
2    discount sticker on the machine or not; correct?
3         A.   Correct.
4         Q.   And then they were -- it appears that
5    this person was to upload an image of the machine    11:19AM
6    corner to corner, meaning they were to take a
7    picture of the entire machine so that you could see
8    the top, bottom, sides, and everything; is that
9    right?
10        A.   That's correct.                            11:19AM
11        Q.   And then it says here, "Apply new
12   sticker."  Based on your testimony before,
13   regardless of whether a machine had a sticker or
14   not, the person in the field that was conducting the
15   audit was to put on a new sticker reflecting this -- 11:19AM
16   at least in the non-regulatory states, reflecting
17   this information where my cursor is on the right
18   side of page 6 here; is that right?
19        A.   That's right.
20        Q.   It looks like the person was to take a     11:19AM
21   picture of the machine with the new sticker on it;
22   is that accurate?
23        A.   Yes.
24        Q.   And then when they were done, they would
25   click finish, and they would be done with that       11:20AM
```

```
 1                MR. WYLIE:  Objection.  Foundation.
 2        Q.    If you know.
 3        A.    She might.  I don't know.
 4        Q.    Going back to this timeline here, at
 5   this point in time, it says -- excuse me, at the        11:37AM
 6   time this PowerPoint presentation was created, it
 7   looked like the required project completion date was
 8   July 26th, 2019; correct?
 9        A.    Yes.
10        Q.    Obviously, this survey didn't even come      11:37AM
11   close to meeting that date; right?
12        A.    Correct.
13        Q.    Are you able to tell me, as you sit here
14   today, what the problems or issues were in getting
15   this survey timely completed -- or, excuse me,          11:38AM
16   completed by the, at least, initial July 26th, 2019
17   date on this?
18                MR. WYLIE:  Objection.  Form.
19        A.    We had issues with getting the stickers,
20   and also we had issues with having the manpower         11:38AM
21   available to do all the surveys.  And so those were
22   the main issues that were pushing timelines out.
23                     (Exhibit 57, PowerPoint
24              presentation, Cashless Two Tier Project,
25              Regulatory States, marked for identification, 11:39AM
```

Page 193

1      as of this date.)
2      Q.   Mr. Goldring, I'm going to show you an
3  exhibit that we're marking as Exhibit Number 57 to
4  your deposition, it is a different PowerPoint
5  presentation that was provided to us.  And it's         11:39AM
6  entitled "Cashless Two Tier Project, Regulatory
7  States."  Do you see that?
8      A.   Yes.
9      Q.   And I think you told me at the last
10 deposition that the regulatory states were those       11:39AM
11 states in which Canteen determined additional
12 disclosure to consumers was required regarding both
13 the cash and the card price on the machines; is that
14 right?
15     A.   Yes.                                          11:39AM
16     Q.   That was based on a review or analysis
17 of each of the states' laws regarding labelling;
18 correct?
19     A.   Yes.
20     Q.   Again, don't -- without you disclosing        11:39AM
21 any communications you may have had with attorneys,
22 I think that you indicated that Mr. Wylie's firm was
23 the firm that conducted that analysis for Canteen;
24 is that right?
25     A.   Yes.                                          11:39AM

```
 1    STATE OF NORTH CAROLINA
 2    WAKE COUNTY
 3                    REPORTER'S CERTIFICATE
 4              I, Andrea L. Kingsley, a Notary Public
 5    in and for the State of North Carolina, do hereby
 6    certify that there came before me on Wednesday, the
 7    June 30, 2021, the person hereinbefore named, who
 8    was by me duly sworn via Virtual Zoom to testify to
 9    the truth and nothing but the truth of his
10    knowledge concerning the matters in controversy in
11    this cause; that the witness was thereupon examined
12    under oath, the examination reduced to typewriting
13    under my direction, and the deposition is a true
14    record of the testimony given by the witness.
15              I further certify that I am neither
16    attorney or counsel for, nor related to or employed
17    by, any attorney or counsel employed by the parties
18    hereto or financially interested in the action.
19              IN WITNESS WHEREOF, I have hereto set
20    my hand this the 15th day of July, 2021.
21
22
23              _____
24              Andrea L. Kingsley, Notary Public
25              Notary Public #201903800023
```