# Exhibit 3

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF MISSOURI
 3                    EASTERN DIVISION
 4
 5    GEORGE MOORE AND VIRGINIA CARTER, ET   )
      AL. ON BEHALF OF THEMSELVES AND ALL    )
 6    OTHERS SIMILARLY SITUATED,             ) CASE NO.
                                             ) 4:18-cv-01962-
 7                   PLAINTIFFS,             ) SEP
                                             )
 8              VS.                          )
                                             )
 9    COMPASS GROUP USA, INC., D/B/A         )
      CANTEEN,                               )
10                                           )
                                             )
11                   DEFENDANT.              )
      _____)
12
13
14
15
16          DEPOSITION OF MICHAEL COFFEY
17              FRIDAY, FEBRUARY 4, 2022
18
19
20    LOCATION:  REMOTE PROCEEDING
21
22    REPORTED REMOTELY BY:  SUSAN S. HENRIQUEZ, CERTIFIED
      SHORTHAND REPORTER NO. 13763
23
24    JOB NO. 5057322
25
                                                     Page 1
```

Veritext Legal Solutions
866 299-5127
Case 3:23-cv-00818-JAG-DCK    Document 305-3    Filed 05/24/24    Page 2 of 9

```
 1      DEPOSITION OF MICHAEL COFFEY, TAKEN REMOTELY, VIA
 2      VIDEOCONFERENCE, ON BEHALF OF THE PLAINTIFFS, AT
 3      8:03 A.M. PST, FRIDAY, FEBRUARY 4, 2022, BEFORE
 4      SUSAN S. HENRIQUEZ, C.S.R. NO. 13763.
 5
 6      APPEARANCES OF COUNSEL (ALL APPEARED REMOTELY):
 7
 8      FOR THE PLAINTIFFS:
 9              ARIAS SANGUINETTI WANG & TORRIJOS, LLP
                BY:  ROBERT M. PARTAIN, ESQ.
10              6701 CENTER DRIVE WEST
                14TH FLOOR
11              LOS ANGELES, CALIFORNIA 90045
                310.844.9696
12              ROBERT@ASWTLAWYERS.COM
13
        FOR THE DEFENDANT:
14
                K&L GATES, LLP
15              BY:  JOSEPH C. WYLIE, II, ESQ.
                70 WEST MADISON STREET
16              SUITE 3300
                CHICAGO, ILLINOIS 60602
17              312.372.1121
                JOSEPH.WYLIE@KLGATES.COM
18
19
20
21
22
23
24
25
```

1     A    No.
2     Q    You understand that Mr. Goldring was deposed on
3  two separate sessions back in June of last year; is that
4  right?
5     A    Yes.
6     Q    Have you talked with Mr. Goldring about his
7  deposition?
8     A    No.
9     Q    So, again, we're here in connection with a
10 lawsuit involving the two-tier pricing on Canteen vending
11 machines throughout the country and the labeling regarding
12 that two-tier pricing system.
13         Do you understand that?
14    A    Yes.
15    Q    I understand from my conversation with
16 Mr. Goldring last June that Canteen did a -- what I'm
17 going to call a survey, and I think he referred to it as
18 that as well, back between March of 2019 and February of
19 2020 regarding the labeling on the two-tier machines.
20         Are you familiar with that survey?
21    A    Yes.
22    Q    Were you involved in the process at Canteen of
23 deciding to do that survey?
24    A    Yes.
25    Q    And what was your role in that process?

Page 10

1    A    I provided the technical ability to collect the
2    survey and insight on how to do that.
3    Q    When you say you "provided the technical
4    ability," what specifically did you provide?
5    A    Awareness that we could use a photo capture
6    position and a database to reconcile those photos and the
7    information collected.
8    Q    Now, there was another person at Canteen I spoke
9    with back in June.  I believe her name was Martha Morgan.
10         Do you know Ms. Morgan?
11   A    Yes.
12   Q    My understanding from my prior deposition is that
13   Ms. Morgan was involved also in the technical, sort of,
14   creation of the app, if you will, for the survey and
15   things of that nature; is that accurate?
16   A    Yes.
17   Q    Were you involved in that as well?
18   A    No.
19   Q    Were you one of the folks at Canteen that was in
20   the decision making team on whether to conduct the survey
21   or not?
22   A    No.
23   Q    Who was that?
24   A    David Goldring was leading that.
25   Q    Who else made that decision?

1   BY MR. PARTAIN:

2       Q   So the first one here, "Top Priorities," the "Two

3   Tier Project," it appears, to me at least, that this is

4   referring to what we now call the survey that was

5   conducted between March 2019 and February 2020.

