UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMES JILEK, et al., on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:23-cv-00818-RJC DCK<br>) |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**PLAINTIFF'S RESPONSE TO COMPASS GROUP USA, INC.'S MOTION FOR LEAVE TO FILE A SURREPLY ON CLASS CERTIFICATION**

Compass' motion[1] raises three grounds for filing its surreply (which it filed without being granted leave).[2] Except for the issue regarding photographs of Compass' vending machines, the motion fails to show anything incorrect in Plaintiffs' Reply,[3] and even the photograph issue is irrelevant to class certification. Plaintiff therefore files this Opposition.[4]

**I.    ARGUMENT**

    **A.  The Facts Regarding Frances Jaye Do Not Warrant a Surreply**

In response to the class certification motion, Compass argued that Plaintiff's proposed claims

---

[1] Compass Group USA, Inc.'s Motion for Leave to File, Instanter, Surreply in Opposition to Motion for Class Certification, Doc. #307 ("Motion").
[2] Compass Group USA, Inc.'s Surreply in Opp. to Motion for Class Cert., Doc. # 307-1 ("Proposed Surreply").
[3] Plaintiff's Reply in Supp. of Motion for Class Certification, Doc. #302 ("Reply").
[4] Compass' motion violates the requirement of LCvR 7.1(a) that it "state with particularity the grounds for the motion." *Id.* It merely states that Compass wishes "to address false statements of fact and mischaracterizations presented by Plaintiff for the first time in his Reply in Support of Motion for Class Certification." Compass' brief elaborates on the grounds for the motion. *See* Compass Group USA, Inc.'s Mem. in Supp. of Motion for Leave to File, Instanter, Surreply in Opp. to Motion for Class Cert., Doc. 308 ("Def. Mem."). However, the grounds are still not stated with particularity but at times need the proposed surreply to understand the basis of its motion. *See* Def. Mem. at 2 ("In its surreply, Compass seeks to explain all of the data necessary to reach the conclusions Plaintiff asserts in the Reply."). Plaintiff therefore addresses the proposed surreply herein.

1

process would not have weeded out Ms. Jaye's invalid claim.[5] But Compass provided no supporting facts for that argument. It desires to do so now (Proposed Surreply at 3), but that should not be allowed. It had its chance.

Moreover, Compass' statement that "the alleged fact (i.e., that Compass utilized survey data to exclude Ms. Jaye's claims) is false" (Def. Mem. at 2) is *itself* false. Compass' proposed surreply confirms that it used its survey in conjunction with Ms. Jaye's bank records to disprove her claim. *See* Proposed Surreply at 3.

Nevertheless, assume that Ms. Jaye were to submit a false claim of a purchase at Love Field without discovering that she had no supportive bank records and were paid on that claim, as Compass suggests for the first time now. Proposed Surreply at 3. That doesn't matter for class certification for two reasons. First, "[w]hile a high degree of over-inclusiveness could prevent certification, any degree of over-inclusiveness will not do so." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc*., 867 F.3d 434, 442 n.4 (3d Cir. 2017). Compass has not shown there would be a high degree of overinclusiveness. Second and more importantly, as Plaintiff pointed out, a false claim won't increase Compass' total liability, which will have been determined in the class trial. *See* Reply at 10 (citing *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1132 (9th Cir. 2017)), and *Mullins v. Direct Dig., LLC,* 795 F.3d 664, 670 (7th Cir. 2015)). Compass' proposed surreply ignores both of these points.

### B. Compass Has Still Not Shown that Labeled and Unlabeled Machines Were Present at the Same Locations at the Same Time

Compass makes four attempts to contradict Plaintiff's assertion that there was no location with both labeled and unlabeled machines at the same time. Proposed Surreply at 3-7. Those

---

[5] Compass Group USA, Inc.'s Resp. in Opp. to Plff's Motion for Class Cert., Doc. #295, at 23.

attempts are not only ineffective, but they are riddled with distortions of the record.

Perhaps Compass' grossest distortion is its attempt to refute Plaintiff's argument that the reference in Compass' spreadsheet to a labeled machine at Mr. Baldwin's workplace had to be an error since the machine received no two-tier revenue for more than two years after that. Compass cites Martha Morgan's testimony for the proposition that a machine can have a label years before it generates two-tier revenue. For this it purports to paraphrase, but not quote, Martha Morgan's testimony. *See* Proposed Surreply at 5 ("Martha Morgan ... told Plaintiff's counsel that it is quite plausible that a machine could be surveyed and the existence of a label noted in the survey, despite the fact that two tier revenue (i.e. the ten cent surcharge) was not turned on until some later date." (citing Morgan Dep. Tr. 56:10-23). But that is not what she said. She was not talking about a reference in the survey to "the existence of a label"; it was to the *absence* of a label, and that makes all the difference. Here is the actual testimony Compass purports to paraphrase (referring to the survey spreadsheet):

> So I do not know specifically on this particular row, it appears that this machine was surveyed on the 2019 date. It appears that *there was not a cash discount sticker*, and it appears at that time in March of 2019, it was not generating two-tier revenue; and that two-tier revenue at this particular location was later enabled, and it started to generate two-tier revenue in that date -- I can't see the date now -- the first time it generated two-tier revenue.
>
> Q February --
>
> A February 2021. Right. But that is absolutely a possibility that a machine in 2019 was not generating two-tier revenue, and then it was turned on at a later date.

