IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| JAMES JILEK, *et al*., on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 3:23-cv-00818-RJC-DCK |
| COMPASS GROUP USA, INC., D/B/A Canteen | ) ) ) | |
| Defendant. | ) ) ) | |

**COMPASS GROUP USA, INC.'S SURREPLY IN OPPOSITION TO MOTION FOR
CLASS CERTIFICATION**

Defendant Compass Group USA, Inc. d/b/a Canteen ("Compass") submits this Surreply in Opposition to the Motion for Class Certification in order to address certain new and novel mischaracterizations and arguments presented in Plaintiff James Jilek's ("Plaintiff") in his Reply in Support of Motion for Class Certification, (Doc. No. 302), ("Reply").

**I.    INTRODUCTION**

In his Reply, Plaintiff asserts several mischaracterizations, mistakes of fact, and misleading half-truths. First, Plaintiff falsely contends that Compass utilized its survey data records to determine that former plaintiff Jaye did not purchase from a Compass machine, likely to lead the Court to the incorrect belief that Compass' survey data can be used as an objective record by which a claimant may be ascertained. This is not true. As discussed below, had the parties relied upon the survey data alone, Ms. Jaye would have erroneously remained as a plaintiff.

Second, in an effort to refute Compass' contention that a claimant would need to identify not only the workplace where the purchase was made, but must also recall that the vending

machine(s) at issue charged a differential price and were unlabeled, Plaintiff misinterprets the survey data to create the misimpression that no survey location had both labeled and unlabeled machines at the same time. To leap to this conclusion, Plaintiff makes several unsupported assumptions and fails to refer to essential information.

Finally, both within the substance of the Reply and under oath in a declaration from Plaintiff's counsel, Plaintiff contends that it was not until June 27, 2023 that Compass disclosed that the survey performed by Compass included taking photographs of the vending machines at issue. This statement is demonstrably false. In light of the repeated questioning of Compass' personnel on the issue, Plaintiff's counsel's sworn statement that Plaintiff "had no way of knowing that there were photographs" cannot be explained away as an oversight.

That Plaintiff must resort to making arguments based upon mischaracterizations and manifest misstatements of "fact" to salvage his Motion for Class Certification is telling. Nevertheless, they should be disregarded by the Court.

## II. MISREPRESENTATIONS OR MISCHARACTERIZATIONS

### A. The Survey Data Would Have Erroneously Included Jaye Within the Class.

In reply to Compass' argument that the class is not ascertainable, Plaintiff incorrectly contends that Compass' survey data is an objective record that can be relied upon to verify or exclude putative class member claims. (Reply 4-5.) In support of this, Plaintiff presents the new and false assertion that the survey records "are the same records that *Compass itself* used to show that [former plaintiffs] Jaye's and Borrero's purchases were not from its machines and that the locations of other purchases contained labeled machines." (*Id.* at 6 (emphasis in original); *see id.* at 21 ("[M]ost bizarrely of all, Compass insists that this process [of reviewing survey data] would not have weeded out the claims of Ms. Jaye and Mr. Borrero. It wouldn't? How can that be? A

comparison with Compass' reports was exactly how *Compass* weeded them out.").) But, in truth, it was not the survey data that excluded Ms. Jaye from the putative class at all; it was only through a review of Ms. Jaye's own bank records that Compass (not Ms. Jaye's counsel) determined that she did not have a claim because the single purchase she made at a vending machine was from a machine owned or operated by an unrelated company.[1] (Ex. 1 [hereinafter "Jaye Dep. Tr."] 21:19-22, 55:25-56:10, 66:4-70:2.)[2]

In fact, had Compass relied upon the survey data, Ms. Jaye would have been *erroneously included* within the class. Ms. Jaye testified that her purchase was made at a vending machine at Love Field airport in Dallas, Texas, though she could not remember where in Love Field the machine was located. (Jaye Dep. Tr. 57:9-59:3.) According to the survey data, Compass did have some vending machines at certain locations within Love Field airport. Had Ms. Jaye submitted a claim asserting only that she purchased from a vending machine at Love Field, she would have been improperly included within the class even though she never made a purchase from a Compass machine. Plaintiff's statement that Compass relied upon the survey data to refute Ms. Jaye's claims is not only false, but the truth illustrates precisely why the survey data cannot be relied upon to ascertain which claimants are members of the class.

