# Exhibit 1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF MISSOURI
2              EASTERN DIVISION
3   GEORGE MOORE, VIRGINIA        §
    CARTER, JAMES JILEK,          §
4   FRANCIS JAYE, and             §
    SEAN MADELMAYER, on behalf    §
5   of themselves and all         §
    others similarly situated,    §      CASE NO.:
6                                 §
       Plaintiffs,                §    4:18-cv-01962-SEP
7                                 §
    v.                            §
8                                 §
    COMPASS GROUP USA, INC.,      §
9   D/B/A CANTEEN,                §
                                  §
10     Defendant.                 §
11  ****************************************************
               ORAL AND VIDEOTAPED DEPOSITION OF
12                  FRANCES J. IVERY
                 28th day of March, 2023
13  ****************************************************
14          ORAL AND VIDEOTAPED DEPOSITION OF
15  FRANCES J. IVERY, produced as a witness at the
16  instance of the Defendant, and duly sworn, was
17  taken in the above-styled and numbered cause on the
18  28th day of March, 2023, from 10:03 a.m. to 12:53
19  p.m., before Daniel J. Skur, Notary Public and
20  Certified Shorthand Reporter in and for the State
21  of Texas, reported by stenographic means, at the
22  offices of K&L Gates, 1717 Main Street, Suite 2800,
23  Dallas, Texas, pursuant to the Federal Rules of
24  Civil Procedure.
25  Job No. 5835207

1              A P P E A R A N C E S

2   FOR PLAINTIFFS:

3        Richard S. Cornfeld, Esq.

4        Goldenberg Heller & Antognoli, P.C.

5        2227 South State Route 157

6        Edwardsville, Illinois 62025

7        P 618-656-5150 | F 618-656-6230

8        rick@ghalaw.com

9

10  FOR DEFENDANT:

11       Kenn Brotman, Esq.

12       K&L Gates

13       70 West Madison Street

14       Suite 3300

15       Chicago, Illinois 60602

16       P 312-372-1121 | F 312-345-9960

17       kenn.brotman@klgates.com

18

19

20  ALSO PRESENT:   Don Harris, Videographer

21

22

23

24

25

Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 3 of 26

1  instructions at any time to preserve any documents

2  or records related to this lawsuit?

3      A.    Can you reword that?

4      Q.    Sure.

5            Have your attorneys ever asked you to

6  make sure that you hold on to any documents related

7  to any purchases or any photos of vending machines

8  or anything like that?

9      A.    No, just asked me for my bank records.

10     Q.    And you said you did search for your

11 bank records?

12     A.    I did.

13     Q.    And you said you just went this --

14 within the last few days; is that right?

15     A.    Well, I tried to look for them because I

16 did not remember that I had switched banks from

17 Resource One to Navy Federal.  So I was -- actually

18 gone through my whole year of bank statements on

19 Navy Federal, and I'm like -- then I remembered,

20 oh, I was with Resource One.  So then I had to go

21 to Resource One and request those records because

22 they were more than two years old.

23     Q.    So what year did you review from Navy

24 Federal?

25     A.    The whole 2019.

1      Q.    Oh.

2      A.    Yeah.

3      Q.    And there were no records within your

4  Navy Federal --

5      A.    No.

6      Q.    You've got -- got to let me finish.

7      A.    Oh, sorry.

8      Q.    After reviewing your Navy Federal

9  records, you did not see any purchase from a

10 vending machine, right?

11     A.    No.

12     Q.    Is that correct, though?

13     A.    Correct, yes.

14     Q.    Okay.  So then you looked at One

15 Resource [sic], right?

16     A.    Uh-huh.

17     Q.    Yes?

18     A.    Yes.

19     Q.    When did you do that?

20     A.    The first time I went, I got -- well, I

21 tried to look online.  I didn't have access to it

22 anymore, and then I called.  They told me I had to

23 go into the actual bank.  So I went last week

24 finally and got them printed out.  And not because

25 they hadn't been asking me for them.  It's because

1    I fly a lot.  I'm an airline employee.

2          Q.    And we'll get into all that --

3          A.    Uh-huh.

4          Q.    -- certainly.

5                Okay.  What -- when did you stop using

6    One -- One Resource?

7          A.    The end of 2019, uh-huh.

8          Q.    And what years' bank statements did you

9    have them print out?

