UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMES JILEK, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:23-cv-00818-RJC DCK ) |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, | ) ) ) ) |
| Defendant. | ) ) ) |

## SURREPLY IN OPPOSITION TO MOTION TO STRIKE

### I.  INTRODUCTION

This surreply in opposition to Compass' Motion to Strike (Doc. # 297) acknowledges the error in Plaintiff's Response[1] regarding when Compass disclosed the existence of photographs of the vending machines, refutes Compass' argument that it disclosed errors in its machine surveys before it served Martha Morgan's Declaration on June 27, 2023, and shows why the mistake regarding the photographs does not warrant granting the motion to strike.

### II.  BACKGROUND

Compass' motion attempts to strike Dr. Kriegler's Supplemental Expert Report (Doc. # 262-3) and Second Supplemental Expert Report (Doc. # 262-4).[2] Plaintiff's Response argues that

---

[1] Plaintiff's Response to Motion to Strike ("Response") (Doc. # 303).
[2] Compass also seeks to strike Dr. Kriegler's Declaration submitted with Plaintiff's motion for class certification (Doc. # 293-4). However, that is moot because the declaration only pertains to the South Carolina and Florida subclasses that Plaintiff withdrew from its motion for class certification. *See* Plaintiffs' Supplement to Motion for Class Certification, Doc. # 294.

1

"[t]he timing of the disclosure of the Supplemental and Second Supplemental Reports is 'harmless' under the application of the first four factors set forth in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). That is because any surprise to Defendant was minimal, Defendant had an opportunity to cure any surprise that may have affected the preparation of its defense, there is no trial date and therefore there will be no disruption of the trial, and the reports are vital to Plaintiff's case." Response at 1. "In addition, the timing of the disclosures was caused by Compass' late disclosure of vital information and therefore the fifth *Southern States* factor also points toward denial of this motion." *Id.* at 1–2.

Compass Group USA, Inc.'s Reply in Support of Motion to Strike ("Reply") (Doc. # 305), argues that Plaintiff falsely stated that it was not informed of either the photographs or errors in its machine survey before Compass served Martha Morgan's Declaration on June 27, 2023. Reply at 2–3. On August 28, 2024, the Court granted Plaintiff leave to file a Surreply. As shown in this Surreply, Compass is correct regarding photographs but wrong regarding whether it had disclosed that its survey had errors and also wrong that the error regarding the photographs warrants striking the expert reports..

III. ARGUMENT

*First*, Plaintiff acknowledges that the Response incorrectly states that the existence of photographs was not disclosed until June 27, 2023. *See* Supplemental Declaration of M. Anthony Jenkins, ¶ 2. This was an unintentional error, and Plaintiff apologizes to the Court and counsel for Compass. *See id.* at ¶ 3. While not an excuse, the deposition excerpts attached as Exhibits 1 through 4 to the Reply were from depositions that were taken by an attorney who left the Arias firm in the summer of 2023 and withdrew from the case; regarding the deposition excerpt attached as Exhibit 5 from the deposition of Martha Morgan on May 23, 2023, M.

Anthony Jenkins attended the deposition via Zoom but the questioning was conducted by the attorney who separated from the firm, and Mr. Jenkins did not recall the two questions concerning photos when he prepared and signed his Declaration. *See id*. at ¶ 4.

*Second*, Plaintiff was *correct* that Compass did not disclose the existence of survey errors – as opposed to the mere *possibility* of errors – before the Morgan Declaration. Note the testimony Compass quotes or paraphrases from the depositions of its employees: "potential human errors," "could be 'human errors,'" "'could be errors,'" "it was 'certainly possible' that the survey contained errors." Reply at 4. Of course, that would be true of *any* survey whether or not witnesses testified to that effect. But nowhere does Compass cite testimony before late June 2023 revealing the existence of *actual* survey errors.

