**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| JAMES JILEK, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:23-cv-00818-JAG-DCK |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    OVERVIEW OF THE LITIGATION ................................................................... 2

III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS ..................... 5

    A.    The Settlement Class and Relief ............................................................ 6

    B.    Release ................................................................................................... 7

    C.    The Notice Program ............................................................................... 8

    D.    Settlement Administration ...................................................................... 9

    E.    Attorneys' Fees and Costs and Class Representative Service Awards................. 9

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ..................... 9

    A.    The Settlement Class Should Be Certified............................................ 10

        1.    Rule 23(a) is Satisfied ................................................................ 10

            a.    The Settlement Class is too numerous to permit joinder ............. 10

            b.    This Action presents common questions of law or fact................ 11

            c.    The Class Representative's claims are typical of the Class.......... 11

            d.    The Class Representative and Class Counsel are adequate .......... 12

            e.    The implicit ascertainability requirement is satisfied .................. 12

        2.    The Requirements of Rule 23(b)(3) are Satisfied ..................... 13

            a.    Common questions of law and fact predominate........................ 13

            b.    A class action is the superior method of resolving this controversy.................................................................................. 14

        3.    Appointment of Class Counsel .................................................. 15

    B.    The Settlement is Fair, Reasonable, and Adequate............................... 15

        1.    The Fourth Circuit's Factors and Overlapping Rule 23(e)(2) Factors Support Approval of the Settlement............................... 17

            a.    The proposed Settlement is fair .................................................. 17

i

b.    The proposed Settlement is adequate.............................................. 18

c.    The proposed Settlement is reasonable.......................................... 20

2.    The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement ............................................................................................. 22

a.    The Class Representative and Class Counsel have adequately represented the Class ...................................... 23

b.    The method of distributing relief to the class is effective............. 23

c.    The terms of the proposed attorneys' fees and timing of payment support approval of the settlement ................................. 25

d.    Agreements required to be identified under Rule 23(e)(3) made in connection with the proposal ........................................... 26

V.      THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION ........................................................................... 27

VI.    CONCLUSION..................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) ................................................................. 20

*Abubaker v. Dominion Dental U.S.*,
   2021 U.S. Dist. LEXIS 252202 (E.D. Va. 2021) .................................... 24

*Amaya v. DGS Constr., LLC*,
   2023 U.S. Dist. LEXIS 210689 (D. Md. 2023) ...................................... 25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................. 10, 14, 15

*Anderson v. Lab. Corp. of Am. Holdings*,
   2023 U.S. Dist. LEXIS 23532 (M.D.N.C. 2023)..................................... 19

*Beaulieu v. EQ Indus. Servs.*,
   2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009)....................... 14

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
   91 F.4th 202 (4th Cir. 2024) ............................................................ 19

*Charvat v. Valente*,
   2019 U.S. Dist. LEXIS 187225 (N.D. Ill. Oct. 28, 2019)....................... 20

*Chrismon v. Meadow Greens Pizza*,
   2020 U.S. Dist. LEXIS 119873 (E.D.N.C. 2020).................................... 25

*Curry v. Money One Fed. Credit Union*,
   2021 U.S. Dist. LEXIS 235884 (D. Md. 2021) ...................................... 22

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) ........................................................... 12

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ........................................................... 11

*Gholston v. Smithfield Foods, Inc.*,
   2022 U.S. Dist. LEXIS 247816 (E.D. Va. 2022)..................................... 10

*Glover v. EQT Corp.*,
   2023 U.S. Dist. LEXIS 154309 (N.D.W. Va. 2023)................................. 15

iii

*Gunnells v. Healthplan Servs.*,
348 F.3d 417 (4th Cir. 2003) ................................................................. 14, 15

*Hoffman v. First Student, Inc.*,
2010 U.S. Dist. LEXIS 27329 (D. Md. Mar. 23, 2010) ........................... 10

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
2019 U.S. Dist. LEXIS 120558 (D. Md. 2019) ....................................... 24

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2021 U.S. Dist. LEXIS 16470 (D.S.C. Jan. 25, 2021) .............................. 9

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2024 U.S. Dist. LEXIS 213061 ................................................... *passim*

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
656 F. App'x 8 (3d Cir. 2016) ................................................................ 13

*In re Marriott Int'l, Inc.*,
341 F.R.D. 128 (D. Md. 2022) ........................................................... 12, 13

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
345 F.R.D. 137 (D. Md. 2023) ............................................................... 13

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) .................................................................. 13

*In re Mills Corp. Securities Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ............................................................ 21

*In re Red Hat, Inc. Sec. Litig.*,
261 F.R.D. 83 (E.D.N.C. 2009) ............................................................. 14

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.*,
*Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) .............. 16

*Kay Co., Ltd. Liab. Co. v. EQT Prod. Co.*,
2021 U.S. Dist. LEXIS 256875 (N.D.W. Va. 2021) .......................... 27, 30

*Krakauer v. Dish Network L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ................................................................ 13

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
2009 U.S. Dist. LEXIS 89136 (E.D. Va. 2009) ...................................... 10

iv

*Minter v. Wells Fargo Bank, N.A.*,
   283 F.R.D. 268 (D. Md. 2012) ................................................................ 27

*Phillips v. Triad Guaranty, Inc.*,
   2016 U.S. Dist. LEXIS 37607 (M.D.N.C. Mar. 23, 2016) ...................... 21

*Piron v. Gen. Dynamics Info. Tech., Inc.*
   2022 U.S. Dist. LEXIS 21926 (E.D. Va. Feb. 7, 2022) .......................... 14

*Rodger v. Elec. Data Sys. Corp.*,
   160 F.R.D. 532 (E.D.N.C. 1995) ...................................................... 11, 12

*Rodriguez v. Riverstone Cmtys., LLC*,
   2024 U.S. Dist. LEXIS 22802 (E.D.N.C. 2024) .................................... 22

*Rose v. Sandy*,
   2024 U.S. Dist. LEXIS 220461 (S.D. W. Va. Dec. 5, 2024)................... 10

*Seaman v. Duke Univ.*,
   2019 U.S. Dist. LEXIS 163811 (M.D.N.C. 2019) .................................. 22

*Simpson v. Specialty Retail Concepts*,
   149 F.R.D. 94 (M.D.N.C. 1993) ............................................................ 10

*Soutter v. Equifax Info. Servs., LLC*,
   307 F.R.D. 183 (E.D. Va. 2015) ............................................................ 14

*Van Lith v. iHeartMedia + Entm't, Inc.*,
   2017 U.S. Dist. LEXIS 162838 (E.D. Cal. Sept. 29, 2017).................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................... 11

**Rules**

28 U.S.C. § 1715........................................................................................... 30

Fed. R. Civ. P. 23.......................................................................................... 12

Fed. R. Civ. P. 23(a) ..................................................................................... 10

