## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| JAMES JILEK, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:23-cv-00818-JAG-DCK |
| COMPASS GROUP USA, INC., d/b/a CANTEEN, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     OVERVIEW OF THE LITIGATION ................................................................. 2

III.    THE SETTLEMENT AND SCHEDULE OF EVENTS ..................................... 5

    A.     The Settlement Class and Relief .............................................................. 5

    B.     Release ...................................................................................................... 7

    C.     Attorneys' Fees and Costs and Class Representative Service Awards ................. 7

    D.     Administrative Expenses ........................................................................... 8

IV.     PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS .................... 8

    A.     The Preliminary Approval Order ............................................................... 8

    B.     Subsequent Developments ....................................................................... 10

V.      THE SETTLEMENT SHOULD BE APPROVED ............................................. 13

    A.     The Settlement is Fair, Reasonable, and Adequate ................................. 13

        1.     The Fourth Circuit's Factors and Overlapping Rule 23(e)(2)
            Factors Support Approval of the Settlement ................................ 15

            a.     The proposed Settlement is fair .................................... 15

            b.     The proposed Settlement is adequate ........................... 16

            c.     The proposed Settlement is reasonable ........................ 23

        2.     The Remaining Rule 23(e)(2) Factors Support Approval of the
            Settlement ................................................................................. 25

            a.     The Class Representative and Class Counsel have
                adequately represented the Class .................................. 25

            b.     The method of distributing relief to the class is effective ............ 26

            c.     The terms of the proposed attorneys' fees and timing of
                payment support approval of the settlement ................. 27

            d.     Agreements required to be identified under Rule 23(e)(3)
                made in connection with the proposal ........................... 28

Case 3:23-cv-00818-JAG-DCK    Document 348    Filed 12/17/25    Page 2 of 37

VI.     CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE
        CONFIRMED ........................................................................................................... 29

VII.    CONCLUSION ......................................................................................................... 29

Case 3:23-cv-00818-JAG-DCK      Document 348      Filed 12/17/25      Page 3 of 37

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
 28 F.4th 513 (4th Cir. 2022) ................................................................ 23

*Abubaker v. Dominion Dental U.S.*,
 2021 U.S. Dist. LEXIS 252202 (E.D. Va. 2021)................................... 27

*Amaya v. DGS Constr., LLC*,
 2023 U.S. Dist. LEXIS 210689 (D. Md. 2023) ..................................... 28

*Anderson v. Lab. Corp. of Am. Holdings*,
 2023 U.S. Dist. LEXIS 23532 (M.D.N.C. 2023)................................... 17

*Aseltine v. Bank of Am., N.A.*,
 2024 U.S. Dist. LEXIS 222677 (W.D.N.C. Dec. 9, 2024) ..................... 21

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
 91 F.4th 202 (4th Cir. 2024) ........................................................... 16-17

*Charvat v. Valente*,
 2019 U.S. Dist. LEXIS 187225 (N.D. Ill. Oct. 28, 2019)...................... 23

*Chrismon v. Meadow Greens Pizza*,
 2020 U.S. Dist. LEXIS 119873 (E.D.N.C. 2020)................................... 28

*City of Camden v. BASF Corp. (In re Aqueous Film-Forming Foams Prods. Liab. Litig.)*,
 2024 U.S. Dist. LEXIS 213061 (D.S.C. Nov. 22, 2024) ........................ 14

*Decohen v. Abbasi, LLC*,
 299 F.R.D. 469 (D. Md. 2014)............................................................. 21

*Gholston v. Smithfield Foods, Inc.*,
 2022 U.S. Dist. LEXIS 247816 (E.D. Va. 2022).................................... 13

*Good v. W. Va.-American Water Co.*,
 2021 U.S. Dist. LEXIS 248057 (S.D. W. Va. Dec. 30, 2021)................. 21

*Hoffman v. First Student, Inc.*,
 2010 U.S. Dist. LEXIS 27329 (D. Md. Mar. 23, 2010).......................... 13

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
 2019 U.S. Dist. LEXIS 120558 (D. Md. 2019) ................................ 26-27

*In re Blue Cross Blue Shield Antitrust Litig. (MDL No.: 2406)*,
2022 U.S. Dist. LEXIS 246155 (N.D. Ala. Aug. 9, 2022) .................................................. 18

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................................... 13

*In re Lupron Mktg. & Sales Practices Litig.*,
677 F.3d 21 (1st Cir. 2012) .................................................................................................... 19

*In re Mills Corp. Securities Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ............................................................................................ 24

*In re Optical Disk Drive Prods. Antitrust Litig.*,
2021 WL 3502506 (N.D. Cal. Jul. 2, 2021) ......................................................................... 18

*In re Pork Antitrust Litig.*,
2022 U.S. Dist. LEXIS 170244 (D. Minn. Sep. 14, 2022) ................................................... 18

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod.
Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ................................................................................................. 14

*James Pemberton v. Compass Group USA, Inc., d/b/a Canteen*,
Case No. 2022LA001328 ....................................................................................................... 28

*Johnson v. NPAS Sols., LLC*,
975 F.3d 1244 (11th Cir. 2020) ............................................................................................. 22

*Joseph Whitaker v. Compass Group USA, Inc., d/b/a Canteen*,
Case No. 22-CVS-2576 ..................................................................................................... 28-29

*Klier v. Elf Atochem N. Am., Inc.*,
658 F.3d 468 (5th Cir. 2011) ................................................................................................. 20

*Krakauer v. Dish Network, LLC*,
2020 U.S. Dist. LEXIS 199112 (M.D.N.C. Oct. 27, 2020) ............................................. 18, 19

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
2009 U.S. Dist. LEXIS 89136 (E.D. Va. 2009) .................................................................... 13

*Mateo-Evangelio v. Triple J Produce, Inc.*,
2017 U.S. Dist. LEXIS 135580 (E.D.N.C. Aug. 24, 2017) ................................................... 19

*McMorrow v. Mondelez Int'l, Inc.*,
2022 U.S. Dist. LEXIS 66016 (S.D. Cal. Apr. 8, 2022) ....................................................... 18

iv

*Medina v. Brentmoor,*
    2021 U.S. Dist. LEXIS 94585 (E.D.N.C. May 14, 2021) ...................................... 19

*Phillips v. Triad Guaranty, Inc.,*
    2016 U.S. Dist. LEXIS 37607 (M.D.N.C. Mar. 23, 2016) ...................................... 24

*Rodriguez v. Riverstone Cmtys., LLC,*
    2024 U.S. Dist. LEXIS 22802 (E.D.N.C. 2024).................................................... 24

*Seaman v. Duke Univ.,*
    2019 U.S. Dist. LEXIS 163811 (M.D.N.C. 2019)................................................ 24

*Stark v. Blue Cross & Blue Shield of N.C.,*
    2025 U.S. Dist. LEXIS 29654 (M.D.N.C. Feb. 18, 2025)................................. 19, 21

*Van Lith v. iHeartMedia + Entm't, Inc.,*
    2017 U.S. Dist. LEXIS 162838 (E.D. Cal. Sept. 29, 2017).................................... 23

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 22, 29

Fed. R. Civ. P. 23(e)(1)(B)(i) ............................................................................ 13

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................... 14, 25, 26

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................... 14, 16, 22

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................... 17

Fed. R. Civ. P. 23(e)(2)(C)(ii).......................................................................... 26