6           Is that right?

7       A   Yes.

8       Q   And Martha here appears to be the person

9   responsible for creating this application to take

10  photographs of machines before and after the updated

11  labeling.

12          Do you see that?

13      A   I do.

14      Q   And underneath that, you seem -- first of all,

15  what does "P2PE Conversion" mean?

16      A   Point To Point Conversion.

17      Q   What is that?

18      A   It's the security of a credit card when it

19  swipes.

20      Q   And you appear to be responsible for this next

21  task, which is (as read):

22              "Market credit card encryption at the kiosk.

23          Converting Gen 2s or replacing with Gen 3s.

24          Primarily field implementation?"

25           This is a technology thing that doesn't have

1   A   Correct.

2   Q   Okay.  And then on Page 81, sir, starting on

3   Line 14, I asked (as read):

4          "Who specifically decided to do the survey?

5       I know you said it was at your direction, but was

6       it your direction alone, or was it part of the

7       Executive Team, or who decided to do this survey?"

8          "Answer:  It would have been Peter and myself

9       and Mike."

10      Now, you told me earlier that you had no role in

11  deciding to do the survey; so you would disagree with what

12  Mr. Goldring testified to here on Page 81?

13  A   I don't disagree.  I was part of the

14  conversation.  I wasn't the deciding factor on whether to

15  implement the survey.

16  Q   Okay.  Well, the question specifically was who

17  decided to do the survey, and he identified you as one of

18  the three people.

19      Do you disagree with that?

20  A   I don't decide what action is taken.

21  Q   So you do disagree, is what you're saying?

22  A   I do.

23  Q   Okay.  Do you know whether, after the survey was

24  completed, whether Canteen did any audit of the survey

25  data, meaning take a small sample and, you know, verify

Page 89

1    that the photographs were being taken the way they were
2    supposed to and that the labeling was applied the way it
3    was supposed to?  Do you know whether, after the survey
4    was done, Canteen made any effort to audit the survey
5    results?
6         A    I do not.
7         Q    Meaning you don't know, not that it wasn't done;
8    is that right?
9         A    I do not know.
10        Q    Okay.  We're almost done, sir.
11             I think I asked you this, and I hate to be
12   repetitive, sir, I just want to make sure:  When I asked
13   you about Exhibit 45 -- let me put it back up on the
14   screen.  This is the e-mail that Ms. Sielck sent to you
15   that attached the Texas office of Consumer Credit
16   Commissioner.  If I recall right, you told me you don't
17   know one way or the other whether you did anything in
18   response to this letter.
19             Is that right or wrong?
20        A    That's correct.
21        Q    Okay.  And the only reason I'm asking you is when
22   I talked to Mr. Goldring, he thought that maybe you would
23   know what was done in response to it, but you don't know
24   either; is that right?
25        A    I do not.

```
1      STATE OF CALIFORNIA       )
2      COUNTY OF LOS ANGELES     ) ss.
3
4              I, Susan S. Henriquez, C.S.R. No. 13763, in and
5      for the State of California, do hereby certify:
6              That prior to being examined, the witness named in
7      the foregoing deposition was by me duly sworn to testify
8      to the truth, the whole truth, and nothing but the truth;
9              That said deposition was taken down by me,
10     remotely, in shorthand, at the time therein named and
11     thereafter reduced to typewriting under my direction, and
12     the same is a true, correct, and complete transcript of
13     said proceedings;
14             That if the foregoing pertains to the original
15     transcript of a deposition in a Federal Case, before
16     completion of the proceedings, review of the transcript
17     { } was { } was not required.
18             I further certify that I am not interested in the
19     event of this action.
20             Witness my hand this 23rd day of February, 2022.
21
22                      [signature: Susan Henriquez]
23
                        Certified Shorthand Reporter
24                      for the State of California
25
```

Page 94