Doc. # 257-6 (Morgan Dep. Tr. 56:10-23 (emphasis added)).[6] She also explained that the denotation of a machine as two-tier comes when it obtains an operative cashless device, *i.e.*, a

---

[6] In support of its proposed surreply, Compass submitted excerpts of the Morgan transcript. Doc. # 257-6 is the complete transcript. It includes pertinent testimony regarding cashless devices that Compass omitted. (*See* below.)

3

credit card reader. *See id.* (53:1-10) (referring to the first time the machine generated two-tier revenue: "[I]t's the month when the device was turned on, and it does not record the actual first transaction."); 88:10-14 (defining a "cashless device" as a "credit card reader.").

It certainly makes sense that a machine without an operative credit card reader would need no label. But the opposite – the situation Compass postulates in its proposed surreply – makes no sense. Surely Compass wouldn't tell customers they could pay with a credit card on a machine with no operative credit card device. Compass hasn't shown that it *ever* did that. Thus, the supposed finding of a label regarding credit card purchases on a machine with no two-tier revenue – and, in fact, with no operative credit card reader – *must* have been an error.

Next, Compass accuses Plaintiff of ignoring when two-tier revenue was collected in Building KK at Mr. Pemberton's workplace. Proposed Surreply at 5. But those dates have no bearing on the pertinent issue: When did the machines bear labels? Compass itself indicates that Machine 61509 was unlabeled on April 12, 2019, and Machine 211777 was first found labeled five months later on September 12, 2019. *Id.* ("When surveyed on April 12, 2019, [Machine 61509] was found to be unlabeled. ... When first surveyed on September 12, 2019, [Machine 21177] was found to be labeled.") Compass thus disproves its contention that its data show both a labeled and unlabeled machine at that location at the same time.

Compass goes on to argue that Mr. Pemberton can recover by purchasing from only two unlabeled machines, not the 50 with labels, making it impossible to know if his claim is valid. Proposed Surreply 6-7. But except for the one machine erroneously shown with a label (as noted above), the earliest labels in Building KK, according to Compass' data, were in September 2019. *See* Doc. # 302-3 (Exhibit 2). Mr. Pemberton can recover for his purchases before that date.

Compass also argues that the fact that machines at Messrs. Borrero's and Whitaker's

4

workplaces were either labeled or unsurveyed means either that there were labeled and unlabeled machines there at the same time (if the unsurveyed machines had no labels) or all machines were labeled (if the unsurveyed machines had labels). Proposed Surreply at 4. But this uncertainty is due to Compass' sloppy record-keeping in not surveying all machines in a given location, a fact that should not allow it to defeat certification.[7] Where machines were unsurveyed at the time of a class member's purchase (something that would have been uncommon given the relatively few unsurveyed machines, *see* Reply at 8, n. 5), the class member should be allowed to recover.

In short, Compass has not shown why its workers would put labels on less than all machines in a single location, and it certainly seems unlikely. Could it have happened? Maybe. No one's perfect. But if it did, and especially if it were common, Compass—which is the master of its data—could have easily shown it. It hasn't.

### C. Plaintiffs' Error Regarding the Photographs Is Irrelevant for Class Certification

Plaintiff acknowledges that he incorrectly stated that Compass had not disclosed the existence of photographs of the vending machines until June 27, 2023.[8] This was an unintentional error, and Plaintiff apologizes to the Court.

However, regarding whether class certification is warranted, Compass makes a mountain out of less than a molehill. Plaintiff mentioned the disclosure of the photographs merely as part of his explanation for why his expert, Dr. Kriegler, had not performed his full analysis at the time of his deposition but had instead shown his methodology that would incorporate the photos. Reply at 4-5. The main issue regarding the photographs is not when Plaintiff first knew of them but

---

[7] *See* Mem. in Supp. of Plff James Jilek's Motion for Class Cert., Doc. # 293-1 ("Plff's Mem.") (citing *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197–98 (E.D. Va. 2015), *McAllister v. St. Louis Rams, LLC*, 2018 WL 1299553 *9 (E.D. Mo. Mar. 13, 2018); Reply, at 8 (citing *City Select*, 867 F.3d at 432 n. 27), and *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015)
[8] *See* Reply at 5; Declaration of Richard S. Cornfeld, Doc. #302-1, ¶ 5.

when Compass disclosed that it had found errors in its data from them. That came in Ms. Morgan's Declaration on June 27, 2023[9] (the day before the third session of her deposition), five-and-a-half years into this case. That is what necessitated a change in Plaintiff's method of calculating classwide damages, not simply the photos.

**II.     CONCLUSION**

Plaintiff respectfully requests that the Motion be denied.

Dated: June 20, 2024                                                          *Respectfully submitted,*

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: /s/ *Richard S. Cornfeld*
Richard S. Cornfeld (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com
daniel@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Joel R. Rhine, NC SBN 16028
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960
Fax: 910−772−9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

---

[9] Plff's Mem. at 6-7.

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2024, the foregoing was served upon all counsel of record via electronic mail.

/s/ *Richard S. Cornfeld*