---

[1] Ms. Jaye acknowledged, during her deposition, that due to the switching of banks and her personal schedule, she was unable to obtain her bank records for more than one year after Compass issued requests for the production of documents evidencing any purchase from a Compass vending machine. (Jaye Dep. Tr. 20:19-25.)

[2] It is correct, however, that the survey data shows that Compass has no vending machines at the address that Mr. Borrero now alleges he made purchases—something that his counsel could and should have discovered, given that the survey data was produced before Mr. Borrero filed his complaint.

3
Case 3:23-cv-00818-JAG-DCK    Document 322    Filed 08/28/24    Page 3 of 10

### B. Plaintiff's Misleading Statement that Labeled and Unlabeled Machines Were Not at the Same Workplace at the Same Time.

In its Response, Compass presented evidence showing that certain locations had both labeled and unlabeled machines, or labeled and unsurveyed machines, making it impossible to know whether any purchaser was apprised of the surcharge at the time of purchase. Plaintiff challenges this contention, and now argues that there is not "a single location that had both labeled and unlabeled machines simultaneously." (Reply 4.) But this incorrect conclusion is based on a misinterpretation or misreading of the survey data and is contradicted by deposition testimony.

First, even assuming, *arguendo*, that Plaintiff is correct that all of the machines at Messrs. Borrero's and Whitaker's workplaces were either labeled or unsurveyed (and that none were unlabeled), Plaintiff ignores the conclusions that must be drawn from such a fact. If that were true, it would mean that either: (1) some or all of the unsurveyed machines were unlabeled, and thus the workplaces had both labeled and unlabeled machines at the same time (proving Plaintiff's statement untrue); or (2) the unsurveyed machines *were all labeled* and that all purchasers at those locations, including both former plaintiffs at the time of their alleged purchases, were properly apprised of the fee. Regardless, it is clear that there were labeled machines at the worksites and it cannot be objectively ascertained whether either former plaintiff received notice of the surcharge before making a purchase.

Second, with regard to the vending machines located at Messrs. Baldwin and Pemberton's workplaces, the incorrect assumptions made in Mr. Cornfeld's Declaration (and which the Reply relies upon) misinterpret the data and is contrary to deposition testimony. Plaintiff acknowledges that survey data identifies one labeled machine and one unlabeled machine at a location called "Compound" at one of Mr. Baldwin's worksites. (Reply Ex. A, Doc. No. 302-1, ¶ 10 [hereinafter "Reply Decl."].) This fact clearly refutes Plaintiff's contention that there is not "a single location

that had both labeled and unlabeled machines simultaneously." (Reply 4.) In order to overcome this inconvenient fact, Plaintiff determines that the vending machine which was surveyed on May 2, 2019 and found to have a label can only "be an error because …. [the] first revenue date was October 2020." (Reply Decl. ¶ 10 ("It seems unlikely that a machine could have been surveyed over a year before it reported revenue.").) But this conclusion is contradicted by the deposition testimony of Martha Morgan, who told Plaintiff's counsel that it is quite plausible that a machine could be surveyed and the existence of a label noted in the survey, despite the fact that two tier revenue (i.e. the ten cent surcharge) was not turned on until some later date. (Ex. 2 [hereinafter "5/10/23 Morgan Dep. Tr."] 56:10-23 (when asked about a machine that was surveyed in 2019 but did not generate two tier revenue until February 2021 she testified, "that is absolutely a possibility that a machine in 2019 was not generating two-tier revenue, and then it was turned on at a later date").) Once this mistake of fact is corrected, Plaintiff is left without any support for the assumptions contained in Mr. Cornfeld's Declaration, and, in turn, the arguments in the Reply.