10         A.    Just 2019.

11         Q.    Just the one year?

12         A.    Uh-huh.

13         Q.    Okay.  And did you review the printout

14   of those statements?

15         A.    Yes.

16         Q.    And did you see purchases from a vending

17   machine?

18         A.    I did.

19         Q.    How many did you see?

20         A.    Well, one occurrence -- and knowing me,

21   it could have been a couple of items, but I was

22   able to find that one.

23         Q.    Okay.  Okay.  Let's talk about your

24   background a little bit.  First, can I ask your --

25   I don't mean to be impolite or inpolitic, what's

1        A.    I can't remember.

2   BY MR. BROTMAN:

3        Q.    You don't recall reviewing a retainer

4   agreement?

5        A.    You know, I can't remember.  It's been

6   four years, to be honest with you.

7        Q.    Do you know if you signed any retainer

8   agreement?

9        A.    I can't remember.

10        Q.    Do you know who is responsible for the

11   payment of attorneys' fees in this case?

12        A.    No.

13        Q.    Do you know if you're responsible for --

14             MR. CORNFELD:  You guys.

15   BY MR. BROTMAN:

16        Q.    -- paying --

17             Do you know if you're responsible for

18   paying any attorneys' fees in this case?

19        A.    No.

20        Q.    No, you don't know; or no, you're not

21   responsible?

22        A.    I don't know.

23        Q.    Okay.

24        A.    Yeah.

25        Q.    Do you know who is responsible for the

1   payment of your attorneys' litigation costs in this
2   case?
3           A.    No, I don't know.
4           Q.    Do you have any understanding of how
5   much those costs might be?
6           A.    No.
7           Q.    Do you know if you have any
8   responsibility for those costs or fees?
9           A.    I don't know.  No.
10          Q.    Are you aware of any other costs that
11  are generally involved in pursuing this case as a
12  class action?
13          A.    No.  I know I sound dumb, but no.
14          Q.    Are you familiar with the phrase "notice
15  to the class"?
16          A.    No.
17          Q.    Do you know that notice needs to be
18  provided to a class if one is established?
19          A.    No, I don't know.
20          Q.    Do you know if you would have any
21  responsibility for providing notice to the class?
22          A.    No.  I don't know.
23          Q.    Do you know if you would be responsible
24  for paying for any notice to the class?
25          A.    I don't know.

1    Q.    Okay.  Are you familiar with Compass' or
2    Canteen's vending machines?
3    A.    I wouldn't know who owned a vending
4    machine, no.
5    Q.    So you wouldn't be able to distinguish a
6    Canteen machine from any other --
7    A.    No.
8    Q.    -- machine?
9          That's a correct statement?
10   A.    Yes.
11   Q.    Okay.  Do you know if you've ever
12   purchased any items from a Compass or a Canteen
13   vending machine?
14   A.    I know now.  Yeah, I know, uh-huh.
15   Q.    And how do you know that now?
16   A.    It's on my bank statement.
17   Q.    So explain to me -- you said that there
18   were -- there's a vending machine at Love Field
19   that you went to; is that correct?
20   A.    Yes.
21   Q.    Okay.  Do you remember how many times
22   you've used your debit or credit card at a vending
23   machine?
24   A.    No, I don't remember.
25   Q.    Based on your review of your bank

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 9 of 26

1    records, did that help refresh your recollection as

2    to how many times --

3        A.    That --

4        Q.    -- how many times you may have purchased

5    from a vending machine using a debit or credit

6    card?