One of Compass' excerpts makes this clear. It cites David Goldring's testimony on June 9, 2021, that he and his team did not "audit the results of the survey, " but rather had "looked through some of the photographs just to kind of see what the – what kind of the visual results were"; all he said about errors was that it was "possible that data was either input incorrectly or that someone in the field checked yes when it should have been no ...." Reply at 3. He obviously hadn't found any errors (much less a significant number) or he would have said errors were more than "possible." If that were the case, he would have said he'd found them.

Thus, Plaintiff was truthful when he said that the Declaration of Martha Morgan marked when Compass "informed Plaintiff for the first time that Defendant's survey reports were subject to human error[,] and "[a]s of June 27, 2023, … none of the deponents had disclosed any human errors in the survey ...." (Doc. # 303-1, ¶¶ 4–5). Regarding the first statement, "subject to human error" is not the same as "subject to possible errors."

Perhaps in recognition of this fact, Compass paraphrases Plaintiff's Response and accuses

3

him of having asserted that he was not informed of the *potential* for errors. *See* Reply at 4 ("Plaintiff's representation that 'none' of the Compass employees deposed prior to June 27, 2023 disclosed that there could be 'human errors' in the survey is wrong and misleading."). There's a reason Compass resorted to paraphrase. There is no actual language in the Response making such a statement. Plaintiff consistently referred to *actual*, not potential, errors. *See* Response at 2 ("none of the deponents had disclosed these human errors"), 4 ("the human errors," "unknown number of errors"), 12 ("when Plaintiff finally learned that Compass was claiming that the reports contained human errors," "delay in disclosing human errors"). It was always "errors," not "possible" or "could-be" errors.

There are two other reasons Compass chooses to focus on its disclosure of possible, rather than actual, errors. First, it is an implicit concession that the disclosure of *actual* errors came too late for Dr. Kriegler to do more by the expert deadline than devise a methodology for incorporating the errors. Moreover, Compass would then have to explain why it waited until the eve of Plaintiff's expert disclosure deadline, more than three years after first disclosing the existence of the survey in early 2000, to reveal those errors. *See* Decl. of M. Anthony Jenkins, Doc # 303-1, ¶ 2. It obviously has no legitimate explanation for its delay.

The clear fact is that, when Compass served the Declaration of Martha Morgan, it knew that the earlier deposition testimony was not enough to put Plaintiff on notice that the survey contained errors. Otherwise, there was no reason to provide the Declaration. But if it wanted to challenge Plaintiff's damages calculation on the basis that the survey contained a fatal number of errors, it had to disclose the factual basis of that challenge. Thus, it served the Morgan Declaration, but woefully late.

*Third*, given Plaintiff's erroneous statement regarding photographs but true statements

4

regarding the disclosure of survey errors, there are a number of reasons why Compass has not adequately supported its motion. First, the lateness of the supplemental report relates not just to existence of the photographs but their use in showing definitive errors in the survey. The key fact is not the existence of the photographs alone, but Compass' use of them to show survey errors, something first disclosed in the Declaration of Martha Morgan on June 27, 2023. At that point, Dr. Kriegler did not have enough time before the expert deadline to do more than devise his methodology to carry out once the photographs were requested and produced. As noted above, Compass not only does not argue to the contrary, it implicitly concedes the point by focusing on the earlier testimony on potential, rather than actual, errors.

As if that were not enough, the reason for the late disclosure is only one of the *Southern States* factors. Here, the other four factors also weigh in favor of denying the motion to strike, as demonstrated in the Response.

### IV. CONCLUSION

Plaintiff respectfully requests that the Motion to Strike be denied.

Dated: September 3, 2024

*Respectfully submitted,*

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: /s/ *Richard S. Cornfeld*
Richard S. Cornfeld (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
rick@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor

Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Joel R. Rhine, NC SBN 16028
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960
Fax: 910−772−9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 3, 2024, the foregoing was served upon all counsel of record via electronic mail.

/s/ <i>Richard S. Cornfeld</i>