Fed. R. Civ. P. 23(a)(1)................................................................................. 10

Fed. R. Civ. P. 23(a)(2)................................................................................. 11

Fed. R. Civ. P. 23(a)(3)................................................................................. 11

v

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 12

Fed. R. Civ. P. 23(b) ........................................................................................... 10

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................... 18, 19, 27, 30

Fed. R. Civ. P. 23(e)(1) ........................................................................................ 16

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................. 10, 27

Fed. R. Civ. P. 23(e)(2) ................................................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................... 16, 23

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C)(i) .............................................................................. 19

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................. 23

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................ 25

Fed. R. Civ. P. 23(e)(2)(D) .......................................................................... 16, 21, 22

Fed. R. Civ. P. 23(e)(3) .................................................................................. 16, 26

Fed. R. Civ. P. 23(f) ............................................................................................ 19

Fed. R. Civ. P. 23(g)(1) ........................................................................................ 15

Fed. R. Civ. P. 23(g)(1)(A)(i) .............................................................................. 15

Fed. R. Civ. P. 23(g)(1)(A)(ii) ............................................................................. 15

Fed. R. Civ. P. 23(g)(1)(A)(iii) ............................................................................ 15

Fed. R. Civ. P. 23(g)(1)(A)(iv) ............................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes to 2018 Amendment ................. 17, 23

Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................. 10

Newberg on Class Actions § 11.25 (4th ed. 2002) ........................................................... 10

Newberg on Class Actions § 22:91(4th ed. 2016) ............................................................. 27, 30

vii

## I.    INTRODUCTION

Plaintiff James Jilek ("Jilek") seeks preliminary approval of a class action settlement ("Settlement") with Defendant Compass Group USA, Inc. ("Compass") in the above-captioned matter ("Action"). In this multi-state class action, Plaintiff alleges that Compass, who owns and operates vending machines across the United States, engaged in a widespread practice of charging customers' credit, debit, or prepaid cards ("cards") ten cents more than the displayed prices for items it sold in its vending machines, without disclosing the extra charge for use of a card. This Settlement is the culmination of six and a half years of hard-fought litigation resulting in a $6.94 million settlement fund with no right of reversion. On behalf of himself and the proposed Settlement Class, Plaintiff respectfully submits this Unopposed Motion and Memorandum in Support for Preliminary Approval of Class Action Settlement. As set forth herein, the Settlement Agreement ("Settlement Agreement" or "Agreement") is fair, reasonable, and adequate, warranting preliminary approval.[1] A proposed order is submitted with this Motion.

The Settlement Agreement is the product of extensive, lengthy arm's-length negotiations between the parties and their experienced and informed counsel. The Settlement, if approved, will provide substantial monetary relief to Settlement Class members, based on a common, non-reversionary, settlement fund in the amount of $6,940,000.00, while avoiding the inherent risks, delay, and expenses associated with continued litigation. The Settlement Payments for Settlement Class Members are based on tiers corresponding to the Settlement Class Member's number of purchases from Compass's Subject Vending Machines, with class members in the lowest tier to receive up to $30 and class members in the highest tier to receive up to $360. As the names and

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Agreement.

1

addresses of the harmed consumers are not known, Class Counsel and the Settlement Administrator have devised a robust notice plan to inform class members of the Settlement.

Prior to reaching a resolution, Class Counsel engaged in substantial pre-trial motion practice and discovery. This included briefing on Compass's multiple motions to dismiss and motion to transfer venue; conducting extensive discovery that encompassed reviewing Compass's voluminous document production; taking and defending multiple depositions; retaining and working with an expert witness, analyzing Compass's expert witness report; and briefing and preparing for hearing on Plaintiff's motion for class certification and Compass' motion to strike Plaintiff's expert. Class Counsel accordingly possess a firm understanding of the strengths and weaknesses of the claims in this Action, and have concluded, considering the risks, uncertainties, burdens, and costs of further prosecution of the claims, and the material benefits the Settlement Class will receive from the Settlement, that a resolution on the terms set forth in the Settlement is fair, reasonable, adequate, and in the best interests of the Class. As demonstrated herein, the Settlement satisfies the criteria for preliminary approval and falls within the range of reasonableness applicable at the preliminary approval stage.

## II.    OVERVIEW OF THE LITIGATION

This Action originated in a Missouri state court in October 2018 and has evolved through different jurisdictions, consolidations, and amended complaints, with the operative complaint being the Amended Consolidated Class Acton Complaint ("Operative Complaint"), filed on October 14, 2021. Dkt. 126. The Operative Complaint includes, *inter alia*, a breach of contract claim on behalf of a nationwide class of persons who made purchases with a card from Defendant's vending machines that did not disclose the extra ten cent charge for use of a card. The litigation included contentious discovery that eventually included production of more than sixty thousand

2

pages of documents, lengthy expert reports of multiple experts, the deposition of Plaintiff's expert, and depositions of multiple other fact-witnesses.

This litigation was initiated by the undersigned counsel on behalf of George Moore in the Circuit Court for the City of St. Louis on October 23, 2018. After Compass removed the case to the United States District Court for the Eastern District of Missouri on November 21, 2018 (Dkt. 1), Plaintiff filed an amended complaint on December 18, 2018, which, *inter alia*, included a breach of contract claim on behalf of a putative nationwide class. Dkt. 15. Compass filed, *inter alia*, a motion to dismiss (Dkt. 25), which, on September 26, 2019, was granted as to a claim for conversion under Illinois law, but otherwise denied (Dkt. 43).

In October 2019, Class Counsel filed a similar lawsuit in California on behalf of Jilek, which was removed, then transferred by consent to the Eastern District of Missouri in December 2019. Another similar suit was filed in Texas by different counsel, which was transferred to the Eastern District of Missouri. All these cases were consolidated into one case in 2020, and the Court appointed Jilek's counsel as Interim Class Counsel on December 8, 2020. Dkt. 80. On April 6, 2021, Class Counsel filed a Consolidated Class Action Complaint, which did not change the substantive claims. Dkt. 91. Compass filed its Answer on May 27, 2021. Dkt. 97.

During discovery, Compass produced over 64,000 pages of documents on a rolling production basis that involved 25 separate productions between September 2019 and September 2023. In May 2021, Class Counsel learned of a survey that Compass conducted beginning in March 2019 of its "two-tier" vending machines (those with a 10-cent lower price for the use of cash), to, *inter alia*, determine which machines lacked a label disclosing the additional ten cent charge for card purchases. Further, beginning in June 2021, Class Counsel took the Rule 30(b)(6) deposition of Compass's corporate representatives. On October 14, 2021, Class Counsel filed the Operative

3

Complaint, which included, *inter alia*, facts regarding the survey. Dkt. 126. Defendant moved to dismiss, which the Court granted in part (Counts XIV and XV—relating to multi-state consumer fraud counts) and denied on all other grounds. *See* Dkt. 134, 135, 177, 197.