Fed. R. Civ. P. 23(e)(2)(C)(iii)......................................................................... 27

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................... 14, 24, 25

Fed. R. Civ. P. 23(e)(3).............................................................................. 14, 28

Fed. R. Civ. P. 23(f)................................................................................. 16, 17

**Other Authorities**

Advisory Committee's Notes to 2018 Amendment........................................................ 26

## I.    INTRODUCTION

Plaintiff James Jilek ("Jilek") seeks final approval of this class action settlement ("Settlement") (Dkt. 337-1) with Defendant Compass Group USA, Inc. ("Compass") in the above-captioned matter ("Action"). In this multi-state class action, Plaintiff alleges that Compass, who owns and operates vending machines across the United States, engaged in a widespread practice of charging customers' credit, debit, or prepaid cards ("cards") ten cents more than the displayed prices for items it sold in its vending machines, without disclosing the extra charge for use of a card. This Settlement is the culmination of six and a half years of hard-fought litigation resulting in a $6.94 million settlement fund with no right of reversion. On behalf of himself and the proposed Settlement Class, Plaintiff respectfully submits this Unopposed Motion and Memorandum in Support for Final Approval of Class Action Settlement. As set forth herein, the Settlement Agreement ("Settlement Agreement" or "Agreement") is fair, reasonable, and adequate, warranting final approval.[1] A proposed order is submitted with this Motion.

The Settlement Agreement is the product of extensive, arm's-length negotiations between the parties and their experienced and informed counsel. The Settlement will provide substantial monetary relief to Settlement Class Members through a common, non-reversionary settlement fund of $6,940,000.00, while avoiding the risks, delay, and expense of continued litigation. Settlement Payments are allocated through a tiered structure corresponding to each Class Member's number of purchases from Compass's Subject Vending Machines.

Because the identities and contact information of affected consumers were not known, Class Counsel and the Settlement Administrator implemented a robust notice program to inform Class Members of the Settlement, which proved highly successful—more than 248,000 Class

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Agreement.

Members submitted claims, with approximately 60,000 additional paper claims still being processed. Only two Class Members opted out of the Settlement, and only one objected.

Prior to reaching a resolution, Class Counsel engaged in substantial pre-trial motion practice and discovery. This included briefing on Compass's multiple motions to dismiss and motion to transfer venue; conducting extensive discovery that encompassed reviewing Compass's voluminous document production; taking and defending multiple depositions; retaining and working with an expert witness, analyzing Compass's expert witness report; and briefing and preparing for hearing on Plaintiff's motion for class certification and Compass's motion to strike Plaintiff's expert. Class Counsel accordingly possess a firm understanding of the strengths and weaknesses of the claims in this Action, and have concluded, considering the risks, uncertainties, burdens, and costs of further prosecution of the claims, and the material benefits the Settlement Class will receive from the Settlement, that a resolution on the terms set forth in the Settlement is fair, reasonable, adequate, and in the best interests of the Class. As demonstrated herein, the Settlement satisfies all criteria for final approval, and Plaintiff accordingly requests that the Court grant final approval of the Settlement.

## II.     OVERVIEW OF THE LITIGATION

This Action originated in a Missouri state court in October 2018 and has evolved through different jurisdictions, consolidations, and amended complaints, with the operative complaint being the Amended Consolidated Class Action Complaint ("Operative Complaint"), filed on October 14, 2021. Dkt. 126. Plaintiff seeks relief on behalf of a nationwide class of persons who made purchases with a credit/debit card from Compass's vending machines that did not disclose the extra ten cent charge for use of a card. The litigation included contentious discovery that eventually included production of more than sixty thousand pages of documents, lengthy expert reports of multiple experts, and depositions of expert and multiple other fact-witnesses.

2

This litigation was initiated on behalf of then named plaintiff George Moore in the Circuit Court for the City of St. Louis on October 23, 2018, which Compass removed to the United States District Court for the Eastern District of Missouri on November 21, 2018 (Dkt. 1). After Plaintiff filed an amended complaint on December 18, 2018, Compass filed a motion to dismiss, which, on September 26, 2019, was granted in part and denied in part. Dkt. 15, 25, 43.

In October 2019, Class Counsel filed a similar lawsuit in California on behalf of Plaintiff Jilek, which was removed, then transferred by consent to the Eastern District of Missouri in December 2019. Another similar suit was filed in Texas by different counsel, which was transferred to the Eastern District of Missouri. All these cases were consolidated into one case in 2020, and the Court appointed Jilek's counsel as Interim Class Counsel on December 8, 2020. Dkt. 80. On April 6, 2021, Class Counsel filed a Consolidated Class Action Complaint, which did not change the substantive claims. Dkt. 91. Compass filed its Answer on May 27, 2021. Dkt. 97.

During discovery, Compass produced over 64,000 pages of documents on a rolling production basis that involved 25 separate productions between September 2019 and September 2023. In May 2021, Class Counsel learned of a survey that Compass conducted beginning in March 2019 of its "two-tier" vending machines (those with a 10-cent lower price for the use of cash) to determine which machines lacked a label disclosing the additional ten cent charge for card purchases. Further, beginning in June 2021, Class Counsel took the Rule 30(b)(6) deposition of Compass's corporate representatives. On October 14, 2021, Class Counsel filed the Operative Complaint, which included, *inter alia*, facts regarding the survey. Dkt. 126. Compass moved to dismiss, which the Court granted in part and denied in part. *See* Dkt. 134, 135, 177, 197.

Compass deposed Mr. Jilek on March 21, 2023, and produced additional data about its survey of its two-tier machines throughout the first half of 2023. Class Counsel deposed Compass's

Vice President of Business Information, Martha Morgan, in May and June of 2023.

Simultaneously, Class Counsel worked with Plaintiff's expert, Brian Kriegler, Ph. D., to analyze Compass's data and explanations of its data from tens of thousands of machines to develop a classwide damages calculation. Dr. Kriegler determined classwide damages of approximately $10,073,865 as the amount Compass obtained from these extra ten-cent charges during the class period from Compass's two-tier machines without labels disclosing the price difference. Compass deposed Dr. Kriegler and followed with a report by its own expert, David Kalat, who opined that Dr. Kriegler's methodology should result in classwide damages of $9,997,193.

On October 13, 2023, Plaintiff filed his Motion for Class Certification. Dkt. 257 through 257-19. On November 10, 2023, Compass filed its Response in Opposition to the Motion for Class Certification and a Motion to Strike the Expert Report of Dr. Kriegler. Dkt. 260 through 262-4. On November 15, 2023, the Court, *inter alia*, transferred the Action to the Western District of North Carolina after the original Missouri based Plaintiff, Mr. Moore, had to withdraw from the case due to sudden and serious illnesses in his family. Dkt. 263.

After the Action was transferred, the Court ordered the parties to re-brief the Motion for Class Certification and Motion to Strike, which would now be governed by Fourth Circuit case law. Dkt. 290. The parties submitted new briefs (which now also included briefing motions for leave to file sur-replies to the motion for class certification and motion to strike). *See* Dkt. 293 through 298, 302 through 303-5, 305 through 305-5, 307 through 308, 311 through 314, 316 through 318, and 320 through 323-1. On March 10, 2025, the Action was reassigned to the Honorable John A. Gibney, Jr., Senior District Judge for the Eastern District of Virginia. The Court scheduled a hearing on the class certification motion and motion to strike for April 28, 2025.