Plaintiff also seems to agree that Messrs. Baldwin and Pemberton's workplaces did contain both unlabeled and labeled machines, albeit at different locations within the workplace. (Reply Decl. ¶¶ 7-8, 10-12.) For example, Plaintiff contends that there were 32 machines located in building KK at Mr. Pemberton's workplace. (*Id.* ¶ 15.) Two of these were found to be unlabeled at the time they were surveyed, 24 were labeled, and six had not been surveyed. (*Id.*) Within that building, these 32 machines were placed in 7 locations. (*See* Reply Decl. Ex. 2.) Plaintiff created Exhibit 2 to the Declaration and directs the Court's attention to only the date that each machine was surveyed in order to support Plaintiff's conclusion that there were no labeled and unlabeled machines at the same workplace at the same time. (*Id.* ¶ 18.) But just referencing the survey date misrepresents when the machine may have been in use. Instead, the first two-tier revenue date

5

shows when the machine was in use and collecting the ten-cent surcharge, thereby providing a more complete picture of when the machine was at the workplace. Exhibit 2 to the Declaration, however, fails to include the date that each machine began collecting two-tier revenue, which is surprising considering that data is included on Exhibit 1 to the Declaration and was apparently intentionally excluded from Exhibit 2. (*Compare* Reply Decl. Ex. 1, *with* Reply Decl. Ex. 2.) Had Plaintiff included the complete picture, it would be clear that there were labeled machines and unlabeled machines at the same location within Building KK at the same time. Specifically, machine 61509 was a machine located at "KK1 Front Office" that began collecting two-tier revenue in August, 2017. When surveyed on April 12, 2019, it was found to be unlabeled. (*See* Ex. 3 hereto.) Machine 21177 was a machine located at "KK1 Front Office" that began collecting two-tier revenue in November, 2017. When first surveyed on September 12, 2019, it was found to be labeled. In other words, there were two machines at the same location, both of which began collecting two-tier revenue in 2017, and one was labeled while the other was not. Even from this one simple example, it is clear that Plaintiff's statement that Compass "has not shown a single location that had both labeled and unlabeled machines simultaneously" is based upon a misleading and incomplete interpretation of the data. The Court should not rely on such erroneous representations.

Lastly, Plaintiff's Reply, and particularly its misleading representations regarding Mr. Pemberton's purchases, further exemplifies why the class is not ascertainable and directly refutes Plaintiff's claim that objective records are available to verify claims. (Reply 5, *et seq*.) With the assistance of Plaintiff's counsel in the instant matter, Pemberton filed his Class Action Complaint on October 20, 2022. In his Complaint, Pemberton alleges that from April, 2018 to March, 2020, he made daily purchases from "Defendant's vending machines located in . . . Building KK, in East

Peoria, IL." (Pemberton Compl. ¶ 15, Doc. No. 261-11.) At the time of the filing of his Complaint, Plaintiff's counsel possessed the survey data and was, or should have been, aware that Building KK had only 2 unlabeled machines, and 30 machines that were either labeled or unsurveyed. (Reply Decl. ¶ 15.) Therefore, the only clearly valid claims that Mr. Pemberton has are those purchases made from the two unlabeled machines (assuming, of course, that he never read the label on the other machines informing him of the surcharge). But even with assistance of learned counsel when preparing his Complaint, Mr. Pemberton was unable to, or failed to, identify the specific machines that he used at his workplace. Further, if he made purchases from any of the unsurveyed machines, then it is clear that there are no objective records by which one can confirm or refute his claims that he made a purchase from an unlabeled machine and was unaware of the ten cent surcharge. Plaintiff's misrepresentations or inaccurate representations regarding the survey data cannot be relied upon in support of his Motion for Class Certification.

    **C. Plaintiff Has Been Aware of Photographs of the Machines Since 2021.**

  Finally, yet most egregiously, under oath Plaintiff's counsel submits new "evidence" through a declaration and contends that "Compass first informed Plaintiff on June 27, 2023 that the survey included photographing the machines," and that "Plaintiff had no way of knowing that there were photographs of Compass' vending machines showing whether they had 'cash discount stickers.'" (Reply Decl. ¶ 19.). In the Reply, Plaintiff states that "Compass' photographs, which it inexplicably had never produced or even *mentioned* until June 27, 2023, just six weeks before [Kriegler's expert] report was due." (Reply 5.) These statements are false, and should be disregarded by the Court.