7        A.    Yes.

8        Q.    Okay.  And what did your review of those

9    documents tell you?

10       A.    Once.

11       Q.    And was that with a debit card or a

12   credit card?

13       A.    Debit.

14       Q.    That was the One Resources [sic], I

15   believe?

16             Which bank was that?

17       A.    One Resource [sic].

18       Q.    Can you tell me what the vending machine

19   looked like that you purchased from using your

20   debit card?

21       A.    I can't remember that.

22       Q.    Do you recall what you purchased?

23       A.    I can't remember.

24       Q.    Do you recall how many items you would

25   have purchased?

Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 10 of 26

1      A.    I can't remember that.

2      Q.    Do you remember the price of the items

3  that you purchased, what the display price was?

4            Let me strike that question, start

5  again.

6            Do you recall what the displayed price

7  was for the items that you purchased?

8      A.    I can't remember that.

9      Q.    Do you recall where the machine was

10 located?

11     A.    No, I can't remember that.  So far along

12 ago.

13     Q.    Was it in Love Field?

14     A.    Yes.

15     Q.    Would it have been in the main terminal

16 of Love Field?

17     A.    For sure, uh-huh.

18     Q.    Do you recall whether it would have been

19 outside of security or after security?

20     A.    So when I worked for Alaska, which is at

21 Love Field, I did ticket counter and gates and

22 baggage claim.  We did everything.  It's different

23 from Delta.  I did all the -- all positions.  You

24 would leave the ticket counter and go to the gates.

25 So it could have been in or out.  I just can't

1    remember, yeah.

2         Q.    And does Alaska have a certain area of

3    Love Field where its desks or counters or gates

4    are?

5         A.    Uh-huh.  Right in the entry of the...

6         Q.    Okay.  The entry after security?

7         A.    No, before.  There's ticket counters --

8    are before.  Gates are after security.

9         Q.    Okay.

10        A.    And I was -- I did all positions for

11   Alaska.

12        Q.    Would the vending machines have been

13   near...

14        A.    Security.  Past security.

15        Q.    So just so I'm clear, the vending

16   machine where you made the purchase that you found

17   on your One Resource bank statement --

18        A.    I can't remember.

19        Q.    I didn't ask a question.  Let me --

20        A.    Okay.

21        Q.    Let me finish, try to ask the question.

22              The vending machine where you made the

23   purchase that you found on your One Resource's

24   debit card statement would have been past security

25   or before security?

1      A.    I can't remember, but I'm going to say

2    that most of the vending machines are after

3    security.

4      Q.    Okay.

5      A.    Yeah.

6      Q.    What gates did Alaska Airlines have?

7            What gate numbers did Alaska Airlines

8    have when --

9      A.    11 and 13.

10     Q.    Try to let me finish.

11     A.    Uh-huh.

12     Q.    Okay.  Just those two gates?

13     A.    Uh-huh.

14     Q.    Yes?

15     A.    Yes.

16     Q.    Okay.

17     A.    Southwest has pretty much all the rest.

18     Q.    So do you believe that the vending

19   machine that you used your debit card at was near

20   Gates 11 and 13?

21     A.    I can't remember that.

22     Q.    Do you know if there is more than one

23   vending machine at the airport?

24     A.    For sure.  Yes.

25     Q.    And in general, not specific -- not

1    specific to the purchase with your debit card but

2    in general, do you recall where the various vending

3    machines were at --

4         A.    No.

5         Q.    -- at Love Field?

6         A.    No.

7         Q.    Do you recall how many different

8    machines you would have made purchases at?

9         A.    No.

10        Q.    Can you describe what the vending

11   machine looked like?

12             MR. CORNFELD:  Asked and answered,

13   objection.

14        A.    No.

15   BY MR. BROTMAN:

16        Q.    Can you recall if it had a larger video

17   screen on it or a smaller screen?

18        A.    I cannot remember.

19        Q.    Do you recall if it had any digital

20   readout at all?