Compass deposed Mr. Jilek on March 21, 2023, and produced additional data about its survey of its two-tier machines throughout the first half of 2023. Class Counsel deposed Compass's Vice President of Business Information, Martha Morgan, in May and June of 2023.

Simultaneously, Class Counsel worked with Plaintiff's expert, Brian Kriegler, Ph. D., to analyze Compass's data and explanations of its data from tens of thousands of machines to develop a classwide damages calculation. Dr. Kriegler determined classwide damages of approximately $10,073,865 as the amount Compass obtained from these extra ten-cent charges during the class period from Compass's two-tier machines without labels disclosing the price difference. Compass deposed Dr. Kriegler and followed with a report by its own expert, David Kalat, who opined that Dr. Kriegler's methodology should result in classwide damages of $9,997,193.

In the summer of 2023, the original plaintiff Moore had to withdraw from the case because of the sudden serious illnesses of his mother and his mother-in-law, leaving Mr. Jilek as the only plaintiff. At the Court's request, the parties briefed whether and where the case should be transferred, which the Court took under advisement.

On October 13, 2023, Plaintiff filed his Motion for Class Certification. Dkt. 257 through 257-19. On November 10, 2023, Compass filed its Response in Opposition to the Motion for Class Certification and a Motion to Strike the Expert Report of Dr. Kriegler. Dkt. 260 through 262-4. On November 15, 2023, the Court, *inter alia*, transferred the Action to the Western District of North Carolina. Dkt. 263.

4

After the Action was transferred, the Court ordered the parties to re-brief the Motion for Class Certification and Motion to Strike, which would now be governed by Fourth Circuit case law. Dkt. 290. The parties complied and submitted new briefs (which now also included briefing motions for leave to file surreplies to the motion for class certification and motion to strike). *See* Dkt. 293 through 298, 302 through 303-5, 305 through 305-5, 307 through 308, 311 through 314, 316 through 318, and 320 through 323-1. On March 10, 2025, the Action was reassigned to the Honorable John A. Gibney, Jr., Senior District Judge for the Eastern District of Virginia. On March 26, 2025, this Court scheduled a hearing on the class certification motion and motion to strike for April 28, 2025.

On three separate occasions throughout the case—February 3, 2021, May 19, 2021, and May 25, 2023—the parties engaged in court-ordered mediation sessions, which proved unsuccessful. Nevertheless, following this Court scheduling the above-referenced hearings on class certification and the motion to strike, the parties reengaged in settlement negotiations. They continued to engage in arms-length settlement negotiations throughout April 2025, before reaching an agreement in principle on April 25, 2025, upon which they notified the Court of the same. Dkt. 328. The parties thereafter continued to negotiate regarding additional terms in connection with a long form Settlement Agreement. During these negotiations, the parties only discussed the terms for the Class and did not discuss the payment of attorneys' fees, costs, expenses, or Class Representative service awards. The parties executed the Settlement Agreement on May 13, 2025.

### III. THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS

Plaintiff attaches a true and accurate copy of the Settlement Agreement as Exhibit 1 to the Joint Declaration filed herewith, and provides the following summary of its material terms:

5

### A. The Settlement Class and Relief

Compass will pay $6,940,000 (the "Settlement Amount"). No portion of the Settlement Amount will revert back to Compass. Agreement § C.

The Settlement Class consists of individuals who (1) made one or more purchase from a "Subject Vending Machine" (2) with a credit, debit, or prepaid card (3) in the United States (4) between 2014 and the Preliminary Approval Date. The "Subject Vending Machines" means Canteen's vending machines that (1) provided a cash or card payment option and (2) charged more than the price listed for purchases made with a credit, debit or prepaid card.[2] A list of locations with the Subject Vending Machines will be posted on the Settlement Website (www.vendingmachinesettlement.com). The Class excludes Compass, its officers and directors, and officers and directors of any subsidiary, affiliate, successors, or assignees of Compass; the trial judge presiding over this case; all persons who submit a Claim Form that is deemed invalid; and all persons in the Class who timely and properly opt out of this Agreement pursuant to the procedures set forth in the Settlement Agreement. Agreement § A.8.

To receive Settlement Payments, Class members will file simple claim forms verifying under oath their name and contact information; that they made a purchase from a Subject Vending Machine with a credit, debit, or prepaid card between 2014 and the Preliminary Approval Date; and indicating the number of such purchases made between 2014 and the Preliminary Approval Date (presented as a range on the Claim Form as described in the Settlement Agreement) and the

---

[2] For clarity, the Settlement and notices further explain that the Subject Vending Machines do not include Canteen vending machines: (1) that had a cash discount sticker at the time of the consumer's purchase (a label informing the consumer that the displayed price is the cash price, which is lower than the price they will be charged if they use a credit/debit/prepaid card); (2) that displayed both the cash and credit prices for each item; or (3) with a digital shopping cart (a screen that displays both the cash and credit price). These machines are excluded because they would not have "charged more than the price listed for purchases made with a [card]." Agreement § A.8.

6

City and State where purchased. The Claim Form may be accessed, completed, and filed electronically on the Settlement Website, or by printing and sending a copy to the Settlement Administrator. A sample Claim Form is attached as Exhibit 6 to the Settlement Agreement.

Class members will not need to submit proof of purchases with the Claim Form; however, they will be told that they may subsequently be asked to provide additional information. A properly completed Claim Form that is timely submitted is presumptively valid; however, the Settlement Administrator will notify the Parties of any suspected fraudulent claims, and the Parties can agree to authorize follow-up communications regarding such claims. If the Parties do not agree on how to resolve a dispute regarding a Claimant, the Settlement Administrator will make a final and binding decision as to the Claimant. Agreement § G.

The exact number of Claimants, and the amount of money each Settlement Class Participant will receive will not be known until a later date. If there are sufficient funds in the Net Settlement Fund, Claimants will receive between $30 and $360 depending on the number of purchases they made. These amounts could be reduced on a *pro rata* basis depending on the number of Claimants. If there is no *pro rata* reduction of the Settlement Payments and, after making the full payments, money remains in the Net Settlement Fund, then the balance will be distributed as a *cy pres* payment, subject to the Court's discretion. Claimants can elect to receive their Settlement Payment by mailed checks or prepaid cards, or via electronic payment (PayPal, Venmo, or Zelle). Agreement § J.1.

### B.     Release

The Settlement Agreement contains a release that takes effect as of the Effective Date. The Releasing Parties are Plaintiff and all member of the Class, and their respective agents, heirs, executors, administrators, successors, assigns, guardians and representatives. Agreement § K. The Released Parties are Compass Group USA, Inc., and each and all of its predecessors, successors,

7

parents, subsidiaries, affiliates, customers and clients, and related entities, and each their respective present and former officers, directors, employees, attorneys, insurers, and reinsurers, together with each and all of their successors, heirs, and assigns, jointly and severally. *Id.* § A.30. In summary, the Settlement Class will release, as of the Effective Date, the Released Parties from any and all claims, known or unknown, that the Releasing Parties now own or hold, or have owned or held at any time prior to the Effective Date, that were or could have been asserted in the Action, or are based on or in any way related to the factual predicate relating to the Action. *Id.* § K.