On three separate occasions throughout the case—February 3, 2021, May 19, 2021, and

May 25, 2023—the parties engaged in court-ordered mediation sessions, which proved unsuccessful. Nevertheless, following this Court scheduling the hearings on class certification and the motion to strike, the parties reengaged in settlement negotiations. They continued to engage in arm's-length settlement negotiations throughout April 2025, before reaching an agreement in principle on April 25, 2025, upon which they notified the Court of the same. Dkt. 328. The parties thereafter continued to negotiate regarding additional terms in connection with a long form Settlement Agreement. During these negotiations, the parties only discussed the terms for the Class and did not discuss the payment of attorneys' fees, costs, expenses, or Class Representative service awards. The parties executed the Settlement Agreement on May 13, 2025.

## III.    THE SETTLEMENT AND SCHEDULE OF EVENTS

The Settlement Agreement creates a common, non-reversionary, fund in the amount of $6,940,000. Because the names and addresses of harmed consumers are not known, Class Counsel and the Settlement Administrator devised a robust notice plan to inform class members of the Settlement. The Settlement Agreement provides for Settlement Payments based on tiers corresponding to the Settlement Class Member's number of purchases from Compass's Subject Vending Machines, with class members in the lowest tier to receive up to $30 and class members in the highest tier to receive up to $360, subject to pro rata reduction based on the number of valid claims. The following is a summary of the Settlement's material terms:

### A.    The Settlement Class and Relief

Compass will pay $6,940,000 (the "Settlement Amount"). No portion of the Settlement Amount will revert back to Compass. Agreement § C.

The Settlement Class consists of individuals who (1) made one or more purchases from a "Subject Vending Machine" (2) with a credit, debit, or prepaid card (3) in the United States (4) between 2014 and the Preliminary Approval Date. The "Subject Vending Machines" means

Compass's vending machines that (1) provided a cash or card payment option and (2) charged more than the price listed for purchases made with a credit, debit or prepaid card.[2] A list of locations with the Subject Vending Machines was posted on the Settlement Website (www.vendingmachinesettlement.com). The Class excludes Compass, its officers and directors, and officers and directors of any subsidiary, affiliate, successors, or assignees of Compass; the trial judge presiding over this case; all persons who submit a Claim Form that is deemed invalid; and all persons in the Class who timely and properly opt out of this Agreement pursuant to the procedures set forth in the Settlement Agreement. Agreement § A.8.

To receive Settlement Payments, Class members filed simple claim forms verifying under oath their name and contact information; that they made a purchase from a Subject Vending Machine with a credit, debit, or prepaid card between 2014 and the Preliminary Approval Date; and indicating the number of such purchases made between 2014 and the Preliminary Approval Date (presented as a range on the Claim Form as described in the Settlement Agreement) and the City and State where purchased. The Claim Form was available to be accessed, completed, and filed electronically on the Settlement Website, or by printing and sending a copy to the Settlement Administrator. A sample Claim Form is attached as Exhibit 6 to the Settlement Agreement.

Class members did not need to submit proof of purchases with the Claim Form; however, they were told that they may be asked to provide additional information. A properly completed Claim Form that was timely submitted was presumptively valid; however, the Settlement

---

[2] For clarity, the Settlement and notices further explain that the Subject Vending Machines do not include Compass vending machines: (1) that had a cash discount sticker at the time of the consumer's purchase (a label informing the consumer that the displayed price is the cash price, which is lower than the price they will be charged if they use a credit/debit/prepaid card); (2) that displayed both the cash and credit prices for each item; or (3) with a digital shopping cart (a screen that displays both the cash and credit price). These machines are excluded because they would not have "charged more than the price listed for purchases made with a [card]." Agreement § A.8.

Administrator notified the Parties of any suspected fraudulent claims, and the Parties could agree to authorize follow-up communications regarding such claims.

The Settlement provides that if there are sufficient funds in the Net Settlement Fund, Claimants will receive between $30 and $360 depending on the number of purchases they made, subject to a *pro rata* reduction depending on the number of Claimants. The Settlement further provides that if there is no *pro rata* reduction of the Settlement Payments and, after making the full payments, money remains in the Net Settlement Fund, then the balance will be distributed as a *cy pres* payment, subject to the Court's discretion. Claimants could elect to receive their payment by mailed checks or prepaid cards, or via electronic payment. Agreement § J.1.

**B.      Release**

The Settlement Agreement contains a release that takes effect as of the Effective Date. The Releasing Parties are Plaintiff and all member of the Class, and their respective agents, heirs, executors, administrators, successors, assigns, guardians and representatives. Agreement § K. The Released Parties are Compass Group USA, Inc., and each and all of its predecessors, successors, parents, subsidiaries, affiliates, customers and clients, and related entities, and each their respective present and former officers, directors, employees, attorneys, insurers, and reinsurers, together with each and all of their successors, heirs, and assigns, jointly and severally. *Id.* § A.30. In summary, the Settlement Class will release, as of the Effective Date, the Released Parties from any and all claims, known or unknown, that the Releasing Parties now own or hold, or have owned or held at any time prior to the Effective Date, that were or could have been asserted in the Action, or are based on or in any way related to the factual predicate relating to the Action. *Id.* § K.

**C.      Attorneys' Fees and Costs and Class Representative Service Awards**

Class Counsel has asked the Court to approve an award of attorney's fees of one-third (1/3) of the Settlement Amount equaling $2,313,333.33, plus reimbursement of litigation costs and

expenses. Dkt. 346 ("Fee Petition"). As set forth therein, the requested award of attorneys' fees and expenses is reasonable based on a consideration of the relevant factors within this Circuit. Class Counsel has also asked the Court to approve a Service Award of no more than $10,000 for Plaintiff, to be paid from the Settlement Amount. *Id.* This Service Award will compensate Mr. Jilek for his time and efforts in this lawsuit, including assisting and participating in pre-suit investigation, responding to written interrogatories and document requests, sitting for his deposition, and numerous telephone conferences with Class Counsel to discuss the litigation. While included in the Settlement Agreement, the amount of attorneys' fees and Service Award was not negotiated by the parties at any time, and the Settlement Agreement leaves the amount of fees, costs, and Service Award to the Court without a "clear-sailing agreement" prohibiting a challenge to the amount requested. Agreement § J.3.

### D. Administrative Expenses

In its Preliminary Approval Order the Court appointed Simpluris, Inc. ("Simpluris") as the Settlement Administrator. Simpluris' total settlement-administration costs, including incurred fees and anticipated future expenses, will be $427,438.00. See Declaration of Settlement Administrator Simpluris, Inc. ("Simpluris Decl.") ¶ 26.

## IV. PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS

### A. The Preliminary Approval Order

On July 9, 2025, the Court entered its Preliminary Approval Order, finding as follows:

Based on this preliminary evaluation, the Court finds that the settlement is fair, reasonable and adequate, is likely to be approved under Federal Rule of Civil Procedure 23(e)(2), and is in the best interests of the Settlement Class. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action against Compass, and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delays associated with continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement is the result of arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues of this case, who have

diligently investigated and prosecuted this matter. Therefore, the Court grants preliminary approval of the settlement.

Dkt. 343, ¶ 6.

The Court certified the Class under Rule 23, subject to Final Approval, finding it satisfied numerosity; there were questions of law and fact common to Class members that predominated over questions affecting individual members; Plaintiff's claims are typical of those of the Settlement Class; Plaintiff will adequately protect the interests of the Settlement Class; and a class action is a superior method for fairly and efficiently adjudicating the controversy. *Id*. at ¶ 3(a)-(e).