  Since June 2021, Plaintiff has known that Compass photographed the vending machines. First, the photos were referenced in documents produced by Compass in June, 2021. (Doc. No.

305 at 6.) Second, between June 2021 and May 2023, Plaintiff asked no less than four deponents about the photographs:

- June 9, 2021 – David Goldring, Compass' 30(b)(6) designee: "**Q**. And were the folks doing the survey in the field required to physically take pictures of each machine? **A**. Yes." (Doc. 305-1, 87:4-88:14.) "**Q**. Okay. Well, for instance, you told me that the app that was being used by the folks out in the field required the person gathering the data to take a photograph of where the labeling should be. Is that right? **A**. Yes." (*Id.* at 103:1-6.)

- June 30, 2021 – David Goldring: "**Q**. And then they were – it appears that this person was to upload an image of the machine corner to corner, meaning they were to take a picture of the entire machine so that you could see the top, bottom, sides, and everything; is that right? **A**. That's correct." (Doc. 305-2, 179:5-180:9.)

- February 4, 2022 – Michael Coffey: "**Q**. And Martha here appears to be the person responsible for creating this application to take photographs of machines before and after the updated labeling. Do you see that? **A**. I do." (Doc. 305-3, 73:8-13.)

- March 3, 2022 – Peter Fetherston: "**Q**. In prior depositions it was described to me that an app had been developed so that people in the field could actually conduct a survey by taking a photograph and documenting some information about the machines and these sorts of things. Is that what you're referring to? **A**. Yes." (Doc. 305-4, 45:8-15.)

- May 10, 2023 – Martha Morgan: "**Q**. They also took a picture of the machine when they were there; is that right? **A**. Yes. More than one picture. **Q.** Okay. They took pictures of the machines when they were in front of it; correct? **A.** Correct." (Doc. 305-5, 39:9-16.)

(*See* Doc. No. 305 at 3-8, 10-11 (offering cumulative evidence confirming the falsity of Plaintiff's same misrepresentation to this Court in opposition to Compass' Motion to Strike).) Counsel's sworn statement that "Plaintiff had no way of knowing that there were photographs of Compass' vending machines showing whether they had 'cash discount stickers'" is a blatant misrepresentation. (*See* Reply Decl. ¶ 19.) That Plaintiff resorts to materially misrepresenting facts to this Court in hopes of salvaging his Motion for Class Certification is telling.

### III. CONCLUSION

For these reasons, as well as those in Compass' Response to Plaintiff's Motion for Class Certification, (Doc. No. 295), Compass respectfully requests that the Court deny class certification.

Dated: June August 28, 2024                                   Respectfully submitted,

By: /s/ *Joseph C. Wylie II*
Joseph C. Wylie II, 6270852IL *(Pro Hac Vice)*
Nicole C. Mueller 6309735IL *(Pro Hac Vice)*
Kenn Brotman 6236771IL *(Pro Hac Vice)*
**K&L GATES LLP**
70 West Madison Street, Suite 3300
Chicago, IL 60602-4207
Tel:     (312) 372-1121
joseph.wylie@klgates.com
Nicole.Mueller@klgates.com
Kenn.Brotman@klgates.com

Paul W. Sweeney Jr., 112511CA
*(Pro Hac Vice)*
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
paul.sweeney@klgates.com
Secondary:   litigation.docketing@klgates.com

Daniel D. McClurg
N.C. Bar Number 53768
**K&L Gates LLP**
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
Phone: (704) 331-7400
Email:   daniel.mcclurg@klgates.com

*Attorneys for Compass Group USA, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on August 28, 2024, which will serve all counsel of record.

*/s/ Joseph C. Wylie II*
Joseph C. Wylie II

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

I HEREBY CERTIFY that (i) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (ii) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting *pro se*) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Joseph C. Wylie II*
Joseph C. Wylie II