21        A.    Cannot remember that.

22        Q.    Do you remember what types of snacks or

23   beverages were in the machine in terms of --

24        A.    No.

25        Q.    Okay.  Do you know if it was strictly

Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 14 of 26

1  beverages or strictly snacks?

2       A.    I do not remember.

3       Q.    Do you know if it was sandwiches or

4  snacks like chips?

5       A.    I cannot remember.

6       Q.    Do you know if the vending machines

7  changed during your time working for Alaska

8  Airlines?

9       A.    I don't know that.

10      Q.    Do you know if any of the vending

11  machines were Coca-Cola branded machines?

12      A.    I cannot tell you that.

13      Q.    What led you to believe that it was a

14  Compass or a Canteen machine?

15      A.    I'm not sure what you're asking me.  How

16  would I know that?  There's no signs on them.

17      Q.    Okay.  Well, you filed a lawsuit against

18  Compass, correct?

19      A.    Right, but the statement says CMS.

20      Q.    Why don't we start with this?

21            MR. CORNFELD:  Before you go into

22  that --

23            MR. BROTMAN:  You want to take a break?

24            MR. CORNFELD:  Yeah, since you're --

25            MR. BROTMAN:  Sure.  That's fine.

1    VIDEOGRAPHER:  Off the record at

2  11:04 a.m.

3    (Recess held.)

4    (Deposition Exhibit 1 marked.)

5    VIDEOGRAPHER:  On the record at

6  11:14 a.m.

7  BY MR. BROTMAN:

8    Q.   I'm going to show you what we just

9  marked -- it's right in front of you.  It's Jaye

10  Exhibit 1.

11    A.   Uh-huh.

12    Q.   And I understand that your name is

13  Ivery, but you're listed on the caption as Jaye, so

14  we're going to use that.  Okay?

15    A.   That's okay.

16    Q.   Have you seen this document before?

17    A.   Yes.

18    Q.   Tell me what this is.

19    A.   My bank statement.

20    Q.   Okay.  This is a debit card statement

21  from Resource One; is that right?

22    A.   Yes.

23    Q.   Reflecting your transactions for the

24  month of March 2019, right?

25    A.   Yes.

Case 3:23-cv-00818-JAG-DCK   Document 322-1   Filed 08/28/24   Page 16 of 26

1     Q.    Okay.  And as you look through it,
2  almost every page is redacted, right?
3     A.    Yes.
4     Q.    Okay.  Except for one transaction, I
5  believe it's on the fourth page.  If you look at
6  the very tiny letters in the bottom right -- put
7  your magnifying glass on.
8     A.    Right here?
9     Q.    Yes.  It says JAYE00004, correct?
10    A.    Yes.
11    Q.    Okay.  And that's the Bates number for
12  the page where the transaction is visible, right?
13    A.    Okay.
14    Q.    Is that correct?
15    A.    Yes.
16    Q.    Okay.  And so the transaction that can
17  be seen on this debit card statement is the
18  transaction from the vending machine that you've
19  been talking about, right?
20    A.    Yes.
21    Q.    And you looked through all of your debit
22  and credit card statements for 2019, right?
23    A.    Yes.
24    Q.    And this was the only transaction you
25  found?

1      A.    Yes.

2      Q.    Okay.  And did you look for other years

3  as well?

4      A.    No.

5      Q.    You limited it just to 2019?

6      A.    Well, yes.

7      Q.    Okay.  Just --

8      A.    We were in COVID.

9      Q.    And looking at the -- just the very

10  first page of that, Frances Jane Ivery?

11     A.    Yes.

12     Q.    That's your legal name?

13     A.    Yes.

14     Q.    Do you remember or do you know what your

15  address was at the time the statement was issued?

16     A.    Yes.  40 -- let me see if I moved to --

17  I guess 4547 North O'Connor.  Yes.

18     Q.    I'm asking only because it's redacted on

19  this version --

20     A.    Yes.

21     Q.    -- of the --

22     A.    Yes.  2019, I was living where I'm at

23  now.