### C. The Notice Program

Because the names and addresses of the Class members are not known, Class Counsel, in consultation with the Settlement Administrator, have devised a robust notice program to inform Class members of the Settlement and facilitate the claims process. The Notice Program, described in Section F of the Settlement Agreement and Exhibit 3 thereto (which is also the declaration filed at Dkt. 338), includes the Settlement Website that will include the Long-Form Notice and other relevant case documents; multiple publications of press releases using PR Newswire's national US1 newswire, which reaches thousands of media outlets across the United States, including print publications, radio, and television stations; sustained publication on the Top Class Actions website which receives approximately 3 million views per month and distributes a monthly newsletter to 900,000 subscribers; an extensive social media campaign geotargeted to the locations and zip codes where the Subject Vending Machines are located and retargeted to people who visit the Settlement Website but do not submit a Claim Form; website and banner ads on Google properties including YouTube, Gmail, and Google Discover and national online publications including The Wall Street Journal and USA Today and national news outlets including CNN, Fox News, and NY Times, again retargeted to people who visit the Settlement Website but do not submit a Claim

8

Form; and Google Search terms to facilitate people to the Settlement Website. The Settlement Administration Expenses will be paid from the Settlement Amount. Agreement § C, J.2.

### D. Settlement Administration

The parties propose that Simpluris, Inc. be appointed by the Court as the Settlement Administrator. A declaration of Jacob Kamenir, Vice President for Legal Notice at Simpluris, is submitted with this Motion (Dkt. 338) and incorporated herein by reference. Pursuant to the Settlement Agreement, the Settlement Administrator will administer the Notice Program; the Opt-Out and Objection process; the Claims Process; and the receipt and distribution of payments required by the Settlement Agreement. Agreement, § D.

### E. Attorneys' Fees and Costs and Class Representative Service Awards

Plaintiff will file a separate Fee Application at least ten days before the Opt-Out/Objection Deadline, which Class Counsel will limit to no more than one-third (1/3) of the Settlement Amount, plus reimbursement of litigation costs and expenses. Agreement, § J.3. The Settlement Agreement also provides that Class Counsel will seek a Service Award of no more than $10,000 for Plaintiff, to be paid from the Settlement Amount. *Id*. at § J.4. While included in the Settlement Agreement, the amount of attorneys' fees and Service Award was not negotiated by the parties at any time, and the Settlement Agreement leaves the amount of fees, costs, and Service Award to the Court without a "clear-sailing agreement" restricting Compass's ability to challenge the amount requested. *Id.*

## IV. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

To preliminarily approve a class action settlement agreement, the court must find it "will likely be able to" both (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470, *4 (D.S.C. Jan. 25, 2021) ("*In re Aqueous*") (quoting Fed.

9

R. Civ. P. 23(e)(1)(B)). Moreover, the Court need only find a settlement falls within "the range of reasonableness." Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) (preliminary approval is "initial evaluation" of settlement's fairness based on parties' submissions and informal presentation).

Further, there is a "strong presumption in favor of finding a [class action] settlement fair." *Hoffman v. First Student, Inc.*, 2010 U.S. Dist. LEXIS 27329, *6 (D. Md. Mar. 23, 2010) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, *27 (E.D. Va. 2009)). And courts "keep[] in mind the 'overriding public interest in favor of settlement, particularly in class action suits.'" *Gholston v. Smithfield Foods, Inc.*, 2022 U.S. Dist. LEXIS 247816, *15 (E.D. Va. 2022) (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27).

Here, the Settlement Class should be certified and the Settlement preliminarily approved.

## A.    The Settlement Class Should Be Certified

In deciding whether to preliminarily certify a class for settlement purposes only, the Court must consider the Rule 23(a) factors and at least one subsection of Rule 23(b)—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Rose v. Sandy*, 2024 U.S. Dist. LEXIS 220461, *11 (S.D. W. Va. Dec. 5, 2024).

### 1.    Rule 23(a) is Satisfied

#### a.    The Settlement Class is too numerous to permit joinder

Pursuant to Rule 23(a)(1), the class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1)). To satisfy numerosity, "a plaintiff 'need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates.'" *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) (quotation omitted). Here, the class

10

involves and millions of purchases from Defendant's machines located in thirty states. It is thus without question that the class is too numerous for joinder to be practical.

### b.     This Action presents common questions of law or fact

"Rule 23(a)(2) requires a plaintiff to show that 'there are questions of law or fact common to the class.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014). "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation.'. . . A single common question will suffice, . . . but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke . . . .'" *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)) (underlining and bracket insertion in *EQT*). Here, commonality is satisfied because the core factual and legal questions— including whether Compass breached contracts with class members by charging the undisclosed extra ten-cents for card purchases—are common to the class. As set forth in Plaintiff's prior motion for class certification, the states at issue all have substantially similar elements for unilateral contracts and breach thereof and Compass's records show, *inter alia*, Compass's alleged breach and resulting damages, by identifying the revenue obtained from two-tier machines without labels. *See* Dkt. 293-1 at 30-31. Accordingly, classwide proceedings are capable of generating common answers to drive resolution of this litigation.

### c.     The Class Representative's claims are typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Courts find "[t]his element met 'if [the plaintiffs' claims] arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [plaintiffs'] claims are based on the same legal theory.'" *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995) (citation omitted). Thus, the "representative

11

party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006). This is certainly the case here. Plaintiff's and Class member's claims all arise from Defendant's conduct in failing to disclose the extra ten cent charge for using a card to purchase items from its machines, and are based on the same legal theory. Typicality is therefore met.