Further, the court approved the Notice Plan, finding it "[was] the best notice practicable under the circumstances, is a reasonable manner for notice, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including but not limited to the Due Process Clause of the United States Constitution." *Id*. ¶ 10. The Court approved the appointment of Simpluris, Inc. as Settlement Administrator (*id*. at ¶ 9) and directed the Settlement Administrator to initiate publication notice on August 1, 2025, as set forth in the Settlement Agreement, including through: a release on PR Newswire's national US1 newswire (and a second press release 30 days prior to the close of the Claims Period); the Top Class Actions Website; a targeted social media program utilizing Facebook, Instagram, and Snapchat; banner advertisements across high-visibility Google properties including YouTube, Gmail, and Google Discover along with banner ads on specified national online publications; and ads about the Settlement on Google Search to users who search for keywords related to the settlement. *Id*. at ¶ 10(c)-(g). The Court also directed the Settlement Administrator to establish a Settlement Website on or before July 11, 2025, including links to the Long-Form Notice, the Settlement Agreement, the Claim Form (including a mechanism to complete and submit an

electronic Claim Form), the list of locations for the Subject Vending Machines, Class Counsel's contact information, and applicable deadlines. *Id*. at ¶ 10(a).

The Court directed Class Counsel to file its Fee Application on or before October 7, 2025, and set October 17, 2025, as the deadline for Class Members to opt-out of the Settlement or file an objection or notice of intention to appear at the Final Fairness Hearing and November 14, 2025, as the deadline for Class Members to submit a claim form. *Id*. ¶¶ 12, 13, 17, 25, 28.

Finally, the Court scheduled a Final Fairness hearing for January 9, 2026, at 9:00 a.m., "on the fairness, adequacy, and reasonableness of the Settlement Agreement and Fee Application, and to determine whether Final Judgment approving the settlement and dismissing with prejudice all claims asserted in the Litigation against Compass should be entered." *Id*. ¶ 24.

### B. Subsequent Developments

Following Preliminary Approval, the Court-appointed Settlement Administrator, Simpluris, Inc., timely implemented the Notice and claims administration program in accordance with the Settlement Agreement and the Court's Preliminary Approval Order, including the comprehensive digital media notice program, supplemented by publication notice and earned media outreach. Simpluris Decl. ¶¶ 5, 7–16. The digital notice program ran from August 1 through August 30, 2025, and included paid advertisements on Facebook, Instagram, Snapchat, Google Search, and high-visibility Google properties such as YouTube, Gmail, and Google Discover, as well as banner advertisements on high-reputation news websites. *Id*. ¶¶ 9–10. To supplement the digital campaign, Simpluris caused notice of the Settlement to be published on the Top Class Actions website on August 7, 2025, and issued a national press release via PR Newswire on August 4, 2025, which was picked up by 482 media outlets nationwide. *Id*. ¶¶ 11–12. During the notice period, the campaign generated 27,334,225 impressions and 139,670 unique clicks directing users to the Settlement Website, reflecting substantial reach and engagement. *Id*. ¶ 10.

The Settlement Website, www.VendingMachineSettlement.com, went live on August 1, 2025, and provided Settlement Class Members with access to important dates and deadlines, the Long-Form Notice, Claim Form, key court filings, and the ability to submit claims electronically and select payment methods. *Id*. ¶¶ 13–14. Simpluris also established and maintained a 24-hour Interactive Voice Response system, which received 352 calls between August 1, 2025, and December 10, 2025. *Id*. ¶ 16. The Fee Petition (Dkt. 346) was posted to the Settlement Website on October 10, 2025, in accordance with the Preliminary Approval Order, ensuring that Settlement Class Members had full and timely access to the filing prior to the objection deadline. *Id*. ¶ 15.

The original deadline to submit a claim was November 14, 2025, and—at the direction of Class Counsel and with Defendant's consent—claims were accepted through November 28, 2025, providing an additional two-week extension. *Id*. ¶ 17. As of December 17, 2025, Simpluris had received approximately 346,465 claim submissions: 285,547 claim submissions via the Settlement Website, 185 claims via email, and 733 paper claim forms by mail, of which 78 were invalidated as duplicates, and approximately 60,000 additional paper claim forms received through bulk mailings that remain in processing. *Id*. ¶¶ 17, 19. In addition to processing Claim Forms received through bulk mailings, Simpluris is actively reviewing submitted Claim Forms for potential duplicates and confirming valid purchase locations. *Id*. ¶ 20. Of the Claims submitted, Simpluris has to date determined there are approximately 248,221 potentially valid Claims, broken down by tier as follows (*id.* ¶ 21):

| Tier (with number of purchases) | Claims (approx.) | Percent of Total |
|---|---|---|
| Tier A (up to 250 purchases) | 93,004 Claims | 37% |
| Tier B (more than 250 up to 500) | 38,433 Claims | 15% |
| Tier C (more than 500 up to 750) | 18,239 Claims | 7% |
| Tier D (more than 750 up to 1,000) | 14,054 Claims | 6% |

| | | |
|---|---|---|
| Tier E (more than 1,000 up to 1,250) | 11,637 Claims | 5% |
| Tier F (more than 1,250 up to 1,500) | 7,639 Claims | 3% |
| Tier G (more than 1,500 up to 1,750) | 7,567 Claims | 3% |
| Tier H (more than 1,750 up to 2,000) | 7,952 Claims | 3% |
| Tier I (more than 2,000 up to 2,250) | 9,327 Claims | 4% |
| Tier J (more than 2,250 up to 2,500) | 8,718 Claims | 4% |
| Tier K (more than 2,500) | 31,651 Claims | 13% |

Of these 248,221 potentially valid Claims, 30,251 Claims requested to receive the payment via paper check (about 12% of Claimants representing about 14% of the expected fund). *Id.* ¶ 21.

Based on all the claims processed to date and applying the pro rata reduction required by the Settlement Agreement to the figures above, Settlement Class Members can expect to receive payments ranging from approximately $3.98 in the lowest tier to approximately $47.77 in the highest tier, subject to final reconciliation following completion of claim validation. These amounts may fluctuate slightly based on any claims that are subsequently deemed invalid. All Claims are undergoing full validation, including de-duplication, location review, and a programmatic multi-factor fraud analysis. *Id.* ¶ 18. This involves a multi-factor fraud-analysis process designed to identify duplicate, inconsistent, or otherwise invalid submissions, including analysis of email and payment identifiers, IP-address review, location verification, and anomalous submission patterns. *Id.* ¶ 18. Given its initial fraud detection and based on its experience, however, Simpluris expects that most of the Claims it has determined to be potentially valid will ultimately be valid Claims and does not expect the figures above to decrease more than 10%. *Id.* ¶ 20. Thus, money will not remain in the Net Settlement Fund after making payments to Claimants. Class Counsel and/or Simpluris will provide updated numbers prior to the Final Approval Hearing.

The postmark deadline for requests for exclusion was October 17, 2025. Simpluris received two requests for exclusion, submitted by Carsten Kirby and Jonathan Sabens. *Id.* ¶¶ 22–23. One objection to the Settlement was submitted, discussed further below. *Id.* ¶¶ 24–25. In addition, on May 22, 2025, Simpluris transmitted notice to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715. *Id.* ¶ 6 & Ex. A. No governmental entity objected or sought to intervene.