24     Q.    Okay.

25           MR. CORNFELD:  If -- I don't know why my

1  staff redacted the address.  I think that's because

2  when things get filed in court, they redact the

3  address.  If you would like a version with the --

4  unredacted, you can have it.

5           MR. BROTMAN:  That's okay.

6           MR. CORNFELD:  Just let -- okay.

7  BY MR. BROTMAN:

8       Q.    Yeah.  When were you asked to provide

9  this debit card statement?

10      A.    I can't remember when, but multiple

11  times.  I -- I procrastinated.

12      Q.    Do you know when you provided this

13  statement?

14      A.    Yes.  It was last -- I finally provided

15  the -- last week, I think.

16      Q.    Have you reviewed a non-redacted version

17  of this debit card statement?

18      A.    Yes.

19      Q.    Do you recall when the last time you saw

20  the non-redacted version was?

21      A.    Last week.

22      Q.    When you produced it?

23      A.    Yes.

24      Q.    Did you review a non-redacted version

25  when you met with Counsel earlier in preparation

1   for your deposition?

2       A.    I can't remember.  It's been so long

3   ago.

4       Q.    And just to be clear, none of the other

5   entries on this statement which are currently

6   redacted relate to any vending machine purchase?

7       A.    No.

8       Q.    That's a correct statement?

9       A.    Yes.

10      Q.    Okay.  Okay.  And on page JAYE00004 --

11      A.    Uh-huh.

12      Q.    -- it looks like it was entered on

13  March 15th, right?

14      A.    Yes.

15      Q.    And it was for a -- "Transaction

16  Description" is CMS V-E-N-D, right?  See the

17  asterisk?

18      A.    Yes.

19      Q.    And that says MWJ, LLC.

20      A.    Okay.

21      Q.    Do you see that?

22      A.    Yes.

23      Q.    I read that correctly?

24      A.    Yes.

25      Q.    Okay.  And that was for a purchase that

Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 20 of 26

1   was made on March 14th, 2019?

2       A.    Yes.

3       Q.    In the amount of $3.25, correct?

4       A.    Yes.

5       Q.    Do you know what you purchased for

6   $3.25?

7       A.    I do not.  I shouldn't have been,

8   probably.

9       Q.    Are you aware of any other purchases

10  that you made from a vending machine which

11  purportedly overcharged you?

12      A.    I can't remember, honestly, and I don't.

13  No, I don't.

14      Q.    Is there anything that would refresh

15  your recollection as to whether you have any other

16  transactions?

17      A.    No.

18      Q.    Were you ever asked to photograph the

19  vending machine?

20      A.    No.

21      Q.    Do you have any photographs of the

22  vending machine you took or used?

23      A.    No.  No.

24      Q.    When did you first become aware that you

25  might have a claim against Compass?

1      A.    I can't remember.  I don't even know

2  why.  Yeah, I don't remember.

3      Q.    Is there anything that would refresh

4  your recollection as to when you first became aware

5  that you might have a claim against Compass?

6      A.    No.

7      Q.    When did you first come to the belief

8  that Compass did something wrong?

9      A.    I can't remember.

10      Q.    Would it have been before or after the

11  March 14th, 2019, transaction when you purchased

12  something from the vending machine?

13      A.    It would have definitely been

14  afterwards.

15      Q.    And how would you have come to realize

16  that something was -- may have been done wrong?

17      A.    Looking at my bank statement.

18      Q.    Do you review your bank statements?

19      A.    I do.

20      Q.    Do you look at them every month?

21      A.    I do.

22      Q.    Okay.  So how did you know, then, that

23  something was not right?

24      A.    I cannot remember, honestly.  I can't.

25  I can't remember.

1    Q.    How did you know -- well, strike that.

2         So is it your contention that the $3.25

3    charge was not the price displayed for the items

4    you purchased?