### d. The Class Representative and Class Counsel are adequate

Rule 23(a)(4) requires that the representative plaintiff "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is whether: (1) "the named class representatives have interests that are antagonistic to those of the class members" and (2) "the class would be represented by qualified counsel who will vigorously prosecute the action." *Rodger*, 160 F.R.D. at 539. Here, there is nothing about Plaintiff's interests that are antagonistic to or in conflict with those of other class members. Further, Plaintiff retained competent counsel. Class Counsel are well-qualified, regularly engage in consumer class litigation and other complex litigation similar to this Action, and have dedicated substantial resources to its prosecution. *See* Joint Declaration in Support of Plaintiff's Motion for Preliminary Approval ("Joint Declaration") ¶¶ 5-9. Moreover, Plaintiff and Class Counsel have vigorously and competently represented class members' interests. As set forth above, Class Counsel have engaged in, *inter alia*, substantial investigation, motion practice, and discovery, including a review of Compass's extensive document production, written discovery and depositions, expert discovery, and briefing on motions to dismiss and for class certification. *Id.*

### e. The implicit ascertainability requirement is satisfied

Courts recognize an implicit ascertainability requirement under Rule 23, under which, at least where class certification is contested, there are "two components." *In re Marriott Int'l, Inc.,*

12

341 F.R.D. 128, 143 (D. Md. 2022).[3] "First, '[a] class cannot be certified unless a court can readily identify the class members in reference to *objective criteria*.' . . . Second, there must be an '*administratively feasible* [way] for the court to determine whether a particular individual is a [class] member.')." *Id*. (citations omitted). As to identifying class members based on objective criteria, courts simply look to whether the class definition relies on objective terms. *Id*. That is the case here, as there is nothing subjective about whether a person made a purchase from a Subject Vending Machine with a credit, debit, or prepaid card during the relevant period. *See supra* § III.A.

Next, administrative feasibility is not an issue here because, for purposes of this settlement, class certification is not contested. Thus, for settlement classes like this, courts have found this concern not implicated as the settlement "removes the need for a trial." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 656 F. App'x 8, 8-9 (3d Cir. 2016) (reversing district court's denial of certification of proposed settlement class on ground class was not ascertainable). Nevertheless, this factor is satisfied because the Class is defined to include only people who purchased from the Subject Vending Machines, which are defined by a specific list of vending machines identifiable by location from Compass's records, with Claimants verifying purchases at these machines under oath. Moreover, as set forth in the Settlement Agreement, additional information can be requested from a Claimant if needed. Ascertainability is therefore satisfied.

## 2. The Requirements of Rule 23(b)(3) are Satisfied

### a. Common questions of law and fact predominate

The predominance requirement examines whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Beaulieu v. EQ Indus. Servs.*, 2009 U.S. Dist.

---

[3] *Vacated on other grounds and remanded*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023). (quoting *EQT*, 764 F.3d at 358, and *Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 657-58 (4th Cir. 2019) (emphases and bracket insertions in *Marriott*).

13

LEXIS 133023, *60 (E.D.N.C. Apr. 20, 2009) (citing *Amchem*, 521 U.S. at 623). It "focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate . . . ." *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 89-90 (E.D.N.C. 2009). Accordingly, any required individual damage determinations do not defeat predominance. *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427-28 (4th Cir. 2003).

Here, as set forth above, common issues as to liability certainly predominate. Plaintiff and class members were subject to the same overarching conduct by Defendant in being charged ten cents above the price listed on Defendant's machines for card purchases. And Defendant's common records of its survey answer whether Defendant breached its contracts with class members. There is simply nothing in the record indicating that any potential individual issues regarding liability predominate over common ones, and predominance is therefore satisfied.

### b. A class action is the superior method of resolving this controversy

Rule 23(b)(3)'s second prong is whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It looks at: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. There is "[a] 'strong presumption in favor of a finding of superiority' . . . where 'the alternative to a class action' is 'no action at all.'" *Piron v. Gen. Dynamics Info. Tech., Inc.* 2022 U.S. Dist. LEXIS 21926, *38 (E.D. Va. Feb. 7, 2022) (quoting *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015)). That applies here given the relatively low damages at issue for individual class members. *See Glover v. EQT Corp.*, 2023 U.S. Dist. LEXIS 154309,

14

*43-44 (N.D.W. Va. 2023) ("[W]ithout class treatment, the average Class Member has neither the financial wherewithal nor incentive to file suit because the legal and expert expenses would likely exceed the value of their individual claim"). Furthermore, the "Supreme Court explained in *Amchem* that when dealing with a settlement-only class pursuant to Rule 23(e), 'a district court *need not inquire* whether the case, if tried, would present intractable management problems.'" *Gunnells*, 348 F.3d at 440 (quoting *Amchem*, 521 U.S. at 620) (emphasis added by *Gunnells*). Superiority is therefore satisfied.

### 3. Appointment of Class Counsel

Fed. R. Civ. P. 23(g)(1) provides that courts certifying a class "must appoint class counsel." In doing so, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As set forth above, Class Counsel thoroughly investigated and prosecuted this Action. They have extensive experience handling class actions and other complex litigation, and have obtained and possess the requisite knowledge of the law relating to this Action. Class Counsel also possess sufficient resources, of which they have employed, to adequately represent the Class. This Court should therefore appoint Joel Rhine, Ruth Sheehan, and John Bruno of Rhine Law Firm, P.C., Kevin Green and Daniel Levy of Goldenberg Heller & Antognoli, P.C., and Mike Arias and M. Anthony Jenkins of Arias Sanguinetti Wang & Team LLP, as Class Counsel.

### B. The Settlement is Fair, Reasonable, and Adequate

In determining whether a proposed class action settlement may be approved as "fair, reasonable, and adequate" under Rule 23(e)(2), the Court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was

15

negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

Further, and as described more below, the Fourth Circuit has developed its own factors in assessing whether a class action settlement is fair, reasonable, and adequate, which, as set forth below, largely overlap with Rule 23(e)(2). *See In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *40-41 (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)). The "Fourth Circuit's 'factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors.'" *Id.* at *41 n.2 (quoting *In re: Lumber Liquidators*, 952 F.3d at 484 & n.8).

Here, the proposed Settlement is fair, adequate, and reasonable to warrant preliminary approval. It provides substantial monetary relief to Settlement Class Members in light of the potential classwide damages and the risks, costs, and delay of further litigation. Further, it was negotiated at arms-length and treats Settlement Class Members equitably relative to each other. Additionally, the Settlement was reached after over six and a half years of litigation, and Class Counsel, based on their experience and information obtained during this litigation, obtained sufficient information to ensure the Settlement's fairness, reasonableness, and adequacy.

There is thus a sufficient "record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1),

16

Advisory Committee's Note to 2018 Amendment. Accordingly, both the Fourth Circuit's factors and Rule 23(e)(2) are satisfied and preliminary approval of the Settlement Agreement is warranted.

### 1. The Fourth Circuit's Factors and Overlapping Rule 23(e)(2) Factors Support Approval of the Settlement

As set forth herein, the factors considered by the Fourth Circuit, including the overlapping Rule 23(e)(2) factors, support the granting of preliminary approval.

### a. The proposed Settlement is fair

For fairness, the Fourth Circuit considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery . . . ; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *41 n.2.

The Fourth Circuit's considerations regarding the fairness of a settlement all support preliminary approval. During the more than six and a half years of litigation, Class Counsel engaged in substantial discovery—including written discovery, review of over 64,000 pages of documents, depositions, and expert discovery—and motion practice, including briefing on Plaintiff's motion for class certification and Compass's motion to strike Plaintiff's expert. *See In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *42 (considering that the parties only settled after extensive discovery and motion practice). Class Counsel is therefore well informed of the facts, claims, and defenses at issue and the risks of proceeding to trial and appeal, and endorse the Settlement without reservation. Joint Decl., ¶¶ 18.