## V. THE SETTLEMENT SHOULD BE APPROVED

Pursuant to Federal Rule of Civil Procedure 23(e), "a district court should approve a class action settlement if it finds it to be 'fair, reasonable, and adequate.'" *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016) (quoting Fed. R. Civ. P. 23(e)). Further, there is a "strong presumption in favor of finding a [class action] settlement fair." *Hoffman v. First Student, Inc.*, 2010 U.S. Dist. LEXIS 27329, *6 (D. Md. Mar. 23, 2010) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, *27 (E.D. Va. 2009)). And courts "keep[] in mind the 'overriding public interest in favor of settlement, particularly in class action suits.'" *Gholston v. Smithfield Foods, Inc.*, 2022 U.S. Dist. LEXIS 247816, *15 (E.D. Va. 2022) (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27).

In granting preliminary approval of the Settlement, the Court was required to determine that it was likely to find the Settlement fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B)(i). The Court's expectation that it would likely approve the settlement was well-founded and finds further support in the Class Members' strong participation in the claims process, the absence of any opt-outs, and only one objection, which as addressed below, is both moot and without merit. For the reasons set forth below, final approval of the Settlement is warranted.

### A. The Settlement is Fair, Reasonable, and Adequate

In determining whether a proposed class action settlement may be approved as "fair, reasonable, and adequate" under Rule 23(e)(2), the Court must consider whether: (A) the class

representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

Further, the Fourth Circuit has developed its own factors in assessing whether a class action settlement is fair, reasonable, and adequate, which, as set forth below, largely overlap with Rule 23(e)(2). *See City of Camden v. BASF Corp. (In re Aqueous Film-Forming Foams Prods. Liab. Litig.)*, 2024 U.S. Dist. LEXIS 213061, *40-41 (D.S.C. Nov. 22, 2024) (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)). The "Fourth Circuit's 'factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors.'" *Id.* at *41 n.2 (quoting *In re: Lumber Liquidators*, 952 F.3d at 484 & n.8).

Here, both the Fourth Circuit's factors and Rule 23(e)(2) are satisfied. The proposed Settlement is fair, adequate, and reasonable to warrant final approval. It provides substantial monetary relief to Settlement Class Members in light of the potential classwide damages and the risks, costs, and delay of further litigation. Further, it was negotiated at arm's-length and treats Settlement Class Members equitably relative to each other. The Settlement was reached after over six and a half years of litigation, and Class Counsel, based on their experience and information obtained during this litigation, obtained sufficient information to ensure the Settlement's fairness, reasonableness, and adequacy. Accordingly, approval of the Settlement is warranted.

### 1. The Fourth Circuit's Factors and Overlapping Rule 23(e)(2) Factors Support Approval of the Settlement

As set forth herein, the factors considered by the Fourth Circuit, including the overlapping Rule 23(e)(2) factors, support the granting of final approval.

#### a. The proposed Settlement is fair

For fairness, the Fourth Circuit considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery . . . ; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *41 n.2.

The Fourth Circuit's considerations regarding the fairness of a settlement all support final approval. During the more than six and a half years of litigation, Class Counsel engaged in substantial discovery—including written discovery, review of over 64,000 pages of documents, depositions, and expert discovery—and motion practice, including briefing on Plaintiff's motion for class certification and Compass's motions to dismiss and strike Plaintiff's expert. *See In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *42 (considering that parties only settled after extensive discovery and motion practice). Class Counsel, who have extensive experience in prosecuting complex class actions, including consumer protection class actions, are thus well informed of the facts, claims, and defenses and the risks of proceeding to trial and appeal, and endorse the Settlement without reservation. Joint Declaration In Support of Plaintiff's Motion For Final Approval of Class Action Settlement And Memorandum In Support ("Joint Decl."), ¶¶ 5–9.

Further, following three prior unsuccessful mediations, this Settlement resulted from the parties' hard-fought arm's-length negotiations during April 2025 without any collusion, and "nothing in the record suggests otherwise." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *42;

Joint Decl. ¶¶ 10–11.[3] Moreover, the Settlement does not provide for the reversion of unclaimed amounts. There is simply nothing during the negotiations or in the Settlement's substance presenting any reason to doubt its fairness. For these reasons, the overlapping requirement of Rule 23(e)(2)(B), considering whether "the proposal was negotiated at arm's length" is also satisfied.

This Settlement therefore satisfies the Fourth Circuit's considerations relating to the fairness of a proposed settlement, along with Rule 23(e)(2)(B).

### b. The proposed Settlement is adequate

In assessing adequacy, the Fourth Circuit considers: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *41 n.2. These factors support an adequacy finding here.

**Merits/Defenses.** Plaintiff maintains that Compass would be found liable if the case proceeded to trial, but recognizes the risk, expense, and time involved to reach trial or obtain a final judgment. As shown herein, a consideration of the relative strength of Plaintiff's case on the merits and Compass's defenses demonstrates the Settlement's adequacy. Notably, Compass vigorously contested Plaintiff's motion for class certification (pending at the time Settlement was reached), and, in the event certification was granted, likely would have sought a Rule 23(f) interlocutory appeal. Although Plaintiff believes the class was likely to be certified, it was far from guaranteed, as in the cases denying certification cited by Compass. *See*, *e.g.*, *Career Counseling,*

---

[3] *In re Aqueous* also found the reasonableness of the settlement supported by that the fact the parties "did not set attorneys' fees or even a range of fees." *Id*. at *48. The same is true here, as Class Counsel simply requested attorneys' fees from the Court with no "clear-sailing agreement."

*Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 211 (4th Cir. 2024), *Anderson v. Lab. Corp. of Am. Holdings*, 2023 U.S. Dist. LEXIS 23532, *45 (M.D.N.C. 2023). Moreover, Compass's defenses presented more uncertainty at the merits stage.

**Duration.** The anticipated duration and expense of further litigation also supports a finding of adequacy. Even assuming Plaintiff certified the class and held certification through a 23(f) appeal, defeated Compass's summary judgment motion, and prevailed at trial and any potential appeal, the duration and expense of such undertakings—which would involve, *inter alia*, multiple expensive publication notice programs, further expert witness costs, and years of additional litigation—favors settlement. *See In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *43-44 ("[A]ny judgment . . . would be subject to lengthy appeals while the Settlement Agreement provides immediate results and benefits . . ."). For the same reasons, the overlapping considerations identified in Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and appeal) are also satisfied.

**Solvency.** Plaintiff is not aware of any issues regarding Defendant's solvency.

**Opposition.** Only one person objected to this Settlement, Mr. Shiyang Huang ("Objection," Dkt. 347), a frequent objector to class action settlements. Mr. Huang's objection is without merit. In addition, the objection is moot, as the hypothetical scenario objected to did not occur—as Class Counsel advised him it would not on multiple occasions prior to his filing of the objection.