5    A.    Exactly.  I thought it was a lot for a

6    vending machine.

7    Q.    But you don't know what those items

8    were?

9    A.    No.  No.

10   Q.    Or what the correct price should have

11   been?

12   A.    Right.  I don't remember.

13   Q.    Okay.  Looking at the transaction entry,

14   do you have any idea what MWJ LLC is?

15   A.    No.

16   Q.    Do you have any reason to believe that

17   MWJ LLC is affiliated with Compass in any way?

18   A.    No.  I don't know.

19   Q.    Have you ever done research into what

20   MWJ LLC is?

21   A.    No.

22   Q.    Has anyone ever told you what MWJ LLC

23   is?

24   A.    No.

25   Q.    Are you aware that MWJ LLC is not

1    affiliated with Compass?

2          A.    No.

3          Q.    You indicated earlier that you travel

4    frequently, right?

5          A.    Yes.

6          Q.    Okay.  Did you travel a lot because of

7    your employment with Alaska Airlines?

8          A.    No.

9          Q.    You traveled because you work with the

10   GoGo Pet?

11         A.    Yes.

12         Q.    Have you ever traveled to Atlanta,

13   Georgia?

14         A.    All the time.

15         Q.    Do you know if you traveled to Atlanta,

16   Georgia, in March of 2019?

17         A.    I can't remember.

18         Q.    Is it possible that on March 14th, 2019,

19   you had traveled to Georgia and made a purchase in

20   Georgia?

21         A.    I can't remember.  I -- I have lots.  As

22   a matter of fact, on my bank records, there's lots

23   of Delta Airline things on there.  And that's where

24   you go to Atlanta all the time from here.  Yeah.

25         Q.    So is it possible that this purchase

1   that's reflected from March 14th, 2019, was made in

2   Georgia?

3        A.    I cannot remember.

4        Q.    See where your statement where it says

5   Hapeville or --

6        A.    Hapeville, yeah.

7        Q.    -- Hapeville, Georgia?

8              Are you familiar with Hapeville?

9        A.    I have no clue where Hapeville is.

10       Q.    Are you aware that Hartsfield-Jackson

11   Airport is partially in Hapeville, Georgia?

12       A.    No, I didn't know that; but I go to

13   Atlanta airport all the time.

14       Q.    But you don't know if you were there in

15   March of 2019?

16       A.    I can't remember.

17       Q.    Is there anything that would refresh

18   your recollection as to whether you were there in

19   March of 2019?

20       A.    I would have to look at my flights.

21   That's the only way I could remember.

22       Q.    Where would you look those up?

23       A.    Gosh, I don't know now because, back

24   then, I worked for Alaska.  I don't have my --

25   access to my flights history.

1              REPORTER'S CERTIFICATION
2              I, DANIEL J. SKUR, CSR and Notary
   Public in and for the State of Texas, hereby
3  certify that the witness was duly sworn and that
   this transcript is a true record of the testimony
4  given by the witness;
5
             That pursuant to Rule 30 of the Federal
6  Rules of Civil Procedure, signature of the witness
   was not reserved by the witness or other party
7  before the conclusion of the deposition;
8              I further certify that I am neither counsel
   for, related to, nor employed by any of the parties
9  or attorneys in the action in which this proceeding
   was taken.  Further, I am not a relative or
10 employee of any attorney of record in this cause,
   nor am I financially or otherwise interested in the
11 outcome
   of the action.
12
13             Subscribed and sworn to by me this day, the
   11th day of April, 2023.
14
15
16             

17             Daniel J. Skur, CSR
               Notary Public, State of Texas
18             My Commission Expires 7/7/2026
               Veritext Legal Solutions
19             Texas Firm Registration No. 571
               300 Throckmorton Street, Suite 1600
20             Fort Worth, TX 76102
               800.336.4000
21
22
23
24
25

Case 3:23-cv-00818-JAG-DCK    Document 322-1    Filed 08/28/24    Page 26 of 26