Further, as set forth above, following three prior unsuccessful mediations, this Settlement resulted from the parties' hard-fought arms-length negotiations during April 2025 without any collusion, and "nothing in the record suggests otherwise." *In re Aqueous*, 2024 U.S. Dist. LEXIS

17

213061 at \*42; Joint Decl. ¶¶ 11-12.[4] Moreover, as set forth above, the Settlement does not provide for the reversion of unclaimed amounts. There is simply nothing during the negotiations or in the Settlement's substance presenting any reason to doubt its fairness. For these reasons, the overlapping requirement of Rule 23(e)(2)(B), considering whether "the proposal was negotiated at arm's length" is also satisfied.

Finally, Class Counsel have extensive experience in prosecuting complex class actions, including consumer protection class actions. Joint Decl., ¶ 5.

This Settlement therefore satisfies the Fourth Circuit's considerations relating to the fairness of a proposed settlement, along with Rule 23(e)(2)(B).

### b. The proposed Settlement is adequate

In assessing adequacy, the Fourth Circuit considers: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at \*41 n.2.

Here, Plaintiff maintains that this case is strong and that Compass would be found liable if the case proceeded to trial, but recognizes the risk, expense, and time involved to reach trial or obtain a final judgment. As shown herein, a consideration of the relative strength of Plaintiff's case on the merits and Compass's defenses demonstrates the adequacy of this Settlement.

Notably, Compass vigorously contested Plaintiff's motion for class certification (pending

---

[4] *In re Aqueous* also found that the reasonableness of the settlement was supported by that the fact the parties "did not set attorneys' fees or even a range of fees." *Id*. at \*48. The same is true here, as Class Counsel will simply be requesting an award of attorneys' fees from the Court without a "clear-sailing agreement."

at the time Settlement was reached), and, in the event certification was granted, likely would have sought a Rule 23(f) interlocutory appeal. Although Plaintiff believes the class was likely to be certified, it was far from guaranteed, as in the cases denying certification cited by Compass. *See*, *e.g.*, *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 211 (4th Cir. 2024), *Anderson v. Lab. Corp. of Am. Holdings*, 2023 U.S. Dist. LEXIS 23532, *45 (M.D.N.C. 2023). Moreover, Compass's defenses, including the assertion of the voluntary payment doctrine, presented more uncertainty at the merits stage.

The anticipated duration and expense of further litigation further supports a finding of adequacy. Even assuming Plaintiff certified the class and held certification through a 23(f) appeal, defeated Compass's summary judgment motion, and prevailed at trial and any potential appeal, the duration and expense of such undertakings—which would involve, *inter alia*, multiple expensive publication notice programs, further expert witness costs, and years of additional litigation—favors settlement. *See In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *43-44 ("[A]ny judgment . . . would be subject to lengthy appeals while the Settlement Agreement provides immediate results and benefits . . .").

For the same reasons, the overlapping considerations identified in Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and appeal) are also satisfied.

Finally, Plaintiff is not aware of any issues regarding Defendant's solvency and will address the degree of opposition to the Settlement in the motion seeking final approval after notice of the proposed Settlement and an opportunity to object has been provided.

This Settlement therefore satisfies Rule 23(e)(2)(B) and the Fourth Circuit's considerations relating to adequacy.

19

### c. The proposed Settlement is reasonable

Although the Fourth Circuit has not provided specific factors for consideration regarding reasonableness, "[t]o the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements" it can include a review of the settlement amount in light of the "scale of the litigation and the plaintiffs' chances of success at trial." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at \*41 n.2 (quoting *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022)). Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, \*19-21 (N.D. Ill. 2019) (approving settlement where payout to individual class members was not near statutory maximum under TCPA); *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 U.S. Dist. LEXIS 162838, \*12 (E.D. Cal. 2017)) (it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery . . . ") (citation omitted). And while the Court need not "substitute its judgment of what the case might be worth for that of class counsel" it "must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id*. (quotations omitted).

Here, the Settlement Amount—the $6.94 million common fund—is more than reasonable in light of the "scale of the litigation and the plaintiffs' chances of success at trial." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at \*46-47. The Settlement Amount represents 69% of the damage calculation by Plaintiff's expert (or over 50% of Plaintiff's damage plus interest calculation), and 69.5% of the expert calculation by Compass's expert. Under any calculation, and particularly in light of the uncertainty involved and the time value of money, the Settlement Amount provides substantial and immediate monetary relief without the risk and expense of continued litigation.

In analyzing reasonableness, courts also consider whether the settlement treats class members equitably relative to each other based on objective criteria. *Id.* at \*48. This is also a factor

20

under Rule 23(e)(2)(D). As the notes to the rule explain, paragraph (D) calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others, i.e., whether the apportionment of relief among class members takes appropriate account of differences among their claims. Further, in determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel. *See, e.g.*, *Phillips v. Triad Guaranty, Inc.*, 2016 U.S. Dist. LEXIS 37607, *12-13 (M.D.N.C. Mar. 23, 2016) ("'[T]he opinion of qualified counsel is entitled to significant respect[,] . . . and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.'") (quoting *In re Mills Corp. Securities Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) (also explaining that "[t]he proposed allocation need not meet standards of scientific precision").

Here, the plan of allocation, endorsed by Class Counsel, is reasonable, rational, and equitable, thus satisfying this factor. *See* Joint Decl. ¶ 17. Even after deducting for expected fees, costs, Service Award, and Settlement Administration Expenses, Settlement Class Members will receive substantial monetary relief through their Settlement Payments, which correspond to their number of purchases from Subject Vending Machines. Specifically, the Settlement Agreement sets forth eleven tiers for Claimants based on the number (by range) of their purchases from Subject Vending Machines, with those in the lowest tier (up to 250 purchases) receiving $30 and those in the highest tier (over 2,500 purchases) receiving $360. *See* Agreement § A.4, J.1.a. The various tiers are designed to facilitate a relatively simple claims process that divides class members into groups based on the number of purchases during a lengthy class period that dates back to 2014, with payments corresponding to the number of purchases. The proposed payment for each tier takes into account damages and prejudgment interest within each tier in a rational way that also avoids extensive claims proceedings that drag on for years. And the use of so many tiers treats

21

class members equitably by accounting for differences in their claims while avoiding concerns that some class members are being over- or under-compensated at the expense of others. Furthermore, the tiers and claims process balance the need for a streamlined, easy claims process with concerns about deterring and preventing fraud by including a process for obtaining more information by a Claimant if needed.