Initially, in addition to the Objection being legally unavailing, Mr. Huang fails to comply with all of the requirements for objections as set forth in the Court's Preliminary Approval Order, notably by failing to provide the complete and accurate number of times the objector has objected to a class action settlement within the five years preceding the date of the objection and a copy of any orders related to such prior objections. Dkt. 343, ¶ 18. This disregard of the Court's

Preliminary Approval Order alone warrants denying the Objection. And although Mr. Huang provides certain actions in which he has objected during the past five years (Objection, 11) he omits others, including *McMorrow v. Mondelez Int'l, Inc.*, 2022 U.S. Dist. LEXIS 66016, *2-3 (S.D. Cal. Apr. 8, 2022) (objection to attorneys' fees amount overruled); *In re Blue Cross Blue Shield Antitrust Litig. (MDL No.: 2406)*, 2022 U.S. Dist. LEXIS 246155, *140-41 (N.D. Ala. Aug. 9, 2022) (overruling objection related to standing); and *In re Pork Antitrust Litig.*, 2022 U.S. Dist. LEXIS 170244, *23 (D. Minn. Sep. 14, 2022) (approving settlement despite objection relating to legal question of whether settlement class could be certified). His complaint that the Court's requirement to disclose such information is "purely punitive" also lacks merit, as his history of serial objections bears on his credibility where, as here, he seeks a separate monetary award for himself despite Class Counsel's multiple communications with supporting case law explaining the settlement structure and describing why his expressed concerns were moot even prior to the claim deadline. Joint Decl. ¶ 12 and Ex. 1–3.[4]

Substantively, the Objection has no merit. Mr. Huang first argues that the language in the Settlement Agreement providing that "any amounts remaining in the Net Settlement Fund after all Settlement Payments have been made in accordance with this Agreement . . . will be distributed to a *cy pres* recipient" (*see* Settlement, § J.1.e), would violate principles of standing under Article III, based on awarding money provided by the Settlement to an uninjured cy pres recipient. Objection, 1-2. Mr. Huang cites no cases from this Circuit to support his standing argument, and it has been directly rejected. *See Krakauer v. Dish Network, LLC*, 2020 U.S. Dist. LEXIS 199112, *17-18

---

[4] Other information provided by Mr. Huang about past objections appears incorrect or misleading. Notably, he states that in *In re Broiler Chicken Antitrust Litig.*, "Class Counsel's briefs admit and argue that I delivered at least $2.8 million in class-wide benefits," but the docket numbers Mr. Huang cites do not exist, nor is it otherwise clear on what this claim is based. It is also unclear on what Mr. Huang bases his claim that he "helped class members claw back $25 million" in *In re Optical Disk Drive Prods. Antitrust Litig.,* 2021 WL 3502506 (N.D. Cal. Jul. 2, 2021).

(M.D.N.C. Oct. 27, 2020) ("Dish also contends a cy pres distribution is prohibited because any cy pres recipient would not have standing, essentially arguing that a cy pres distribution would be unconstitutional. It cites no case or other authority to support this argument . . . and any cy pres recipient would not be a party to this litigation. Moreover, standing is a case-or-controversy issue that typically arises in the context of determining federal jurisdiction, which this Court obviously has."). The same is true here. *See also Stark v. Blue Cross & Blue Shield of N.C.*, 2025 U.S. Dist. LEXIS 29654, *34-35 (M.D.N.C. Feb. 18, 2025) (recognizing appropriateness of cy pres distributions which have "often been used as a remedy when class actions are settled" and retaining jurisdiction to approve a cy pres recipient following the parties' meet and confer about an appropriate cy pres recipient); *Mateo-Evangelio v. Triple J Produce, Inc.*, 2017 U.S. Dist. LEXIS 135580, *11-12 (E.D.N.C. Aug. 24, 2017) (approving cy pres distribution); *Medina v. Brentmoor*, 2021 U.S. Dist. LEXIS 94585, *16-17 (E.D.N.C. May 14, 2021) (same).

Mr. Huang also argues the Settlement should have provided for a "*pro rata upward adjustment*" in the event amounts remained in the Net Settlement Fund after Class Members submitted their claims before providing for a cy pres distribution. Objection, 3-4. This argument lacks merit, as Class Counsel previously informed Mr. Huang (Joint Decl. Ex. 1–3). Mr. Huang's proposal, in which Class Members could get an upward pro rata increase untethered to their contractual damages if there was money remaining in the Net Settlement Fund, would constitute an impermissible windfall to Class Members. *See* Joint Decl. Ex. 1 (Aug. 14, 2025 email to Mr. Huang) and Ex. 2 (Aug. 31, 2025 email to Mr. Huang); *see also Krakauer v. Dish Network, LLC*, 2020 U.S. Dist. LEXIS 199112, at *5 n.2 (M.D.N.C. Oct. 27, 2020) (citing *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 35 (1st Cir. 2012), for the proposition that " . . . in the context of class action settlements . . . redistribution of unclaimed funds to already-compensated plaintiffs

can result in an undeserved windfall and create incentives for suits where large numbers of absent class members were unlikely to make claims."); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (courts should avoid making additional distributions to class members where doing so would provide windfall with respect to liquidated-damages claims).

But the Court need not spill much ink on the merits of this claim because the issue is moot (as Mr. Huang was also informed of by Class Counsel prior to filing his Objection). Joint Decl. Ex. 3 (Sept. 26, 2025 email to Mr. Huang). As previously addressed, because of the robust notice and large number of claimants, the full amount of the Net Settlement Fund will be used such that a pro rata reduction in awards is necessary. Thus, the Settlement Payments made in accordance with the Agreement will utilize all funds in the Net Settlement Fund, making any upward pro rata adjustment impossible. Therefore, the only amounts that could possibly go to a cy pres recipient here would be amounts in which a Class Member (1) requested to receive his/her funds by physical check (one of many options), and (2) failed to cash the check before its expiration (180 days after issuance date). That amount is likely to be *de minimis* given that, based on claims to date, only approximately 12% of Claimants elected to receive a physical check. See Simpluris Decl. ¶ 21. Further, as Mr. Huang stated, he does not take issue with such uncashed checks potentially going to cy pres. *See* Joint Decl. Ex. 1 (Aug. 22, 2025 email from Mr. Huang ["I'm looking for assurance that if the claims rate is not as high as people want … that the only funds potentially going to cy pres are truly the unfortunately uncashed checks totaling to a rounding amount."]). Finally, to the extent any Claimant requests reissuance of a physical check prior to a Court order directing any cy pres distribution, Class Counsel and Compass would have no objection upon confirmation that the initial check was uncashed and void.

Mr. Huang's remaining objections also lack merit. He argues that the cy pres recipient must

be one that benefits the class and that cy pres distributions should not be considered in determining Class Counsel's fee award. Objection, 5-6. As to the cy pres recipients, as in *Stark*, in light of the only potential for a cy pres award to arise from a small amount of uncashed checks, it is appropriate to defer the question of an appropriate recipient until it is clear whether there will be any such funds for possible distribution. *Stark*, 2025 U.S. Dist. LEXIS 29654 at *37 (noting in final approval order that court was retaining jurisdiction to approve cy pres recipient(s) in event of undistributed funds and directing parties to meet and confer about appropriate recipient by specified date); *Aseltine v. Bank of Am., N.A.*, 2024 U.S. Dist. LEXIS 222677, *7 (W.D.N.C. Dec. 9, 2024) (granting final approval with potential cy pres recipient still to be decided by the Court). Thus, if needed, the parties can present their proposed cy pres recipient(s) to the Court at its direction, who will ensure the parties' selection appropriately "reasonably approximate[s]" the interests pursued by the Class. *See Good v. W. Va.-American Water Co.*, 2021 U.S. Dist. LEXIS 248057, *25 (S.D. W. Va. Dec. 30, 2021). Further, Mr. Huang's argument regarding discounting Class Counsel's attorney's fee award based on a cy pres award is again moot and without merit. *See*, *e.g.*, *Stark*, 2025 U.S. Dist. LEXIS 29654 at *30 (M.D.N.C. Feb. 18, 2025) (no reduction in attorney's fee award despite potential cy pres award); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 473 (D. Md. 2014) (no reduction in attorney's fee award based on approval of cy pres award).