Next, to the extent there are insufficient funds to pay all Claimants from the Net Settlement Fund, the Settlement Administrator will calculate each Claimant's Settlement Payment by making *pro rata* adjustments to these amounts, with the adjusted amounts constituting the expected Settlement Payment—thereby reducing everyone's recovery proportionally to one another if needed. That method preserves the equitable nature of the payouts described above. If there is money left in the Net Settlement Fund after paying Claimants, the balance will be distributed to a *cy pres* recipient, in the Court's discretion, to avoid claims of overcompensating the Class. *See, e.g.*, *Curry v. Money One Fed. Credit Union*, 2021 U.S. Dist. LEXIS 235884, *8 (D. Md. 2021) ("Courts commonly approve *cy pres* distributions for unclaimed funds, such as the residue of a class settlement fund").

Finally, while the Settlement provides that Class Counsel may petition the Court for a service award for Plaintiff, such awards are regularly awarded based on the work performed by named plaintiffs. *See*, *e.g.*, *Rodriguez v. Riverstone Cmtys., LLC*, 2024 U.S. Dist. LEXIS 22802, *7 (E.D.N.C. 2024); *Seaman v. Duke Univ.*, 2019 U.S. Dist. LEXIS 163811, *22 (M.D.N.C. 2019).

The Fourth Circuit's reasonableness considerations and Rule 23(e)(2)(D) are thus satisfied.

### 2. The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement

To the extent the Rule 23(e)(2) factors do not entirely overlap with the Fourth Circuit's, the factors not addressed above are satisfied here.

22

As set forth herein, Plaintiff and Class Counsel have adequately represented the Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy of representation, including the 'nature and amount of discovery,' which 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P. 23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. As set forth above, the performance of Plaintiff and Class Counsel have been more than adequate, and the extensive time and resources they have invested, including relating to motion practice and discovery, has ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. The significant work they put into discovery to obtain this information base, along with their extensive experience in class actions, supports a finding that Rule 23(e)(2)(A) is satisfied.

Further, Plaintiff, as the Class Representative, has stayed involved in nearly every aspect of the case, including by helping Class Counsel investigate the claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, and preparing and sitting for a deposition. At each step, Plaintiff has continued to act in the best interests of the Settlement Class and has adequately represented it.

b. **The method of distributing relief to the class is effective**

The Settlement's method of distributing relief to the class, including its method of processing class-member claims, also supports preliminary approval. *See* Rule 23(e)(2)(C)(ii). Because Compass does not have records identifying persons who made purchases from Subject

23

Vending Machines, potential class members will have to make claims to be eligible for Settlement Payments. Class Counsel, in consultation with the Settlement Administrator, has created a robust notice program that includes, *inter alia*, publication via numerous electronic and social media outlets, combined with a streamlined claims-process. Agreement §§ G, J. Claim forms can be complete electronically on the Settlement Website, but Class members may also download and/or request a printable copy that can be returned to the Settlement Administrator. *Id.* § G.1, G.2.

Direct payment to Settlement Class members based on a "simple and easy to understand" claim form and process supports approval. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, *18-19 (D. Md. 2019); *Abubaker v. Dominion Dental U.S.*, 2021 U.S. Dist. LEXIS 252202, *16 (E.D. Va. 2021) (same). Here, the claim form and process is simple and easy to understand. Claimants will file a claim form verifying under oath their name, contact information, that he/she made a purchase from a Subject Vending Machine with a credit, debit, or prepaid card, the tier corresponding to his/her number of purchases, and the City and State where purchased. Agreement §§ A.4, A.5, G.1-2, & Ex. 6. Claimants will not need to provide additional information with their Claim Form; however, to deter and prevent fraud, the Settlement allows for a process by which Claimants may be requested to provide additional information—and they will be told of this possibility in the Claim Form and notice. *See* Agreement § G.2.b and Ex. 4, 5, 6.

Finally, to reduce unclaimed funds or uncashed checks, Claimants may select their preferred payment type on the Claim Form, including physical checks, electronic payments (via PayPal, Venmo, or Zelle), or payment cards. Agreement, § J.1.c. Physical checks will be valid for 180 days after the date issued. *Id.* For payment methods that require delivery, the Settlement Administrator will mail the Settlement Payment to the address indicated on the Claim Form. *Id.* If any Settlement Payments are returned by the U.S. Postal Service as undeliverable, the Settlement

24

Administrator will, within 75 days after the Effective Date, mail the Settlement Payment to any forwarding address provided, and, if no such forwarding address is provided, will use publicly available databases as is practicable to update Claimant's addresses and will cause the Settlement Payment to be re-mailed to such Claimant as can be located. Agreement, § J.1.c.i, ii. Accordingly, the method of distributing relief to the Settlement Class is as simple and effective as possible and this factor supports preliminary approval.

### c. The terms of the proposed attorneys' fees and timing of payment support approval of the settlement

Under Rule 23(e)(2)(C)(iii), the Settlement is adequate, taking into account the terms of proposed attorneys' fees, including timing of payment. If this Court grants preliminary approval of the Settlement, undersigned counsel intends to petition the Court for attorneys' fees of no more than one-third of the Settlement Amount, plus reimbursement of litigation costs and expenses. Agreement § J.3. As will be shown in Plaintiff's Fee Application, one-third of a common fund for attorneys' fee awards in class action settlements is reasonable and does not undermine the adequacy of the relief. *See, e.g.*, *Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, *13 (E.D.N.C. 2020) (attorneys' fees of one-third of settlement fund was "fair, adequate, and reasonable"; "Many courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable"); *Amaya v. DGS Constr., LLC*, 2023 U.S. Dist. LEXIS 210689, *8 (D. Md. 2023) ("[T]he requested attorney's fees of one-third of the common fund are reasonable" and noting class counsel "took the case on a contingency basis").

Class Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses. Per the Settlement, any attorneys' fees and expenses the Court awards are to be distributed within 14 days of the Settlement's Final Effective Date, which is the same day that money to Claimants will be distributed. Agreement §§ J.1.b, J.3.

25

### d. Agreements required to be identified under Rule 23(e)(3) made in connection with the proposal

Rule 23(e)(3) requires the parties to identify "any agreement made in connection with the proposal." In connection with this Class Settlement, Compass is entering into separate settlement agreements with two individual plaintiffs who filed similar actions in state courts that will have the same Effective Date as this Settlement. Joint Declaration, ¶ 16.