Mr. Huang's additional claim that potential objectors were "handicapped" by the Court's Objection Deadline and he is entitled to an objector award as a result is belied by the fact that he was not hindered from filing his objection. Objection, 7-9. Moreover, the Court-approved objection deadline occurred after preliminary approval and notice (which disclosed the amount Class Counsel would seek for its fees), and after Class Counsel's Fee Petition was filed and published on the Settlement Website, giving any potential objectors adequate notice with which to

file an objection. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252 (11th Cir. 2020), on which Mr. Huang relies to address the issue of objectors being "handicapped," involved the inapplicable situation where class members do not have an opportunity to see the attorney's fee petition before having to make a decision whether to object. Furthermore, upon request, Class Counsel provided Mr. Huang with information he sought on multiple occasions, including case law supporting the structure of the Settlement Agreement and information that the Settlement Administrator anticipated the full Net Settlement Fund to be utilized to pay Claimants.[5]

Nor is there any merit to Mr. Huang's attempt to "renew[] defendant's class certification objections." Objection, 9. To the extent Mr. Huang purports to incorporate Compass's opposition to class certification, Plaintiff incorporates his motion and reply, as well as Compass's non-opposition to certification of the Settlement Class. As for the standing argument on which Mr. Huang attempts to rely, Compass had *asserted* "that the class 'include[s] individuals who have not suffered an injury in fact: purchasers who made all purchases with knowledge of the price differential' (Def. Mem. 30), but there is no evidence that that is the case for a single putative class member. . . . Compass hasn't cited a single case declining certification on standing grounds based only on such speculation." Dkt. 302 at 17. Rule 23 does not require plaintiffs to negate speculative defenses, and unsupported hypotheticals do not defeat standing or predominance.

Thus, Mr. Huang's Objection, filed after disregarding Class Counsel's numerous attempts to explain the mootness and lack of merit to the issues Mr. Huang raised via email, in no way assists the Court in its analysis nor benefits the Class in any way. Accordingly, the objection lacks merit and should be overruled, and no payment is warranted to Mr. Huang.

---

[5] Class Counsel ceased communications with Mr. Huang after he suggested he would forego filing an objection in exchange for a $2,500 payment from Plaintiff's counsel. Joint Decl. ¶ 14 and Ex. 3 (Oct. 4, 2025 email from Mr. Huang).

This Settlement therefore satisfies Rule 23(e)(2)(B) and the Fourth Circuit's considerations relating to adequacy.

### c.     The proposed Settlement is reasonable

Although the Fourth Circuit has not provided specific factors for consideration regarding reasonableness, "[t]o the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements" it can include a review of the settlement amount in light of the "scale of the litigation and the plaintiffs' chances of success at trial." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *41 n.2 (quoting *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022)). Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *19-21 (N.D. Ill. 2019) (approving settlement where payout to individual class members was not near statutory maximum under TCPA); *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 U.S. Dist. LEXIS 162838, *12 (E.D. Cal. 2017)) (it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery . . . ") (citation omitted). And while the Court need not "substitute its judgment of what the case might be worth for that of class counsel" it "must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id*. (quotations omitted).

Here, the Settlement Amount—the $6.94 million common fund—is more than reasonable in light of the "scale of the litigation and the plaintiffs' chances of success at trial." *In re Aqueous*, 2024 U.S. Dist. LEXIS 213061 at *46-47. The Settlement Amount represents 69% of the damage calculation by Plaintiff's expert (or over 50% of Plaintiff's damage plus interest calculation), and 69.5% of the expert calculation by Compass's expert. Under any calculation, and particularly in light of the uncertainty involved and the time value of money given the remaining years of litigation and appeals, the Settlement Amount provides substantial and immediate monetary relief

without the risk and expense of continued litigation.

In analyzing reasonableness, courts also consider whether the settlement treats class members equitably relative to each other based on objective criteria. *Id.* at *48. This is also a factor under Rule 23(e)(2)(D). As the notes to the rule explain, paragraph (D) calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others, i.e., whether the apportionment of relief among class members takes appropriate account of differences among their claims. Further, in determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel. *See, e.g.*, *Phillips v. Triad Guaranty, Inc.*, 2016 U.S. Dist. LEXIS 37607, *12-13 (M.D.N.C. Mar. 23, 2016) ("'[T]he opinion of qualified counsel is entitled to significant respect[,] . . . and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.'") (quoting *In re Mills Corp. Securities Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) (also explaining that "[t]he proposed allocation need not meet standards of scientific precision").

Here, the plan of allocation, endorsed by Class Counsel, is reasonable, rational, and equitable, thus satisfying this factor. *See* Joint Decl. ¶ 15. Even after deducting for expected fees, costs, Service Award, and Settlement Administration Expenses, Settlement Class Members will receive substantial monetary relief through their Settlement Payments, which correspond to their number of purchases from Subject Vending Machines.[6] *See* Agreement § A.4, J.1.a. The various tiers were designed to facilitate a relatively simple claims process that divides class members into groups based on the number of purchases during a lengthy class period that dates back to 2014,

---

[6] The provision of a service award for Plaintiff, as Class Counsel requested in its Fee Petition, does not render the Settlement inequitable as such awards are regularly awarded based on the work performed by named plaintiffs. *See, e.g.*, *Rodriguez v. Riverstone Cmtys., LLC*, 2024 U.S. Dist. LEXIS 22802, *7 (E.D.N.C. 2024); *Seaman v. Duke Univ.*, 2019 U.S. Dist. LEXIS 163811, *22 (M.D.N.C. 2019).

with payments corresponding to the number of purchases. The proposed payment for each tier takes into account damages and prejudgment interest within each tier in a rational way that also avoids extensive claims proceedings that drag on for years. And the use of so many tiers treats class members equitably by accounting for differences in their claims while avoiding concerns that some class members are being over- or under-compensated at the expense of others.

Finally, the Settlement provides that, to the extent there are insufficient funds to pay all Claimants from the Net Settlement Fund, the Settlement Administrator will calculate each Claimant's Settlement Payment by making *pro rata* adjustments to these amounts, with the adjusted amounts constituting the expected Settlement Payment—thereby reducing everyone's recovery proportionally to one another if needed. Here, as described above, based on the number of claimants, a *pro rata* adjustment of Class Member's amounts from those specified in the tiers is necessary. That method preserves the equitable nature of the payouts described above.

The Fourth Circuit's reasonableness considerations and Rule 23(e)(2)(D) are thus satisfied.

## 2. The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement

To the extent the Rule 23(e)(2) factors do not entirely overlap with the Fourth Circuit's, the factors not addressed above are satisfied here.

### a. The Class Representative and Class Counsel have adequately represented the Class

As set forth herein, Plaintiff and Class Counsel have adequately represented the Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy of representation, including the 'nature and amount of discovery,' which 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P.

23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. As shown herein, the performance of Plaintiff and Class Counsel have been more than adequate, and the extensive time and resources they have invested, including relating to motion practice and discovery, has ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. The significant work they put into discovery to obtain this information base, along with their extensive experience in class actions, supports a finding that Rule 23(e)(2)(A) is satisfied.