As background, on October 10, 2022, Jason Pemberton filed a similar action against Compass in the Circuit Court of Madison County, Illinois, styled as *Jason Pemberton v. Compass Group USA, Inc., d/b/a Canteen*, Case Number 2022LA001328. And on December 16, 2022, Joseph Whitaker filed a similar action in the General Court of Justice Superior Court Division in the County of Davidson, North Carolina, styled as *Joseph Whitaker v. Compass Group USA, Inc., d/b/a Canteen*, Case No. 22-CVS-2576 (collectively the "State Actions"). Compass did not remove the State Actions, but both have been stayed pending the outcome of this Action. Joint Declaration, ¶ 16. Pemberton and Whitaker are also represented by most of the undersigned counsel. *Id.*

The individual settlements consist of an agreement By Pemberton and Whitaker to dismiss the State Actions with prejudice promptly after the Effective Date in exchange for a settlement payment of $5,000 each to Pemberton and Whitaker (which payment will also not occur until after the Effective Date). *Id.* Pemberton and Whitaker have also agreed to forego filing claims in the class Settlement to avoid a conflict with the Class or a double recovery. *Id.* The individual settlements were not a term of the Class Settlement. And practically, the alternative to settling the State Actions now would have been to wait until after the Effective Date to negotiate and enter individual settlement agreements regarding the State Actions, but that approach would not have impacted the Class Settlement in any material way. *Id.* Thus, these individual settlements should not affect the reasonableness, fairness, or adequacy of the class Settlement.

26

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION

For any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Additionally, the notice must, in plain language, state the nature of the action; the class definition; the class claims, issues, or defenses; that class members may enter an appearance through an attorney; that the court will exclude class members who so request; the time and manner for requesting exclusion; and the binding effect of a class judgment on the class members. *Id*. Moreover, under Rule 23(e)(1)(B) the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The notice requirement also "has due process implications," which are satisfied if notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 275 (D. Md. 2012) (citation omitted). The due process analysis is practical, "and does not require that notice be provided to every single class member if the circumstances would make such an expectation unreasonable and impracticable." *Id*.

Thus, "[w]here certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate." *Kay Co., Ltd. Liab. Co. v. EQT Prod. Co.*, 2021 U.S. Dist. LEXIS 256875, *20 (N.D.W. Va. 2021); *see also* Newberg on Class Actions § 22:91 ("The notice of the Proposed Settlement . . . need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. . . . Courts have

27

consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties.").

Here, there are no records reflecting class members' names and addresses, so publication notice is required. As set forth herein, the proposed notice is comprehensive, the best notice practicable under the circumstances, and complies with Rule 23's requirements and Due Process.

The Notice Program is set forth in Section F and Exhibits 3-5 of the Settlement Agreement and provides that, *inter alia*, within seven days after the Preliminary Approval Date, the Settlement Administrator will launch the Settlement Website (www.vendingmachinesettlement.com, or another website address the Parties agree to), which will include links to the Long-Form Notice, the Settlement Agreement, the Claim Form (including a mechanism to complete and submit an electronic Claim Form), the list of locations for the Subject Vending Machines, the Fee Application, Class Counsel's contact information, applicable deadlines, and Court orders pertaining to the Settlement. Agreement § F.1.

By the Notice Commencement Date, the Settlement Administrator will establish and maintain a toll-free telephone number, listed on the Settlement Website, specific to the Action to further apprise class members of the rights and options in the Settlement. *Id*. § F.2. The toll-free telephone number will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id*. It will be accessible 24 hours a day, 7 days a week, and will remain active for at least 180 days after the Effective Date. *Id*.

Further, by the Notice Commencement Date, the Settlement Administrator will initiate publication of a release on PR Newswire's national US1 newswire, in substantially the form

28

attached as Exhibit 5 to the Settlement Agreement. It will issue a second press release on PR Newswire's national US1 newswire by 30 days prior to the close of the Claims Period. *Id*. § F.3.

Additionally, by the Notice Commencement Date, the Settlement Administrator will initiate publication of notice of the settlement on the Top Class Actions ("TCA") website (www.topclassactions.com). *Id*. § F.4. The TCA website receives 3 million views per month and distributes a monthly newsletter to 900,000 subscribers. The TCA publication will remain active for the entire Claims Period. *Id*.

By the Notice Commencement Date, the Settlement Administrator will also initiate a social media program utilizing Facebook, Instagram, and Snapchat that will provide settlement-related information and links to the Settlement Website. *Id*. § F.5. This targeted social media program will include geotargeting in the zip codes of the Subject Vending Machines, hyper-local targeting to the location of each vending machine, and retargeting to users who visit the Settlement Website but do not submit a Claim Form. *Id*. The social media publication campaign will run for at least 30 days after the Notice Commencement Date. *Id*.

Moreover, by the Notice Commencement Date, the Settlement Administrator will initiate banner advertisements across high-visibility Google properties including YouTube, Gmail, and Google Discover using visually engaging images to direct people to the Settlement Website. *Id*. § F.6. Banner ads will also be purchased on national online publications including The Wall Street Journal and USA Today and national news outlets including CNN, Fox News, and NYTimes. *Id*. Additionally, the Website/Banner ads will be retargeted to users who visit the Settlement Website but do not file a Claims Form. *Id*. The Website/Banner Ads campaigns will run for at least 30 days after the Notice Commencement Date. *Id*.

29

By the Notice Commencement Date, the Settlement Administrator will also initiate Google Search to display ads about the Settlement to users who search for keywords related to the case or settlement. *Id*. § F.7. This will facilitate and enhance other notice efforts by directing potential class members to the Settlement Website. *Id*.

The notice documents are all written in plain, easily-understood language and inform Class members of the Rule 23(C)(2)(B) requirements identified above. They therefore satisfy Rule 23, though the Court may modify the language in its discretion.

Further, the Settlement Administrator shall send each appropriate State and Federal official the materials specified in 28 U.S.C. § 1715, and shall otherwise comply with its terms. *Id*. § F.9.

Accordingly, the proposed comprehensive Notice Plan constitutes the best notice practicable under the circumstances in satisfaction of Rule 23(c)(2)(B) and Due Process. *See Kay Co., Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 256875 at \*20 (due process satisfied where notice was reasonably calculated to reach the class); Newberg on Class Actions § 22:91 (notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections . . ."). It should therefore be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and enter the proposed Order provisionally certifying the Settlement Class, preliminarily approving the Settlement, appointing the Class Representative and Class Counsel, approving the form and manner of notice and the Settlement Administrator, setting a date for the Final Approval Hearing, and for such further relief as the Court deems just and proper.

30

Dated: May 14, 2025

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:*/s/ Daniel S. Levy*
Kevin P. Green (admitted *pro hac vice*)
Daniel S. Levy (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
618.656.5150
kevin@ghalaw.com
daniel@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Joel R. Rhine, NC SBN 16028
Ruth A. Sheehan, NC SBN 48069
John A. Bruno, NC SBN 48069
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960
jrr@rhinelawfirm.com
ras@rhinelawfirm.com
jab@rhinelawfirm.com

*Attorneys for Plaintiff*

31

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on May 14, 2025, which will serve all counsel of record.

/s/ *Daniel S. Levy*

## CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE

I hereby certify that:

a. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Weslaw, Lexis, FastCase, and Bloomberg; and

b. Every statement and citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ *Daniel S. Levy*

32