Further, Plaintiff, as the Class Representative, has stayed involved in nearly every aspect of the case, including by helping Class Counsel investigate the claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, and preparing and sitting for a deposition. At each step, Plaintiff has continued to act in the best interests of the Settlement Class and has adequately represented it.

### b. The method of distributing relief to the class is effective

The Settlement's method of distributing relief to the class, including its method of processing class-member claims, also supports final approval. *See* Rule 23(e)(2)(C)(ii). Because Compass does not have records identifying persons who made purchases from Subject Vending Machines, potential class members needed to make claims to be eligible for Settlement Payments. Class Counsel, in consultation with the Settlement Administrator, created a robust notice program that included, *inter alia*, publication via numerous electronic and social media outlets, combined with a streamlined claims-process. Agreement §§ G, J. Claim forms could be completed electronically on the Settlement Website, but Class members were also able to download and/or request a printable copy that could be returned to the Settlement Administrator. *Id.* § G.1, G.2.

Direct payment to Settlement Class members based on a "simple and easy to understand" claim form and process supports approval. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,

2019 U.S. Dist. LEXIS 120558, *18-19 (D. Md. 2019); *Abubaker v. Dominion Dental U.S.*, 2021 U.S. Dist. LEXIS 252202, *16 (E.D. Va. 2021) (same). Here, the claim form and process was simple and easy to understand. Claimants simply had to file a claim form verifying under oath their name, contact information, that he/she made a purchase from a Subject Vending Machine with a credit, debit, or prepaid card, the tier corresponding to his/her number of purchases, and the City and State where purchased. Agreement §§ A.4, A.5, G.1-2, & Ex. 6. The robust notice and streamlined claims process resulted in over 248,000 Claimants.

Finally, to facilitate distribution of payment and reduce unclaimed funds or uncashed checks, Claimants were able to select their preferred payment type on the Claim Form, including physical checks, electronic payments (via PayPal, Venmo, or Zelle), or payment cards. Agreement, § J.1.c. Physical checks will be valid for 180 days after the date issued. *Id*. For payment methods that require delivery, the Settlement Administrator will mail the Settlement Payment to the address indicated on the Claim Form. *Id*. If any Settlement Payments are returned by the U.S. Postal Service as undeliverable, the Settlement Administrator will, within 75 days after the Effective Date, mail the Settlement Payment to any forwarding address provided, and, if no such forwarding address is provided, will use publicly available databases as is practicable to update Claimant's addresses and will cause the Settlement Payment to be re-mailed to such Claimant as can be located. Agreement, § J.1.c.i, ii. Accordingly, the method of distributing relief to the Settlement Class is as simple and effective as possible and this factor supports final approval.

### c. The terms of the proposed attorneys' fees and timing of payment support approval of the settlement

Under Rule 23(e)(2)(C)(iii), the Settlement is adequate, taking into account the terms of proposed attorneys' fees, including timing of payment. Following Notice to the Class, which disclosed the amount Class Counsel would seek in fees, Class Counsel filed their Fee Petition with

the Court on October 7, 2025 (ten days prior to the Objection deadline) pursuant to the Court-approved schedule. Dkt. 346. As set forth further in the Fee Petition the requested attorneys' fees of $2,313,333.33, or one-third of the Settlement Amount, plus reimbursement of litigation costs and expenses in the amount of $147,660.04, is reasonable and does not undermine the adequacy of the relief. *See, e.g.*, *Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, *13 (E.D.N.C. 2020) (attorneys' fees of one-third of settlement fund was "fair, adequate, and reasonable"; "Many courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable"); *Amaya v. DGS Constr., LLC*, 2023 U.S. Dist. LEXIS 210689, *8 (D. Md. 2023) ("[T]he requested attorney's fees of one-third of the common fund are reasonable" and noting class counsel "took the case on a contingency basis").

Per the Settlement, any attorneys' fees and expenses the Court awards are to be distributed within 14 days of the Settlement's Final Effective Date, which is the same day that money to Claimants will be distributed. Agreement §§ J.1.b, J.3.

### d. Agreements required to be identified under Rule 23(e)(3) made in connection with the proposal

Rule 23(e)(3) requires the parties to identify "any agreement made in connection with the proposal." In connection with this Class Settlement, Compass is entering into separate settlement agreements with two individual plaintiffs who filed similar actions in state courts that will have the same Effective Date as this Settlement. Joint Decl. ¶ 16.

As background, on October 10, 2022, Jason Pemberton filed a similar action against Compass in the Circuit Court of Madison County, Illinois, styled as *Jason Pemberton v. Compass Group USA, Inc., d/b/a Canteen*, Case Number 2022LA001328. And on December 16, 2022, Joseph Whitaker filed a similar action in the General Court of Justice Superior Court Division in the County of Davidson, North Carolina, styled as *Joseph Whitaker v. Compass Group USA, Inc.,*

*d/b/a Canteen*, Case No. 22-CVS-2576 (collectively the "State Actions"). Compass did not remove the State Actions, but both have been stayed pending the outcome of this Action. Pemberton and Whitaker are represented by most of the Plaintiff's counsel of record herein. *Id.* ¶ 17.

The individual settlements consist of an agreement by Pemberton and Whitaker to dismiss the State Actions with prejudice promptly after the Effective Date in exchange for a settlement payment of $5,000 each to Pemberton and Whitaker (which payment will also not occur until after the Effective Date). *Id.* Pemberton and Whitaker also agreed to forego filing claims in the class Settlement to avoid a conflict with the Class or a double recovery. The individual settlements were not a term of the Class Settlement. And practically, the alternative to settling the State Actions now would have been to wait until after the Effective Date to negotiate and enter individual settlement agreements regarding the State Actions, but that approach would not have impacted the Class Settlement in any material way. Thus, these individual settlements should not affect the reasonableness, fairness, or adequacy of the class Settlement. Joint Decl. ¶ 18.

## VI. CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED

As set forth above, in its Preliminary Approval Order, the Court certified the Class under Rule 23, subject to Final Approval. Because nothing has changed following the Court's ruling, except for the overwhelmingly positive response by Class Members to the Settlement as set forth herein, the Court should confirm and grant final certification of the Settlement Class for purposes of entering a Final Approval Order.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.[7]

_____

[7] A Proposed Final Judgment and Order of Dismissal is submitted with this Motion.

Dated: December 17, 2025

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:*/s/ Daniel S. Levy*
Kevin P. Green (admitted *pro hac vice*)
Daniel S. Levy (admitted *pro hac vice*)
2227 S. State Route 157
Edwardsville, Illinois 62025
Tel: 618.656.5150 / Fax: 618.656.6230
kevin@ghalaw.com
daniel@ghalaw.com

Mike Arias (admitted *pro hac vice*)
M. Anthony Jenkins (admitted *pro hac vice*)
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Joel R. Rhine, NC SBN 16028
Ruth A. Sheehan, NC SBN 48069
**RHINE LAW FIRM, PC**
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: 910−772−9960 / Fax: 910-772-9062
jrr@rhinelawfirm.com
ras@rhinelawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on December 17, 2025, which will serve all counsel of record.

/s/ *Daniel S. Levy*

## CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE

I hereby certify that:

a.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

b.      Every statement and citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ *Daniel S. Levy*